CHARLES THOMPSON, State Bar No. 139841
  charles.thompson@gtlaw.com
DAVID BLOCH, State Bar No. 184530
  david.bloch@gtlaw.com
MELISSA KENDRA, State Bar No. 291905
  melissa.kendra@gtlaw.com
ANTHONY E. GUZMAN II, State Bar No. 311580
  guzmanan@gtlaw.com
GREENBERG TRAURIG, LLP
101 Second Street, Suite 2200
San Francisco, California 94105
Telephone: 415.655.1300
Facsimile: 415.707.2010

Attorneys for Defendant
BYTEDANCE INC.

DEMERY RYAN, State Bar No. 217176
  dryan@littler.com
DAVID S. MAOZ, State Bar No. 233857
  dmaoz@littler.com
LITTLER MENDELSON, P.C.
2049 Century Park East, 5th Floor
Los Angeles, California  90067
Telephone: 310.553.0308
Facsimile: 800.715.1330

Attorneys for Defendant
SHUYI (SELENE) GAO
[Additional Counsel on Next Page]

# THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YINTAO YU, an individual,<br><br>  Plaintiff<br><br>  v.<br><br>BYTEDANCE, INC., a Delaware Corporation; SHUYI (SELENE) GAO, an individual,<br><br>  Defendants. | Case No.<br><br>**NOTICE AND PETITION FOR REMOVAL OF ACTION UNDER 28 U.S.C. § 1331 AND 9 U.S.C. § 203**<br><br>[Originally San Francisco Superior Court No. CGC-23-608845]<br><br>State Action filed:  September 5, 2023<br>Removal Date:        September 25, 2023<br>Trial Date:          None |

**NOTICE AND PETITION FOR REMOVAL**

ACTIVE 690450416v4

# **ADDITIONAL COUNSEL**

GREGORY ISKANDER, State Bar No. 200215
  giskander@littler.com
LITTLER MENDELSON, P.C.
Treat Towers 1255 Treat Boulevard, Suite 600
Walnut Creek, California 94597
Telephone: 925.932.2468
Facsimile: 925.946.9809

Attorneys for Defendant
SHUYI (SELENE) GAO

**NOTICE AND PETITION FOR REMOVAL**

ACTIVE 690450416v4

**TO ALL PARTIES AND THE CLERK OF THE ABOVE-ENTITLED COURT:**

**PLEASE TAKE NOTICE** that Defendants ByteDance Inc. (BDI) and Shuyi (Selene) Gao, by and through their respective undersigned counsel, hereby submit this joint Notice and Petition for Removal pursuant to 28 U.S.C. § 1446(a) and 9 U.S.C. § 205 to remove this action filed by Plaintiff Yintao Yu (Yu) from the Superior Court of the State of California in and for the County of San Francisco to the United States District Court for the Northern District of California.

This Notice is based on federal question jurisdiction under the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, pursuant to 28 U.S.C. § 1331 and 9 U.S.C. § 203, and provides "a short and plain statement of the grounds for removal" pursuant to 28 U.S.C. § 1446(a) and 9 U.S.C. § 205. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 83 (2014) (a notice "need not contain evidentiary submissions"); 9 U.S.C. § 205 ("the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal"). Provided "a notice of removal plausibly alleges a basis for federal court jurisdiction, a district court may not remand the case back to state court without first giving the defendant an opportunity to show by a preponderance of the evidence that the jurisdictional requirements are satisfied." *Arias v. Residence Inn*, 936 F.3d 920, 925 (9th Cir. 2019) (rejecting *sua sponte* remand). Should the Court ask Defendants to demonstrate any of the facts alleged herein, they are prepared to do so.

## I.     STATE COURT PROCEEDINGS

1.      On September 5, 2023, Yu commenced this action in San Francisco Superior Court. *Yintao Yu v. ByteDance Inc. & Selene Gao*, Case No. CGC-23-608845. The Complaint seeks a judicial determination that Yu did not enter into the Employee Confidentiality Inventions and Assignment Agreement ("ECIAA") that purports to bear his wet signature and an order enjoining Defendants from seeking to enforce the ECIAA's arbitration provision requiring Yu to arbitrate "any dispute, controversy, or claim arising out of or relating to or resulting from [Yu's] employment with [BDI], including any alleged violation of statute, common law or public policy." Thompson Dec. Ex. 1-A; Thompson Dec. ¶ 2, Ex. 2-A.

2.      The Complaint represents the parties' third sojourn to this Court. Yu filed his first

**NOTICE AND PETITION FOR REMOVAL**

case (*Yintao Yu v. ByteDance Inc.*, Case No. CGC-22-603019, removed as N.D. Cal. Case No. 23-cv-00707-SI) in November 2022. BDI removed to this Court and moved to compel arbitration, after which Yu abandoned the proceedings. Judge Susan Illston then dismissed the case in April 2023 for failure to prosecute without deciding BDI's motion to compel arbitration.

3. Yu then filed his second case (*Yintao Yu v. ByteDance Inc. & Selene Gao*, Case No. CGC-23-608845, removed as N.D. Cal. Case No. 23-cv-03503-SI) in May 2023. BDI again removed to this Court and moved to compel arbitration. The Court determined removal was proper to the extent portions of Yu's claims were preempted by the Copyright Act but then dismissed those portions with prejudice and remanded the case to state court. Again, the Court did not reach BDI's motion to compel arbitration.

4. Five days after the September 1st remand, Yu filed this Complaint (his third case), now seeking an expedited trial of his newfound claim that he never agreed to arbitrate *any* of his claims against defendants, including those still pending in his second (May 2023) case. Thompson Dec. ¶ 2; Ex. 1-A (Complaint) ¶ 20 ("Plaintiff never agreed to arbitrate claims against ByteDance or Gao").

5. On September 7th and 10th, respectively, BDI and Ms. Gao were served with the Complaint and ancillary paperwork. Thompson Dec. ¶ 3; Ryan Dec. ¶ 3. Pursuant to 28 U.S.C. § 1446(a) and 9 U.S.C. § 205, true and correct copies of all state court process, pleadings, and orders received by BDI and Ms. Gao are attached to the Declarations of Charles O. Thompson and Demery Ryan, respectively.

## II. TIMELINESS OF REMOVAL

6. Pursuant to 9 U.S.C. § 205, this Notice is filed with the United States District Court "before the trial" of this matter in any state court proceeding. Thompson Dec. at Ex. 2; Ryan Dec. ¶ 2. Removal is therefore timely. *See Oakland-Alameda Coliseum, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2006 WL 1709610, *1 (N.D. Cal. June 21, 2006) (Patel, J.) ("Under section 205, unlike under section 1446(b), removal can be at any time before trial").

7. Pursuant to 28 U.S.C. § 1446(d), BDI and Ms. Gao will, promptly after filing, file a copy of this Notice of Removal with the Clerk of Court of the San Francisco Superior Court.

ACTIVE 690450416v4

Thompson Dec. ¶ 4; Ryan Dec. ¶ 4. Proof of Service of the Notice to the Superior Court Clerk of Removal to Federal Court and of the Notice to Plaintiff of Removal to Federal Court will then be filed with this Court, satisfying the removal notice requirements. Thompson Dec. ¶ 4; Ryan Dec. ¶ 4.

## III.     JURISDICTION

8.      This Court has original jurisdiction over this action under 28 U.S.C. § 1331 and 9 U.S.C. §§ 203 and 205 because it is "[a]n action or proceeding falling under the Convention" and is therefore "deemed to arise under the laws and treaties of the United States." 9 U.S.C. § 203. The Convention is a multilateral treaty requiring federal courts to enforce certain arbitration agreements and awards connected to signatory nations. *Prograph Int'l Inc. v. Barhydt*, 928 F. Supp. 983 (N.D. Cal. 1996) (Orrick, J.) ("Article II, § 3, of the Convention imposes a mandatory duty on the courts of a Contracting State to recognize and enforce an agreement to arbitrate ... ."). To fulfill the U.S. Government's multilateral obligation, 9 U.S.C. § 203 vests "district courts of the United States" with "original jurisdiction over such an action or proceeding, regardless of the amount in controversy." This implicates "the virtually unflagging obligation to the federal courts to excise the jurisdiction given them." *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976); *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996) (federal courts "have a strict duty to exercise the jurisdiction that is conferred upon them by Congress").

9.      "[T]he plain language of [9 U.S.C.] § 205 provides federal courts with remarkably broad removal authority" over actions falling under the Convention because "easy removal is exactly what Congress intended in § 205." *Infuturia Glob. Ltd. v. Sequus Pharms., Inc.*, 631 F.3d 1133, n.5 (9th Cir. 2011) (internal quotations omitted). A defendant may remove under the Convention "[w]here the subject matter of an action or proceeding pending in State court relates to an arbitration agreement or award falling under the Convention ... ." 9 U.S.C. § 205.

10.     A written arbitration agreement falls under the Convention when the following "jurisdictional prerequisites" are present: **(1)** the agreement provides for arbitration in the territory of a Convention signatory; **(2)** the agreement arises out of a commercial legal relationship; and **(3)** either: *(a)* a party to the agreement is not an American citizen; or *(b)* the relationship "involves

property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states." *MouseBelt Labs Pte. Ltd. v. Armstrong*, 2023 WL 3735997, *2 (N.D. Cal. May 24, 2023) (Tigar, J.); 9 U.S.C. § 202. Such an agreement "relates to" the subject matter of the action, "whenever [it] could ***conceivably*** affect the outcome of the plaintiff's case." *Id.* n.1 (emphasis in original); *accord Infuturia*, 631 F.3d at 1138 ("The phrase 'relates to' is plainly broad and has been interpreted to convey sweeping removal jurisdiction").

## IV.   YU'S ARBITRATION AGREEMENTS

11.    Until just before filing the Complaint in September 2023, Yu had denied the *enforceability* of his arbitration agreements but had never denied their *existence*. The Complaint, however, now puts the existence of any agreement to arbitration squarely at issue. Complaint ¶ 20 ("Plaintiff never agreed to arbitrate claims against ByteDance or Gao.").

12.    Yu's Complaint in the third case focuses on the ECIAA's arbitration provisions, presumably because this was the agreement to arbitrate BDI sought to enforce in his first and second suit. But the ECIAA's purported non-existence does not end the inquiry. In fact, there are four separate arbitration agreements capable of satisfying the Convention's jurisdictional prerequisites: (1) the ECIAA; (2) the Stock Option Award Agreement; (3) the Patent Assignment Agreement; and (4) the Undertaking Agreement. Ex. 4 – 7. Any one of these agreements would provide sufficient grounds to uphold removal jurisdiction and, ultimately, compel arbitration under the Convention. *Scholz Recycling GmBH v. Yizhou*, 2021 WL 4476664, *7 (C.D. Cal. Sept. 29, 2021) (finding "Defendants have shown that at least one of the applicable arbitration agreements fall[s] under the Convention [and] could conceivably affect the outcome of the plaintiff's case.").

13.    All four agreements arise from and are directly related to Yu's original June 2017 employment offer from BDI. Ex. 3. As part of that offer, BDI agreed to provide Yu with salary and benefits, a grant of 220,000 stock options (to vest over four years), and a $600,000 payment for the acquisition of Yu's existing intellectual property. *Id.* For his part, Yu agreed to perform certain services for BDI in the U.S. and China, maintain the confidentiality of BDI's trade secrets, and refund BDI $100,000 if he resigned or was terminated for cause within two years. Ex. 4 – 7. To fulfill these obligations, the parties then separately executed the ECIAA, the Stock Option Award

6

**NOTICE AND PETITION FOR REMOVAL**

Agreement, the Patent Assignment Agreement, and the Undertaking Agreement—all following and in compliance with his original employment offer. *Id.*

14. *All four binding arbitration*:

a. The ECIAA is a written agreement between BDI (and its affiliates) and Yu that Yu physically signed in Beijing. Ex. 4. It relates to Yu's employment duties and confidentiality obligations at BDI and provides for arbitration in Los Angeles for "any dispute, controversy, or claim arising out of or relating to or resulting from Employee's employment with Employer, including any alleged violations of statute, common law or public policy." *Id.*

b. The Stock Option Award Agreement is a written agreement between ByteDance Ltd. (a Cayman Islands holding company and BDI's ultimate parent) and Yu that Yu physically signed. Ex. 5. It relates to the 220,000 stock options granted him by ByteDance Ltd., as part of his employment package with BDI and provides for arbitration in Hong Kong for "any dispute, controversy or claim arising out of or relating to the Notice, the Plan, or this Option Agreement, including any alleged violations of statute, common law or public policy." *Id.*

c. The Patent Assignment Agreement is a written agreement between BDI and Yu that Yu physically signed in Beijing. Ex. 6. It was the contractual vehicle by which BDI acquired certain patents owned by Yu in exchange for the $600,000 acquisition payment expressly contemplated as part of his employment offer. *Id.* Here too, the agreement provides for arbitration in Hong Kong for "any dispute, controversy or claim arising out of or relating to this Agreement, including any alleged violations of statute, common law or public policy." *Id.*

d. The Undertaking Agreement is an ancillary written agreement between BDI and Yu that imposes certain payback penalties should Yu resign or be terminated for cause within two years. Ex. 7. BDI has not yet located a signed version of this agreement but Yu has repeatedly claimed in court filings to have signed it as part of his onboarding in Beijing in August 2017. Thompson Decl. Ex. 1-A ¶ 10. It provides for arbitration in Hong Kong for "[a]ny dispute, controversy or claim arising out of or relating to th[at] Agreement." Ex. 7.

15. All four agreements fall under the Convention:

a. **Arbitration in a Convention Signatory.** Each agreement provides for

NOTICE AND PETITION FOR REMOVAL

arbitration in the territory of a Convention signatory. The ECIAA selects U.S. arbitration—and the U.S. is a member of the Convention. *Prograph*, 928 F. Supp. at 988 ("this Court finds that the arbitration agreement provides for arbitration in the United States, a signatory country of the Convention"). The Stock Option Award Agreement, Patent Assignment Agreement, and Undertaking Agreements all provide for arbitration in Hong Kong—also a signatory to the Convention. *Quiksilver Greater China Ltd. v. Quiksilver Glorious Sun Licensing Ltd.*, 2012 WL 12878644, *3 (C.D. Cal. Nov. 2, 2012) ("The agreement provides for arbitration in Hong Kong, a signatory to the Convention").

        b.   **Commercial Legal Relationship.** Each agreement arises from a commercial legal relationship, namely, Yu's employment relationship with BDI, which involved the exchange of services for compensation, equity, and intellectual property. *E.g.*, *MouseBelt Labs*, 2023 WL 3735997, *2–3 ("the Agreements arise out of a legal relationship that is commercial insofar as [plaintiff] exchanged capital and services for future equity and cryptocurrency tokens"); *Rogers v. Royal Caribbean Cruise Line*, 547 F.3d 1148, 1150 (9th Cir. 2008) ("We conclude that their employment contracts are 'considered as commercial' under" 9 U.S.C. § 205).

        c.   **Non-U.S. Parties or Foreign Connection.** Each agreement involves at least one a non-U.S. citizen, contemplates the exchange of foreign equity interests, anticipates performance at least in part abroad, was signed abroad, or otherwise has a sufficient connection with a foreign forum (Hong Kong and/or Beijing) that is a member of the Convention. *See* 9 U.S.C. § 202.

16.   The arbitration agreements all "relate to" the subject matter of the underlying dispute because the Complaint is a facial challenge to the existence (and not merely the enforceability or applicability) of these four agreements and, by extension, the propriety of compelling Yu to arbitrate pending his claims against BDI and Gao. Indeed, Yu's prayer for relief seeks to enjoin BDI from even *seeking* arbitration of Yu's second case, still pending in San Francisco Superior Court.

17.   The existence of an agreement to arbitrate is entrusted to this Court under the Convention. 9 U.S.C. § 202. If this Court determines that *any one* of the four agreements Yu

signed exists and falls within the Convention, it will have resolved or mooted Yu's Complaint—hence clearly "impacting" these proceedings, which for purposes of removal is all the law requires. *MouseBelt Labs*, 2023 WL 3735997, *2–3 ("Here, removal was proper because this Court's enforcement of the arbitration clauses in the Agreements could conceivably affect the outcome of this case."); *Infuturia*, 631 F.3d at 1138 ("As long as the defendant's assertion is not completely absurd or impossible, it is at least conceivable that the arbitration clause will impact the disposition of the case. That is all that is required to meet the low bar of 'relates to.'").

## V.    **VENUE**

18.    Because this action is pending in San Francisco Superior Court, the United States District Court for the Northern District of California is the proper venue for removal. 9 U.S.C. § 205.

## VI.    **NOTICE**

19.    Pursuant to 28 U.S.C. § 1446(d), a true and correct copy of this Notice is being filed with the Clerk of the Superior Court of the State of California, County of San Francisco, and served upon Yu and all parties. Thompson Dec. ¶ 4; Ryan Dec. ¶ 4.

20.    In filing this Notice, Defendants do not waive any available defenses.

\*    \*    \*

**WHEREFORE,** Defendants pray that this action be removed to this Court, that this Court accept jurisdiction of this action, and that this action be placed on the docket of this Court for further proceedings, the same as though this action had originally been instituted in this Court.

Dated:  September 25, 2023                    GREENBERG TRAURIG, LLP

                                                           By:  _____/s/ Anthony E. Guzman II_____
                                                                     Charles O. Thompson
                                                                     David Bloch
                                                                     Melissa Kendra
                                                                     Anthony E. Guzman II

                                                                     Attorneys for Defendant
                                                                     BYTEDANCE INC.

ACTIVE 690450416v4

Dated:  September 25, 2023          LITTLER MENDELSON, P.C.


                                By:      /s/ Demery Ryan
                                      Demery Ryan
                                      David S. Maoz
                                      Gregory Iskander

                                      Attorneys for Defendant
                                      SHUYI (SELENE) GAO

ACTIVE 690450416v4

# Exhibit 1

1  CHARLES THOMPSON, State Bar No. 139841
2    thompsoncha@gtlaw.com
   DAVID BLOCH, State Bar No. 184530
3    guzmanan@gtlaw.com
   MELISSA KENDRA, State Bar No. 291905
4    melissa.kendra@gtlaw.com
   ANTHONY E. GUZMAN II, State Bar No. 311580
5    guzmanan@gtlaw.com
   GREENBERG TRAURIG, LLP
6  101 Second Street, Suite 2200
7  San Francisco, California 94105
   Telephone: 415.655.1300
8  Facsimile: 415.707.2010

9  Attorneys for Defendant
   BYTEDANCE INC.
10
   DEMERY RYAN, State Bar No. 217176
11   dryan@littler.com
   DAVID S. MAOZ, State Bar No. 233857
12   dmaoz@littler.com
   LITTLER MENDELSON, P.C.
13 2049 Century Park East, 5th Floor
   Los Angeles, California  90067
14 Telephone: 310.553.0308
   Facsimile: 800.715.1330
15
16 Attorneys for Defendant
   SHUYI (SELENE) GAO
17 [*Additional Counsel on Next Page*]

18                    **THE UNITED STATES DISTRICT COURT**

19                **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

20

21 YINTAO YU, an individual,                    Case No.

22        Plaintiff                             **DECLARATION OF CHARLES O.**
                                                **THOMPSON IN SUPPORT OF**
23        v.                                    **REMOVAL**

24 BYTEDANCE, INC., a Delaware                  [Originally San Francisco Superior Court
   Corporation; SHUYI (SELENE) GAO, an          No. CGC-23-608845]
25 individual,
                                                State Action filed:  September 5, 2023
26        Defendants.                           Removal Date:        September 25, 2023
                                                Trial Date:          None
27

28

                                          1
                **DECLARATION OF CHARLES O. THOMPSON IN SUPPORT OF REMOVAL**

ACTIVE 690488277v1

**ADDITIONAL COUNSEL**

GREGORY ISKANDER, State Bar No. 200215
  giskander@littler.com
LITTLER MENDELSON, P.C.
Treat Towers 1255 Treat Boulevard, Suite 600
Walnut Creek, California 94597
Telephone: 925.932.2468
Facsimile: 925.946.9809

Attorneys for Defendant
SHUYI (SELENE) GAO

**DECLARATION OF CHARLES O. THOMPSON IN SUPPORT OF REMOVAL**

I, CHARLES O. THOMPSON, declare the following:

1. I am a Shareholder of Greenberg Traurig, LLP, counsel for Defendant BYTEDANCE INC. (BDI) in this matter. I am over the age of 18-year-old, licensed to practice law in the State of California, competent to testify on the matters set forth herein, and would so testify if called on to do so. The statements herein are based upon my own personal knowledge.

2. On September 5, 2023, Plaintiff Yintao Yu (Yu) commenced this action in the San Francisco Superior Court, entitled *Yintao Yu v. ByteDance, Inc. & Selene Gao,* Case No. CGC-23-608845 (hereinafter the "Complaint"). The Complaint seeks a judicial determination that Yu did not enter into the Employee Confidentiality Inventions and Assignment Agreement ("ECIAA") that purports to bear his wet signature and an order enjoining Defendants from seeking to enforce the ECIAA's arbitration provision requiring Yu to arbitrate "any dispute, controversy, or claim arising out of or relating to or resulting from [Yu's] employment with [BDI], including any alleged violation of statute, common law or public policy." These issues have not reached trial in any state court proceeding.

3. On September 7, 2023, BDI was served with the Summons, Complaint, as well as other enclosed San Francisco County documents and pleadings. True and correct copies of the Summons, Complaint, and other San Francisco County Superior Court documents are attached hereto as **Exhibit 1-A, Exhibit 1-B,** and **Exhibit 1-C,** respectively. To date, Exhibit 1, Exhibit 2, and Exhibit 3 constitute all process, pleadings, and orders received by BDI.

4. Pursuant to 28 U.S.C. § 1446(d), Defendant will, promptly after filing, file a copy of this Notice of Removal with the Clerk of Court of the Superior Court of the State of California in and for the County of San Francisco, and serve the same on Yu and all parties. Proof of Service of the Notice to the Superior Court Clerk of Removal to Federal Court and of the Notice to Plaintiff of Removal to Federal Court will be filed with this Court immediately.

\*    \*    \*

3

**DECLARATION OF CHARLES O. THOMPSON IN SUPPORT OF REMOVAL**

1      Pursuant to the laws of the State of California, I declare under penalty of perjury that the

2 foregoing is true and correct. Executed this 25th day of September 2023, at San Francisco,

3 California.

4

5

6                        */s/ Charles S. Thompson*
                       Charles O. Thompson

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DECLARATION OF CHARLES O. THOMPSON IN SUPPORT OF REMOVAL**

ACTIVE 690488277v1

Ex. 1-A

CHARLES H. JUNG (217909)
(charles@njfirm.com)
JAIME DORENBAUM (289555)
(jaime@njfirm.com)
PAGE R. BARNES (154539)
(page@njfirm.com)
NASSIRI & JUNG LLP
1700 Montgomery Street, Suite 207
San Francisco, California 94111
Telephone: (415) 762-3100
Facsimile: (415) 534-3200

Attorneys for Plaintiff
YINTAO YU

ELECTRONICALLY
**FILED**
*Superior Court of California,*
*County of San Francisco*

**09/05/2023**
**Clerk of the Court**
BY: DAEJA ROGERS
Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE CITY AND COUNTY OF SAN FRANCISCO

| | |
|---|---|
| YINTAO YU, an individual, <br><br> Plaintiff, <br><br> v. <br><br> BYTEDANCE, INC., a Delaware Corporation; SHUYI (SELENE) GAO, an individual, <br><br> Defendants. | Case No. **CGC-23-608845** <br><br> **VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** <br><br> **JURY TRIAL DEMANDED FOR ALL ISSUES TRIABLE BY JURY** |

-1-

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
CASE NO.

YINTAO YU complains and alleges as follows:

## I.    PRELIMINARY STATEMENT OF THE CASE

1.    This case arises out of attempts by ByteDance, Inc. (ByteDance) and Shuyi "Selene" Gao (Gao) to force Plaintiff Yintao Yu (Plaintiff) into arbitration based on a form contract that he never signed.

2.    Plaintiff began working for ByteDance in August 2017. The parties negotiated a *sui generis* employment contract that prohibited ByteDance from terminating Plaintiff for two years without cause and did not include an arbitration provision. On a visit to Beijing, Plaintiff signed his specially negotiated employment contract. ByteDance's representatives told him that he would receive a copy of this contract, but it was never shared with him.

3.    After his employment ended in November 2018, Plaintiff brought claims against ByteDance and Gao, ByteDance's Head of Human Resources.

4.    · ByteDance has repeatedly filed motions to compel Plaintiff into arbitration even though Plaintiff never agreed to arbitration.

## II.    PARTIES

5.    Plaintiff Yu was an employee of ByteDance from approximately August 2017 until his termination in November 2018.  He is a resident of California.

6.    Upon information and belief, Defendant ByteDance is a Delaware corporation, whose principal place of business is San Francisco County, California.  The majority of the Company's executive and administrative functions are performed in California.

7.    Defendant Shuyi "Selene" Gao (Gao) was the head of Human Resources for ByteDance. Upon information and belief, Gao lives in and is a citizen of California.

## III.    JURISDICTION AND VENUE

8.    Venue is proper in this judicial district pursuant to Cal. Civ. Proc. Code § 395(a) and Cal. Gov't Code § 12965.  ByteDance is registered for a business tax certificate with the Office of the Treasurer and Tax Collector, City and County of San Francisco.  ByteDance resides in and

transacts business in the County of San Francisco, and is within the jurisdiction of this Court for the purposes of service of process.

### IV.    FACTUAL ALLEGATIONS

9.    From August 2017 to November 2018, Plaintiff worked as the head of engineering for the U.S. offices of ByteDance. His scope of work encompassed all video apps at ByteDance, including TikTok, Douyin, and Flipagram.

10.    On his first day at ByteDance, on or around August 30, 2017, Plaintiff was shown to a small conference room at ByteDance's Beijing headquarters. Plaintiff was presented with documents to sign, including a *sui generis* supplemental employment agreement that clarified that his employment for the first two years could be terminated by the company only for cause.

11.    Plaintiff read these documents closely. None of the documents signed that day contained an arbitration clause. Plaintiff was previously the founder of a technology company. In that role, he was wary of certain types of arbitration agreements, and was looking for such an agreement. Plaintiff wished to avoid binding arbitration related to his employment with ByteDance.

12.    Plaintiff was puzzled at ByteDance's conduct in signing the documents. Plaintiff was only shown one hard copy of each agreement before signing. After signing, the documents were taken from Plaintiff without returning a copy to him. To date, ByteDance has steadfastly refused to provide Plaintiff with any copy of his supplemental employment agreement despite several requests.

13.    After his employment ended in November 2018, Plaintiff brought claims against ByteDance and Gao.

14.    Plaintiff's current operative complaint against ByteDance and Gao in  Case No. CGC-23-606246 was filed in San Francisco Superior Court on May 12, 2023. After removing the litigation to federal court, ByteDance and Gao immediately filed a motion to compel arbitration – ByteDance's second attempt to force Plaintiff into arbitration.

15.    In support of their motion to compel arbitration, ByteDance and Gao submitted an exhibit with the title "Employee Confidentiality Inventions and Assignment Agreement" (ECIAA), contending that it was evidence Plaintiff agreed to mandatory arbitration. The ECIAA is a form

agreement attached to a declaration from ByteDance employee James Liu (Liu) – a person who was not employed by ByteDance in August 2017 and has no personal knowledge about the creation, formation, execution, or chain-of-custody of the alleged agreement.

16.     Liu's declaration provided no information about what Plaintiff negotiated with ByteDance, who presented what documents to Plaintiff when or how, what either Plaintiff or ByteDance representatives said, or what was done with any documents Plaintiff signed. Liu's declaration merely stated that Plaintiff's "personnel filed included" the ECIAA and speculated without any foundation that Plaintiff entered into the ECIAA "as a condition of his employment."

17.     Having reviewed the ECIAA, Plaintiff is confident that this is not a document he signed and that the arbitration agreement contained on page 11 of the ECIAA was not included in any document that he signed. Plaintiff never signed any document from ByteDance with the title ECIAA, nor did ByteDance ever present any documents titled ECIAA with an arbitration provision to him for signature.

18.     After receiving Plaintiff's opposition to their motion to compel arbitration, ByteDance and Gao argued in their reply (for the first time) that a reference to the ECIAA in a June 2, 2021 tolling agreement was an admission that Plaintiff had agreed to arbitration and that Plaintiff had executed the ECIAA with the arbitration provision. This position is defied by the correspondence between the parties, and the language of the tolling agreement itself. The tolling agreement deferred argument regarding the existence and validity of an agreement to arbitrate, which is why the parties agreed that "This Agreement shall not be used in evidence in any action or proceeding for any purpose other than the enforcement of its terms."

19.     Without hearing their motion to compel arbitration, the federal court granted Plaintiff's motion for remand back to this Court.

20.     Despite the fact that Plaintiff never agreed to arbitrate claims against ByteDance or Gao and despite the suspect nature of the pages put together as the alleged form ECIAA contract with Plaintiff, ByteDance and Gao maintain that they can force Plaintiff into arbitration. Now that Plaintiff's motion to remand has been granted, ByteDance and Gao are expected to file another

1  motion seeking to force Plaintiff into arbitration (ByteDance's third and Gao's second attempt).

2  **CAUSE OF ACTION FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER**

3  **CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 1060**

4  21.  Plaintiff re-alleges and incorporates herein by reference each and every allegation of

5  the preceding paragraphs as though fully set forth herein.

6  22.  Plaintiff is a person who desires a declaration of his rights and duties with respect to

7  the alleged ECIAA with ByteDance, including a determination of whether he executed the form

8  ECIAA proffered by Defendants.

9  23.  An actual controversy relating to the legal rights and duties of the respective parties

10  has arisen and now exists between Plaintiff, ByteDance, and Gao concerning whether Plaintiff

11  executed the form ECIAA agreement proffered by Defendants. Plaintiff contends he did not but

12  Defendants contend that he did and ByteDance has twice filed motions seeking to force Plaintiff into

13  arbitration based on the form ECIAA.

14  24.  Plaintiff seeks a declaration that he did not execute the form ECIAA proffered by

15  Defendants.

16  25.  Plaintiff also seeks an injunction prohibiting ByteDance and Gao from seeking to

17  enforce the form ECIAA against him.

18  **PRAYER FOR RELIEF**

19  WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

20  1.  For a judicial determination that Plaintiff did not execute the form ECIAA;

21  2.  For preliminary and permanent injunctions prohibiting Defendants from seeking to

22      enforce the form ECIAA against Plaintiff;

23  3.  For reasonable attorneys' fees and all costs of suit; and

24  4.  For an award of such other and further relief as the Court deems just and proper.

25  ///

26  ///

27  ///

28

1

**DEMAND FOR JURY TRIAL**

2    Plaintiff hereby demands a jury trial for all issues so triable, including the disputed issue of

3  fact as to whether he executed the form ECIAA.

4

5  DATED: September 5 2023

6                                                    Respectfully submitted,
                                                     NASSIRI & JUNG LLP
7

8                                          By:_____

9

10                                                   Charles H. Jung
                                                     Attorneys for Plaintiff
11                                                   YINTAO YU

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                            -6-

**VERIFICATION**

I, the undersigned, for myself declare:

   I am the Plaintiff in the above-entitled action and have read the Complaint for Declaratory and Injunctive Relief against ByteDance, Inc. and Shui "Selene" Gao and know the contents thereof. I have knowledge of the facts alleged, except as to those matters stated on information and belief, and believe them to be true.

   I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATED: September 5, 2023

By:_____

Plaintiff Yintao Yu

Ex. 1-B



# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Melanie Yuen<br>TikTok Inc.<br>5800 Bristol Pkwy<br>Ste 100<br>Culver City, CA 90230-6697 |
| **Electronic copy provided to:** | Karen Huoth<br>Will Grosswendt<br>Emily Stubbs<br>Kathy PourSanae<br>Curtis Kowalk<br>Nelle Baysden<br>Silvia Elena Beckmanm<br>Bryan Choi<br>Steven Spriggs |

| | |
|---|---|
| **Entity:** | ByteDance Inc.<br>Entity ID Number  4081694 |
| **Entity Served:** | Bytedance, Inc |
| **Title of Action:** | Yintao Yu vs. Bytedance, Inc. |
| **Matter Name/ID:** | Yintao Yu vs. Bytedance, Inc. (14572566) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Others |
| **Court/Agency:** | San Francisco County Superior Court, CA |
| **Case/Reference No:** | CGC-23-608845 |
| **Jurisdiction Served:** | California |
| **Date Served on CSC:** | 09/07/2023 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Nassiri & Jung LLP<br>415-762-3100 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

BYTEDANCE, INC., a Delaware Corporation; SHUYI (SELENE) GAO, an individual

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

YINTAO YU, an individual

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

   You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

   *Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

   *Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* San Francisco County Superior Court<br><br>400 McAllister St., San Francisco, CA 94102 | **CASE NUMBER:**<br>*(Número del Caso):*<br><br>**CGC-23-608845** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Charles H. Jung; 1700 Montgomery St., Ste. 207, San Francisco, CA 94111; (415) 762-3100

| DATE:<br>*(Fecha)* **09/06/2023** | Clerk, by<br>*(Secretario)* **DAEJA ROGERS** | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [X] on behalf of *(specify):* BYTEDANCE, INC., a Delaware Corporation
   under: [X] CCP 416.10 (corporation)          [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)   [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
          [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

Ex. 1-C

## NOTICE TO PLAINTIFF

A Case Management Conference is set for:

|  |  |
|---|---|
| **DATE:** | **FEB 07, 2024** |
| **TIME:** | **10:30 am** |
| **PLACE:** | **Department 610** |
| | **400 McAllister Street** |
| | **San Francisco, CA 94102-3680** |

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference. However, it would facilitate the issuance of a case management order **without an appearance** at the case management conference if the case management statement is filed and served twenty-five days before the case management conference.

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state. **This case is eligible for electronic filing and service per Local Rule 2.11. For more information, please visit the Court's website at www.sfsuperiorcourt.org under Online Services.**

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

## ALTERNATIVE DISPUTE RESOLUTION REQUIREMENTS

**IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE SHOULD PARTICIPATE IN MEDIATION, ARBITRATION, NEUTRAL EVALUATION, AN EARLY SETTLEMENT CONFERENCE, OR OTHER APPROPRIATE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A TRIAL.**

(SEE LOCAL RULE 4)

Plaintiff **must** serve a copy of the Alternative Dispute Resolution (ADR) Information Package on each defendant along with the complaint. (CRC 3.221.) The ADR package may be accessed at www.sfsuperiorcourt.org/divisions/civil/dispute-resolution or you may request a paper copy from the filing clerk. All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the ADR Information Package prior to filing the Case Management Statement.

**Superior Court Alternative Dispute Resolution Administrator**
**400 McAllister Street, Room 103-A**
**San Francisco, CA 94102**
**(415) 551-3869**

**See Local Rules 3.3, 6.0 C and 10 B re stipulation to judge pro tem.**

# Superior Court of California, County of San Francisco
## Alternative Dispute Resolution
## Information Package



> The plaintiff must serve a copy of the ADR Information Package on each defendant along with the complaint. Cross-complainants must serve a copy of the ADR Information Package on any new parties to the action together with the cross-complaint. (CRC 3.221(c).)

## WHAT IS ADR?

Alternative Dispute Resolution (ADR) is the term used to describe the various options available for settling a dispute without a trial. There are many different ADR processes, the most common forms of which are mediation, arbitration and settlement conferences. In ADR, trained, impartial people decide disputes or help parties decide disputes themselves. They can help parties resolve disputes without having to go to trial.

## WHY CHOOSE ADR?

It is the policy of the Superior Court that every long cause, non-criminal, non-juvenile case should participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to trial. (Local Rule 4.)

ADR can have a number of advantages over traditional litigation:

- **ADR can save time.** A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.
- **ADR can save money,** including court costs, attorney fees, and expert fees.
- **ADR encourages participation.** The parties may have more opportunities to tell their story than in court and may have more control over the outcome of the case.
- **ADR is more satisfying.** For all the above reasons, many people participating in ADR have reported a high degree of satisfaction.

<u>**\*\*Electing to participate in an ADR process does not stop the time period to respond to a complaint or cross-complaint\*\***</u>

## WHAT ARE THE ADR OPTIONS?

The San Francisco Superior Court offers different types of ADR processes for general civil matters. The programs are described below:

## 1) MANDATORY SETTLEMENT CONFERENCES

Settlement conferences are appropriate in any case where settlement is an option. The goal of settlement conferences is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of a dispute. Mandatory settlement conferences are ordered by the court and are often held near the date a case is set for trial, although they may be held earlier if appropriate. A party may elect to apply to the Presiding Judge for a specially set mandatory settlement conference by filing an ex parte application. See Local Rule 5.0 for further instructions. Upon approval by the Presiding Judge, the court will schedule the conference and assign a settlement conference officer.

## 2) MEDIATION

Mediation is a voluntary, flexible, and confidential process in which a neutral third party facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement that resolves all or part of a dispute after exploring the interests, needs, and priorities of the parties in light of relevant evidence and the law.

**(A) MEDIATION SERVICES OF THE BAR ASSOCIATION OF SAN FRANCISCO (BASF),** in cooperation with the Superior Court, is designed to help civil litigants resolve disputes before they incur substantial costs in litigation. While it is best to utilize the program at the outset of litigation, parties may use the program at any time while a case is pending. Experienced professional mediators work with parties to arrive at a mutually agreeable solution. The mediators provide one hour of preparation time and the first two hours of mediation time. Mediation time beyond that is charged at the mediator's hourly rate. BASF pre-screens all mediators based upon strict educational and experience requirements. Parties can select their mediator from the panels at www.sfbar.org/mediation or BASF can assist with mediator selection. BASF staff handles conflict checks and full case management. The success rate for the program is 67% and the satisfaction rate is 99%. BASF charges an administrative fee of $295 per party. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Waivers of the fee are available to those who qualify. For more information, call 415-982-1600 or email adr@sfbar.org.

**(B) JUDICIAL MEDIATION PROGRAM** provides mediation with a San Francisco Superior Court judge for civil cases, which include but are not limited to, personal injury, construction defect, employment, professional malpractice, insurance coverage, toxic torts and industrial accidents. Parties may utilize this program at any time throughout the litigation process. Parties interested in judicial mediation should file a Stipulation to Judicial Mediation indicating a joint request for inclusion in the program. A preference for a specific judge may be indicated. The court will coordinate assignment of cases for the program. There is no charge. Information about the Judicial Mediation Program may be found by visiting the ADR page on the court's website: www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

**(C) PRIVATE MEDIATION:** Although not currently a part of the court's ADR program, parties may select any private mediator of their choice. The selection and coordination of private mediation is the responsibility of the parties. Parties may find mediators and organizations on the Internet. The cost of private mediation will vary depending on the mediator selected.

**(D) COMMUNITY BOARDS MEDIATION SERVICES:** Mediation services are offered by Community Boards (CB), a nonprofit resolution center, under the Dispute Resolution Programs Act. CB utilizes a three-person panel mediation process in which mediators work as a team to assist the parties in reaching a shared solution. To the extent possible, mediators are selected to reflect the demographics of the disputants. CB has a success rate of 85% for parties reaching a resolution and a consumer satisfaction rate of 99%. The fee is $45-$100 to open a case, and an hourly rate of $180 for complex cases. Reduction and waiver of the fee are available. For more information, call 415-920-3820 or visit communityboards.org.

## 3) ARBITRATION

An arbitrator is a neutral attorney who presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case.

### (A) JUDICIAL ARBITRATION

When the court orders a case to arbitration it is called "judicial arbitration". The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial. Pursuant to CCP 1141.11, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable·relief, shall be ordered to arbitration. (Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.) An arbitrator is chosen from the court's arbitration panel. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is not binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a trial within 60 days after the arbitrator's award has been filed. Local Rule 4.1 allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate after being assigned to judicial arbitration. There is no cost to the parties for judicial arbitration.

### (B) PRIVATE ARBITRATION

Although not currently a part of the court's ADR program, civil disputes may also be resolved through private arbitration. Here, the parties voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

## HOW DO I PARTICIPATE IN ADR?

Litigants may elect to participate in ADR at any point in a case. General civil cases may voluntarily enter into the court's or court-affiliated ADR programs by any of the following means:

- Filing a Stipulation to ADR: Complete and file the Stipulation form (attached to this packet and available on the court's website); or
- Indicating your ADR preferences on the Case Management Statement (available on the court's website); or
- Contacting the court's ADR Department (see below), the Bar Association of San Francisco's ADR Services, or Community Boards.

**For more information about ADR programs or dispute resolution alternatives, contact:**

Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103-A, San Francisco, CA 94102
415-551-3869
Or, visit the court's ADR page at www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

TO PARTICIPATE IN ANY OF THE COURT'S ADR PROGRAMS, PLEASE COMPLETE AND FILE THE ATTACHED STIPULATION TO ADR AND SUBMIT IT TO THE COURT. YOU MUST ALSO CONTACT BASF OR COMMUNITY BOARDS TO ENROLL IN THEIR LISTED PROGRAMS. THE COURT DOES NOT FORWARD COPIES OF STIPULATIONS TO BASF OR COMMUNITY BOARDS.

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name *and address*) | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.: | |
| ATTORNEY FOR *(Name)*: | |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO<br>400 McAllister Street<br>San Francisco, CA 94102-4514 | |
| PLAINTIFF/PETITIONER: | |
| DEFENDANT/RESPONDENT: | |

| STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION (ADR) | CASE NUMBER: _____<br><br>**DEPARTMENT 610** |
|---|---|

**1)   The parties hereby stipulate that this action shall be submitted to the following ADR process:**

☐   **Mediation Services of the Bar Association of San Francisco (BASF)** - Experienced professional mediators, screened and approved, provide one hour of preparation and the first two hours of mediation time for a BASF administrative fee of $295 per party. Mediation time beyond that is charged at the mediator's hourly rate. Waivers of the administrative fee are available to those who qualify. BASF assists parties with mediator selection, conflicts checks and full case management. www.sfbar.org/mediation

☐   **Mediation Services of Community Boards (CB)** – Service in conjunction with DRPA, CB provides case development and one three-hour mediation session.  Additional sessions may be scheduled. The cost is $45-$100 to open a case, and an hourly rate of $180 for complex cases. Reduction and waiver of the fee are available  to those who qualify. communityboards.org

☐   **Private Mediation** - Mediators and ADR provider organizations charge by the hour or by the day, current market rates. ADR organizations may also charge an administrative fee. Parties may find experienced mediators and organizations on the Internet.

☐   **Judicial Arbitration** - Non-binding arbitration is available to cases in which the amount in controversy is $50,000 or less and no  equitable relief is sought. The court appoints a pre-screened arbitrator who will issue an award. There is no fee for this  program. www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

☐   **Judicial Mediation** - The Judicial Mediation program offers mediation in civil litigation with a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. There is no fee for this program. www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

Judge Requested (see list of Judges currently participating in the program): _____

Date range requested for Judicial Mediation (from the filing of stipulation to Judicial Mediation):

☐ 30-90 days    ☐ 90-120 days    ☐ Other (please specify) _____

☐   **Other ADR process** (describe)_____

**2)   The parties agree that the ADR Process shall be completed by (date):** _____

**3)   Plaintiff(s) and Defendant(s) further agree as follows:**

_____

_____

| | |
|---|---|
| _____<br>Name of Party Stipulating | _____<br>Name of Party Stipulating |
| _____<br>Name of Party or Attorney Executing Stipulation | _____<br>Name of Party or Attorney Executing Stipulation |
| _____<br>Signature of Party or Attorney | _____<br>Signature of Party or Attorney |
| ☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | ☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant |
| Dated: _____ | Dated: _____ |

☐   *Additional signature(s) attached*

ADR-2   10/18                    **STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Charles H. Jung (217909);<br>NASSIRI & JUNG LLP; 1700 Montgomery St., Ste. 207, San Francisco, CA 94111<br><br>TELEPHONE NO.: (415) 762-3100    FAX NO. *(Optional):* (415) 534-3200<br>E-MAIL ADDRESS: charles@njfirm.com<br>ATTORNEY FOR *(Name):* Yintao Yu | **ELECTRONICALLY**<br>**F I L E D**<br>*Superior Court of California,*<br>*County of San Francisco*<br><br>**09/05/2023**<br>**Clerk of the Court**<br>BY: DAEJA ROGERS<br>**Deputy Clerk** |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO**
STREET ADDRESS: 400 McAllister St.
MAILING ADDRESS: 400 McAllister St.
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME: Civic Center Courthouse

CASE NAME:
YINTAO YU v. BYTEDANCE, INC.; SHUYI (SELENE) GAO

| **CIVIL CASE COVER SHEET** | | **Complex Case Designation** | | CASE NUMBER: |
|---|---|---|---|---|
| [X] **Unlimited**<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] **Limited**<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | **CGC-23-608845**<br><br>JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

   **Auto Tort**
   - [ ] Auto (22)
   - [ ] Uninsured motorist (46)

   **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
   - [ ] Asbestos (04)
   - [ ] Product liability (24)
   - [ ] Medical malpractice (45)
   - [ ] Other PI/PD/WD (23)

   **Non-PI/PD/WD (Other) Tort**
   - [ ] Business tort/unfair business practice (07)
   - [ ] Civil rights (08)
   - [ ] Defamation (13)
   - [ ] Fraud (16)
   - [ ] Intellectual property (19)
   - [ ] Professional negligence (25)
   - [ ] Other non-PI/PD/WD tort (35)

   **Employment**
   - [ ] Wrongful termination (36)
   - [ ] Other employment (15)

   **Contract**
   - [ ] Breach of contract/warranty (06)
   - [ ] Rule 3.740 collections (09)
   - [ ] Other collections (09)
   - [ ] Insurance coverage (18)
   - [ ] Other contract (37)

   **Real Property**
   - [ ] Eminent domain/Inverse condemnation (14)
   - [ ] Wrongful eviction (33)
   - [ ] Other real property (26)

   **Unlawful Detainer**
   - [ ] Commercial (31)
   - [ ] Residential (32)
   - [ ] Drugs (38)

   **Judicial Review**
   - [ ] Asset forfeiture (05)
   - [ ] Petition re: arbitration award (11)
   - [ ] Writ of mandate (02)
   - [ ] Other judicial review (39)

   **Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
   - [ ] Antitrust/Trade regulation (03)
   - [ ] Construction defect (10)
   - [ ] Mass tort (40)
   - [ ] Securities litigation (28)
   - [ ] Environmental/Toxic tort (30)
   - [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

   **Enforcement of Judgment**
   - [ ] Enforcement of judgment (20)

   **Miscellaneous Civil Complaint**
   - [ ] RICO (27)
   - [X] Other complaint *(not specified above)* (42)

   **Miscellaneous Civil Petition**
   - [ ] Partnership and corporate governance (21)
   - [ ] Other petition *(not specified above)* (43)

2. This case [X] is   [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [X] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [X] Substantial amount of documentary evidence
   d. [X] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [X] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [ ] monetary b. [X] nonmonetary; declaratory or injunctive relief c. [ ] punitive
4. Number of causes of action *(specify):* 1
5. This case [ ] is [X] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: September 5, 2023

Charles H. Jung
_____
(TYPE OR PRINT NAME)                                      (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. September 1, 2021]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
*www.courts.ca.gov*

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

**CIVIL CASE COVER SHEET**

# Exhibit 2

1   CHARLES THOMPSON, State Bar No. 139841
     charles.thompson@gtlaw.com
2   DAVID BLOCH, State Bar No. 184530
     david.bloch@gtlaw.com
3   MELISSA KENDRA, State Bar No. 291905
     melissa.kendra@gtlaw.com
4   ANTHONY E. GUZMAN II, State Bar No. 311580
     guzmanan@gtlaw.com
5   GREENBERG TRAURIG, LLP
6   101 Second Street, Suite 2200
7   San Francisco, California 94105
    Telephone: 415.655.1300
8   Facsimile: 415.707.2010

9   Attorneys for Defendant
    BYTEDANCE INC.
10

11  DEMERY RYAN, State Bar No. 217176
     dryan@littler.com
12  DAVID S. MAOZ, State Bar No. 233857
     dmaoz@littler.com
    LITTLER MENDELSON, P.C.
13  2049 Century Park East, 5th Floor
    Los Angeles, California  90067
14  Telephone: 310.553.0308
15  Facsimile: 800.715.1330

16  Attorneys for Defendant
    SHUYI (SELENE) GAO
17  [*Additional Counsel on Next Page*]

18              THE UNITED STATES DISTRICT COURT

19            FOR THE NORTHERN DISTRICT OF CALIFORNIA

20
    YINTAO YU, an individual,                  Case No.
21
            Plaintiff                          **DECLARATION OF DEMERY RYAN
22                                             IN SUPPORT OF NOTICE AND
            v.                                 PETITION FOR REMOVAL**
23
    BYTEDANCE INC., a Delaware Corporation;    [Originally San Francisco Superior Court
24  SHUYI (SELENE) GAO, an individual,         No. CGC-23-608845]

25          Defendants.                        State Action filed:  September 5, 2023
26                                             Removal Date:        September 25, 2023
                                               Trial Date:          None
27

28

                                        1
    DECLARATION OF DEMERY RYAN IN SUPPORT OF REMOVAL

## **ADDITIONAL COUNSEL**

GREGORY ISKANDER, State Bar No. 200215
  giskander@littler.com
LITTLER MENDELSON, P.C.
Treat Towers 1255 Treat Boulevard, Suite 600
Walnut Creek, California 94597
Telephone: 925.932.2468
Facsimile: 925.946.9809

Attorneys for Defendant
SHUYI (SELENE) GAO

DECLARATION OF DEMERY RYAN IN SUPPORT OF REMOVAL

ACTIVE 690488304v1

I, DEMERY RYAN, declare the following:

1.     I am a Shareholder of Littler Mendelson P.C., counsel for Defendant SHUYI (SELENE) GAO in this matter. I am over the age of 18-year-old, licensed to practice law in the State of California, competent to testify on the matters set forth herein, and would so testify if called on to do so. The statements herein are based upon my own personal knowledge.

2.     On September 5, 2023, Plaintiff Yintao Yu (Yu) commenced this action in the San Francisco Superior Court, entitled *Yintao Yu v. ByteDance, Inc. & Selene Gao,* Case No. CGC-23-608845 (hereinafter the "Complaint"). The Complaint seeks a judicial determination that Yu did not enter into the Employee Confidentiality Inventions and Assignment Agreement ("ECIAA") that purports to bear his wet signature and an order enjoining Defendants from seeking to enforce the ECIAA's arbitration provision requiring Yu to arbitrate "any dispute, controversy, or claim arising out of or relating to or resulting from [Yu's] employment with [ByteDance Inc.], including any alleged violation of statute, common law or public policy." These issues have not reached trial in any state court proceeding.

3.     On September 10, 2023, Defendant was served with the Summons, Complaint, as well as other enclosed San Francisco County documents and pleadings. True and correct copies of the Summons, Complaint, and other San Francisco County Superior Court documents are attached hereto as **Exhibit 2-A, Exhibit 2-B,** and **Exhibit 2-C,** respectively. To date, Exhibit 1, Exhibit 2, and Exhibit 3 constitute all process, pleadings, and orders received by Defendant.

4.     Pursuant to 28 U.S.C. § 1446(d), Defendant ByteDance Inc. will, promptly after filing, file a copy of this Notice of Removal with the Clerk of Court of the Superior Court of the State of California in and for the County of San Francisco, and serve the same on Yu and all parties. Proof of Service of the Notice to the Superior Court Clerk of Removal to Federal Court and of the Notice to Plaintiff of Removal to Federal Court will be filed with this Court immediately.

*     *     *

Pursuant to the laws of the State of California, I declare under penalty of perjury that the

3

DECLARATION OF DEMERY RYAN IN SUPPORT OF REMOVAL

foregoing is true and correct. Executed this 25th day of September 2023, at Los Angeles, California.

/s/ Demery Ryan
Demery Ryan

**DECLARATION OF DEMERY RYAN IN SUPPORT OF REMOVAL**

ACTIVE 690488304v1

Ex. 2-A

CHARLES H. JUNG (217909)
(charles@njfirm.com)
JAIME DORENBAUM (289555)
(jaime@njfirm.com)
PAGE R. BARNES (154539)
(page@njfirm.com)
NASSIRI & JUNG LLP
1700 Montgomery Street, Suite 207
San Francisco, California 94111
Telephone: (415) 762-3100
Facsimile: (415) 534-3200

Attorneys for Plaintiff
YINTAO YU

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**09/05/2023**
**Clerk of the Court**
BY: DAEJA ROGERS
Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE CITY AND COUNTY OF SAN FRANCISCO

| | |
|---|---|
| YINTAO YU, an individual,<br><br>              Plaintiff,<br><br>      v.<br><br>BYTEDANCE, INC., a Delaware Corporation; SHUYI (SELENE) GAO, an individual,<br><br>              Defendants. | Case No. **CGC-23-608845**<br><br>**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**JURY TRIAL DEMANDED FOR ALL ISSUES TRIABLE BY JURY** |

-1-

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
CASE NO.

YINTAO YU complains and alleges as follows:

## I. PRELIMINARY STATEMENT OF THE CASE

1. This case arises out of attempts by ByteDance, Inc. (ByteDance) and Shuyi "Selene" Gao (Gao) to force Plaintiff Yintao Yu (Plaintiff) into arbitration based on a form contract that he never signed.

2. Plaintiff began working for ByteDance in August 2017. The parties negotiated a *sui generis* employment contract that prohibited ByteDance from terminating Plaintiff for two years without cause and did not include an arbitration provision. On a visit to Beijing, Plaintiff signed his specially negotiated employment contract. ByteDance's representatives told him that he would receive a copy of this contract, but it was never shared with him.

3. After his employment ended in November 2018, Plaintiff brought claims against ByteDance and Gao, ByteDance's Head of Human Resources.

4. ByteDance has repeatedly filed motions to compel Plaintiff into arbitration even though Plaintiff never agreed to arbitration.

## II. PARTIES

5. Plaintiff Yu was an employee of ByteDance from approximately August 2017 until his termination in November 2018. He is a resident of California.

6. Upon information and belief, Defendant ByteDance is a Delaware corporation, whose principal place of business is San Francisco County, California. The majority of the Company's executive and administrative functions are performed in California.

7. Defendant Shuyi "Selene" Gao (Gao) was the head of Human Resources for ByteDance. Upon information and belief, Gao lives in and is a citizen of California.

## III. JURISDICTION AND VENUE

8. Venue is proper in this judicial district pursuant to Cal. Civ. Proc. Code § 395(a) and Cal. Gov't Code § 12965. ByteDance is registered for a business tax certificate with the Office of the Treasurer and Tax Collector, City and County of San Francisco. ByteDance resides in and

transacts business in the County of San Francisco, and is within the jurisdiction of this Court for the purposes of service of process.

## IV.    FACTUAL ALLEGATIONS

9.      From August 2017 to November 2018, Plaintiff worked as the head of engineering for the U.S. offices of ByteDance. His scope of work encompassed all video apps at ByteDance, including TikTok, Douyin, and Flipagram.

10.     On his first day at ByteDance, on or around August 30, 2017, Plaintiff was shown to a small conference room at ByteDance's Beijing headquarters. Plaintiff was presented with documents to sign, including a *sui generis* supplemental employment agreement that clarified that his employment for the first two years could be terminated by the company only for cause.

11.     Plaintiff read these documents closely. None of the documents signed that day contained an arbitration clause. Plaintiff was previously the founder of a technology company. In that role, he was wary of certain types of arbitration agreements, and was looking for such an agreement. Plaintiff wished to avoid binding arbitration related to his employment with ByteDance.

12.     Plaintiff was puzzled at ByteDance's conduct in signing the documents. Plaintiff was only shown one hard copy of each agreement before signing. After signing, the documents were taken from Plaintiff without returning a copy to him. To date, ByteDance has steadfastly refused to provide Plaintiff with any copy of his supplemental employment agreement despite several requests.

13.     After his employment ended in November 2018, Plaintiff brought claims against ByteDance and Gao.

14.     Plaintiff's current operative complaint against ByteDance and Gao in  Case No. CGC-23-606246 was filed in San Francisco Superior Court on May 12, 2023. After removing the litigation to federal court, ByteDance and Gao immediately filed a motion to compel arbitration – ByteDance's second attempt to force Plaintiff into arbitration.

15.     In support of their motion to compel arbitration, ByteDance and Gao submitted an exhibit with the title "Employee Confidentiality Inventions and Assignment Agreement" (ECIAA), contending that it was evidence Plaintiff agreed to mandatory arbitration. The ECIAA is a form

agreement attached to a declaration from ByteDance employee James Liu (Liu) – a person who was not employed by ByteDance in August 2017 and has no personal knowledge about the creation, formation, execution, or chain-of-custody of the alleged agreement.

16. Liu's declaration provided no information about what Plaintiff negotiated with ByteDance, who presented what documents to Plaintiff when or how, what either Plaintiff or ByteDance representatives said, or what was done with any documents Plaintiff signed. Liu's declaration merely stated that Plaintiff's "personnel filed included" the ECIAA and speculated without any foundation that Plaintiff entered into the ECIAA "as a condition of his employment."

17. Having reviewed the ECIAA, Plaintiff is confident that this is not a document he signed and that the arbitration agreement contained on page 11 of the ECIAA was not included in any document that he signed. Plaintiff never signed any document from ByteDance with the title ECIAA, nor did ByteDance ever present any documents titled ECIAA with an arbitration provision to him for signature.

18. After receiving Plaintiff's opposition to their motion to compel arbitration, ByteDance and Gao argued in their reply (for the first time) that a reference to the ECIAA in a June 2, 2021 tolling agreement was an admission that Plaintiff had agreed to arbitration and that Plaintiff had executed the ECIAA with the arbitration provision. This position is defied by the correspondence between the parties, and the language of the tolling agreement itself. The tolling agreement deferred argument regarding the existence and validity of an agreement to arbitrate, which is why the parties agreed that "This Agreement shall not be used in evidence in any action or proceeding for any purpose other than the enforcement of its terms."

19. Without hearing their motion to compel arbitration, the federal court granted Plaintiff's motion for remand back to this Court.

20. Despite the fact that Plaintiff never agreed to arbitrate claims against ByteDance or Gao and despite the suspect nature of the pages put together as the alleged form ECIAA contract with Plaintiff, ByteDance and Gao maintain that they can force Plaintiff into arbitration. Now that Plaintiff's motion to remand has been granted, ByteDance and Gao are expected to file another

-4-

1  motion seeking to force Plaintiff into arbitration (ByteDance's third and Gao's second attempt).

2  **CAUSE OF ACTION FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER**

3  **CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 1060**

4  21.    Plaintiff re-alleges and incorporates herein by reference each and every allegation of

5  the preceding paragraphs as though fully set forth herein.

6  22.    Plaintiff is a person who desires a declaration of his rights and duties with respect to

7  the alleged ECIAA with ByteDance, including a determination of whether he executed the form

8  ECIAA proffered by Defendants.

9  23.    An actual controversy relating to the legal rights and duties of the respective parties

10  has arisen and now exists between Plaintiff, ByteDance, and Gao concerning whether Plaintiff

11  executed the form ECIAA agreement proffered by Defendants. Plaintiff contends he did not but

12  Defendants contend that he did and ByteDance has twice filed motions seeking to force Plaintiff into

13  arbitration based on the form ECIAA.

14  24.    Plaintiff seeks a declaration that he did not execute the form ECIAA proffered by

15  Defendants.

16  25.    Plaintiff also seeks an injunction prohibiting ByteDance and Gao from seeking to

17  enforce the form ECIAA against him.

18  **PRAYER FOR RELIEF**

19  WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

20  1.  For a judicial determination that Plaintiff did not execute the form ECIAA;

21  2.  For preliminary and permanent injunctions prohibiting Defendants from seeking to

22  enforce the form ECIAA against Plaintiff;

23  3.  For reasonable attorneys' fees and all costs of suit; and

24  4.  For an award of such other and further relief as the Court deems just and proper.

25  ///

26  ///

27  ///

28

-5-

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all issues so triable, including the disputed issue of fact as to whether he executed the form ECIAA.

DATED: September 5 2023

Respectfully submitted,
NASSIRI & JUNG LLP

By:_____

Charles H. Jung
Attorneys for Plaintiff
YINTAO YU

## VERIFICATION

I, the undersigned, for myself declare:

I am the Plaintiff in the above-entitled action and have read the Complaint for Declaratory and Injunctive Relief against ByteDance, Inc. and Shui "Selene" Gao and know the contents thereof. I have knowledge of the facts alleged, except as to those matters stated on information and belief, and believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATED: September 5, 2023

By: _____

Plaintiff Yintao Yu

Ex. 2-B

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
BYTEDANCE, INC., a Delaware Corporation; SHUYI (SELENE) GAO, an individual

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
YINTAO YU, an individual

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is: *(El nombre y dirección de la corte es):* San Francisco County Superior Court <br><br> 400 McAllister St., San Francisco, CA 94102 | **CASE NUMBER:** *(Número del Caso):* <br><br> **CGC-23-608845** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Charles H. Jung; 1700 Montgomery St., Ste. 207, San Francisco, CA 94111; (415) 762-3100

| DATE: *(Fecha)* 09/06/2023 | Clerk, by *(Secretario)* **DAEJA ROGERS** | , Deputy *(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☑ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)      ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*

4. ☐ by personal delivery on *(date):*

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Page 1 of 1

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

Ex. 2-C

## NOTICE TO PLAINTIFF

A Case Management Conference is set for:

| | |
|---|---|
| **DATE:** | **FEB 07, 2024** |
| **TIME:** | **10:30 am** |
| **PLACE:** | **Department 610** |
| | **400 McAllister Street** |
| | **San Francisco, CA 94102-3680** |

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference. However, it would facilitate the issuance of a case management order **without an appearance** at the case management conference if the case management statement is filed and served twenty-five days before the case management conference.

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state. **This case is eligible for electronic filing and service per Local Rule 2.11. For more information, please visit the Court's website at www.sfsuperiorcourt.org under Online Services.**

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

## ALTERNATIVE DISPUTE RESOLUTION REQUIREMENTS

**IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE SHOULD PARTICIPATE IN MEDIATION, ARBITRATION, NEUTRAL EVALUATION, AN EARLY SETTLEMENT CONFERENCE, OR OTHER APPROPRIATE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A TRIAL.**

(SEE LOCAL RULE 4)

Plaintiff **must** serve a copy of the Alternative Dispute Resolution (ADR) Information Package on each defendant along with the complaint. (CRC 3.221.) The ADR package may be accessed at www.sfsuperiorcourt.org/divisions/civil/dispute-resolution or you may request a paper copy from the filing clerk. All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the ADR Information Package prior to filing the Case Management Statement.

**Superior Court Alternative Dispute Resolution Administrator**
**400 McAllister Street, Room 103-A**
**San Francisco, CA 94102**
**(415) 551-3869**

**See Local Rules 3.3, 6.0 C and 10 B re stipulation to judge pro tem.**

# Superior Court of California, County of San Francisco
## Alternative Dispute Resolution
## Information Package



> The plaintiff must serve a copy of the ADR Information Package on each defendant along with the complaint. Cross-complainants must serve a copy of the ADR Information Package on any new parties to the action together with the cross-complaint. (CRC 3.221(c).)

## WHAT IS ADR?

Alternative Dispute Resolution (ADR) is the term used to describe the various options available for settling a dispute without a trial. There are many different ADR processes, the most common forms of which are mediation, arbitration and settlement conferences. In ADR, trained, impartial people decide disputes or help parties decide disputes themselves. They can help parties resolve disputes without having to go to trial.

## WHY CHOOSE ADR?

It is the policy of the Superior Court that every long cause, non-criminal, non-juvenile case should participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to trial. (Local Rule 4.)

ADR can have a number of advantages over traditional litigation:

- **ADR can save time.** A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.
- **ADR can save money,** including court costs, attorney fees, and expert fees.
- **ADR encourages participation.** The parties may have more opportunities to tell their story than in court and may have more control over the outcome of the case.
- **ADR is more satisfying.** For all the above reasons, many people participating in ADR have reported a high degree of satisfaction.

**\*\*Electing to participate in an ADR process does not stop the time period to respond to a complaint or cross-complaint\*\***

## WHAT ARE THE ADR OPTIONS?

The San Francisco Superior Court offers different types of ADR processes for general civil matters. The programs are described below:

## 1) MANDATORY SETTLEMENT CONFERENCES

Settlement conferences are appropriate in any case where settlement is an option. The goal of settlement conferences is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of a dispute. Mandatory settlement conferences are ordered by the court and are often held near the date a case is set for trial, although they may be held earlier if appropriate. A party may elect to apply to the Presiding Judge for a specially set mandatory settlement conference by filing an ex parte application. See Local Rule 5.0 for further instructions. Upon approval by the Presiding Judge, the court will schedule the conference and assign a settlement conference officer.

## 2) MEDIATION

Mediation is a voluntary, flexible, and confidential process in which a neutral third party facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement that resolves all or part of a dispute after exploring the interests, needs, and priorities of the parties in light of relevant evidence and the law.

**(A) MEDIATION SERVICES OF THE BAR ASSOCIATION OF SAN FRANCISCO (BASF),** in cooperation with the Superior Court, is designed to help civil litigants resolve disputes before they incur substantial costs in litigation. While it is best to utilize the program at the outset of litigation, parties may use the program at any time while a case is pending. Experienced professional mediators work with parties to arrive at a mutually agreeable solution. The mediators provide one hour of preparation time and the first two hours of mediation time. Mediation time beyond that is charged at the mediator's hourly rate. BASF pre-screens all mediators based upon strict educational and experience requirements. Parties can select their mediator from the panels at www.sfbar.org/mediation or BASF can assist with mediator selection. BASF staff handles conflict checks and full case management. The success rate for the program is 67% and the satisfaction rate is 99%. BASF charges an administrative fee of $295 per party. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Waivers of the fee are available to those who qualify. For more information, call 415-982-1600 or email adr@sfbar.org.

**(B) JUDICIAL MEDIATION PROGRAM** provides mediation with a San Francisco Superior Court judge for civil cases, which include but are not limited to, personal injury, construction defect, employment, professional malpractice, insurance coverage, toxic torts and industrial accidents. Parties may utilize this program at any time throughout the litigation process. Parties interested in judicial mediation should file a Stipulation to Judicial Mediation indicating a joint request for inclusion in the program. A preference for a specific judge may be indicated. The court will coordinate assignment of cases for the program. There is no charge. Information about the Judicial Mediation Program may be found by visiting the ADR page on the court's website: www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

**(C) PRIVATE MEDIATION:** Although not currently a part of the court's ADR program, parties may select any private mediator of their choice. The selection and coordination of private mediation is the responsibility of the parties. Parties may find mediators and organizations on the Internet. The cost of private mediation will vary depending on the mediator selected.

**(D) COMMUNITY BOARDS MEDIATION SERVICES:** Mediation services are offered by Community Boards (CB), a nonprofit resolution center, under the Dispute Resolution Programs Act. CB utilizes a three-person panel mediation process in which mediators work as a team to assist the parties in reaching a shared solution. To the extent possible, mediators are selected to reflect the demographics of the disputants. CB has a success rate of 85% for parties reaching a resolution and a consumer satisfaction rate of 99%. The fee is $45-$100 to open a case, and an hourly rate of $180 for complex cases. Reduction and waiver of the fee are available. For more information, call 415-920-3820 or visit communityboards.org.

### 3) ARBITRATION

An arbitrator is a neutral attorney who presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case.

#### (A) JUDICIAL ARBITRATION

When the court orders a case to arbitration it is called "judicial arbitration". The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial. Pursuant to CCP 1141.11, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable·relief, shall be ordered to arbitration. (Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.) An arbitrator is chosen from the court's arbitration panel. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is not binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a trial within 60 days after the arbitrator's award has been filed. Local Rule 4.1 allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate after being assigned to judicial arbitration. There is no cost to the parties for judicial arbitration.

#### (B) PRIVATE ARBITRATION

Although not currently a part of the court's ADR program, civil disputes may also be resolved through private arbitration. Here, the parties voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

### HOW DO I PARTICIPATE IN ADR?

Litigants may elect to participate in ADR at any point in a case. General civil cases may voluntarily enter into the court's or court-affiliated ADR programs by any of the following means:

- Filing a Stipulation to ADR: Complete and file the Stipulation form (attached to this packet and available on the court's website); or
- Indicating your ADR preferences on the Case Management Statement (available on the court's website); or
- Contacting the court's ADR Department (see below), the Bar Association of San Francisco's ADR Services, or Community Boards.

**For more information about ADR programs or dispute resolution alternatives, contact:**

Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103-A, San Francisco, CA 94102
415-551-3869
Or, visit the court's ADR page at www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

TO PARTICIPATE IN ANY OF THE COURT'S ADR PROGRAMS, PLEASE COMPLETE AND FILE THE ATTACHED STIPULATION TO ADR AND SUBMIT IT TO THE COURT. YOU MUST ALSO CONTACT BASF OR COMMUNITY BOARDS TO ENROLL IN THEIR LISTED PROGRAMS. THE COURT DOES NOT FORWARD COPIES OF STIPULATIONS TO BASF OR COMMUNITY BOARDS.

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name *and address*)

TELEPHONE NO.:

ATTORNEY FOR *(Name)*:

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO
400 McAllister Street
San Francisco, CA 94102-4514

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION (ADR) | CASE NUMBER: _____ |
| | **DEPARTMENT 610** |

1) **The parties hereby stipulate that this action shall be submitted to the following ADR process:**

☐ **Mediation Services of the Bar Association of San Francisco (BASF)** - Experienced professional mediators, screened and approved, provide one hour of preparation and the first two hours of mediation time for a BASF administrative fee of $295 per party. Mediation time beyond that is charged at the mediator's hourly rate. Waivers of the administrative fee are available to those who qualify. BASF assists parties with mediator selection, conflicts checks and full case management. www.sfbar.org/mediation

☐ **Mediation Services of Community Boards (CB)** – Service in conjunction with DRPA, CB provides case development and one three-hour mediation session. Additional sessions may be scheduled. The cost is $45-$100 to open a case, and an hourly rate of $180 for complex cases. Reduction and waiver of the fee are available to those who qualify. communityboards.org

☐ **Private Mediation** - Mediators and ADR provider organizations charge by the hour or by the day, current market rates. ADR organizations may also charge an administrative fee. Parties may find experienced mediators and organizations on the Internet.

☐ **Judicial Arbitration** - Non-binding arbitration is available to cases in which the amount in controversy is $50,000 or less and no equitable relief is sought. The court appoints a pre-screened arbitrator who will issue an award. There is no fee for this program. www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

☐ **Judicial Mediation** - The Judicial Mediation program offers mediation in civil litigation with a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. There is no fee for this program. www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

Judge Requested (see list of Judges currently participating in the program): _____

Date range requested for Judicial Mediation (from the filing of stipulation to Judicial Mediation):

☐ 30-90 days  ☐ 90-120 days  ☐ Other (please specify) _____

☐ **Other ADR process** (describe) _____

2) **The parties agree that the ADR Process shall be completed by (date):** _____
3) **Plaintiff(s) and Defendant(s) further agree as follows:**

_____

_____

Name of Party Stipulating                    Name of Party Stipulating

_____

Name of Party or Attorney Executing Stipulation     Name of Party or Attorney Executing Stipulation

_____

Signature of Party or Attorney                Signature of Party or Attorney

☐ Plaintiff ☐ Defendant ☐ Cross-defendant    ☐ Plaintiff ☐ Defendant ☐ Cross-defendant

Dated: _____                       Dated: _____

☐ *Additional signature(s) attached*

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Charles H. Jung (217909);<br>NASSIRI & JUNG LLP; 1700 Montgomery St., Ste. 207, San Francisco, CA 94111 | |

TELEPHONE NO.: (415) 762-3100   FAX NO. *(Optional):* (415) 534-3200
E-MAIL ADDRESS: charles@njfirm.com
ATTORNEY FOR *(Name):* Yintao Yu

**ELECTRONICALLY**
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**09/05/2023**
**Clerk of the Court**
BY: DAEJA ROGERS
**Deputy Clerk**

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SAN FRANCISCO
STREET ADDRESS: 400 McAllister St.
MAILING ADDRESS: 400 McAllister St.
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME: Civic Center Courthouse

CASE NAME:
YINTAO YU v. BYTEDANCE, INC.; SHUYI (SELENE) GAO

| **CIVIL CASE COVER SHEET** | | **Complex Case Designation** | CASE NUMBER: |
|---|---|---|---|
| [X] **Unlimited** (Amount demanded exceeds $25,000) | [ ] **Limited** (Amount demanded is $25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | **CGC-23-608845** |
| | | | JUDGE: |
| | | | DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[X] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [X] is   [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [X] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [X] Substantial amount of documentary evidence
   d. [X] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [X] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [ ] monetary  b. [X] nonmonetary; declaratory or injunctive relief  c. [ ] punitive

4. Number of causes of action *(specify):* 1

5. This case [ ] is  [X] is not  a class action suit.

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: September 5, 2023

Charles H. Jung
_____
(TYPE OR PRINT NAME)                     ▶            (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev.September 1, 2021] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courts.ca.gov* |
|---|---|---|

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

Ex. 3

# Bytedance Inc.

Room 137, 68 Willow Road
Menlo Park, CA 94025

June 7, 2017

Dear Mr. Roger Yu,

Thank you for your interest in Bytedance! Bytedance (the "Company") is delighted to offer you a full-time position. We believe your expertise skills, and experience will be among our most valuable assets. This offer letter (the "Agreement") confirms the terms of your employment with the Company, including the terms as follows:

1. **Salary**
    a. Your base salary will be <u>$13,333.33</u> USD per month, payable in accordance with the Company's standard payroll practice, subject to applicable United States government required deductions and withholding taxes. Because your position is the exempt employee, your duties may necessitate working overtime for no additional compensation from the Company or its subsidiaries. Your performance and salary will be reviewed periodically by the management team.

2. **Benefits**
    a. As an employee of the Company, you will be offered a number of Company-paid benefits in the United States including the following:
        i. Medical insurance
        ii. Dental Insurance
        iii. Vision Insurance
        iv. 401K
    b. When the insurances and 401K can be enrolled In and activated, the Company will cover the employee part of your medical, dental, and vision insurance premiums. Other parts of the medical, dental, and vision insurance premiums will be covered by yourself, depending on the insurance plan.
    c. Based on your attendance, $35 for three meals per working day will be offered. However, if you take any sick leave or vacation, it will not be applied for those specific days.
    d. If you are to travel for business, full travel insurance can be reimbursed by the Company.
    e. All the benefits are at the sole discretion of the Company, and can be adjusted anytime based on the performance of the Company.

3. **Vacation, Holidays, and Sick Days**

Bates000015

a. Vacation / PTO: You will be offered a total of 10 paid time off days per yearly anniversary from your Start Date. Each vacation day will accumulate at a rate of 1 day per month. You can aggregate up to a maximum of 10 vacation days over time.
b. Holidays: The Company, for its US employees allows employees to have the following statutory holidays as paid holiday vacation.
    i. American Holidays
        1. New Year's Day, one day off, on the 1st of January
        2. Martin Luther King Jr. Day, one day off, on the third Monday in January
        3. President's Day, one day off, on the third Monday in February
        4. Memorial Day, one day off, on the last Monday in May
        5. Independence Day, one day off, on the 4th of July
        6. Labor Day, one day off, on the first Monday in September
        7. Columbus Day, one day off, on the second Monday in October
        8. Thanksgiving Day, one day off, on the fourth Thursday in November
        9. Christmas Day, one day off, on the 25th of December
c. Sick Days: You will receive a total of 4 sick days per half year, immediately available upon the commencement of your employment.
d. All the Vacation, Holidays, and Sick Days are at the sole discretion of the Company, and can be adjusted anytime based on the performance of the Company.

4. **Travel**
    a. Your role at the Company will require that you travel for work-related duties and business. Your travel expenses which include lodging and transportation will be reimbursed by providing the related bills and invoices.

5. **Bonus Target**
    a. You are eligible to participate in the Company bonus target plan. Your annual bonus target will range from 0-6 months of your monthly salary. The exact bonus amount is at the sole discretion of the Company, based on your performance and the performance of the Company. The components of your bonus are subject to periodic review. The annual performance bonus evaluation and payment will occur at every April regardless of your Start Date.

6. Payment for acquisition

    a. Amount of $ 600,000 USD will be paid within 30 days since the offer was signed.

7. Stock Option

    a. Upon approval by our Board of Directors, you will be granted 220,000 shares of Bytedance ordinary share option. The stock option offered will vest in the following schedule starting from your Start Date, and is only offered upon the condition of your continued employment with the Company.

        i. 15% on the one-year anniversary date of your Start Date, and
        ii. 25% on the second year anniversary of your Start Date, and
        iii. 25% on the third year anniversary of your Start Date, and
        iv. 35% on the fourth year anniversary date of your Start Date.

The exercise price of the stock will be $0.02 per share, further details on the stock option will be available to you in two months since your start date. Please be aware that this program and subsequent processes could be changed at any time, at the discretion of the Board.

**8. Background Check**

    a.   This offer is contingent on the successful completion of a background check.

**9. At-Will Employment**

    a . If you accept our offer of employment, you will be an employee-at-will, meaning that either you or the Company may terminate our relationship and this Agreement at any time for any reason, with or without cause.

**10. Confidential Information**

    a.   During your employment, you may have access to confidential, proprietary, and/or trade secret information belonging to the Company. You agree that you will keep all of this information strictly confidential and refrain from using it for your own purposes or from disclosing it to anyone outside the Company.

**11. Return of Property and Documents**

    a.   You agree that, upon conclusion of the employment, you will immediately return to the Company all of its property, equipment, and documents, including electronically stored information.

**12. Employment Eligibility**

    a.   To comply with immigration laws, you must provide the Company with documentation of your identity and eligibility for employment in the United States; please bring such documentation on your first day of hire. In addition, if you are working in the United States pursuant to a US visa status, please provide new or renewed evidence of your eligibility for employment before the expiration of your initial work authorization.

In addition, by accepting this offer, you agree that you will follow all of the Company's policies that apply to full-time employees.

This letter constitutes the complete understanding between you and the Company regarding your employment and supersedes all prior discussions or agreements. This letter may only be modified by a written agreement signed by both of us.

Bates000017

This offer will remain open for **3** (three) business days following your receipt of this letter. To indicate your acceptance of Bytedance's offer, you will sign and date this Agreement. The offer will not be effective until the Company countersigns the Agreement.

Roger, we are very excited about the possibility of you joining us. Please let us know if we can answer any questions for you about any of the matters outlined in this official offer letter.

Sincerely,

*Jinmei Xiao*

Jinmei Xiao
Director of Human Resources
Bytedance Inc.

06/07/2017

I, *Roger Yu* , accept employment with Bytedance Inc. under the terms set forth in this letter.

*Roger Yu*

Signature

Yintao Roger Yu

06/07/2017

Date

(mm/dd/yyyy)

Bates000018

# Ex. 4

## STATEMENT REGARDING EMPLOYEE CONFIDENTIALITY AND INVENTIONS ASSIGNMENT AGREEMENT

Attached to this statement is your Employee Confidentiality and Inventions Assignment Agreement (the "Agreement").

Please take the time to review the Agreement carefully. It contains material restrictions on your right to disclose or use, during or after your employment, certain information and technology learned by you during your employment.

[Bytedance Inc.] considers this Agreement to be very important to the protection of its business. It intends to enforce the terms of the Agreement and to pursue, appropriate, injunctions, restraining orders, and money damages, should you violate the Agreement.

It is a condition of your employment and certain payments and benefits to be provided to you by [Bytedance Inc.] and its affiliates that you execute this Agreement.

If you have any questions concerning this Agreement, you may wish to consult an attorney. The employees and agents of [Bytedance Inc.] and its affiliates are not authorized to, and will not, give you legal advice concerning this Agreement.

If you have read and understand the Agreement, and if you agree to its terms and conditions, please return a fully executed copy, retaining one copy for yourself.

**EMPLOYEE CONFIDENTIALITY AND INVENTIONS ASSIGNMENT AGREEMENT**

This Employee Confidentiality and Inventions Assignment Agreement (the "Agreement") is entered into as of [August 30th, 2017] (the "Effective Date"), by and between [Bytedance Inc.] and its affiliates (collectively, "Employer") and [Yintao Yu] ("Employee").

As a condition of Employee's employment and certain payments and benefits to be provided to Employee by Employer, which Employee acknowledges to be good and valuable consideration for Employee's obligations hereunder, Employer and Employee hereby agree as follows:

1.    **Confidentiality.**

      A.    **Definitions.**

            1.    "Confidential Information" includes materials and information of and relating to Employer or its business, regardless of (i) whether marked as "confidential" or "proprietary," (ii) whether or not patentable, copyrightable, or registrable under any intellectual property laws or industrial property laws in the United States or elsewhere, and (iii) whether generated by Employer or its employees, consultants or agents or received by Employer from third parties such as clients/customers, suppliers, licensors, licensees, partners and collaborators of Employer.

                  Confidential Information shall include information of a technical nature such as software, source code, trade secrets, processes, designs, methodologies, technology, know-how, algorithms, data, ideas, analytic insights, techniques, discoveries and inventions, as well as terms of agreements (including, without limitation, the terms of this Agreement), transactions and pending negotiations for transactions, financial information, client/customer and supplier information, marketing and product development plans, forecasts, and other information concerning Employer's or its clients'/customers' actual or anticipated products or services, business, research or development, or any information which is received in confidence by or for Employer from any other person.

                  Employee understands that the foregoing is not an exhaustive list, and that Confidential Information also includes other information that is marked or otherwise identified as "confidential" or "proprietary," or that would otherwise appear to a reasonable person to be confidential or proprietary in the context and circumstances in which the information is known or used. Confidential Information shall not include any information that (i) is or becomes publicly known through lawful means, or (ii) was rightfully in Employee's possession or part of Employee's general knowledge prior to Employee's employment by Employer, including any Employee Pre-Existing Intellectual Property (as defined in Section 2.A).

            2.    "Employer Materials" means any documents, media or other items that contain or embody Confidential Information, whether or not labeled

2

"confidential" or "proprietary." Employer Materials include blueprints, drawings, photographs, charts, graphs, notebooks, client/customer lists, software, computer disks, tapes or printouts, sound recordings and other electronic, digital, printed, typewritten or handwritten documents or emails, sample products, prototypes and models.

B. **Employee Acknowledgments.**

1. Employee understands and acknowledges that, during the course of employment by Employer, Employee will have access to and learn about Confidential Information of and relating to Employer and its business and existing and prospective clients/customers, suppliers, investors and other associated third parties. Employee further understands and acknowledges that such Confidential Information and Employer's ability to reserve the Confidential Information for the exclusive knowledge and use of Employer is of great competitive importance and commercial value to Employer and third parties disclosing such information to Employer, and that improper use or disclosure of the Confidential Information by Employee might cause Employer and such third parties to incur financial costs, loss of business advantage, liability under confidentiality agreements with third parties, civil damages and/or criminal penalties.

2. Employee understands and agrees that Confidential Information developed by Employee in the course of Employee's employment by Employer shall be subject to the terms and conditions of this Agreement as if Employer furnished such Confidential Information to Employee in the first instance.

3. Employee understands and acknowledges that Employee's obligations under this Agreement with regard to any particular Confidential Information, including the obligation not to use or disclose trade secrets of Employer, shall commence immediately upon Employee's first having access to such Confidential Information (regardless of when such Confidential Information is received) and shall continue during and after Employee's employment by Employer until such time as the Confidential Information shall become public knowledge, other than as a result of Employee's breach of this Agreement or breach by those acting in concert with Employee or on Employee's behalf.

C. **Non-Disclosure Obligations.**

Employee agrees and covenants:

1. to treat all Confidential Information as strictly confidential and as the sole and exclusive property of Employer;

2. not to directly or indirectly disclose, publish, communicate or make available Confidential Information, or allow Confidential Information to be disclosed, published, communicated or made available, in whole or part,

3

to any entity or person whatsoever and, in any event, not to anyone outside of the direct employ of Employer except as required in the performance of Employee's authorized employment duties to Employer or with prior consent of an authorized officer acting on behalf of Employer in each instance, but only to the extent of such duties or consent;

3.     to comply with Employer's procedures and policies pertaining to the management and protection of Confidential Information and trade secrets, as such procedures and policies may be updated from time to time;

4.     to use the Confidential Information only for the benefit of Employer and not to use or attempt to use any Confidential Information for Employee's own purposes or for any other purposes;

5.     not to use or attempt to use any Confidential Information in any manner which may injure or cause loss either directly or indirectly to the Employer or its businesses, or which may be likely so to do;

6.     to use all reasonable efforts to prevent the publication, disclosure or use of any Confidential Information in any way or any form not authorized hereunder;

7.     to immediately notify the Employer of any suspected or actual unauthorized use, copying or disclosure of any Confidential Information by Employee or any other person;

8.     allow the Employer to inspect any electronic device in Employee's possession or under Employee's control which is or was used by Employee in the course of Employee's employment in order for the Employer to satisfy itself of Employee's compliance with the terms of this clause C; and

9.     upon the termination of Employee's employment, to immediately return or destroy, at Employer's sole option, all Employer Materials in Employee's possession and, at Employer's request, execute a termination certificate in the form set forth in Exhibit A attached hereto, stating that all such materials have been returned or destroyed and Employee's acknowledgement of its continuing obligations under this Section 1.

D.     **Required Disclosures; Whistleblower Protection**. Notwithstanding any other provision of this Agreement (including Section 1.C), nothing in this Agreement shall be construed to prevent disclosure of Confidential Information to the extent required by law or a valid court order, provided that the Employee's disclosure does not exceed the minimum extent required by law or order and Employee provides prompt written notice of such requirement to an authorized officer of Employer and provides all assistance Employer reasonably requires to contest such disclosure. In addition, nothing in this Agreement shall be construed to prevent Employee from making any disclosure or communication protected by

4

law or to prohibit Employee from reporting possible violations of law to a governmental agency or entity or require Employee to seek authorization from Employer or to notify Employer if Employee makes such reports.

E. **Defense of Trade Secrets Act**. Under the U.S. Defend Trade Secrets Act (18 U.S.C. section 1833(b)(1)), Employee shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that (A) is made (i) in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal and Employee does not disclose the trade secret except pursuant to a court order.

2. **Ownership of Work Product**

A. **Definitions.**

1. "Intellectual Property Rights" means: all (i) trademarks and trademark rights, trade names and trade name rights, service marks and service mark rights, service names and service name rights, domain names and social media handles and all rights therein (together with the goodwill associated with any of the foregoing), (ii) patents and patent rights, (iii) copyrights and copyright rights, (iv) trade secret rights, rights of publicity, mask work rights, rights of privacy, Moral Rights (as defined in Section 2.D), data, database and software rights, and all other intellectual property rights and proprietary rights as may exist now or hereafter come into existence, regardless of whether such rights arise under the laws of the United States or any other jurisdiction or under any treaty or convention, and all registrations, applications, extensions, continuations, revisions, reissues, and renewals in connection with any of the foregoing, as well as all rights of priority and all rights to sue for past, present and future infringement, misappropriation, dilution, misuse or other violation of any of the foregoing, including for injury to goodwill, and to recover all proceeds relating to any of the foregoing, including licenses, royalties, income, payments, claims, damages (including attorneys' fees and expert fees) and proceeds from lawsuits under the laws of any jurisdiction worldwide.

2. "Work Product" means all writings, works of authorship, technology, inventions, discoveries, designs, graphics, source code (including HTML and other code), trade secrets, ideas, analytic insights, improvements, developments, technology, formulas, compositions, algorithms, software, audio or video files or other types of work product that are authored, invented, created, developed, amended, conceived or reduced to practice by Employee individually or jointly with others during the period of Employee's employment by Employer or completed within one (1) year thereafter, with respect to any specific Work Product that was

substantially begun during the course of Employee's period of employment by Employer and (i) was created using Employer's resources or (ii) relates in any way to the business or contemplated business, research or development activities of Employer (regardless of when or where the Work Product is prepared or whose equipment or other resources are used in preparation of such Work Product), including in any case all printed, physical and electronic copies and other tangible embodiments and notes or materials related thereto. Work Product shall not include any Employee Pre-Existing Intellectual Property.

B.    **Disclosure and Ownership.** Employee hereby acknowledges and agrees that all Confidential Information, Employer Materials and Work Product shall be the sole and exclusive property of Employer to the maximum extent permitted by law. Employee agrees to disclose fully in writing all Work Product to Employee's immediate supervisor or as otherwise designated by Employer promptly following the creation or development thereof. Employee agrees that, to the maximum extent permitted by applicable law, all Work Product and all Intellectual Property Rights therein and thereto shall be the sole and exclusive property of Employer. Employee further acknowledges and agrees that all of the Work Product consisting of copyrightable subject matter, including any computer program, programming documentation, and other work of authorship is "work made for hire" as defined in in the Copyright Act of 1976 (17 U.S.C. §101), as amended), and such copyrights are therefore owned by Employer. To the extent that all worldwide rights, title and interests, including all Intellectual Property Rights, in and to any Work Product do not, by operation of law or otherwise, vest solely and exclusively in Employer, Employee hereby irrevocably assigns and transfers solely and exclusively to Employer (by way of present assignment of existing and future rights), all Work Product and all worldwide rights, title, and interests, including all Intellectual Property Rights, in and to such Work Product, free and clear of any liens and other encumbrances and without reservations of any kind. Each such assignment and transfer shall be deemed effective as of the date that such Work Product is first created or developed or otherwise reduced to practice. Employee understands and agrees that the foregoing assignment includes a present conveyance to Employer of ownership of Work Product and Intellectual Property Rights that are not yet in existence.

C.    **Employee Pre-Existing Intellectual Property.**

1.    Employee has attached hereto as <u>Exhibit B</u>, a complete list of all existing Intellectual Property Rights and writings, works of authorship, technology, inventions, discoveries, designs, graphics, source code (including HTML and other code), trade secrets, ideas, analytic insights, inventions, improvements, developments, technology, formulas, compositions, algorithms, software, audio or video files or other work product or materials to which Employee claims ownership (whether partial or in its entirety) separate from Employee's employment by Employer as of the date of this Agreement and which relate, directly or indirectly, to

6

Employer's existing or proposed business, products, or research and development (the "Employee Pre-Existing Intellectual Property"). If no list is attached to this Agreement, Employee represents and warrants that there is no such Employee Pre-Existing Intellectual Property. Employee will inform Employer in writing, and obtain Employer's express written permission, before incorporating any Employee Pre-Existing Intellectual Property into any Work Product or otherwise utilizing such Employee Pre-Existing Intellectual Property in the course of Employee's employment with Employer.

2. To the extent any Work Product includes, is based on, or is a derivative or improvement of, or cannot reasonably be made, used, imported, sold, reproduced, distributed, modified, adapted, displayed, performed or otherwise exploited without using or violating any Employee Pre-Existing Intellectual Property or any other Intellectual Property Rights that Employee owns or licenses that have not been assigned hereunder, Employee hereby grants to Employer a worldwide, royalty-free, fully paid-up, perpetual, irrevocable, transferable, non-exclusive right and license (with the right to grant and authorize sublicenses through multiple levels of sublicensees) to exploit and exercise all such Pre-Existing Intellectual Property and other Intellectual Property Rights in support of Employer's making, having made, using, importing, offering for sale, selling, reproducing, distributing, modifying, adapting, preparing derivative works of, displaying, performing, and otherwise exploiting any such Work Product (including any embodiments, modifications, improvements and derivatives thereof.) Each such license shall be deemed effective as of the date that such Work Product is first created or developed or otherwise reduced to practice.

D. **Assignment or Waiver of Moral Rights and Other Intellectual Property Rights.** Any assignment of Work Product hereunder (and any ownership of a copyright as a work made for hire) includes all rights of paternity, integrity, modification, attribution, disclosure and withdrawal and any other rights that may be known as or referred to as "moral rights" anywhere in the world (collectively, "Moral Rights") and rights under section 987 of the California Civil Code. To the extent that any Moral Rights or any other Intellectual Property Rights cannot be assigned under applicable law and to the extent the following is allowed by the laws in the various countries where such Moral Rights or such other Intellectual Property Rights exist, Employee hereby waives such Moral Rights and such other Intellectual Property Rights and consents to any action of Employer and its successors, assigns and (sub)licensees that would violate such Moral Rights and other Intellectual Property Rights in the absence of such consent. Employee shall confirm any such waivers and consents from time to time as requested by Employer. Additionally, to the extent any rights hereunder cannot be waived, Employee hereby grants to Employer, its successors and assigns, a perpetual, irrevocable, exclusive, worldwide, royalty-free license, with the right to grant and

authorize sublicenses through multiple tiers of sublicensees, to do anything the owner of such rights could do.

E. **Statutory Limitations**. Employer acknowledges that this Agreement does not apply, and no assignment made hereunder shall apply, to any Work Product which qualifies fully under section 2870 of the California Labor Code, a copy of which is attached as Exhibit C.

F. **Execution of Documents**. Employee agrees to perform all acts or refrain from taking action, as required, and agrees to execute and deliver to Employer any and all applications, oaths, declarations, affidavits, waivers, assignments and other documents and instruments as shall be deemed necessary or desirable by Employer (either during or after Employee's employment) to evidence, obtain, perfect, transfer to Employer or enforce any of the Intellectual Property Rights related to the Work Product or other rights in this Section 2, and Employer's ownership or other rights thereto, throughout the world and to render all lawful assistance in connection with the same. Employee agrees that the obligations set forth in this Section 2 shall continue after the termination or expiration of this Agreement and after the termination of Employee's employment for any reason.

G. **Power of Attorney**. Employee hereby irrevocably designates and appoints Employer and its duly authorized officers and agents, as Employee's agents and attorney-in-fact to act for and on Employee's behalf to execute and file any documents, applications or related findings and to do all other lawfully permitted acts to further the purposes set forth above in this Section 2, including the perfection of assignment and the prosecution and issuance of Intellectual Property Rights or other rights in connection with the Work Product and improvements thereto with the same legal force and effect as if executed by Employee. This power of attorney shall be deemed coupled with an interest, and shall be irrevocable.

H. **Open Source**. Employee shall not incorporate any open source or other third party code into any Work Product or into any of Employer's products or services without Employer's prior written consent.

I. **Records**. Employee shall maintain adequate, current, and accurate written records with respect to all Work Product. As between Employer and Employee, the records are and will be available to and remain the sole and exclusive property of Employer at all times.

## 3. Publicity

Employee hereby consents to any and all uses and displays by Employer and its agents of Employee's name, voice, likeness, image, appearance and biographical information in or in connection with any printed, electronic or digital materials, including any pictures, audio or video recordings, digital images, websites, television programs, advertising, sales or marketing brochures, printed materials and computer media, throughout the world and at any time during or

after Employee's employment by Employer for all legitimate business purposes of Employer (the "Permitted Use"). Employee hereby forever releases Employer and its directors, officers, employees, representatives and agents from any and all claims, actions, damages, losses, costs, expenses and liability of any kind arising under any legal or equitable theory whatsoever at any time during or after the period of Employee's employment by Employer in connection with any Permitted Use.

**4. Non-Disparagement**

Employee agrees and covenants that Employee will not at any time, during or after Employee's employment, make, publish or communicate, or encourage others to make, publish, or communicate, to any person or entity or in any public forum any defamatory or disparaging remarks, comments or statements concerning Employer or Employer's affiliates, any of their respective businesses, products, services or activities, or any of their respective current or former officers, directors, managers, employees or agents. This Section 4 shall not prohibit Employee from providing truthful testimony in response to a validly issued subpoena.

**5. Solicitation of Employees**

Employee agrees that any attempt on Employee's part to induce others to leave Employer's employ, or any effort by Employee to interfere with Employer's relationship with its other employees and consultants would be harmful and damaging to Employer. Employee agrees that during the term of Employee's employment and for a period of one year following the termination of Employee's relationship with Employer for any reason, whether voluntary or involuntary, Employee will not in any way, directly or indirectly, without prior written consent from the Employer, (i) induce or attempt to induce any employee or consultant of Employer to quit Employer; (ii) otherwise interfere with or disrupt Employer's relationship with its employees or consultants; (iii) solicit, entice, or hire away any employee or consultant of Employer; or (iv) hire, engage, or do business with any employee or consultant of Employer. The restrictions of this Section 5 shall apply to any former employee or consultant of Employer whose employment or engagement with Employer ceased less than six (6) months before the inducement, interference, hiring, or solicitation. This Section 5 shall survive the termination or expiration of this Agreement and the termination of Employee's employment for any reason.

**6. Former Employer Information; No Conflict; Compliance with Rules**

    A. Employee represents that the performance of the terms of this Agreement and acting as an employee of Employer do not and will not breach any agreement to keep in confidence proprietary information, knowledge or data acquired by Employee in confidence or in trust prior to employment by Employer, and Employee shall not disclose to Employer or induce Employer to use any confidential or proprietary information or materials belonging to any previous employers or others. Employee further agrees not to bring onto Employer's premises or transfer onto Employer's systems any unpublished document, proprietary information, or trade secrets belonging to any third party unless

disclosure to, and use by, Employer has been consented to in writing by such third party.

B.  Employee has not entered into and shall not enter into any agreement, either written or oral, in conflict with this Agreement or in conflict with Employee's employment with Employer.

C.  Employee shall comply with all rules and policies of Employer, as they may be amended from time to time, including with respect to access, safekeeping and return of Confidential Information, Employer Materials and Work Product.

## 7.    At-Will Employment

Employee agrees and understands that employment with Employer is "at-will," meaning that it is not for any specified period of time and can be terminated by Employee or by Employer at any time, with or without advance notice, and for any or no particular reason or cause.  Employee understands and agrees that it also means that job duties, title and responsibility and reporting level, compensation and benefits, as well as Employer's personnel policies and procedures, may be changed at any time at will by Employer.  Employee understands and agrees that nothing about the fact or the content of this Agreement is intended to, nor should be construed to, alter the at-will nature of Employee's employment by Employer.

## 8.    Notice of New Business; Authorization to Notify Others

Throughout Employee's employment and for a period of one year following the termination of Employee's relationship with Employer for any reason, whether voluntary or involuntary, Employee shall give advance notice to Employer of each new employment or other business activity Employee undertakes, which notice shall state the name and address of the person or entity for whom such activity is to be undertaken and the nature of Employee's business relationship(s) and position(s) with such person or entity.  Employee agrees that Employer shall have the right to provide notice of Employee's obligations under this Agreement and/or a copy of this Agreement to any person or entity that is an employer or prospective employer of Employee, and any person or entity that may engage Employee to otherwise provide services or that otherwise may engage with Employee in a new business activity.  Employee agrees to defend, indemnify and hold all employees, directors, and officers of Employer harmless from any and all claims, costs and damages in any way arising in connection with Employer providing notice of Employee's obligations under this Agreement and/or a copy of this Agreement to any person.

## 9.    Obligations and Remedies

A.  Employee agrees that an impending or existing violation of any of the covenants contained in this Agreement would cause Employer and its affiliates irreparable injury for which they would have no adequate remedy at law and agrees that Employee further agrees that nothing in this Agreement is intended to limit any remedy of Employer under the Uniform Trade Secrets Act.  Employer shall be entitled to obtain injunctive relief prohibiting such violation, in addition to any other rights and remedies available to it in contract, at law, in equity, by statute or

10

otherwise. Employee agrees and consents that Employer shall be entitled to a temporary or permanent injunction or other equitable relief against any such breach or threatened breach from any court of competent jurisdiction, without the necessity of showing any actual damages or that monetary damages would not afford an adequate remedy, and without the necessity of posting any bond or other security. Employee also agrees that, in the event that Employee breaches any of the covenants contained in this Agreement or initiates legal action to challenge any such covenant, Employee shall be liable to Employer for attorneys' fees and costs incurred in any legal activity engaged in, defended by, or prosecuted by Employer to enforce such covenant or seek remedy of such breach.

B.    Employee's obligations under each of the provisions of this Agreement are independent, separable, and independently enforceable of each other and of any legal obligations that may exist between Employer and Employee. The real or perceived existence of any claim or cause of action of Employee against Employer, whether predicated on this Agreement or some other basis, shall not alleviate Employee of Employee's obligations under this Agreement and shall not constitute a defense to the enforcement by Employer of the restrictions and covenants contained herein. No right, power or remedy conferred upon a party in this Agreement shall be exclusive, and each such right, power and remedy shall be cumulative and in addition to every other right, power, or remedy, whether conferred in this Agreement, the Employment Agreement or any other agreement, or now or hereafter available at law, in contract, in equity, by statute or otherwise.

**10.    General**

A.    **Governing Law.** This Agreement will be governed and interpreted in accordance with the laws of California, without giving effect to provisions governing the choice of law.

B.    **Arbitration and Class Action Waiver.** Employee agrees that any dispute, controversy or claim arising out of or relating to or resulting from Employee's employment with Employer, including any alleged violation of statute, common law or public policy shall be submitted to final and binding arbitration before the American Arbitration Association ("AAA") to be held in Los Angeles County, California before a single arbitrator, in accordance with the then-current Employment Arbitration Rules and Mediation Procedures of the AAA and the Federal Arbitration Act, as modified by the terms and conditions contained in this paragraph. By signing this Agreement, Employee agrees to waive all rights to a jury trial and the right to pursue any class or representative claims to the maximum extent allowed by law. To the extent a class or representative claim may not be waived, Employee agrees to stay any such claims until after all claims subject to arbitration are fully resolved. The arbitrator shall be selected by mutual agreement of the parties or, if the parties cannot agree, then by striking from a list of arbitrators supplied by the AAA. The arbitrator shall issue a written opinion stating the essential findings and conclusions on which the arbitrator's award is based. Employer will pay the arbitrator's fees and arbitration expenses and any

other costs unique to the arbitration hearing (recognizing that each side bears its own deposition, witness, expert and attorney's fees and other expenses to the same extent as if the matter were being heard in court). This agreement to arbitrate has been freely negotiated and is mutually entered into between the parties. Employee fully understands and agrees that Employee is giving up certain rights otherwise afforded to Employee by civil court actions, including but not limited to the right to a jury trial.

C. **Assignment; Beneficiaries.** The terms, provisions, covenants and agreements contained in this Agreement shall apply to, be binding upon and inure to the benefit of the parties and their respective heirs, legal representatives, successors and assigns. Employer may assign this Agreement to its successors or affiliates. Employee may not assign this Agreement. If this Agreement is assigned to an affiliate of Employer, or any other assignee, in connection with the transfer of Employee's employment to such member or other assignee, to the extent appropriate and on a going forward basis, references to "Employer" shall be deemed replaced with references to such new employer. Employee understands and agrees that the terms of this Agreement will continue to apply to and bind Employee even if Employee is transferred at some time from Employer or any of its affiliates or subsidiaries to another of Employer or any of its affiliates or subsidiaries. Employee acknowledges further that Employer's affiliates are intended beneficiaries of this Agreement.

D. **Modification and Waiver.** No provision of this Agreement may be amended, modified or waived unless such amendment, modification or waiver is agreed to in writing and signed by Employee and by a duly authorized officer of Employer (other than Employee). No delay or omission by the parties in exercising any right under this Agreement will operate as a waiver of that or any other right. No waiver or consent given by a party on any occasion will be construed as a bar to or as a continuing waiver of any right on any other occasion.

E. **Construction.** This Agreement shall be deemed drafted equally by both Employer and Employee. The headings in this Agreement are only for convenience and are not intended to affect construction or interpretation. Any references to paragraphs, subparagraphs, sections or subsections are to those parts of this Agreement, unless the context clearly indicates to the contrary. Unless the context clearly indicates to the contrary, (i) the plural includes the singular and the singular includes the plural; (ii) "includes," "including" and other similar words are each "without limitation"; (iii) "herein," "hereof," "hereunder" and other similar compounds of the word "here" refer to the entire Agreement and not to any particular paragraph, subparagraph, section or subsection; and (vi) all pronouns and any variations thereof shall be deemed to refer to the masculine, feminine, neuter, singular or plural as the identity of the entities or persons referred to may require.

F. **Severability.** If one or more provisions of this Agreement are held to be unenforceable under applicable law, such provisions shall be modified to the

minimum extent necessary to comply with applicable law and the intent of the parties. If any provision of this Agreement, or application of it to any person, place, or circumstances, shall be held by an arbitrator or court of competent jurisdiction to be invalid, unenforceable, or void, the remainder of this Agreement and such provisions as applied to other persons, places, and circumstances shall remain in full force and effect. Employee and Employer agree that, except as may be otherwise set forth in Section 10.B., the arbitrator or court of competent jurisdiction is expressly authorized to modify any unenforceable provision of this Agreement in lieu of severing such unenforceable provision from this Agreement in its entirety, whether by rewriting the offending provision, deleting any or all of the offending provision, adding additional language to this Agreement or by making such other modifications as its deems warranted to carry out the intent and agreement of the parties as embodied herein to the maximum extent of the law.

G.   **Entire Agreement.**   This Agreement sets forth the entire agreement and understanding between Employer and Employee relating to the subject matter herein and, as of the Effective Date, supersedes all prior discussions between the parties. Employee understands and acknowledges that (i) no other representation or inducement has been made to Employee, (ii) Employee has relied on Employee's own judgment and investigation in accepting employment with Employer, and (iii) Employee has not relied on any representation or inducement made by any officer, employee or representative of Employer. Employee understands and agrees that any subsequent change or changes in Employee's duties, salary or compensation will not affect the validity or scope of this Agreement.

H.   **Counterparts.**  This Agreement may be executed by facsimile or other electronic transmission and in counterparts, each of which shall be deemed an original, and all of which taken together shall constitute one agreement binding on the parties.

EMPLOYEE HAS READ THIS AGREEMENT CAREFULLY AND UNDERSTANDS ITS TERMS. EMPLOYEE ACCEPTS THE OBLIGATIONS THIS AGREEMENT IMPOSES WITHOUT RESERVATIONS. NO PROMISES OR REPRESENTATIONS HAVE BEEN MADE TO EMPLOYEE TO INDUCE THE ENTRY INTO THIS AGREEMENT THAT ARE NOT EXPRESSLY CONTAINED HEREIN. AT THE TIME OF SIGNING, EMPLOYEE HAS COMPLETELY DESCRIBED IN SUFFICIENT DETAIL ON <u>EXHIBIT B</u> ANY EMPLOYEE PRE-EXISTING INTELLECTUAL PROPERTY.

*[Signature Page Follows]*

IN WITNESS WHEREOF, the parties have agreed to and accepted this Agreement as of the Effective Date.


EMPLOYEE                                    [BYTEDANCE INC.]

_____            _____
Employee Signature

Yintao Yu                                   By:_____
Employee Name (Please Print)

                                            Title:_____


*[Signature page for Confidentiality and Inventions Assignment Agreement]*

**EXHIBIT A**

FORM OF TERMINATION CERTIFICATE

This is to certify that I do not have in my possession, nor have I failed to return, any Employer Materials or other documents, material, equipment or other property belonging to Employer.

I further certify that I have complied with and will continue to comply with all the terms of the Employee Confidentiality and Inventions Assignment Agreement which I signed.

I further agree that, in accordance with the Employee Confidentiality and Inventions Assignment Agreement, I will preserve as confidential and not use any Confidential Information or other information which has or could have commercial value or disclosure of which could be detrimental to the interests of Employer, whether or not such information is identified as Confidential Information by Employer.

Signed: _____

Dated: _____ 8 / 3 0 / 20 / 7

**EXHIBIT B**

1.  The following is a complete list of all inventions, confidential information, work product or other materials or Intellectual Property Rights relevant to the subject matter of my employment with Employer that have been made, discovered, conceived, first reduced to practice or developed by me or jointly with others prior to my employment by Employer that I desire to remove from the operation of the Employee Confidentiality and Inventions Assignment Agreement except as provided in Section 2.C.

    ___     No Intellectual Property.

    ___     See below:  Any and all Intellectual Property regarding:

    ___     Additional sheets attached.

2.  I propose to bring to my employment the following materials and documents of a former employer:

    ___     No materials or documents

    ___     See below:

Date: 8/ 30 /20 17   Employee Signature: _____

# EXHIBIT C

**California Labor Code § 2870**

(a) Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:

    (1) Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or

    (2) Result from any work performed by the employee for the employer.

(b) To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable.

# Ex. 5

## BYTEDANCE LTD. 2012 STOCK INCENTIVE PLAN

### NOTICE OF STOCK OPTION AWARD

Grantee's Name and Address:   YINTAO "ROGER" YU

You (the "Grantee") have been granted an option to purchase Ordinary Shares, subject to the terms and conditions of this Notice of Stock Option Award (the "Notice"), the BYTEDANCE LTD. 2012 Stock Incentive Plan, as amended from time to time (the "Plan") and the Stock Option Award Agreement (the "Option Agreement") attached hereto, as follows. Unless otherwise defined herein, the terms defined in the Plan shall have the same defined meanings in this Notice.

| | |
|---|---|
| Award Number | |
| Grant Date | September 30, 2017 |
| Vesting Commencement Date | August 30, 2017 |
| Exercise Price per Share | US$ 0.02 |
| Total Number of Ordinary Shares Subject to the Option (the "Shares") | 220,000 |
| Total Exercise Price | US$ 4,400 |
| Expiration Date: | September 30, 2027 |
| Post-Termination Exercise Period: | Three (3) Months |

<u>Vesting Schedule:</u>

Subject to the Grantee's Continuous Service and other limitations set forth in this Notice, the Plan and the Option Agreement, the Option may be exercised, in whole or in part, in accordance with the Schedule as below:

15% of the Shares subject to the Option shall vest on the first anniversary of the Vesting Commencement Date, 25% of the Shares subject to the Option shall vest on the second anniversary of the Vesting Commencement Date, 25% of the Shares subject to the Option shall vest on the third anniversary of the Vesting Commencement Date, and the remaining 35% of the Shares subject to the Option shall vest on the fourth anniversary of the Vesting Commencement Date.

During any authorized leave of absence, the Company shall have the right to suspend the vesting of the Option as provided in this schedule if, in addition to the applicable paid leave of absence that the Grantee is entitled to pursuant to the applicable laws and the Company's policies, such leave of absence exceeds an accumulative period of ten (10) days within a 12-month period. Vesting of the Option shall resume upon the Grantee's termination of the leave of absence and return to service to the Company or a Related Entity. The vesting schedule of the Option shall be extended by the length of the suspension.

In the event of termination of the Grantee's Continuous Service for Cause (as defined below), the Grantee's right to exercise the Option shall terminate concurrently with the termination of the Grantee's Continuous Service, except as otherwise determined by the administrator of the Plan, which shall be the Board of Directors or any person designated by the Board of Directors (the "Administrator"), and the Company shall have rights to repurchase

all vested options purchased by the Grantee, under the sole discretion of the Administrator, at the par value of the Shares.

The Grantee grants a power of attorney to the Board or any person designated by the Board to exercise the voting rights with respect to the Shares.

IN WITNESS WHEREOF, the Company and the Grantee have executed this Notice and agree that the Option is to be governed by the terms and conditions of this Notice, the Plan, and the Option Agreement.

> BYTEDANCE LTD.
> a company incorporated under the laws of the Cayman Islands
>
> By: _____
>
> Title: _____

THE GRANTEE ACKNOWLEDGES AND AGREES THAT ANY EXERCISE OF THE OPTION SHALL BE STRICTLY COMPLIANCE WITH APPLICABLE LAWS, INCLUDING WITHOUT LIMITATION, THOSE REGULATIONS ENACTED BY THE STATE ADMINISTRATION OF FOREIGN EXCHANGE OF THE PRC.

THE GRANTEE ACKNOWLEDGES AND AGREES THAT THE SHARES SUBJECT TO THE OPTION SHALL VEST, IF AT ALL, ONLY DURING THE PERIOD OF THE GRANTEE'S CONTINUOUS SERVICE (NOT THROUGH THE ACT OF BEING HIRED, BEING GRANTED THE OPTION OR ACQUIRING SHARES HEREUNDER). THE GRANTEE FURTHER ACKNOWLEDGES AND AGREES THAT NOTHING IN THIS NOTICE, THE OPTION AGREEMENT, OR THE PLAN SHALL CONFER UPON THE GRANTEE ANY RIGHT WITH RESPECT TO FUTURE AWARDS OR CONTINUATION OF THE GRANTEE'S CONTINUOUS SERVICE, NOR SHALL IT INTERFERE IN ANY WAY WITH THE GRANTEE'S RIGHT OR THE RIGHT OF THE COMPANY OR RELATED ENTITY TO WHICH THE GRANTEE PROVIDES SERVICES TO TERMINATE THE GRANTEE'S CONTINUOUS SERVICE, WITH OR WITHOUT CAUSE, AND WITH OR WITHOUT NOTICE. THE GRANTEE ACKNOWLEDGES THAT UNLESS THE GRANTEE HAS A WRITTEN EMPLOYMENT AGREEMENT WITH THE COMPANY TO THE CONTRARY, THE GRANTEE'S STATUS IS AT WILL.

The Grantee acknowledges receipt of a copy of the Plan and the Option Agreement, and represents that he or she is familiar with the terms and provisions thereof, and hereby accepts the Option subject to all of the terms and provisions hereof and thereof. The Grantee has reviewed this Notice, the Plan, and the Option Agreement in their entirety, has had an opportunity to obtain the advice of counsel prior to executing this Notice, and fully understands all provisions of this Notice, the Plan and the Option Agreement. The Grantee hereby agrees that all questions of interpretation and administration relating to this Notice, the Plan and the Option Agreement shall be resolved by the Administrator in accordance with Section 19 of the Option Agreement. The Grantee further agrees to the Dispute Resolution and Arbitration Procedures in accordance with Section 20 of the Option Agreement. The Grantee further agrees to notify the Company upon any change in the residence address indicated in this Notice.

Dated: _____     Signed: _____

Grantee

## BYTEDANCE LTD. 2012 STOCK INCENTIVE PLAN

### STOCK OPTION AWARD AGREEMENT

1.     <u>Grant of Option</u>. **BYTEDANCE LTD.**, a company incorporated under the laws of the Cayman Islands (the "Company"), hereby grants to the Grantee (the "Grantee") named in the Notice of Stock Option Award (the "Notice"), an option (the "Option") to purchase the Total Number of Ordinary Shares subject to the Option (the "Shares") set forth in the Notice, at the Exercise Price per Share set forth in the Notice (the "Exercise Price") subject to the terms and provisions of the Notice, this Stock Option Award Agreement (the "Option Agreement") and the Company's 2012 Stock Incentive Plan, as amended from time to time (the "Plan"), which are incorporated herein by reference. Unless otherwise defined herein, the terms defined in the Plan shall have the same defined meanings in this Option Agreement.

2.     <u>Exercise of Option</u>.

(a)     <u>Right to Exercise</u>. The Option shall be exercisable only in compliance with Applicable Laws. The Option shall be exercisable during its term in accordance with the vesting schedule set out in the Notice and with the applicable provisions of the Plan and this Option Agreement. The Option shall be subject to the provisions of Section 11 of the Plan relating to the exercisability or termination of the Option in the event of a Corporate Transaction or Change in Control. The Grantee shall be subject to reasonable limitations on the number of requested exercises during any monthly or weekly period as determined by the Administrator. In no event shall the Company issue fractional Shares.

(b)     <u>Method of Exercise</u>. The Option shall be exercisable by delivery of an exercise notice (a form of which is attached as Exhibit A) or by such other procedure as specified from time to time by the Administrator which shall state the election to exercise the Option, the whole number of Shares in respect of which the Option is being exercised, and such other provisions as may be required by the Administrator. The exercise notice shall be delivered in person, by certified mail, or by such other method (including electronic transmission) as determined from time to time by the Administrator to the Company accompanied by payment of the Exercise Price. The Option shall be deemed to be exercised upon receipt by the Company of such notice accompanied by the Exercise Price, which, to the extent selected, shall be deemed to be satisfied by use of the broker-dealer sale and remittance procedure to pay the Exercise Price provided in Section 4(d), below.

(c)     <u>Taxes</u>. No Shares will be delivered to the Grantee or other person pursuant to the exercise of the Option until the Grantee or other person has made arrangements acceptable to the Administrator for the satisfaction of applicable income tax and employment tax withholding obligations. Upon exercise of the Option, the Company or the Grantee's employer may offset or withhold (from any amount owed by the Company or the Grantee's employer to the Grantee) or collect from the Grantee or other person an amount sufficient to satisfy such tax withholding obligations.

3.     <u>Grantee's Representations</u>. The Grantee understands that neither the Option nor the Shares exercisable pursuant to the Option have been registered under the Securities Act of

1933, as amended or any United States securities laws. In the event the Shares purchasable pursuant to the exercise of the Option have not been registered under the Securities Act of 1933, as amended, at the time the Option is exercised, the Grantee shall, if requested by the Company, concurrently with the exercise of all or any portion of the Option, deliver to the Company his or her Investment Representation Statement in the form attached hereto as Exhibit B.

4. <u>Method of Payment</u>. Payment of the Exercise Price shall be made by any of the followings, or a combination thereof, at the election of the Grantee; provided, however, that such exercise method does not then violate any Applicable Law, provided further, that the portion of the Exercise Price equal to the par value of the Shares must be paid as consideration with the Plan following methods:

    (a)    cash;

    (b)    check;

    (c)    if the exercise occurs on or after the Registration Date (as defined below), surrender of Shares or delivery of a properly executed form of attestation of ownership of Shares as the Administrator may require which have a Fair Market Value on the date of surrender or attestation equal to the aggregate Exercise Price of the Shares as to which the Option is being exercised, provided, however, that Shares acquired under the Plan or any other equity compensation plan or agreement of the Company must have been held by the Grantee for a period of more than six (6) months (and not used for another Award exercise by attestation during such period); or

    (d)    if the exercise occurs on or after the Registration Date, payment through a broker-dealer sale and remittance procedure pursuant to which the Grantee (i) shall provide written instructions to a Company-designated brokerage firm to effect the immediate sale of some or all of the purchased Shares and remit to the Company sufficient funds to cover the aggregate exercise price payable for the purchased Shares and (ii) shall provide written directives to the Company to deliver the certificates for the purchased Shares directly to such brokerage firm in order to complete the sale transaction.

5. <u>Restrictions on Exercise</u>. The Option may not be exercised if the issuance of the Shares subject to the Option upon such exercise would constitute a violation of any Applicable Laws. In addition, the Option may not be exercised until such time as the Plan has been approved by the shareholders of the Company. If the exercise of the Option within the applicable time periods set forth in Section 6, 7 and 8 of this Option Agreement is prevented by the provisions of this Section 5, the Option shall remain exercisable until one (1) month after the date the Grantee is notified by the Company that the Option is exercisable, but in any event no later than the Expiration Date set forth in the Notice.

6. <u>Termination or Change of Continuous Service</u>. In the event the Grantee's Continuous Service terminates, other than for Cause, the Grantee may, but only during the Post-Termination Exercise Period, exercise the portion of the Option that was vested at the date of such termination (the "Termination Date"). The Post-Termination Exercise Period shall commence on the Termination Date. In the event of termination of the Grantee's Continuous Service for Cause, the Grantee's right to exercise the Option shall, except as otherwise determined by the Administrator, terminate concurrently with the termination of the Grantee's Continuous Service (also the "Termination Date"). In no event, however, shall the Option be

exercised later than the Expiration Date set forth in the Notice. Except as provided in Sections 7 and 8 below, to the extent that the Option was unvested on the Termination Date, or if the Grantee does not exercise the vested portion of the Option within the Post-Termination Exercise Period, the Option shall terminate.

To avoid any doubt, "Cause" shall mean, for the Grantee, any act, subject to then applicable laws, including without limitation (a) willful failure to perform, or gross negligence in performing his/her duties and responsibilities to the Company and any of its affiliates (as applicable), (b) commission of any act of theft, forgery, fraud, embezzlement, dishonesty or any other willful misconduct, (c) conviction of a felony under the laws of the PRC or any foreign jurisdiction, (d) breach of any confidentiality agreement, non-competition agreement or invention assignment agreement between he/she and the Company or any of its affiliates (as applicable), including without limitation an unauthorized use or disclosure of any confidential information or trade secrets, (e) continuous breach or failure to perform assigned duties after receiving written notification of such breach or failure from the respective board of directors of the Company or any of its affiliates (as applicable), (f) any material failure to comply with any written policies or rules of the Company as adopted by the board of directors of the Company or any of its affiliates (as applicable), or (g) any other intentional misconduct which has a material adverse effect to any Company or any of its affiliates (as applicable).

7.    Disability of Grantee.  In the event the Grantee's Continuous Service terminates as a result of his or her Disability, the Grantee may, but only within twelve (12) months commencing on the Termination Date (but in no event later than the Expiration Date), exercise the portion of the Option that was vested on the Termination Date.  To the extent that the Option was unvested on the Termination Date, or if the Grantee does not exercise the vested portion of the Option within the time specified herein, the Option shall terminate.  Section 22(e)(3) of the Code provides that an individual is permanently and totally disabled if he or she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

8.    Death of Grantee.  In the event of the termination of the Grantee's Continuous Service as a result of his or her death, or in the event of the Grantee's death during the Post-Termination Exercise Period or during the twelve (12) month period following the Grantee's termination of Continuous Service as a result of his or her Disability, the person who acquired the right to exercise the Option pursuant to Section 9 may exercise the portion of the Option that was vested on the Termination Date within twelve (12) months commencing on the date of death (but in no event later than the Expiration Date).  To the extent that the Option was unvested on the date of death, or if the vested portion of the Option is not exercised within the time specified herein, the Option shall terminate.

9.    Transferability of Option.  The Grantee may designate one or more beneficiaries of the Grantee's Option in the event of the Grantee's death on a beneficiary designation form provided by the Administrator.  Following the death of the Grantee, the Option, to the extent provided in Section 8, may be exercised (a) by the person or persons designated under the deceased Grantee's beneficiary designation or (b) in the absence of an effectively designated beneficiary, by the Grantee's legal representative or by any person empowered to do so under the deceased Grantee's will or under the then applicable laws of descent and distribution.  The terms of the Option shall be binding upon the executors, administrators, heirs, successors and transferees of the Grantee.

10.     Term of Option.  The Option must be exercised no later than the Expiration Date set forth in the Notice or such earlier date as otherwise provided herein.  After the Expiration Date or such earlier date, the Option shall be of no further force or effect and may not be exercised.

11.     Company's Right of First Refusal.

(a) Transfer Notice.  Neither the Grantee nor a transferee (either being sometimes referred to herein as the "Holder") shall sell, hypothecate, encumber or otherwise transfer any Shares or any right or interest therein without first complying with the provisions of this Section 11 or obtaining the prior written consent of the Company.  In the event the Holder desires to accept a bona fide third-party offer for any or all of the Shares, the Holder shall provide the Company with written notice (the "Transfer Notice") of:

(i)     The Holder's intention to transfer;

(ii)    The name of the proposed transferee;

(iii)   The number of Shares to be transferred; and

(iv)    The proposed transfer price or value and terms thereof.

If the Grantee proposes to transfer any Shares to more than one transferee, the Grantee shall provide a separate Transfer Notice for the proposed transfer to each transferee.  The Transfer Notice shall be signed by both the Grantee and the proposed transferee and must constitute a binding commitment of the Grantee and the proposed transferee for the transfer of the Shares to the proposed transferee subject to the terms and conditions of this Option Agreement.

(b) Bona Fide Transfer.  If the Company determines that the information provided by the Grantee in the Transfer Notice is insufficient to establish the bona fide nature of a proposed voluntary transfer, the Company shall give the Grantee written notice of the Grantee's failure to comply with the procedure described in this Section 11, and the Grantee shall have no right to transfer the Shares without first complying with the procedure described in this Section 11.  The Grantee shall not be permitted to transfer the Shares if the proposed transfer is not bona fide.

(c) First Refusal Exercise Notice.  The Company shall have the right to purchase (the "Right of First Refusal") all or partial, of the Shares which are described in the Transfer Notice (the "Offered Shares") at any time within forty-five (45) days after receipt of the Transfer Notice (the "Option Period").  The Offered Shares shall be repurchased at (i) the per share price or value and in accordance with the terms stated in the Transfer Notice (subject to Section 11(d) below) or (ii) the Fair Market Value of the Shares on the date on which the purchase is to be effected if no consideration is paid pursuant to the terms stated in the Transfer Notice, which Right of First Refusal shall be exercised by written notice (the "First Refusal Exercise Notice") to the Holder.

(d) Payment Terms.  The Company shall consummate the purchase of the Offered Shares on the terms set forth in the Transfer Notice within 30 days after delivery of the First Refusal Exercise Notice; provided, however, that in the event the Transfer Notice provides for the payment for the Offered Shares other than in cash, the Company and/or its

assigns shall have the right to pay for the Offered Shares by the discounted cash equivalent of the consideration described in the Transfer Notice as reasonably determined by the Administrator. Upon payment for the Offered Shares to the Holder or into escrow for the benefit of the Holder, the Company or its assigns shall become the legal and beneficial owner of the Offered Shares and all rights and interest therein or related thereto, and the Company shall have the right to transfer the Offered Shares to its own name or its assigns without further action by the Holder.

(e) Assignment. Whenever the Company shall have the right to purchase Shares under this Right of First Refusal, the Company may designate and assign one or more employees, officers, directors or shareholders of the Company or other persons or organizations, to exercise all or a part of the Company's Right of First Refusal.

(f) Non-Exercise. If the Company and/or its assigns do not collectively elect to exercise the Right of First Refusal within the Option Period or such earlier time if the Company and/or its assigns notifies the Holder that it will not exercise the Right of First Refusal, then the Holder may transfer the Shares upon the terms and conditions stated in the Transfer Notice, provided that:

(i) The transfer is made within 90 days of the earlier of (A) the date the Company and/or its assigns notify the Holder that the Right of First Refusal will not be exercised or (B) the expiration of the Option Period; and

(ii) The transferee agrees in writing that such Shares shall be held subject to the provisions of this Option Agreement.

The Company shall have the right to demand further assurances from the Grantee and the transferee (in a form satisfactory to the Company) that the transfer of the Offered Shares was actually carried out on the terms and conditions described in the Transfer Notice. No Offered Shares shall be transferred on the books of the Company until the Company has received such assurances, if so demanded, and has approved the proposed transfer as bona fide.

(g) Expiration of Transfer Period. Following such 90-day period, no transfer of the Offered Shares and no change in the terms of the transfer as stated in the Transfer Notice (including the name of the proposed transferee) shall be permitted without a new written Transfer Notice prepared and submitted in accordance with the requirements of this Right of First Refusal.

(h) Termination of Right of First Refusal. The provisions of this Right of First Refusal shall terminate as to all Shares upon the Registration Date.

(i) Additional Shares or Substituted Securities. In the event of any transaction described in Sections 10 or 11 of the Plan, any new, substituted or additional securities or other property which is by reason of any such transaction distributed with respect to the Shares shall be immediately subject to the Right of First Refusal, but only to the extent the Shares are at the time covered by such right.

12. Stop-Transfer Notices. In order to ensure compliance with the restrictions on transfer set forth in this Option Agreement, the Notice or the Plan, the Company may issue

appropriate "stop transfer" instructions to its transfer agent, if any, and, if the Company transfers its own securities, it may make appropriate notations to the same effect in its own records.

13.    Refusal to Transfer.  The Company shall not be required (i) to transfer on its books any Shares that have been sold or otherwise transferred in violation of any of the provisions of this Option Agreement or (ii) to treat as owner of such Shares or to accord the right to vote or pay dividends to any purchaser or other transferee to whom such Shares shall have been so transferred.

14.    Repurchase Right.  The Company shall have rights to repurchase the vested Shares at the par value of the Shares upon resignation or termination with Cause.

15.    Lock-Up Agreement.

(a)    Agreement.  The Grantee, if requested by the Company and the lead underwriter of any public offering of the Ordinary Shares (the "Lead Underwriter"), hereby irrevocably agrees not to sell, contract to sell, grant any option to purchase, transfer the economic risk of ownership in, make any short sale of, pledge or otherwise transfer or dispose of any interest in any Ordinary Shares or any securities convertible into or exchangeable or exercisable for or any other rights to purchase or acquire Ordinary Shares (except Ordinary Shares included in such public offering or acquired on the public market after such offering) during the 180-day period following the effective date of a registration statement of the Company (the "Registration Date") filed under the Securities Act of 1933, as amended, or such shorter or longer period of time as the Lead Underwriter shall specify.  The Grantee further agrees to sign such documents as may be requested by the Lead Underwriter to effect the foregoing and agrees that the Company may impose stop-transfer instructions with respect to such Ordinary Shares subject to the lock-up period until the end of such period.  The Company and the Grantee acknowledge that each Lead Underwriter of a public offering of the Company's stock, during the period of such offering and for the lock-up period thereafter, is an intended beneficiary of this Section 15.

(b)    No Amendment Without Consent of Underwriter.  During the period from identification of a Lead Underwriter in connection with any public offering of the Company's Ordinary Shares until the earlier of (i) the expiration of the lock-up period specified in Section 15(a) in connection with such offering or (ii) the abandonment of such offering by the Company and the Lead Underwriter, the provisions of this Section 15 may not be amended or waived except with the consent of the Lead Underwriter.

16.    Rights as Shareholder.  The Grantee hereby irrevocably grants a power of attorney to the Board or any person designated by the Board to exercise the voting rights with respect to the Shares.

17.    Entire Agreement; Governing Law.  The Notice, the Plan and this Option Agreement constitute the entire agreement of the parties with respect to the subject matter hereof and supersede in their entirety all prior undertakings and agreements of the Company and the Grantee with respect to the subject matter hereof, and may not be modified adversely to the Grantee's interest except by means of a writing signed by the Company and the Grantee. Nothing in the Notice, the Plan and this Option Agreement (except as expressly provided therein) is intended to confer any rights or remedies on any persons other than the parties. The Notice, the Plan and this Option Agreement are to be construed in accordance with and governed by the

laws of Cayman Islands without regard to conflict of law principles thereunder. Should any provision of the Notice, the Plan or this Option Agreement be determined to be illegal or unenforceable, such provision shall be enforced to the fullest extent allowed by law and the other provisions shall nevertheless remain effective and shall remain enforceable.

18.　　Construction.　The captions used in the Notice and this Option Agreement are inserted for convenience and shall not be deemed a part of the Option for construction or interpretation.　Except when otherwise indicated by the context, the singular shall include the plural and the plural shall include the singular.　Use of the term "or" is not intended to be exclusive, unless the context clearly requires otherwise.

19.　　Administration and Interpretation.　Any question or dispute regarding the administration or interpretation of the Notice, the Plan or this Option Agreement shall be submitted by the Grantee or by the Company to the Administrator.　The resolution of such question or dispute by the Administrator shall be final and binding on all persons.

20.　　Dispute Resolution and Arbitration Procedures.　The Grantee acknowledges and agrees that any dispute, controversy or claim arising out of or relating to the Notice, the Plan or this Option Agreement, including any alleged violation of statute, common law or public policy shall be submitted to final and binding arbitration before Hong Kong International Arbitration Centre (the "HKIAC") to be held in Hong Kong before a single arbitrator, in accordance with the Hong Kong International Arbitration Centre Administered Arbitration Rules (the "HKIAC Rules") then in force.　Each party to the arbitration shall cooperate with each other party to the arbitration in making full disclosure of and providing complete access to all information and documents reasonably requested by such other party in connection with such arbitral proceedings, subject only to any confidentiality obligations binding on such party. The award of the arbitral tribunal shall be final and binding upon the parties thereto, and the prevailing party may apply to a court of competent jurisdiction for enforcement of such award. During the course of the arbitral tribunal's adjudication of any dispute, this Award Agreement shall continue to be performed except with respect to the part in dispute and under adjudication.

21.　　Notices.　Any notice required or permitted hereunder shall be given in writing and shall be deemed effectively given upon personal delivery, upon deposit for delivery by an internationally recognized express mail courier service or upon deposit in the United States mail by certified mail (if the parties are within the United States), with postage and fees prepaid, addressed to the other party at its address as shown in these instruments, or to such other address as such party may designate in writing from time to time to the other party.

22.　　No Disparagement.　The Grantee hereby covenants that, at any time after the date hereof, the Grantee shall not directly or indirectly make any critical, adverse, or disparaging statement or comment about the Company or any of the Company's subsidiaries, affiliates, directors, officers, or employees.

23.　　Non-Competition.　The Grantee hereby agrees that for a period commencing on the date hereof and ending on two (2) years from the Termination Date, the Grantee will not, without the express written consent of the Company, directly or indirectly, engage in any business activity which is, or participate or invest in, or provide or facilitate the provision of financing to, or assist (whether as owner, part-owner, shareholder, partner, director, officer, employee, agent or consultant, or in any other capacity) any business, organization or person other than the Company (or any subsidiary of the Company) whose business, activities, products

or services are competitive with any of the business activities, products or services conducted or offered by the Company and its affiliates.

24. <u>Non-Solicitation</u>. The Grantee hereby agrees that for a period commencing on the date hereof and ending on two (2) years from the Termination Date, the Grantee will not, without the express written consent of the Company, (i) solicit, entice, encourage or intentionally influence, or attempt to solicit, entice, encourage or influence, any officer or employee of the Company or any of its affiliates to terminate his or her relationship or employment with the Company or any of its affiliates, (y) solicit, entice, encourage or intentionally influence, or attempt to solicit, entice, encourage or influence, any client, supplier or business partner of the Company or any of its affiliates to alter, reduce or terminate its business relationship with the Company or any of its affiliates.

25. <u>Confidentiality</u>. From the date hereof to the fifth (5th) anniversary of the Termination Date, the Grantee or his/her permitted assignees pursuant to Section 9 hereof shall keep confidential the terms, conditions, and existence of the Notice of Stock Option Award, the Option Agreement, this Amendment and any related documentation and discussions, the identities of the Parties, the trade secrets and confidential and proprietary information of the Company or any of its affiliates, and other information of a non-public nature in connection herewith and therewith except as the Parties mutually agree or to the extent required by applicable laws.

26. <u>Repurchase of the Shares</u>. Except as otherwise provided in this Agreement, in the case of a material breach of any covenant or undertaking given by the Grantee under Section 23, 24 or 25 of this Agreement, the Company shall have the right (but not the obligation) to repurchase any or all of the Shares which have been issued to the Grantee or other person pursuant to the exercise of the Option at the par value per share of such Shares at any time after such breach. Notwithstanding the foregoing, Grantee shall indemnify, defend and hold harmless the Company and its affiliates, officers, directors, employees and representatives from and against any and all actions, damages, losses, liabilities and expenses in connection with or arising from such breach.

27. This Agreement shall only be binding on and enure for the benefit of the successors, heirs and permitted assignees of the Parties.

**[END OF AGREEMENT]**

# EXHIBIT A

## BYTEDANCE LTD. 2012 STOCK INCENTIVE PLAN

### EXERCISE NOTICE

_____

Attention: Secretary

    1.     Effective as of today, _____, the undersigned (the "Grantee") hereby elects to exercise the Grantee's option to purchase _____ Ordinary Shares (the "Shares") of BYTEDANCE LTD. (the "Company") under and pursuant to the Company's BYTEDANCE LTD. 2012 Stock Incentive Plan, as amended from time to time (the "Plan") and the Stock Option Award Agreement (the "Option Agreement") and Notice of Stock Option Award (the "Notice") dated _____, _____. Unless otherwise defined herein, the terms defined in the Plan shall have the same defined meanings in this Exercise Notice.

    2.     <u>Representations of the Grantee</u>.  The Grantee acknowledges that the Grantee has received, read and understood the Notice, the Plan and the Option Agreement and agrees to abide by and be bound by their terms and conditions.

    3.     <u>Rights as Shareholder</u>.  Until the stock certificate evidencing such Shares is issued (as evidenced by the appropriate entry on the books of the Company or of a duly authorized transfer agent of the Company), no right to vote or receive dividends or any other rights as a shareholder shall exist with respect to the Shares, notwithstanding the exercise of the Option.  The Company shall issue (or cause to be issued) such stock certificate promptly after the Option is exercised, provided however that the issuance of the stock certificate and entry on the register of members of the Company shall be subject to the registration or approval requirement under then applicable laws.  No adjustment will be made for a dividend or other right for which the record date is prior to the date the stock certificate is issued, except as provided in Section 10 of the Plan. Subject to the provisions under the Plan and at the discretion of the Administrator, any Shares issued by the Company may be represented by depositary shares or any other securities representing the ordinary shares, and the Grantee's name may be entered into the register book of the depositary, transfer agent or share plan administrator.

    The Grantee shall enjoy rights as a shareholder until such time as the Grantee disposes of the Shares or the Company and/or its assignee(s) exercises the Right of First Refusal.  Upon such exercise, the Grantee shall have no further rights as a holder of the Shares so purchased except the right to receive payment for the Shares so purchased in accordance with the provisions of the Option Agreement, and the Grantee shall forthwith cause the certificate(s) evidencing the Shares so purchased to be surrendered to the Company for transfer or cancellation.

    Notwithstanding anything to the contrary set forth herein, the Grantee hereby irrevocably grants a power of attorney to the Board or any person designated by the Board to exercise the voting rights with respect to the Shares.

    4.     <u>Delivery of Payment</u>.  The Grantee herewith delivers to the Company the full Exercise Price for the Shares, which, to the extent selected, shall be deemed to be satisfied by

use of the broker-dealer sale and remittance procedure to pay the Exercise Price provided in Section 4(d) of the Option Agreement.

5. <u>Tax Consultation</u>. The Grantee understands that the Grantee may suffer adverse tax consequences as a result of the Grantee's purchase or disposition of the Shares. The Grantee represents that the Grantee has consulted with any tax consultants the Grantee deems advisable in connection with the purchase or disposition of the Shares and that the Grantee is not relying on the Company for any tax advice.

6. <u>Taxes</u>. The Grantee agrees to satisfy all applicable income tax and employment tax withholding obligations and herewith delivers to the Company the full amount of such obligations or has made arrangements acceptable to the Company to satisfy such obligations. If the Company is required to satisfy any applicable income or employment tax withholding obligations as a result of such an early disposition, the Grantee agrees to satisfy the amount of such withholding in a manner that the Administrator prescribes.

7. <u>Restrictive Legends</u>. The Grantee understands and agrees that the Company shall cause the legends set forth below or legends substantially equivalent thereto, to be placed upon any certificate(s) evidencing ownership of the Shares together with any other legends that may be required by the Company or by state or federal securities laws of the United States:

> THE SECURITIES REPRESENTED HEREBY HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 (THE "ACT") OR ANY STATE SECURITIES LAWS AND MAY NOT BE OFFERED, SOLD OR OTHERWISE TRANSFERRED, PLEDGED OR HYPOTHECATED UNLESS AND UNTIL REGISTERED UNDER THE ACT OR, IN THE OPINION OF COUNSEL SATISFACTORY TO THE ISSUER OF THESE SECURITIES, SUCH OFFER, SALE OR TRANSFER, PLEDGE OR HYPOTHECATION IS IN COMPLIANCE THEREWITH.

> THE SHARES REPRESENTED BY THIS CERTIFICATE ARE SUBJECT TO CERTAIN RESTRICTIONS ON TRANSFER AND A RIGHT OF FIRST REFUSAL HELD BY THE ISSUER OR ITS ASSIGNEE(S) AS SET FORTH IN THE OPTION AGREEMENT BETWEEN THE ISSUER AND THE ORIGINAL HOLDER OF THESE SHARES, A COPY OF WHICH MAY BE OBTAINED AT THE PRINCIPAL OFFICE OF THE ISSUER. SUCH TRANSFER RESTRICTIONS AND RIGHT OF FIRST REFUSAL ARE BINDING ON TRANSFEREES OF THESE SHARES.

8. <u>Successors and Assigns</u>. The Company may assign any of its rights under this Exercise Notice to single or multiple assignees, and this agreement shall inure to the benefit of the successors and assigns of the Company. Subject to the restrictions on transfer herein set forth, this Exercise Notice shall be binding upon the Grantee and his or her heirs, executors, administrators, successors and assigns.

9.    Construction.  The captions used in this Exercise Notice are inserted for convenience and shall not be deemed a part of this agreement for construction or interpretation. Except when otherwise indicated by the context, the singular shall include the plural and the plural shall include the singular.  Use of the term "or" is not intended to be exclusive, unless the context clearly requires otherwise.

10.    Administration and Interpretation.  The Grantee hereby agrees that any question or dispute regarding the administration or interpretation of this Exercise Notice shall be submitted by the Grantee or by the Company to the Administrator.  The resolution of such question or dispute by the Administrator shall be final and binding on all persons.

11.    Governing Law; Severability.  This Exercise Notice is to be construed in accordance with and governed by the internal laws of Cayman Islands without regard to conflict of law principles thereunder.  Should any provision of this Exercise Notice be determined by a court of law to be illegal or unenforceable, such provision shall be enforced to the fullest extent allowed by law and the other provisions shall nevertheless remain effective and shall remain enforceable.

12.    Notices.  Any notice required or permitted hereunder shall be given in writing and shall be deemed effectively given upon personal delivery, upon deposit for delivery by an internationally recognized express mail courier service or upon deposit in the United States mail by certified mail (if the parties are within the United States), with postage and fees prepaid, addressed to the other party at its address as shown below beneath its signature, or to such other address as such party may designate in writing from time to time to the other party.

13.    Further Instruments.  The parties agree to execute such further instruments and to take such further action as may be reasonably necessary to carry out the purposes and intent of this agreement.

14.    Entire Agreement.  The Notice, the Plan and the Option Agreement are incorporated herein by reference and together with this Exercise Notice constitute the entire agreement of the parties with respect to the subject matter hereof and supersede in their entirety all prior undertakings and agreements of the Company and the Grantee with respect to the subject matter hereof, and may not be modified adversely to the Grantee's interest except by means of a writing signed by the Company and the Grantee.  Nothing in the Notice, the Plan, the Option Agreement and this Exercise Notice (except as expressly provided therein) is intended to confer any rights or remedies on any persons other than the parties.

Submitted by:                          Accepted by:

GRANTEE:                               BYTEDANCE LTD.

                                       By: _____

_____     Title: _____
            (Signature)

Address:                               Address:

_____     _____

**BYTEDANCE LTD. 2012 STOCK INCENTIVE PLAN**

**INVESTMENT REPRESENTATION STATEMENT**

GRANTEE: _____

COMPANY: BYTEDANCE LTD.

SECURITY: ORDINARY SHARES

AMOUNT: _____

DATE: _____

In connection with the purchase of the above-listed Securities, the undersigned Grantee represents to the Company the following:

     (a)    Grantee is aware of the Company's business affairs and financial condition and has acquired sufficient information about the Company to reach an informed and knowledgeable decision to acquire the Securities. Grantee is acquiring these Securities for investment for Grantee's own account only and not with a view to, or for resale in connection with, any "distribution" thereof within the meaning of the Securities Act of 1933, as amended (the "Securities Act").

     (b)    Grantee acknowledges and understands that the Securities constitute "restricted securities" under the Securities Act and have not been registered under the Securities Act in reliance upon a specific exemption therefrom, which exemption depends upon among other things, the bona fide nature of Grantee's investment intent as expressed herein. Grantee further understands that the Securities must be held indefinitely unless they are subsequently registered under the Securities Act or an exemption from such registration is available. Grantee further acknowledges and understands that the Company is under no obligation to register the Securities. Grantee understands that the certificate evidencing the Securities will be imprinted with a legend which prohibits the transfer of the Securities unless they are registered or such registration is not required in the opinion of counsel satisfactory to the Company.

     (c)    Grantee is familiar with the provisions of Rule 701 and Rule 144, each promulgated under the Securities Act, which, in substance, permit limited public resale of "restricted securities" acquired, directly or indirectly from the issuer thereof, in a non-public offering subject to the satisfaction of certain conditions. Rule 701 provides that if the issuer qualifies under Rule 701 at the time of the grant of the Option to the Grantee, the exercise will be exempt from registration under the Securities Act. In the event the Company becomes subject to the reporting requirements of Section 13 or 15(d) of the Securities Exchange Act of 1934, ninety (90) days thereafter (or such longer period as any market stand-off agreement may require) the Securities exempt under Rule 701 may be resold, subject to the satisfaction of certain of the conditions specified by Rule 144, including: (1) the resale being made through a broker in an unsolicited "broker's transaction" or in transactions directly with a market maker (as said term is defined under the Securities Exchange Act of 1934); and, in the case of an affiliate, (2) the availability of certain public information about the Company, (3) the amount of Securities being sold during any three month period not exceeding the limitations specified in Rule 144(e), and (4) the timely filing of a Form 144, if applicable.

In the event that the Company does not qualify under Rule 701 at the time of grant of the Option, then the Securities may be resold in certain limited circumstances subject to the provisions of Rule 144, which requires the resale to occur not less than one year after the later of the date the Securities were sold by the Company or the date the Securities were sold by an affiliate of the Company, within the meaning of Rule 144; and, in the case of acquisition of the Securities by an affiliate, or by a non-affiliate who subsequently holds the Securities less than two (2) years, the satisfaction of the conditions set forth in sections (1), (2), (3) and (4) of the paragraph immediately above.

(d)     Grantee further understands that in the event all of the applicable requirements of Rule 701 or 144 are not satisfied, registration under the Securities Act, compliance with Regulation A, or some other registration exemption will be required; and that, notwithstanding the fact that Rules 144 and 701 are not exclusive, the Staff of the Securities and Exchange Commission has expressed its opinion that persons proposing to sell private placement securities other than in a registered offering and otherwise than pursuant to Rules 144 or 701 will have a substantial burden of proof in establishing that an exemption from registration is available for such offers or sales, and that such persons and their respective brokers who participate in such transactions do so at their own risk.  Grantee understands that no assurances can be given that any such other registration exemption will be available in such event.

(e)     Grantee represents that Grantee is a resident of _____.

Signature of Grantee:

_____

Date: _____, _____

# Ex. 6

Dated August 22, 2017

**Tank Exchange, Inc.**
(as Assignor)

and

**Bytedance Inc.**
(as Assignee)

---

## Patent Assignment Agreement

---

# CONTENTS

**Clause**                                                    **Page**

1.   DEFINITIONS AND INTERPRETATION                            2

2.   ASSIGNMENT                                                3

3.   FURTHER ASSURANCE                                         3

4.   GENERAL                                                   4

**SCHEDULE 1 THE PATENTS**                                     6

Part 1 Registered Patents                                     6

**THIS AGREEMENT** is made on _____, 2017.

**BETWEEN:**

(1)     **Tank Exchange, Inc.**, a company incorporated and registered in **Delaware, United States**, with company number **5744699** (the "**Assignor**"); and

(2)     **Bytedance Inc.**, a company incorporated and registered in **Delaware, United States**, with company number **5943290** (the "**Assignee**").

**BACKGROUND**

(A)     Pursuant to the (i) Patent Registration Application for "Commodity Exchange for Pre-Purchasing Commodities and Trading Future Rights to Receive Commodities" and (ii) Combined Assignment/Declaration by Yintao Yu dated December 5, 2015, the Assignor is the owner of Patents (as defined below).

(B)     The Assignor and Assignee desire that the Patents be assigned by the Assignor to the Assignee on the terms set out in this Agreement.

IT IS AGREED as follows:

**1.     DEFINITIONS AND INTERPRETATION**

1.1     **Definitions**

        In this Agreement, save as otherwise specifically provided the following words have the following meanings:

        "**Agreement**" means this Patent assignment;

        "**Encumbrance**" means any mortgage, charge, pledge, option, licence, attachment, restriction, prior assignment, security interest, title retention, preferential right, lien, right of pre-emption, right of set-off or any limitation or restriction howsoever created or arising upon the ability of the Assignor to assign the Patents; and

        "**Patents**" means the registered Patents and the applications owned by the Assignor, short particulars of which are set out in Schedule 1, together with any and all inventions subsisting therein or relating thereto. The Combined Assignment/Declaration by Yintao Yu dated December 5, 2015 is also set out in Schedule 1.

1.2     **Interpretation**

        In this Agreement (except where the context otherwise requires):

        (a)     any reference to the Background or a Clause or Schedule is to the relevant background item, clause or schedule of or to this Agreement.  Any reference to a paragraph is to the relevant paragraph of the Schedule in which it appears;

        (b)     the index and clause headings are included for convenience only and shall not affect the interpretation of this Agreement;

        (c)     reference to a party includes its successors and permitted assigns;

        (d)     reference to "writing" or "written" includes faxes and any non-transitory form of visible reproduction of words (but not e-mail).

3

1.3 **Schedules**

The Schedules form part of this Agreement and shall have effect as if set out in full in the body of this Agreement and any reference to this Agreement includes the Schedules.

2. **ASSIGNMENT**

2.1 In return for a consideration of **US$600,000** from the Assignee, wired to the Assignor's bank account:

Wire Routing Transit Number: 121000248

Bank Name: Wells Fargo Bank

City, State: San Francisco, California

Account Number: 5609343701

Title of account: Tank Exchange, Inc.

and receipt of which the Assignor hereby acknowledges, the Assignor hereby assigns with full title guarantee to the Assignee absolutely all its right, title and interest in and to the Patents, subject to all Encumbrances, including:

(a) the absolute entitlement to any registered Patents granted pursuant to any of the applications comprised in the Patents; and

(b) the right to bring, make, oppose, defend, appeal proceedings, claims or actions and obtain relief (and to retain any damages recovered) in respect of any infringement, or any other cause of action arising from ownership of any of the Patents whether occurring before, on or after the date of this Agreement;

(c) all rights to claim priority from the Patents;

(d) all rights to any extensions, renewals or amendments to the Patents;

(e) the right to file divisional applications based on any Patent and to prosecute and obtain grant of patent on each and any such divisional application;

(f) in respect of each and any invention disclosed in the Patents, the right to file an application, claim priority from such application, and prosecute and obtain grant of patent or similar protection in or in respect of any country or territory in the world; and

(g) the right to extend to or register in, or in respect of, any country or territory in the world each and any of the Patents, and each and any of the applications comprised in the Patents or filed as aforesaid, and to extend to or register in or in respect of any country or territory in the world any patent or like protection granted on any of such applications;

3. **FURTHER ASSURANCE**

3.1 The Assignor shall, at its own cost, perform (or procure the performance of) all further acts and things, and execute and deliver (or procure the execution or delivery of) all further documents, necessary or desirable and requested by the Assignee in order to ensure that the full benefit of the right, title and interest assigned and transferred to the Assignee under this Agreement vests in the Assignee, including registration of the Assignee as applicant or registered proprietor of the Patents listed in Part 1 and Part 2 of Schedule 1 at the relevant intellectual property registry or authority.

4

## 4. GENERAL

### 4.1 Waivers

No failure or delay by either party in exercising any right or remedy provided by law under or pursuant to this Agreement shall impair such right or remedy or operate or be construed as a waiver or variation of it or preclude its exercise at any subsequent time and no single or partial exercise of any such right or remedy shall preclude any other or further exercise of it or the exercise of any other right or remedy.

### 4.2 Amendment

No variation of this Agreement shall be valid unless it is in writing and signed by or on behalf of both parties.

### 4.3 Severability

If and to the extent that any provision of this Agreement is held to be illegal, void or unenforceable, such provision shall be given no effect and shall be deemed not to be included in this agreement but without invalidating any of the remaining provisions of this agreement.

### 4.4 Entire Agreement

This agreement sets out the entire agreement and understanding between the parties in respect of the subject matter of this Agreement. It is agreed that:

(a) neither party has entered into this Agreement in reliance upon any representation, warranty or undertaking of the other party which is not expressly set out in this Agreement;

(b) neither party shall have any remedy in respect of misrepresentation or untrue statement made by the other party which is not contained in this Agreement;

(c) this clause shall not exclude any liability for, or remedy in respect of, fraudulent misrepresentation.

### 4.5 Governing law and Dispute Resolution

(a) This Agreement, the relationship between the parties and any non-contractual rights and the performance of the obligations in connection with this Agreement, shall be governed by, and interpreted in accordance with Hong Kong Law.

(b) Each of the parties agree that any dispute, controversy or claim arising out of or relating to this Agreement, including any alleged violation of statute, common law or public policy shall be submitted to final and binding arbitration before Hong Kong International Arbitration Centre (the "HKIAC") to be held in Hong Kong before a single arbitrator, in accordance with the Hong Kong International Arbitration Centre Administered Arbitration Rules (the "HKIAC Rules") then in force. Each party to the arbitration shall cooperate with each other party to the arbitration in making full disclosure of and providing complete access to all information and documents reasonably requested by such other party in connection with such arbitral proceedings, subject only to any confidentiality obligations binding on such party. The award of the arbitral tribunal shall be final and binding upon the parties thereto, and the prevailing party may apply to a court of competent jurisdiction for enforcement of such award. During the course of the arbitral tribunal's adjudication of any dispute, this Award Agreement shall continue to be performed except with respect to the part in dispute and under adjudication.

5

## 4.6    No Third Party Rights

A person who is not a party to this Agreement shall have no right under the Contracts (Rights of Third Parties) Act 1999 to enforce any of its terms.

**EACH PARTY** has executed this Agreement, or caused this Agreement to be executed by its duly authorised representatives.

# SCHEDULE 1

## THE PATENTS

### Part 1
#### Registered Patents and/or Patents Applications

| Country | Title | Filing No. | Filing Date | Registration Date | Registration No. |
|---------|-------|-----------|-------------|-------------------|------------------|
| U S | Commodity ... | 14/918,279 | Oct 20, 2015 | Oct 20, 2015 | 14/918,279 |

### Part 2

**Combined Assignment/Declaration by Yintao Yu dated December 5, 2015**

7

## SIGNATURES

SIGNED by                                    )
Yintao Yu

Title: CEO                                   )

on behalf of Tank Exchange, Inc.            )
                                             )


SIGNED by                                    )
Yiming Zhang

Title: Director                              )

on behalf of                                 )
Bytedance Inc.                               )

8

## Side Letter

This side letter (the "Sider Letter") is made as of  *Aug 27,* 2017 by and between Bytedance Inc. (the "Company"), a company incorporated in Delaware, United States, and **Yintao Yu**, a PRC citizen with PRC passport number E90558407 (the "Employee"), an employee of the Company or its affiliate.

## WITNESSETH:

WHEREAS, the Employee signed an offer letter with Bytedance Inc. on _____, 2017, pursuant to which the Company offered to give a payment for acquisition of US$600,000.

WHEREAS, on  *Aug 22,* 2017, the Company and **Tank Exchange, Inc.**, a company incorporated in Delaware, United States, entered into a patent assignment agreement (the "Patent Assignment Agreement"), pursuant to which the Company agreed to pay US$600,000 for the acquisition of certain patent held by Tank Exchange, Inc.

THEREFORE, the Employee hereby confirms that: by signing and executing the Patent Assignment Agreement with Tank Exchange, Inc., the Company has satisfied its obligation under the offer letter for a payment for acquisition of US$600,000.

*(Remainder of page intentionally left blank.)*

IN WITNESS WHEREOF, each party hereto has caused this Side Letter to be duly executed as of the day and year first above written.

BYTEDANCE INC.

By: _____
Name: YINTAO YU
Title:

Employee:

By: _____

# Ex. 7

# UNDERTAKING AGREEMENT

This Undertaking Agreement (the "Agreement") is made as of _____, 2017 by and between Bytedance Inc. (the "Company"), a company incorporated in Delaware, United States, and <u>Yintao Yu</u>, a PRC citizen with PRC passport number: <u>E90558407</u> (the "Employee"), an employee of the Company or its affiliate. For the purpose of this Agreement, the Company shall include all of its parent, subsidiaries and affiliated companies.

W I T N E S S E T H:

For good and valuable consideration, the receipt of which is hereby acknowledged, the parties hereto hereby agree as follow:

1.      <u>Undertakings and Covenants</u>. The Employee undertakes, covenants and agrees to the Company as follows:

If, within twenty-four (24) months of the first day of the employment with the Company, (i) the Employee voluntarily terminates his employment with the Company for any reason, or (ii) the Employee's employment is terminated by the Company "For Cause" (as defined below), then the Employees shall pay to the Company immediately, an amount of <u>US$100,000</u>.

For purposes of this Agreement, a termination "For Cause" means the Company's termination of the Employee's employment upon the occurrence of the following events, as determined in the reasonable judgment of the Company:

the Employee's conviction of, or pleading guilty or no contest to (i) any felony, (ii) any misdemeanor (other than a traffic violation) during and/or involving the Employee's employment with the Company, or (iii) any other crime involving moral turpitude or that would impair the Employee's ability to perform his duties or impair the business reputation of the Company, in any jurisdiction.

2.      <u>Governing Law</u>.  This Agreement shall be governed by the laws of the Hong Kong.

3.      <u>Dispute Resolution</u>.  Any dispute, controversy or claim arising out of or relating to this Agreement shall be submitted to arbitration upon the request of any party with notice to the other parties.  The arbitration shall be conducted in Hong Kong under the auspices of the Hong Kong International Arbitration Centre (the "HKIAC").  There shall be three arbitrators.  The complainant and the respondent to such dispute shall each select one arbitrator within thirty (30) days after giving or receiving the demand for arbitration.  Such arbitrators shall be freely selected, and the parties shall not be limited in their selection to any prescribed list.  The Chairman of the HKIAC shall select the third arbitrator, who shall be qualified to practice law in Hong Kong.  If either party to the arbitration does not appoint an arbitrator who has consented to participate within thirty (30) days after selection of the first

arbitrator, the relevant appointment shall be made by the Chairman of the HKIAC. The arbitration proceedings shall be conducted in English. The arbitration tribunal shall apply the arbitration rules of the HKIAC in effect at the time of the arbitration. However, if such rules are in conflict with the provisions of this Section, including the provisions concerning the appointment of arbitrators, the provisions of this Section shall prevail.

4.      Modifications. No change, modification or waiver of any provision hereof shall be valid unless in writing, and signed by the party to be bound.

5.      Severability. If any provision of this Agreement shall, for any reason, be held to be illegal, invalid or unenforceable, such illegality, invalidity or unenforceability shall not affect any other provision of this Agreement, but this Agreement shall be construed as if such illegal, invalid or unenforceable provision had never been contained herein.

6.      No Waiver of Rights. No delay or failure on the part of the Company in exercising any rights under this Agreement and no partial or single exercise thereof, shall constitute a waiver of such rights or of any other rights under this Agreement.

*(Remainder of page intentionally left blank.)*

IN WITNESS WHEREOF, each party hereto has caused this Agreement to be duly executed as of the day and year first above written.

BYTEDANCE INC.

By:_____
Name:
Title:

Employee:

_____
By: Yintao Yu

*[Signature Page]*