CHARLES THOMPSON, State Bar No. 139841
thompsoncha@gtlaw.com
DAVID BLOCH, State Bar No. 184530
david.bloch@gtlaw.com
MELISSA KENDRA, State Bar No. 291905
melissa.kendra@gtlaw.com
ANTHONY E. GUZMAN II, State Bar No. 311580
guzmanan@gtlaw.com
GREENBERG TRAURIG, LLP
101 Second Street, Suite 2200
San Francisco, California 94105
Telephone: 415.655.1300
Facsimile: 415.707.2010

Attorneys for Defendant
BYTEDANCE INC.

GREGORY ISKANDER, State Bar No. 200215
giskander@littler.com
DEMERY RYAN, State Bar No. 217176
dryan@littler.com
LITTLER MENDELSON, P.C.
2049 Century Park East, 5th Floor
Los Angeles, California 90067
Telephone: 310.553.0308
Facsimile: 800.715.1330

Attorneys for Defendant
SHUYI (SELENE) GAO
[*Additional Counsel on Next Page*]

## THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YINTAO YU, an individual, | Case No. 4:23-cv-04910-SI |
| Plaintiff | **NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION** |
| v. | [Originally San Francisco Superior Court No. CGC-23-608845] |
| BYTEDANCE, INC., a Delaware Corporation; SHUYI (SELENE) GAO, an individual, | Date:      Oct. 27 |
| Defendants. | Time:      10:00 a.m. |
| | Location:   Courtroom 1, Floor 17 |
| | State Action filed: September 5, 2023 |
| | Removal Date:      September 25, 2023 |
| | Trial Date:      None |

1

**MOTION TO COMPEL ARBITRATION**

1

## **ADDITIONAL COUNSEL**

2

DAVID S. MAOZ, State Bar No. 233857
   dmaoz@littler.com

3

LITTLER MENDELSON, P.C.

4

Treat Towers 1255 Treat Boulevard, Suite 600
Walnut Creek, California 94597

5

Telephone: 925.932.2468
Facsimile: 925.946.9809

6

7

Attorneys for Defendant
SHUYI (SELENE) GAO

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MOTION TO COMPEL ARBITRATION**

ACTIVE 690699801v3

**TO PLAINTIFF AND HIS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that at 10:00 a.m., October 27, 2023, or as soon thereafter as counsel may be heard in Courtroom 1, 17th Floor before the Honorable Susan Illston of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, defendants Bytedance Inc. and Shuyi (Selene) Gao (collectively, "Defendants") will and hereby do move this Court for an order compelling plaintiff Yintao Yu to arbitration, staying proceedings pending the resolution thereof, and enjoining Yu from continuing to litigate the compelled claims in his concurrent state court proceeding, San Francisco Superior Court, Case No. CGC-23-606246.

This Motion is pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* and the Convention on the Enforcement of Foreign Arbitral Awards (the "Convention"), 9 U.S.C. §§ 201 to 208, which requires the enforcement of arbitration agreements between parties where the agreements satisfy certain Convention requirements. Yu executed several valid and enforceable arbitration agreements that fall under the Convention and delegate the question of arbitrability to the arbitrator or, alternatively, cover the parties and claims at issue. Defendants also move to stay all other matters pending arbitration, 9 U.S.C. § 3, and to enjoin Yu from continuing to litigate compelled claims in his concurrent state court proceeding. *E.g.*, *Prograph Int'l Inc. v. Barhydt*, 928 F. Supp. 983, 988 (N.D. Cal. 1996) (Orrick, J.) (compelling arbitration and enjoining continued litigation of claims pending in separate state court proceeding pursuant to the Convention).

This Motion is based upon this Notice, the below Memorandum of Points and Authorities, the Declaration of Jinmei Xiao, the Declaration of Linlin Fan, the Declaration Meili Wu, the Declaration of Shuyi (Selene) Gao, the Declaration of Charles Thompson, the Declaration of Dr. Linton Mohammed, the Request for Judicial Notice, the complete files and records in this case, and all other information the Court deems relevant and proper for consideration.

///

///

///

**MOTION TO COMPEL ARBITRATION**
ACTIVE 690699801v3

1

Dated: October 5, 2023                          GREENBERG TRAURIG, LLP

2
                                        By:     */s/ Anthony E. Guzman II*
3                                               Charles O. Thompson
                                                David Bloch
4                                               Melissa Kendra
                                                Anthony E. Guzman II
5
                                                Attorneys for Defendant
6                                               BYTEDANCE INC.

7

8
Dated: October 5, 2023                          LITTLER MENDELSON, P.C.
9
                                        By:     */s/ Demery Ryan*
10                                              Gregory Iskander
                                                Demery Ryan
11                                              David Maoz
12
                                                Attorneys for Defendant
13                                              SHUYI (SELENE) GAO

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MOTION TO COMPEL ARBITRATION**

1

# <u>TABLE OF CONTENTS</u>

I. INTRODUCTION ...........................................................................................8

II. STATEMENT OF THE CASE........................................................................9

    A.    Yu Executed Several Agreements to Arbitrate Claims Related to His Employment and Its Various Terms .............................................................9

    B.    The Layoff of Flipagram's Engineering and Business Development Teams Is Announced in March 2018....................................................................10

    C.    Yu Launches Multiple Suits and a Media Campaign, Claiming to Be the Victim of a Widespread Conspiracy Involving the Chinese Communist Party........11

    D.    Yu Files a Third Lawsuit Seeking Declaratory and Injunctive Relief Against Attempts to Compel His Claims to Arbitration—BDI Again Removes..................12

III. THE CONVENTION REQUIRES ARBITRATION............................................12

    A.    Several Existing Arbitration Agreements Fall Under the Convention ...................13

        1.    There Are Four Written Arbitration Agreements .........................................14

        2.    Each Agreement Sets Arbitration in a Signatory's Territory........................15

        3.    Each Agreement Arises from a Legal Commercial Relationship................15

        4.    Each Agreement Has Ample Foreign Connection........................................16

    B.    The Arbitration Provision of Each Agreement Delegates the Question of Arbitrability to the Arbitrator....................................................................16

    C.    Even Absent Delegation, the Dispute Remains Arbitrable......................................18

    D.    This Court Should Stay Proceedings & Enjoin Yu's Concurrent State Court Action....................................................................................................21

IV. CONCLUSION................................................................................................21

ACTIVE 690699801v3

1

## **TABLE OF AUTHORITIES**

2

3

## **CASES**

4   *AT&T Tech., Inc. v. Commc'n Workers of Am.*
         475 U.S. 643 (1986) ......................................................................................... 18, 20

5

6   *Balen v. Holland Am. Line Inc.*
         583 F.3d 647 (9th Cir. 2009) ................................................................................ 18

7   *Borden, Inc. v. Meiji Milk Prod. Co.*
         919 F.2d 822 (2d Cir. 1990) ................................................................................. 21

8

9   *Brennan v. Opus Bank*
         796 F.3d 1125 (9th Cir. 2015) .............................................................................. 17

10  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*
         207 F.3d 1126 (9th Cir. 2000) .............................................................................. 19

11

12  *Davis v. Cascade Tanks, LLC*
         2014 WL 3695493 (D. Or. July 24, 2014) ............................................................ 15

13

14  *Duval v. Costco Wholesale Corp.*
         2023 U.S. Dist. LEXIS 97688 (N.D. Cal. June 5, 2023) ................................. 18, 19

15  *First Options of Chicago, Inc. v. Kaplan*
         514 U.S. 938 (1995) .............................................................................................. 19

16

17  *Fujitsu Semiconductor Ltd. v. Cypress Semiconductor Corp.*
         2023 WL 3852701 (N.D. Cal. June 5, 2023) .................................................. 13, 17

18

19  *GE Energy Power v. Outokumpu Stainless USA*
         140 S. Ct. 1637 (2020) .......................................................................................... 20

20  *Gilbert v. Bank of Am.*
         2015 WL 1738017 (N.D. Cal. Apr. 8, 2015) ........................................................ 16

21

22  *In re TFT-LCD*
         2011 WL 2650689 (N.D. Cal. 2011) ................................................... 18, 19, 20, 21

23

24  *Jones v. Sea Tow Services Freeport NY Inc.*
         30 F.3d 360 (2d Cir. 1994) ................................................................................... 16

25  *Kalasho v. BMW of North America, LLC*
         520 F. Supp. 3d 1288 (S.D. Cal. 2021) ................................................................ 14

26

27  *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*
         473 U.S. 614 (1985) .............................................................................................. 18

28

**MOTION TO COMPEL ARBITRATION**

ACTIVE 690699801v3

*MouseBelt Labs PTE Ltd. v. Armstrong*
    2023 WL 3735997 (N.D. Cal. May 24, 2023) ................................................................ 15, 20

*Oracle Am., Inc. v. Myriad Grp.*
    724 F.3d 1069 (9th Cir. 2013) ................................................................................ 17

*Prograph Int'l Inc. v. Barhydt*
    928 F. Supp. 983 (N.D. Cal. 1996) ...................................................................... passim

*Quiksilver Greater China Ltd. v. Quiksilver Glorious Sun Licensing Ltd.*
    2012 WL 12878644 (C.D. Cal. Nov. 2, 2012) ............................................................ 13, 15

*Rent-A-Center, West, Inc. v. Jackson*
    561 U.S. 63 (2010) ................................................................................................ 16

*Rodriguez v. Shen Zhen New World I, LLC*
    2014 WL 908464 (C.D. Cal. Mar. 6, 2014) ................................................................ 20

*Rogers v. Royal Caribbean Cruise Line*
    547 F.3d 1148 (9th Cir. 2008) ................................................................................ 15

*Scherk v. Alberto-Culver Co.*
    417 U.S. 506 (1974) ............................................................................................ 12

*Spaeny v. TJX Companies, Inc.*
    2022 WL 334186 (C.D. Cal. Feb. 3, 2022) ................................................................ 14

*White v. Ring LLC*
    2023 U.S. Dist. LEXIS 16427 (C.D. Cal. Jan. 25, 2023) .............................................. 18

*Ziober v. BLB Res., Inc.*
    839 F. 3d 814 (9th Cir. 2016) ................................................................................ 21

**STATUTES**

9 U.S.C. § 201 ................................................................................................................ 12

9 U.S.C. § 202 ........................................................................................................ 13, 16

9 U.S.C. § 206 ................................................................................................................ 21

9 U.S.C. § 3 ................................................................................................................ 3, 21

9 U.S.C. 208 ............................................................................................................ 12, 21

**MOTION TO COMPEL ARBITRATION**

ACTIVE 690699801v3

## I.       INTRODUCTION

Plaintiff Yintao Yu ("Yu") is a disgruntled ex-employee of ByteDance Inc. ("BDI"), who has engaged in a multi-year smear campaign following his 2018 inclusion in a department-wide layoff that affected sixteen other employees. During his employment, Yu entered into four separate agreements to arbitrate disputes arising from or relating to his employment or its terms, among others. Despite this, Yu has now filed three separate California state court lawsuits since his departure. In each case, his tactics to avoid both federal jurisdiction and his contractual obligations to arbitrate his claims have become increasingly desperate.

In November 2022, Yu filed his first action in state court. After BDI removed the action to this Court and moved to compel arbitration, Yu abandoned the proceeding, leading U.S. District Court Judge Susan Illston to dismiss the action for failure to prosecute on April 20, 2023. Eleven days later, Yu filed a second suit in state court, now naming BDI's Head of Talent Acquisition and Human Resources Business Partner of Product and Engineering, Shuyi (Selene) Gao ("Gao"), as an individual defendant. On May 12, 2023, he filed an amended complaint and began a national media campaign alleging—for the first time—that Yu's 2018 termination resulted not from a department-wide layoff but from a sensationalized (and highly political) purported conspiracy involving the Chinese Communist Party.

On July 13, 2023, Defendants removed the second action and again moved to compel arbitration. On September 1, 2023, Judge Illston held that removal was proper because Yu's complaint sounded in part in copyright but dismissed the portions of the complaint that stated federal claims and remanded the remainder to state court—thereby mooting Defendants' pending motion to compel arbitration.

Just four days later, on September 5, 2023, Yu filed this ***third*** separate action, now seeking a judicial determination that he never signed the Employee Confidentiality and Inventions Assignment Agreement ("ECIAA")—the most prominent of the several agreements executed by Yu that require arbitration—and an order enjoining BDI and Gao from seeking to compel arbitration. This is despite Yu's previous written confirmation that he signed the ECIAA as part of an agreement to toll his statute of limitations so that he could file his second action. Regardless, the

**MOTION TO COMPEL ARBITRATION**

face of Yu's newest complaint now unequivocally places in issue the claim that he "never agreed to arbitrate claims against ByteDance or Gao." Third Complaint, ECF 1 p. 17-23, ¶ 20.

Against this backdrop, Defendants removed this now third separate action on September 25, 2023 under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention") based on the Convention's application to the ECIAA and three other alternatively applicable arbitration agreements. These agreements delegate the question of arbitrability to the arbitrator by incorporating either the American Arbitration Association ("AAA") or Hong Kong International Arbitration Centre ("HKIAC") rules. Even absent delegation, the agreements remain valid and enforceable, including towards non-signatories like Gao.

Accordingly, Defendants respectfully requests this Court issue an order to: (1) compel the parties to arbitrate under the ECIAA or one of Yu's other agreements, including his claims that remain pending in his second filed, concurrent state court proceeding; (2) enjoin Yu from continuing to proceed on those claims in state court; and (3) stay this Court's proceedings pending the resolution of the arbitration.

## II.  STATEMENT OF THE CASE

### A.  Yu Executed Several Agreements to Arbitrate Claims Related to His Employment and Its Various Terms

BDI is a United States company that supports the TikTok brand and other mobile social, media, and entertainment platforms in the U.S., and is an operating subsidiary of its foreign-based holding affiliate and ultimate parent, ByteDance Ltd. ("BDL"). In 2017, an affiliate of BDI acquired a video editor and music platform called Flipagram. In June 2017, BDI offered Yu the position of Head of Engineering for Flipagram. Xiao Dec. Ex. 1 ("Offer"). Among other things, the offer agreed to provide Yu a conditional grant of 220,000 BDL stock options and a $600,000 acquisition payment for certain intellectual property connected to Yu's own company, Tank Exchange, while Yu agreed to provide services, including overseas as needed, and comply with confidentiality obligations. *Id.*

///

**MOTION TO COMPEL ARBITRATION**

The parties executed several separate agreements pursuant to and in furtherance of this offer, including an Employee Confidentiality and Inventions Assignment Agreement ("ECIAA"), a Stock Option Award Agreement, a Patent Assignment Agreement, and (according to Yu) an Undertaking Agreement[1]—all containing arbitration clauses. The ECIAA requires binding arbitration in the U.S. for "any dispute, controversy or claim arising out of or relating to or resulting from [Yu's] employment with [BDI] … " pursuant to the AAA rules then in effect. Gao Dec. Ex. 1 ("ECIAA") p. 11 § 10. It made clear he was free to seek legal counsel. *Id.* at p. 1. ("If you have any questions concerning this Agreement, you may wish to consult an attorney"). The Stock Option Award Agreement, Patent Assignment Agreement, and Undertaking Agreement alternatively provide for binding arbitration in Hong Kong for "any dispute, controversy or claim arising out of or relating to" their respective terms, pursuant to the HKIAC rules. Wu Dec. Ex. 1 ("Notice and Stock Option Award Agreement") p. 10 § 20; Fan Dec. Ex. 1 ("Patent Assignment Agreement") p. 5 § 4.5; Xiao Dec. Ex. 4 ("Undertaking Agreement") p. 2-3 § 3.

After review, Yu signed and returned an executed copy of each of these agreements[2] and began work as Head of Engineering for Flipagram. During his brief tenure at Flipagram, Yu consistently displayed unreliable and erratic behavior. He resisted normal onboarding procedures, rarely showed up to work, received multiple warnings for sub-par performance, and surreptitiously installed cameras in his workspace to monitor his team members.

**B.** **The Layoff of Flipagram's Engineering and Business Development Teams Is Announced in March 2018**

In or around March 2018, a reduction in force ("RIF") of Flipagram's engineering and business development teams was formally announced, affecting seventeen employees in total. Thereafter—but, curiously, on the same day—BDI received an email purportedly from Yu's father

---

[1] **Note**: Yu has repeatedly alleged that "the parties signed a two-year term supplemental employment agreement in order to ensure Plaintiff's continued employment at Defendant [which] lasted until August 2019, unless Mr. Yu was terminated "for cause." RJN Ex. 5 ("Second Complaint - Complaint") ¶ 69. The only agreement approximating this description in BDI's records is the Undertaking Agreement, which required Yu to pay back $100,000 in the event he either voluntarily resigned or was terminated for cause within two years. Although BDI has an email confirming it provided this agreement to Yu for signing, it has no record that this was ever signed and returned. Xiao Dec. Ex. 3. Even assuming its execution though, like the other agreements, it too provides for arbitration. *Id.* at Ex. 4.

[2] **Note**: *See* n.1, *supra*.

**MOTION TO COMPEL ARBITRATION**

in China, claiming that Yu had suddenly taken ill and required leave. In deference to his alleged illness, BDI postponed Yu's layoff until July 2018, at which point it sent Yu formal notice of his termination. Bizarrely, Yu refused to accept that he had been laid off; he repeatedly ignored his termination, continued to hold himself out as a BDI employee, and ultimately had to be escorted off BDI's Northern California premises by the Menlo Park Police Department for trespassing. RJN Ex. 9 ("MPPD Incident Report").

### C. Yu Launches Multiple Suits and a Media Campaign, Claiming to Be the Victim of a Widespread Conspiracy Involving the Chinese Communist Party

Yu then pivoted to unsuccessful cryptocurrency speculation. RJN Ex. 10 ("Yu Bankruptcy Dec.") ¶ 1. Beginning in 2022, after he had taken out hard-money loans on several properties, Yu began filing a slew of seven bankruptcy petitions and six lawsuits. *Id.* at ¶ 2. Yu included BDI in his procession of lawsuits, which were only timely filed pursuant to a 2021 tolling agreement whose terms confirmed that "the Employee Confidentiality and Inventions Assignment Agreement [was] entered into between Plaintiff and Defendant as of August 30, 2017." Thompson Decl. Ex. 1 ("June 2021 Tolling Agreement").

In November 2022, Yu filed a lawsuit in San Francisco Superior Court, Case No. CGC-22-603019, alleging retaliation and leave claims. RJN Ex. 1 ("First Complaint"). After removing to the Northern District, Case No. 23-cv-00707-SI, BDI moved to compel arbitration. RJN Ex. 2 ("First MTC Arb."). U.S. District Court Judge Susan Illston dismissed the case for failure to prosecute on April 20, 2023, after Yu failed to respond to BDI's motion to compel arbitration. RJN Ex. 3 ("Order Dismissing First Complaint").

Less than two weeks later, Yu refiled his action back in San Francisco Superior Court, Case No. CGC-23-606246, now naming Gao as an individual defendant and omitting a prior federal claim. RJN Ex. 4 ("Second Complaint"). Yu then amended his complaint—now styled as one for "public injunction" and simultaneously launched a nationwide media campaign alleging widespread conspiratorial collusion between BDI and the Chinese Communist Party to steal and profit from user content on competitor websites, and to retaliate against him for allegedly "blowing the whistle" on such practices. RJN Ex. 5 ("Second Complaint - Amended"). BDI again removed

MOTION TO COMPEL ARBITRATION

and moved to compel arbitration. RJN Ex. 6 ("Second MTC Arb."). Although this Court concluded removal was proper because Yu's claim sounded at least in part in copyright, on September 1, 2023, the Court dismissed the federally preempted portions of Yu's claims and remanded the remainder to state court.

**D.    Yu Files a Third Lawsuit Seeking Declaratory and Injunctive Relief Against Attempts to Compel His Claims to Arbitration—BDI Again Removes**

Four days later, Yu filed the instant action (his third lawsuit), seeking declaratory and injunctive relief in Case No. CGC-23-606246. Third Complaint, ECF 1 p. 17-23. He specifically seeks a declaration that he never signed the ECIAA and thus did not agree to arbitrate any claims and an injunction prohibiting BDI and Gao from seeking to compel him to arbitration. His new claims challenge the very existence of not only the ECIAA but several other of Yu's agreements to arbitrate that equally implicate foreign parties, performance, and property—triggering application of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, implemented in 9 U.S.C. §§ 201 to 208. *Id.* at ¶ 20 ("Plaintiff never agreed to arbitrate claims against ByteDance or Gao"). BDI therefore removed pursuant to the Convention and now, for its third time, moves to compel arbitration.

## III.    THE CONVENTION REQUIRES ARBITRATION

The Convention is an international treaty that Congress adopted "to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520, n.15 (1974); see 9 U.S.C. §§ 201, *et seq*. The Convention "imposes a mandatory duty on the courts of a Contracting State to recognize and enforce an agreement to arbitrate" that falls within the Convention's purview. *Prograph Int'l Inc. v. Barhydt*, 928 F. Supp. 983, 988 (N.D. Cal. 1996) (Orrick, J.).

Here, Yu signed four agreements containing arbitration provisions connected to his employment with BDI, each of which fall under the Convention: the agreements are valid under the Convention; they delegate all questions of arbitrability to the arbitrator; and even absent delegation, the inherently broad scope of each agreement plainly extends to the disputed claims

**MOTION TO COMPEL ARBITRATION**

1    against BDI and Gao that have now spanned several proceedings. The Convention therefore

2    requires this Court to compel Yu to arbitrate those claims, enjoin their continued litigation in state

3    court, and stay these proceedings pending an arbitrable resolution and subsequent entry of the

4    same by this Court. *E.g.*, *Quiksilver Greater China Ltd. v. Quiksilver Glorious Sun Licensing Ltd.*,

5    2012 WL 12878644, *3 (C.D. Cal. Nov. 2, 2012) (compelling arbitration of claims pending in

6    separate state court proceeding pursuant to the Convention); *Prograph*, 928 F. Supp. at 984

7    (compelling arbitration and enjoining continued litigation of claims pending in separate state court

8    proceeding pursuant to the Convention).

9              **A.      Several Existing Arbitration Agreements Fall Under the Convention**

10             Federal courts asked to enforce an agreement under the Convention perform "a 'very

11   limited' inquiry" to decide the following four questions: (1) is there an agreement in writing to

12   arbitrate the subject of the dispute; (2) does the agreement provide for arbitration in the territory of

13   a Convention signatory; (3) does the agreement arise out of a legal, commercial relationship; (4)

14   either: (a) is a party to the agreement not an American citizen; or (b) does the relationship

15   "involve[] property located abroad, envisage[] performance or enforcement abroad, or ha[ve] some

16   other reasonable relation with one or more foreign states." *Prograph*, 928 F. Supp. at 988*; 9

17   U.S.C. § 202; *accord Fujitsu Semiconductor Ltd. v. Cypress Semiconductor Corp.*, 2023 WL

18   3852701, *5 (N.D. Cal. June 5, 2023) (DeMarchi, M.J.). "If these questions are answered in the

19   affirmative, a court is *required* to order arbitration, unless the court finds the agreement to be null

20   and void, inoperable, or incapable of being performed." *Prograph,* 928 F. Supp. at 988 (emphasis

21   in original).

22             Here, four agreements—the ECIAA, the Stock Option Award Agreement, the Patent

23   Assignment Agreement, and (potentially) the Undertaking Agreement—satisfy these requirements

24   and are therefore valid and enforceable under the Convention. According, even should the Court

25   find the ECIAA invalid, several other agreements still require arbitration regardless.

26   ///

27   ///

28   ///

**MOTION TO COMPEL ARBITRATION**

ACTIVE 690699801v3

1                   1.    <u>There Are Four Written Arbitration Agreements</u>

2         Each of the four agreements to arbitrate the subject of this dispute are in writing.[3] The

3    ECIAA provides for arbitration in Los Angeles of "any dispute, controversy, or claim arising out

4    of or relating to or resulting from Employee's employment with Employer, including any alleged

5    violations of statute, common law or public policy." Gao Dec. Ex. 1 § 10. Alternatively, the Stock

6    Option Award Agreement and other agreements arising from Yu's original employment offer

7    provide for arbitration of "any dispute, controversy, or claim arising out of or relating to [those

8    agreements]" in Hong Kong. Wu Dec. Ex. 1 p. 10 § 20; Fan Ex. 1 § 4.5(b); Xiao Dec. Ex. 4 § 3.

9         Three of the four agreements, including the ECIAA and Stock Option Award Agreement,

10   bear Yu's own handwritten signature. The burden to authenticate this signature is "not high,"

11   requiring the court to "merely conclude [] the jury could reasonably find [] the evidence []

12   authentic, not that the jury necessarily would." *Kalasho v. BMW of North America, LLC*, 520 F.

13   Supp. 3d 1288, 1293 (S.D. Cal. 2021). Here, ample evidence supports that conclusion, including

14   reference to comparator signatures on other documents executed by Yu, declarations from Human

15   Resources ("HR") leaders who personally observed Yu's signing, and an expert authorial

16   assessment affirming the signatures' authenticity based on comparator documents executed by Yu.

17   *Spaeny v. TJX Companies, Inc.*, 2022 WL 334186, *2 (C.D. Cal. Feb. 3, 2022) (rejecting forgery

18   argument when employer provided comparator signatures "along with the testimony of a

19   handwriting expert who opine[d] that signatures [were] a match"); Mohammed Dec. Ex. 1

20   ("Forensic Handwriting Examiner Report") p. 7 (concluding that "the evidence contained in the

21   handwriting points rather strongly toward the questioned and known writing have been written by

22   the same individual"); Wu Dec. ¶ 5 (personally observed); Fan Dec. ¶¶ 4, 5 (same).

23        As for the unsigned Undertaking Agreement, Yu is the one who alleged its execution. RJN

24   Ex. 5 ¶ 69 ("[T]he Parties signed a two-year supplemental employment agreement in order to

25   ensure Plaintiff's continued employment at Defendant."). Although BDI has no record of Yu

26   returning a signed copy, supporting emails and declarations show that BDI circulated the last draft

27

28      [3] **Note**: Although Yu's claims plainly relate to his employment and underlying employment agreements, the question of each agreement's scope and coverage of Yu's claims has been appropriately delegated to the arbitrator, discussed *infra* at § III(B).

**MOTION TO COMPEL ARBITRATION**

ACTIVE 690699801v3

of the agreement to Yu just eight days before he allegedly signed it in Beijing, China on August 30, 2017. Xiao Dec. Ex. 3. If Yu signed a "two-year supplemental agreement," it would have been the Undertaking Agreement, which includes an arbitration clause. *See Davis v. Cascade Tanks, LLC*, 2014 WL 3695493, *7 (D. Or. July 24, 2014) (applying Ninth Circuit precedent to find that a written agreement to arbitrate existed for purposes of the Convention, despite plaintiff's claim that he "never actually signed the final version of the … Agreement containing the arbitration clause").

The above confirms both that these agreements exist and that they apply to Yu's claims against BDI and Gao. The collective agreements demonstrate that Yu's recurrent accusation that he never agreed to arbitrate is, at best, woefully unsupported by any evidence and, at worst, an act of outright perjury and fraud on this court.

2.     Each Agreement Sets Arbitration in a Signatory's Territory

Each agreement also provides for arbitration in the territory of a Convention signatory. The ECIAA provides for arbitration in the United States, a Convention signatory. *Prograph*, 928 F. Supp. at 988 ("[T]his Court finds that the arbitration agreement provides for arbitration in the United States, a signatory country of the Convention"); Gao Dec. Ex. 1 § 10(B). The remaining agreements provide for arbitration in Hong Kong—also a signatory to the Convention. *Quiksilver Greater China Ltd.* 2012 WL 12878644, *3 ("The agreement provides for arbitration in Hong Kong, a signatory to the Convention"); Wu Dec. Ex. 1 p. 10 § 20; Fan Ex. 1 § 4.5(b); Xiao Dec. Ex. 4 § 3.

3.     Each Agreement Arises from a Legal Commercial Relationship

Each agreement arises from a commercial legal relationship, namely, Yu's employment relationship with BDI, which involved the exchange of services and intellectual property for compensation and equity. *E.g., MouseBelt Labs*, 2023 WL 3735997, *2-3 ("[T]he Agreements arise out of a legal relationship that is commercial insofar as [plaintiff] exchanged capital and services for future equity and cryptocurrency tokens"); *Rogers v. Royal Caribbean Cruise Line*, 547 F.3d 1148, 1150 (9th Cir. 2008) ("We conclude that their employment contracts are 'considered as commercial' under" 9 U.S.C. § 205); Xiao Dec. Ex. 1 (employment offer outlining basis for other agreements).

MOTION TO COMPEL ARBITRATION

4.     Each Agreement Has Ample Foreign Connection

Each agreement also has sufficient foreign connections. 9 U.S.C. § 202. Each agreement includes at least one non-U.S. party (*i.e.*, Yu), while the ECIAA, Stock Option Award Agreement, and Undertaking Agreement also involve a second (*i.e.*, BDL, BDI's non-U.S. holding affiliate and parent company). *Id.* (foreign party sufficient). The agreements also arise from Yu's employment with BDI—a relationship that contemplated at least partial performance in Beijing and a grant of 220,000 stock options in a foreign company, BDL. *Id.* (foreign performance or property sufficient); *Gilbert v. Bank of Am.*, 2015 WL 1738017, *3 (N.D. Cal. Apr. 8, 2015) (presence of foreign operations sufficient). Finally, each agreement was either actually or allegedly executed in Beijing, communications were conducted in Mandarin, and at least three of the agreements contemplated enforcement in Hong Kong. *Jones v. Sea Tow Services Freeport NY Inc.*, 30 F.3d 360 (2d Cir. 1994) (considering where agreements were presented for signature and place of intended enforcement); Wu Dec. ¶ 5 (signed in Beijing); Fan Ex. ¶¶ 4, 5 (signed in Beijing); Third Complaint, ECF 1 p. 17-23, ¶ 2 ("On a visit to Beijing, Plaintiff signed his specially negotiated employment contract.").

Accordingly, all four agreements satisfy the requirements that mandate this Court's enforcement of said agreements under the Convention. *Prograph*, *supra*, at 988. Thus, even should the Court entertain Yu's unsupported allegations regarding the ECIAA, numerous other agreements compel the same outcome.

**B.     The Arbitration Provision of Each Agreement Delegates the Question of Arbitrability to the Arbitrator**

Each of the parties' arbitration agreements delegate "gateway" questions of arbitrability, including enforceability and coverage of the immediate dispute through their express incorporation of either the AAA Rules or the HKIAC Rules. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) ("[W]e have held that parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy").

///

16

**MOTION TO COMPEL ARBITRATION**

An arbitration agreement's incorporation of the AAA Rules—which provide that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the . . . validity of the agreement"—is sufficient to delegate the threshold questions of arbitrability. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). Indeed, "[v]irtually every circuit to have considered the issue has determined that incorporation of the [AAA] arbitration rules constitutes 'clear and unmistakable' evidence that the parties agreed to arbitrate arbitrability." *Oracle Am., Inc. v. Myriad Grp.*, 724 F.3d 1069, 1072 (9th Cir. 2013).

An arbitration agreement's incorporation of the HKIAC Rules is similarly sufficient to delegate threshold questions of arbitrability. *Fujitsu Semiconductor*, in which the Northern District extended the above logic to a Convention agreement incorporating the Japan Commercial Arbitration Association ("JCAA") Rules, is instructive. *Fujitsu Semiconductor Ltd. v. Cypress Semiconductor Corp.*, 2023 WL 3852701, *5 (N.D. Cal. June 5, 2023) (DeMarchi, M.J.) In *Fujitsu*, the court looked to the language of the JCAA Rules, which provides that "[t]he arbitral tribunal may make a determination on any objection as to the existence or validity of an arbitration agreement and any other matters regarding its jurisdiction," and found such language was "indistinguishable from the language in the AAA rules." *Id.* at *6. It thus concluded that the incorporation of this language delegated questions of arbitrability to the arbitrator pursuant to those rules. The HKIAC Rules at issue here contain almost identical language: "[t]he arbitral tribunal may rule on its own jurisdiction under these Rules, including any objections with respect to the existence, validity or scope of the arbitration agreement." RJN Ex. 8 ("HKIAC Rules") § 19.1. As such, like with the JCAA Rules, incorporation of the HKIAC Rules delegates issues of arbitrability to the arbitrator.

Here, the ECIAA incorporates the AAA Rules, while the remaining agreements incorporate the HKIAC Rules. Gao Dec. Ex. 1 § 10(B); Wu Dec. Ex. 1 p. 10 § 20; Fan Dec. Ex. 1 § 4.5(b); Xiao Dec. Ex. 4 § 3. As such, all four agreements delegate gateway questions of arbitrability to the arbitrator and, thus, "[a] court has no business weighing the merits" of "the threshold issue of arbitrability" in the immediate dispute, including "whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *AT&T Tech., Inc. v. Commc'n Workers*

**MOTION TO COMPEL ARBITRATION**

1    *of Am.*, 475 U.S. 643, 649-50 (1986). This conclusion applies equally to the enforcement of these

2    agreements by non-signatories or third-party beneficiaries, such as Gao. *E.g., White v. Ring LLC*,

3    2023 U.S. Dist. LEXIS 16427, *20 n.3 (C.D. Cal. Jan. 25, 2023) ("Because the issue of who is a

4    proper party to the arbitration is an issue delegated to the arbitrator [by virtue of the incorporated

5    arbitration rules], the Court concludes that the arbitrator should decide if Home Depot may enforce

6    the arbitration agreement in the Ring Terms of Service as a third-party beneficiary."). Compelling

7    arbitration is appropriate on this basis alone.

8                    **C.       Even Absent Delegation, the Dispute Remains Arbitrable**

9            Even without the Agreements' clear and unmistakable delegations, this Court should

10   compel Yu's claims against BDI and Gao to arbitration because: (1) as shown above, the

11   agreements are valid and enforceable under the Convention; and (2) Yu's claims directly arise

12   from or, at minimum, relate to Yu's employment and supporting agreements, including those

13   against non-signatories. Notably, "[d]oubts should be resolved in favor of coverage .... In the

14   absence of any express provision excluding a particular grievance from arbitration, [the U.S.

15   Supreme Court has held that] only the most forceful evidence of a purpose to exclude the claim

16   from arbitration can prevail." *In re TFT-LCD*, 2011 WL 2650689, *4 (Illston, J.) (quoting *AT&T

17   Tech.*, 475 U.S. at 650). Such recognizes "[t]he federal policy favoring enforcement of arbitration

18   agreements [which] 'applies with special force in the field of international commerce.'" *In re TFT-

19   LCD*, 2011 WL 2650689, at *2 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth,

20   Inc.*, 473 U.S. 614, 631 (1985)); *accord Balen v. Holland Am. Line Inc.*, 583 F.3d 647, 652 (9th

21   Cir. 2009) ("questions of arbitrability must be addressed with a healthy regard for the federal

22   policy favoring arbitration").

23           First, there is no reasonable dispute that BDI and Yu entered into *several* valid and

24   enforceable agreements to arbitrate when Yu executed *several* agreements and, by extension, the

25   arbitration clauses therein, discussed *supra*. Courts apply traditional contract principles to

26   determine a contract's existence. *Duval v. Costco Wholesale Corp.*, 2023 U.S. Dist. LEXIS 97688,

27   *6 (N.D. Cal. June 5, 2023) (Hixson, Mag. J.) ("When deciding whether the parties agreed to

28   arbitrate a certain matter (including arbitrability), courts generally ... should apply ordinary state-

---

18

**MOTION TO COMPEL ARBITRATION**

1  law principles that govern the formation of contracts") (quoting *First Options of Chicago, Inc. v.*

2  *Kaplan*, 514 U.S. 938, 944 (1995)). Under these principles, the agreements represented

3  enforceable offers, each supported by their respective consideration of the proposed Head of

4  Engineering for Flipagram position (the ECIAA), 220,000 stock options (Stock Option Award

5  Agreement), or $600,000 (Patent Assignment Agreement and Undertaking Agreement), and

6  accepted by Yu through his physical signature,[4] as authenticated by authorial assessment and

7  corroborated by the surrounding circumstances. Mohammed Dec. Ex. 1. On this record, the burden

8  is both slight and satisfied. *Duval*, 2023 WL 3852694, at *3 (acknowledging "the relatively low

9  threshold to authenticate [a] signature").

10  Second, these agreements impose the broadest possible scope of coverage through their use

11  of the language "any dispute, controversy, or claim arising out of or relating to" Yu's employment

12  and underlying contractual relationships—plainly extending to Yu's claims against BDI and Gao.

13  Gao Dec. Ex. 1 § 10(B); Wu Dec. Ex. 1 p. 10 § 20; Fan Ex. 1 § 4.5(b); Xiao Dec. Ex. 4 § 3.

14  "Under the Ninth Circuit's reasoning, the language 'related to' must be read broadly, to encompass

15  any matter that touches the contractual relationship between the parties [including] matters that,

16  while not arising directly under the contractual relationship, are nevertheless related to it." *In re*

17  *TFT-LCD*, 2011 WL 2650689, *5; *see also Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d

18  1126, 1131 (9th Cir. 2000) ("The record here leaves little doubt that the dispute is subject to

19  arbitration ... The parties' arbitration clause is broad and far reaching: 'Any dispute, controversy or

20  claim arising out of or relating to … this Agreement ... .'").

21  Specifically, the ECIAA extends to any disputes "arising out of or relating to or resulting

22  from Employee's employment with Employer" as the Head of Engineering for Flipagram—plainly

23  "touching on" each claim in both this and Yu's concurrent state court suit. It was in that role that

24  he allegedly "discovered" and "blew the whistle" on the scraping practice, received instruction to

25  "cover up" evidence of its existence, and was subjected to purported retaliation for attempting to

26  oppose it. His wage and unpaid stock option claims derive from the same alleged retaliation in

27  response to his purported opposition to the imaginative, government-involved conspiracy he now

28

---

[4] **Note**: *See*, n.1, *supra*.

**MOTION TO COMPEL ARBITRATION**

ACTIVE 690699801v3

claims. In nearly all cases, Yu damage claims are based his purported equity entitlement under the Stock Option Award Agreement, making its concurrent interpretation inescapable. Wu Dec. Ex. 1 p. 10 § 20. The other agreements round out this picture by showing that nearly every aspect of Yu's original employment offer, and even subsequent modifications, all contemplated arbitration. Fan Ex. 1 § 4.5(b); Xiao Dec. Ex. 4 § 3.

Yu's representations that he did not sign the ECIAA and "never agreed to arbitrate claims against ByteDance or Gao" "falls short of the 'forceful evidence' required" to exclude his claims from coverage. Third Complaint, ECF 1 p. 17-23 ¶ 20; *In re TFT-LCD*, 2011 WL 2650689, *5 (Illston, J.); *accord AT&T Tech.*, 475 U.S. at 650 ("An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute"). Such allegations are contradicted not only by expert authorial assessment but also by the circumstances surrounding the signing of these documents, which clearly corroborate his awareness of and intent to sign them. Mohammed Dec. Ex. 1 p. 7 (concluding that "the evidence contained in the handwriting points rather strongly toward the questioned and known writing have been written by the same individual"). The fact that Yu was presented with and signed *several* arbitration provisions clearly negates his claim that he never signed the ECIAA or otherwise agreed to arbitrate claims against Defendants.

Finally, because the broad language of these agreements establishes their arbitrable scope in terms of claimed subject matter rather than party identity, Yu's claims against non-signatories, such as Gao, are encompassed by the arbitration provisions. Alternatively, Defendants are equally capable of enforcing the agreements under any one of numerous non-signatory enforcement theories, including as third-party beneficiaries, agents, or on equitable estoppel grounds. *GE Energy Power v. Outokumpu Stainless USA*, 140 S. Ct. 1637, 1646 (2020) ("[T]he New York Convention does not conflict with the enforcement of arbitration agreements by non-signatories under domestic-law … doctrines"); *Rodriguez v. Shen Zhen New World I, LLC*, 2014 WL 908464, *5 (C.D. Cal. Mar. 6, 2014) (acknowledging a "third party beneficiary or an agent of one of the parties to the contract may have standing to compel arbitration"); *MouseBelt Labs Pte. Ltd. v. Armstrong*, 2023 WL 3735997, *2–3 (N.D. Cal. May 24, 2023) (allowing non-signatory to enforce

**MOTION TO COMPEL ARBITRATION**

ACTIVE 690699801v3

arbitration agreement under the Convention based on equitable estoppel where non-signatory's alleged conduct allegedly "annihilated the value of [plaintiff's] contractual right to ownership of equity" in defendant's company). For these reasons too, Yu's claims against all Defendants fall within the arbitrable scope of these agreements.

> **D.**   **This Court Should Stay Proceedings & Enjoin Yu's Concurrent State Court Action**

Defendants further request this Court stay this action pending the compelled claims arbitral resolution. Should the Court determine any portion of this matter referable to arbitration, the FAA requires district courts to stay proceedings upon request by either party. 9 U.S.C. § 3; *Ziober v. BLB Res., Inc.*, 839 F. 3d 814, 817 (9th Cir. 2016) ("Section 3 of the FAA specifically directs federal district courts to stay proceedings and compel arbitration of 'of any issue referable to arbitration under an agreement in writing for such arbitration.'"); *In re TFT-LCD*, 2011 WL 2650689, *4 (Illston, J.) ("Arbitration agreements governed by the New York Convention are also governed by Chapter 1 of the FAA to the extent that the FAA and the Convention are not in conflict") (citing 9 U.S.C. § 208).

Concurrently, Defendants request this Court enjoin (or issue an Order to Show Cause ("OSC") as to why it should not enjoin) Yu from continuing to litigate any compelled claims in the concurrent state court proceeding where they still remain pending. Defendants would otherwise "lose all benefit of the arbitration clause[s] if [they] were required to simultaneously litigate this action against [Yu] in state court" and suffer irreparable injury. *E.g.*, *Prograph*, 928 F. Supp. at 992 (Orrick, J.) (granting injunction "[b]ecause petitioners would be irreparably harmed if [the other party] were permitted to continue litigating these claims in state court while the same claims are being arbitrated"); *accord Borden, Inc. v. Meiji Milk Prod. Co.*, 919 F.2d 822, 826 (2d Cir. 1990) ("We hold that entertaining an application for [an] injunction in aid of arbitration [under the Convention] is consistent with the court's powers pursuant to § 206").

## IV.   CONCLUSION

Yu claims that he never signed the ECIAA and "never agreed to arbitrate claims against ByteDance or Gao" are unsupported by corroborating facts, witnesses, or expert testimony. Third

**MOTION TO COMPEL ARBITRATION**

1  Complaint, ECF 1 p. 17-23 ¶ 20. The wealth of evidence is against him. For this reason and other

2  reasons set forth above, Defendants respectfully renew their request for this Court to: (1) compel

3  the parties to arbitrate under the ECIAA or one of Yu's other agreements, including his claims that

4  remain pending in his second filed, concurrent state court proceeding; (2) enjoin Yu from

5  continuing to proceed on those claims in state court; and (3) stay this Court's proceedings pending

6  the resolution of the arbitration. *E.g., Prograph*, 928 F. Supp. at 984 (Orrick, J.) (compelling

7  arbitration and enjoining continued litigation of claims pending in separate state court proceeding

8  pursuant to the Convention).

9

10  Dated: October 5, 2023                         GREENBERG TRAURIG, LLP

11

12                                         By:     */s/ Anthony E. Guzman II*
                                                   Charles O. Thompson
13                                                 David Bloch
                                                   Melissa Kendra
14                                                 Anthony E. Guzman II

15
                                                   Attorneys for Defendant
16                                                 BYTEDANCE INC.

17

18  Dated: October 5, 2023                         LITTLER MENDELSON, P.C.

19

20                                         By:     */s/ Demery Ryan*
                                                   Gregory Iskander
21                                                 Demery Ryan
                                                   David Maoz
22

23                                                 Attorneys for Defendant
                                                   SHUYI (SELENE) GAO
24

25

26

27

28

**MOTION TO COMPEL ARBITRATION**

1

## <u>ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(I)(3)</u>

2

3        I, Anthony E. Guzman II, hereby attest, pursuant to N.D. Cal. Civil Local Rule 5-1, that the

4    concurrence to the filing of this document has been obtained from Demery Ryan, signatory hereto.

5

     Dated: October 5, 2023                    GREENBERG TRAURIG, LLP

6

7                                              By: */s/ Anthony E. Guzman II*
                                               Anthony E. Guzman II

8                                              Attorneys for Defendant

9                                              BYTEDANCE INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MOTION TO COMPEL ARBITRATION**

ACTIVE 690699801v3