1  CHARLES THOMPSON, State Bar No. 139841
    thompsoncha@gtlaw.com
2  DAVID BLOCH, State Bar No. 184530
    guzmanan@gtlaw.com
3  MELISSA KENDRA, State Bar No. 291905
    melissa.kendra@gtlaw.com
4  ANTHONY E. GUZMAN II, State Bar No. 311580
    guzmanan@gtlaw.com
5  GREENBERG TRAURIG, LLP
6  101 Second Street, Suite 2200
7  San Francisco, California 94105
   Telephone: 415.655.1300
8  Facsimile: 415.707.2010

9  Attorneys for Defendant
   BYTEDANCE INC.
10

11              THE UNITED STATES DISTRICT COURT

12         FOR THE NORTHERN DISTRICT OF CALIFORNIA

13

14  YINTAO YU, an individual,              Case No. 4:23-cv-04910-SI

15         Plaintiff                       **REQUEST FOR JUDICIAL NOTICE
                                           IN SUPPORT OF DEFENDANTS'
16         v.                              MOTION TO COMPEL
                                           ARBITRATION AND STAY
17  BYTEDANCE, INC., a Delaware            PROCEEDINGS**
    Corporation; SHUYI (SELENE) GAO, an
18  individual,                            [Originally San Francisco Superior Court
                                           No. CGC-23-608845]
19         Defendants.
                                           State Action filed:  September 5, 2023
20                                         Removal Date:        September 25, 2023
                                           Trial Date:          None
21

22

23

24

25

26

27

28

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO COMPEL ARBITRATION**

ACTIVE 690686139v1

1    Defendant ByteDance Inc. ("BDI") respectfully requests the Court take judicial notice of

2    the following related filings and documents in support of the concurrently filed Motion to Compel

3    Arbitration.

4    **I.    LEGAL STANDARD**

5    Federal Rule of Evidence 201(b) allows courts to judicially notice facts "generally known

6    within the trial court's territorial jurisdiction" or that "can be accurately and readily determined

7    from sources whose accuracy cannot reasonably be questioned." Provided "the court is supplied

8    with the necessary information" to make this determination, the court "must take judicial notice if

9    a party requests it." Fed. R. Evid. 201(b).

10    BDI requests the Court take judicial notice of the below exhibits pursuant to Federal Rule

11    of Evidence 201, including seven related court filings, two publicly available copies of relevant

12    arbitration rules, and one official incident report created and issued by Menlo Park Police

13    Department. All are appropriately noticeable in the Northern District. *See, e.g.*, *Hadley v. Kellogg*

14    *Sales Co.*, 243 F. Supp. 3d 1074, 1086 (N.D. Cal. 2017) ("Public records, including judgments and

15    other publicly filed documents, are proper subjects of judicial notice."); *Meadows v. Dickey's*

16    *Barbecue Rests. Inc.*, 144 F. Supp. 3d 1069, 1078 n.5 (N.D. Cal. 2015) (granting request to "take

17    judicial notice of the AAA rules."); *Beckway v. DeShong*, 717 F. Supp. 2d 908, 912 n.1 (N.D. Cal.

18    2010) (judicially noticing "police reports … as 'matters of public record.'").

19    **II.    DOCUMENTS FOR JUDICIAL NOTICE**

20    Based on the above standard, Defendants request judicial notice of the following:

21    **A.    First Complaint & Proceedings**

22    1.    First Complaint: Attached hereto as ***Exhibit 1*** is a true and correct copy of

23    the complaint in *Yu v. Bytedance Inc.*, filed by plaintiff Yintao Yu ("Yu") on

24    November 17, 2022 in San Francisco Superior Court, Case No. CGC-22-

25    603019, subsequently removed to the U.S. Dist. Ct., Northern District of

26    California, Case No. 23-cv-00707-SI, and found at ECF 1-1 of that federal

27    docket.

28

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO COMPEL ARBITRATION**

ACTIVE 690686139v1

2.   <u>First Motion to Compel Arbitration</u>: Attached hereto as ***Exhibit 2*** is a true and correct copy of the motion to compel arbitration filed by BDI on February 23, 2023, in *Yu v. Bytedance Inc.*, U.S. Dist. Ct., Northern District of California, Case No. 23-cv-00707-SI, and found at ECF 7 of that federal docket.

3.   <u>Order Dismissing First Complaint</u>: Attached hereto as ***Exhibit 3*** is a true and correct copy of this Court's Order dismissing Yu's first complaint, filed by the Court on April 20, 2023 in *Yu v. Bytedance Inc.*, U.S. Dist. Ct., Northern District of California, Case No. 23-cv-00707-SI, and found at ECF 19 of that federal docket.

**B.**   **<u>Second Complaint & Proceedings</u>**

1.   <u>Second Complaint</u>: Attached hereto as ***Exhibit 4*** is a true and correct copy of the complaint in *Yu v. Bytedance Inc.*, *et al.*, filed by Yu on May 1, 2023 in San Francisco Superior Court, Case No. CGC-23-606246, subsequently removed to the U.S. Dist. Ct., Northern District of California, Case No. 3:23-cv-03503-SI, and found at ECF 1-3 of that federal docket.

2.   <u>Second Complaint – Amended</u>: Attached hereto as ***Exhibit 5*** is a true and correct copy of the amended complaint in *Yu v. Bytedance Inc.*, *et al.*, filed by Yu on May 12, 2023 in San Francisco Superior Court, Case No. CGC-23-606246, subsequently removed to the U.S. Dist. Ct., Northern District of California, Case No. 3:23-cv-03503-SI, and found at ECF 1-4 of that federal docket.

3.   <u>Second Motion to Compel Arbitration</u>: Attached hereto as ***Exhibit 6*** is a true and correct copy of the motion to compel arbitration filed by BDI on July 14, 2023, in *Yu v. Bytedance Inc. et al.*, U.S. Dist. Ct., Northern District of California, Case No. 23-cv-00707-SI, and found at ECF 9 of that federal docket.

3

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO COMPEL ARBITRATION**

**C.**     <u>**Arbitration Rules**</u>

       1.     <u>AAA Arbitration Rules</u>: Attached hereto as ***Exhibit 7*** is a true and correct copy of the current American Arbitration Association Employment Arbitration Rules and Mediation Procedures, which are publicly available on the AAA website at:

              https://www.adr.org/sites/default/files/EmploymentRules_Web_2.pdf.

       2.     <u>HKIAC Arbitration Rules</u>: Attached hereto as ***Exhibit 8*** is a true and correct copy of the current Hong Kong International Arbitration Centre Administered Arbitration Rules, which are publicly available on the HKIAC website at:

              https://www.hkiac.org/sites/default/files/ck_filebrowser/PDF/arbitration/201 8%20Rules%20book/2018%20AA%20Rules_English.pdf.

**D.**     <u>**Other Documents**</u>

       1.     <u>Menlo Park PD Incident Report</u>: Attached hereto as ***Exhibit 9*** is a true and correct copy of the Incident Report created by the Menlo Park Police Department after its officers were forced to escort Mr. Yu off the premises of BDI's corporate office for trespassing.

       2.     <u>Bankruptcy Declaration</u>: Attached hereto as ***Exhibit 10*** is a true and correct copy of Mr. Yu's sworn declaration filed on February 15, 2023, in *In re: Y. Roger Yu*, U.S. Dist. Ct., Northern District of California – Bankruptcy Court, Case No. 23-50023 MEH, and found at ECF 42 of that federal docket.

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO COMPEL ARBITRATION**

ACTIVE 690686139v1

1    Dated:  October 5, 2023                    GREENBERG TRAURIG, LLP

2
                                    By:     /s/ Charles Thompson
3                                           Charles O. Thompson
                                            David S. Bloch
4                                           Melissa Kendra
                                            Anthony E. Guzman II
5
6                                           Attorneys for Defendant
                                            BYTEDANCE INC.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                           5
**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO COMPEL ARBITRATION**

# Ex. 1

Yintao Yu
3245 Geary Blvd., #591846,
San Francisco, CA 94118
Email: roger@rogeryu.org

*Plaintiff in Pro Per*

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**11/17/2022**
**Clerk of the Court**
BY: JEFFREY FLORES
Deputy Clerk

## THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF SAN FRANCISCO

**CGC-22-603019**

| | |
|---|---|
| YINTAO YU, | Case No. _____ |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| | **JURY TRIAL DEMANDED** |
| vs. | |
| BYTEDANCE, INC, and DOES 1 through 20, inclusive, | |
| Defendants. | |

Plaintiff YINTAO YU complains and alleges as follows:

**NATURE OF THE CASE**

1.  This case arises out of Plaintiff Yintao "Roger" Yu's termination of employment from Defendant BYTEDANCE, INC., after he had engaged in legally-protected whistleblowing activity, opposed disability discrimination, and shortly after his return from protected medical leave.

**PARTIES**

2.  Plaintiff Yu was an employee of Defendant ByteDance, Inc. from approximately August 2017 until his termination in November 2018.  He is a resident of California.

3.  Upon information and belief, Defendant ByteDance, Inc., is a Delaware corporation, whose primary place of business is San Francisco County, California.

4.  The true names and capacities of Defendants named herein as Does 1 through 20, whether individual, corporate, associate or otherwise, and the true involvement of Defendants sued herein as Does 1 through 20, are unknown to Plaintiff who therefore sues said Defendants by such fictitious names.  Plaintiff will amend this Complaint to show the true names, capacities, and involvement of Does 1 through 20 when ascertained.  Plaintiff is informed and believes and thereon alleges that each of the Defendants designated as a "Doe" is responsible in some manner for the events and happenings referred to herein, and that Plaintiff's injuries and damages as hereinafter set forth were proximately caused by said Defendants.

5.  Plaintiff is informed and believes and thereon alleges that each of the Defendants sued herein is or was the agent, employee, partner and/or representative of one or more of the remaining Defendants, and each of them was at all times acting within the purpose and scope of such agency and employment.  Plaintiff is further informed and believes that each of the Defendants herein gave consent to, ratified and authorized the acts alleged herein to each of the remaining Defendants.

**JURISDICTION AND VENUE**

6.  Venue is proper in this judicial district pursuant to California Code of Civil Procedure § 395(a) and California Government Code § 12965.  Defendant ByteDance, Inc. is

1

registered for business tax certificate with the Office of the Treasurer and Tax Collector, City and County of San Francisco.  Defendant ByteDance, Inc. resides in and transacts business in the County of San Francisco, and is within the jurisdiction of this Court for the purposes of service of process.

## FACTS COMMON TO ALL CAUSES OF ACTION

7.      Plaintiff Yu was hired by Defendant ByteDance, Inc. ("ByteDance" or "Defendant") on or around June 7, 2017, and began working in August 2017.  In addition to his base salary and the option to purchase 220,000 shares of ByteDance stock, Mr. Yu's employment agreement also entitled him to $600,000, to be "paid within 30 days since the offer was signed," for the IP from his company Tank Exchange.

8.      Within the first 30 days of receiving the offer letter, Mr. Yu spoke with ByteDance's hiring manager and in-house counsel.  They told Mr. Yu that ByteDance had concerns about paying him the $600,000 purchase price for Tank Exchange's intellectual property without assurances that he would remain with ByteDance for the long term. ByteDance's representatives encouraged him to sign a multi-year term employment agreement to ensure his continued employment at ByteDance.  Ultimately, the parties agreed upon a 2-year term agreement that was binding on both parties and which superseded the "at will" provision contained in his earlier agreement.  On a visit to Beijing, Mr. Yu signed the employment contract. ByteDance's representatives told him that he would receive a copy of this agreement, but it was never shared with him.  Under the terms of the supplemental employment agreement, the employment relationship was set to last until August 2019, unless Mr. Yu was terminated "for cause."

9.      Shortly after beginning his employment, Mr. Yu became aware that ByteDance had for years engaged in a worldwide scheme to steal and profit from the copyrighted works of others.  The effort involved the use of software to strip copyrighted material from competitor's websites — chiefly, Instagram and Snapchat — and populate its own video services with these videos in an effort to make its own services appear more popular to end users.  These actions

1 were taken without the permission of the content creators and represented an unlawful effort to

2 gain an edge against entrenched online video hosting websites.

3        10.        Upon learning of this program, Mr. Yu was troubled by ByteDance's efforts to

4 skirt legal and ethical lines, not to mention the tremendous class action liability that copyright

5 theft of this magnitude could create for the company.  It was his understanding that stripping

6 copyrighted material from competitors' websites without the creator's permission violated the

7 Digital Millennium Copyright Act and other laws protecting copyrighted works.  Mr. Yu raised

8 these concerns with Wenjia Zhu, formerly Senior VP of Engineering and current Global TikTok

9 R&D Chief at ByteDance, numerous times, as early as October 2017 and again in February and

10 March 2018.  Mr. Zhu reports directly to ByteDance's CEO Yiming Zhang.  When informed of

11 Mr. Yu's concerns with the program, Mr. Zhu was dismissive of them, and the copyright

12 infringement continued unabated.

13        11.        In addition, on or around December 2017, Mr. Yu learned of efforts to terminate a

14 U.S. based employee, Witness A,[1] who suffered from depression.  Witness A, who had

15 demonstrably strong performance, had recently requested time off to address her medical

16 condition.  Although Witness A's direct manager, Peiyu "Peggie" Li, was satisfied with her

17 performance and had recently given Witness A a score of "Meets Expectation" on her latest

18 performance review, her skip level manager, Ying Zhi, was not as accommodating.  Without Ms.

19 Li's knowledge, Ms. Zhi had Witness A's performance score lowered to "Improvement Needed,"

20 and had informed HR to fire Witness A upon the formal release of the ratings.  Upon learning of

21 this change, Mr. Yu confronted Ms. Zhi, who admitted that she had made the change because she

22 did not like Witness A taking time off work to address her depression and that she viewed her as

23 a "burden" she "wanted to get rid of."  Ms. Zhi told him that due to Witness A's medical

24 condition, her "cost of management was too high."  It is Mr. Yu's understanding that terminating

25 Witness A if she received a rating of "meets expectations" or above would violate ByteDance

26

27        [1] Plaintiff is not disclosing Witness A's name at this time to protect the privacy of the
witness.  Plaintiff will provide Witness A's name to ByteDance in the course of discovery and

28 under a protective order.

1   policy, which is why Ms. Zhi had intervened to lower her score. Mr. Yu was shocked by Ms.

2   Zhi's admission and requested that she reconsider. However, Ms. Zhi responded that she "won't

3   even consider keeping [Witness A]. Her cost of management is way too high." Following this

4   conversation, Mr. Yu complained to Wei "Ronnie" Hua, ByteDance's Head of HR, about the

5   legality of Ms. Zhi's actions.

6        12.    Ultimately, following Mr. Yu's reporting of the incident to HR, the company

7   decided not to terminate Witness A. However, Ms. Zhi's manager, Nan Zhang, was unhappy

8   with Mr. Yu's decision to intercede on Witness A's behalf, particularly given the fact he did not

9   even work in her department. Mr. Yu was later informed that several of Ms. Zhang's direct

10   reports viewed his actions as a challenge to Ms. Zhang's leadership and authority. Ms. Zhang

11   later became the general manager of ByteDance's entire video-"IES" division — the department

12   in which Mr. Yu worked — and was in a position to retaliate against Mr. Yu for his actions.

13        13.    On or around March 2018, in consultation with his doctor, Mr. Yu was required to

14   take his own medical leave for approximately seven months. On July 18, 2018, Mr. Yu mailed

15   three letters to various supervisors at ByteDance notifying them that, upon consultation with his

16   doctor, he expected to be able to return to work on September 11, 2018. ByteDance claims to

17   have mailed Mr. Yu a notice of termination on July 26, 2018, purportedly due to a reduction in

18   force. ByteDance also claims that on July 27, Bytedance e-mailed Mr. Yu a copy of the

19   termination notice. Mr. Yu never received any of these notices and ByteDance never called him

20   to notify him of his termination, even though the company acknowledges receiving his requests

21   to return to work.[2]

22        14.    In October 2018, Mr. Yu was finally cleared to return to work by his doctor.

23   However, upon returning to the office for the first time, he was told he did not "need to come to

24   work now" and that the company "will contact you later." Mr. Yu remained on ByteDance

25   _____

26        [2] Mr. Yu never received either the written or electronic versions of these notices because the company sent them to old home addresses. The termination letter was sent to Mr. Yu's

27   former address in Seattle, even though his paystubs listed his current address in Palo Alto. Similarly, instead of using his current e-mail address, the company sent the termination notice to

28   old e-mail accounts he no longer used. There is no record of the company attempting to call Mr. Yu to notify him of his termination.

payroll through November 2018 and the first tranche of equity under his stock option award from the company should have vested on August 30, 2017, though ByteDance never vested these shares. In November 2018, Mr. Yu was terminated.

## PROCEDURAL HISTORY

15. On July 25, 2019, Plaintiff filed a complaint of discrimination with California's Department of Fair Employment and Housing (DFEH), pursuant to the California Fair Employment and Housing Act ("FEHA"), Government Code section 12900 *et seq*.

16. Pursuant to the Emergency Rules Related to COVID-19, Emergency Rule 9(a), the statute of limitations on Plaintiff's claims was tolled an additional 178 days, until January 19, 2021.

17. The Parties have entered into a series of Tolling Agreement, whereby the statute of limitations for Plaintiff's claims was tolled through and including November 17, 2022.

## LEGAL CLAIMS

## FIRST CAUSE OF ACTION

### (Retaliation in Violation of Labor Code § 1102.5)

18. Plaintiff re-alleges and incorporates herein by reference each and every allegation of the preceding paragraphs as though fully set forth herein, and alleges as follows:

19. At all times relevant to this Complaint, Defendant has been subject to the requirements of California Labor Code § 1102.5, which applied to Plaintiff as an employee of Defendant.

20. Defendant violated Section 1102.5 by abruptly terminating Plaintiff's employment in retaliation for his reporting and refusals to participate in activity that violated federal and state policy against misappropriating copyrighted material, including the Digital Millennium Copyright Act and other laws protecting copyrighted works. *See* California Civil Code Sec. 3426 *et seq*. In addition, the confidential and proprietary information, including copyrighted material, that Defendant sought to misappropriate were of significant economic value and Plaintiff refused to participate in any action that could reasonably constitute grand theft. *See* California Penal Code § 487.

COMPLAINT FOR DAMAGES AND JURY DEMAND

1      21.    In addition, at all times herein mentioned, FEHA, Gov. Code, § 12940, *et seq*.,

2 was in full force and effect and was fully binding upon Defendant.  Government Code § 12940(a)

3 prohibits an employer from discharging or discriminating against an employee because of a

4 disability or because they are regarded as having a disability.  Defendant violated Section 1102.5

5 by abruptly terminating Plaintiff's employment due to his taking medical leave and for reporting

6 and objecting to Defendant's discrimination against Witness A on the basis of her medical

7 condition.  Further, Defendant retaliated against Plaintiff for disclosing information that he had

8 reasonable cause to believe constituted a violation of California's FEHA to a person with

9 authority over him, or another employee who had the authority to investigate, discover, or correct

10 the violation or noncompliance.

11      22.    As a direct, foreseeable, and proximate result of Defendant's unlawful actions,

12 Plaintiff has suffered and continues to suffer substantial losses in earnings and other employment

13 benefits and has incurred other economic losses, along with attorney's fees and litigation costs.

14      23.    As a direct, foreseeable, and proximate result of Defendant's unlawful actions,

15 Plaintiff has suffered emotional distress, humiliation, shame, anxiety, and embarrassment, all to

16 Plaintiff's damage in an amount to be proven at the time of trial.

17      24.    Defendant committed the acts herein despicably, maliciously, fraudulently, and

18 oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive

19 amounting to malice, and in conscious disregard of the rights and safety of Plaintiff and others.

20 Plaintiff is thus entitled to recover punitive damages from Defendant in an amount according to

21 proof.

22 <u>**SECOND CAUSE OF ACTION**</u>

23 **(Disability Discrimination: Violation of Government Code § 12940(a))**

24      25.    Plaintiff re-alleges and incorporates herein by reference each and every allegation

25 of the preceding paragraphs as though fully set forth herein, and alleges as follows:

26      26.    At all times herein mentioned, California's Fair Employment and Housing Act

27 ("FEHA"), Cal. Gov't Code § 12900, *et seq*., was in full force and effect and was fully binding

28 upon Defendant.  Cal. Gov't Code § 12940(a) prohibits an employer from discharging an

employee because of a physical or mental disability or because he is regarded as having a physical or mental disability.

27. Plaintiff was a qualified individual with a disability, able to perform the essential job duties of his position, with reasonable accommodation. ByteDance's termination of Plaintiff's employment because of his taking medical leave and need for treatment, violated Government Code § 12940(a).

28. As a direct, foreseeable, and proximate result of Defendant's unlawful actions, Plaintiff has suffered and continues to suffer substantial losses in earnings and other employment benefits, and has incurred other economic losses.

29. As a direct, foreseeable, and proximate result of Defendant's unlawful actions, Plaintiff has suffered emotional distress, humiliation, shame, anxiety, and embarrassment, all to Plaintiff's damage in an amount to be proven at the time of trial.

30. Defendant committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of the rights and safety of Plaintiff and others. Plaintiff is thus entitled to recover punitive damages from Defendant in an amount according to proof.

## THIRD CAUSE OF ACTION

### (Failure to Prevent Discrimination: Violation of Government Code § 12940(k))

31. Plaintiff re-alleges and incorporates herein by reference each and every allegation of the preceding paragraphs as though fully set forth herein, and alleges as follows:

32. At all times herein mentioned, FEHA, Gov. Code, § 12940, *et seq.*, was in full force and effect and fully binding upon Defendant. Plaintiff was a member of a group protected by that statute in that he was an employee with a known medical condition and/or physical disability who made a request for a reasonable accommodation to treat his medical condition and/or disability.

33. Defendant violated Government Code § 12940(k) because Defendant failed to take all reasonable steps necessary to prevent discrimination from occurring. Among other

things, Defendant failed to train and adequately supervise its employees in order to ensure that these employees were not violating FEHA in their treatment of other employees.

34.     As a direct, foreseeable, and proximate result of Defendant's unlawful actions, Plaintiff has suffered and continues to suffer substantial losses in earnings and other employment benefits, and has incurred other economic losses.

35.     As a direct, foreseeable, and proximate result of Defendant's unlawful actions, Plaintiff has suffered emotional distress, humiliation, shame, anxiety, and embarrassment, all to Plaintiff's damage in an amount to be proven at the time of trial.

36.     Defendant committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of the rights and safety of Plaintiff and others. Plaintiff is thus entitled to recover punitive damages from Defendant in an amount according to proof.

## FOURTH CAUSE OF ACTION

### (Retaliation in Violation of Government Code § 12940(h))

37.     Plaintiff re-alleges and incorporates herein by reference each and every allegation of the preceding paragraphs as though fully set forth herein, and alleges as follows:

38.     Government Code section 12940(h) makes it an unlawful employment practice for an employer to discriminate against any person because the person has opposed any practices forbidden under the FEHA, including discrimination on the basis of a disability.

39.     Plaintiff opposed and protested ByteDance's discrimination against Witness A and attempts to eliminate her position.  He made these complaints to HR and Witness A's managers.

40.     In response to his complaints, ByteDance terminated his employment.

41.     As a direct, foreseeable, and proximate result of Defendant's unlawful actions, Plaintiff has suffered and continues to suffer substantial losses in earnings and other employment benefits, and has incurred other economic losses.

42.     As a direct, foreseeable, and proximate result of Defendant's unlawful actions, Plaintiff has suffered emotional distress, humiliation, shame, anxiety, and embarrassment, all to

1  Plaintiff's damage in an amount to be proven at the time of trial.

2       43.    Defendant committed the acts herein despicably, maliciously, fraudulently, and

3  oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive

4  amounting to malice, and in conscious disregard of the rights and safety of Plaintiff and others.

5  Plaintiff is thus entitled to recover punitive damages from Defendant in an amount according to

6  proof.

7  **FIFTH CAUSE OF ACTION**

8  **(Interference with CFRA Rights:  Violation of Government Code § 12945.2(t))**

9       44.    Plaintiff re-alleges and incorporates herein by reference each and every allegation

10  of the preceding paragraphs as though fully set forth herein, and alleges as follows:

11       45.    Defendant was subject to the provisions of the CFRA because Defendant

12  employed at least 50 part-time or full-time employees.  Plaintiff was entitled to the benefits of the

13  CFRA because he worked more than twelve months for Defendant and had at least 1250 hours of

14  service in the year preceding his CFRA leave.  Defendant employed at least 50 employees within

15  75 miles of San Francisco during the relevant time period.

16       46.    The CFRA requires an employer to grant leave to an employee to care for the

17  employee's own serious health condition.  The CFRA also requires the employer to reinstate the

18  employee to the same or a comparable job upon completion of the leave.

19       47.    Defendant violated Government Code § 12945.2(t) by failing to reinstate the

20  employee to the same or a comparable job upon completion of the leave.

21       48.    Defendant further violated Section 12945.2(t) by terminating Plaintiff following

22  his return from medical leave.

23       49.    As a direct, foreseeable, and proximate result of Defendant's unlawful actions,

24  Plaintiff has suffered and continues to suffer substantial losses in earnings and other employment

25  benefits and has incurred other economic losses.

26       50.    As a direct, foreseeable, and proximate result of Defendant's unlawful actions,

27  Plaintiff has suffered emotional distress, humiliation, shame, anxiety, and embarrassment, all to

28  Plaintiff's damage in an amount to be proven at the time of trial.

9

51.     Defendant committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of the rights and safety of Plaintiff and others. Plaintiff is thus entitled to recover punitive damages from Defendant in an amount according to proof.

## SIXTH CAUSE OF ACTION

**(Retaliation in violation of the CFRA:  Violation of Government Code § 12945.2(l))**

52.     Plaintiff re-alleges and incorporates herein by reference each and every allegation of the preceding paragraphs as though fully set forth herein, and alleges as follows:

53.     The CFRA requires employers to grant leave to employees to care for the employee's own serious health condition.  The CFRA also requires the employer to reinstate the employee to the same or a comparable job upon completion of the leave.

54.     Defendant violated Government Code § 12945.2(l) by failing to reinstate Plaintiff to the same or a comparable job upon completion of the leave.

55.     Defendant violated Government Code § 12945.2(l) by terminating Plaintiff following his return from medical leave.

56.     As a direct, foreseeable, and proximate result of Defendant's unlawful actions, Plaintiff has suffered and continues to suffer substantial losses in earnings and other employment benefits and has incurred other economic losses.

57.     As a direct, foreseeable, and proximate result of Defendant's unlawful actions, Plaintiff has suffered emotional distress, humiliation, shame, anxiety, and embarrassment, all to Plaintiff's damage in an amount to be proven at the time of trial.

58.     Defendant committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of the rights and safety of Plaintiff and others. Plaintiff is thus entitled to recover punitive damages from Defendant in an amount according to proof.

**SEVENTH CAUSE OF ACTION**

(**Interference with FMLA Rights:  Violation of 29 U.S.C. § 2615(a)(1)**)

59.     Plaintiff re-alleges and incorporates herein by reference each and every allegation of the preceding paragraphs as though fully set forth herein, and alleges as follows:

60.     Defendant was subject to the FMLA because it employed at least 50 part-time or full-time employees.  Defendant employed at least 50 employees within 75 miles of San Francisco during the relevant time period.

61.     Plaintiff was entitled to the benefits of FMLA because he worked more than twelve months for Defendant and had at least 1250 hours of service in the year preceding his FMLA leave.

62.     The FMLA requires an employer to grant leave to an employee to care for the employee's own serious health condition.  Defendant violated 29 U.S.C. § 2615(a)(1) by terminating Plaintiff following his return from medical leave.  Plaintiff's taking of FMLA-protected leave constituted a negative factor in the decision to terminate him.

63.     As a direct, foreseeable, and proximate result of Defendant's unlawful actions, Plaintiff has suffered substantial losses in earnings and other employment benefits, and has incurred other economic losses.

64.     Plaintiff is entitled to liquidated damages pursuant to 29 U.S. Code § 2617(a)(1)(A).

**EIGHTH CAUSE OF ACTION**

(**Breach of Contract**)

65.     Plaintiff re-alleges and incorporates herein by reference each and every allegation of the preceding paragraphs as though fully set forth herein, and alleges as follows:

66.     On or around September 30, 2017, Plaintiff and Defendant entered into a written stock incentive plan, whereby Plaintiff was awarded 220,000 shares in Defendant vesting over a four-year period.  Shortly thereafter, the Parties signed a 2-year term supplemental employment agreement in order to ensure Plaintiff's continued employment at Defendant.  The supplemental employment agreement lasted until August 2019, unless Mr. Yu was terminated "for cause."

67. Plaintiff completed all conditions necessary to satisfy his obligations under his operative employment agreement by continuing to work for Defendant until he was terminated without cause.

68. The first and second tranches of options under the incentive plan were set to vest on August 30, 2017 and 2018, respectively, though ByteDance never vested these shares. Defendant breached the contract by failing to award Plaintiff the options owed to him under the incentive plan.

69. Accordingly, Plaintiff is entitled to the compensation owed under the incentive plan, including the shares already vested at the time of his termination.

## NINTH CAUSE OF ACTION

### (Breach of the Covenant of Good Faith and Fair Dealing)

70. Plaintiff re-alleges and incorporates herein by reference each and every allegation of the preceding paragraphs as though fully set forth herein, and alleges as follows:

71. Plaintiff's employment agreement and stock incentive plan contained an implied-in-law covenant of good faith and fair dealing that neither party would do anything to injure the right of the other party to enjoy the actual benefits of those contracts.

72. Plaintiff performed all of the duties and obligations required of him by Defendant during his employment, including those duties and obligations that would entitle Plaintiff to receive the compensation described in the employment agreement and stock incentive plan.

73. Defendant breached the implied covenant when it took actions to prevent Plaintiff from earning their full compensation owed under these agreements.

74. Defendant's termination of Plaintiff was done in bad faith.

75. As a result of Defendant's bad faith and unfair dealing in performing the terms of the employment agreement and stock incentive plan, Defendant is liable for breaching the covenant of good faith and fair dealing inherent in those agreements.

76. Accordingly, Plaintiff is entitled to the compensation owed under the employment agreement and stock incentive plan, included continued stock option vesting for the term of the

agreements, and the compensation he lost because Defendant unlawfully terminated these contracts.

## TENTH CAUSE OF ACTION

### (Wrongful Termination In Violation Of Public Policy)

77.     Plaintiff re-alleges and incorporates herein by reference each and every allegation of the preceding paragraphs as though fully set forth herein, and alleges as follows:

78.     Plaintiff's employment was terminated by Defendant in violation of fundamental public policies of the State of California, including without limitation, the right to refrain from participating in unlawful conduct (or conduct reasonably believed to be unlawful).

79.     The conduct detailed herein was wrongful and in violation of fundamental public policies of the State of California as reflected in laws that include, without limitation, the California Labor Code, state and federal copyright laws, California Business & Professions Code § 17200, and the California Penal Code.

80.     Defendant's actions were willful and malicious and were committed with the wrongful intent to injure Plaintiff and in reckless disregard of Plaintiff's rights.

81.     As a proximate result of Defendant's actions, Plaintiff has suffered and will continue to suffer damages that include his unvested stock options, loss of salary, bonuses, and other losses along with attorney's fees and litigation costs.

## ELEVENTH CAUSE OF ACTION

### (Unfair Business Practices – Business & Professions Code Section 17200)

82.     Plaintiff re-alleges and incorporates herein by reference each and every allegation of the preceding paragraphs as though fully set forth herein, and alleges as follows:

83.     California Business & Professions Code § 17200 prohibits any unlawful, unfair *or* fraudulent business practices.  By promising Plaintiff valuable equity and then firing him for an unlawful reason and taking back his unvested options, Defendant has engaged in unlawful, unfair, and fraudulent business practices.  Plaintiff is entitled to restitution of the ByteDance stock options that rightfully belong to him but which Defendant has deprived him of possessing.

COMPLAINT FOR DAMAGES AND JURY DEMAND

## **PRAYER FOR RELIEF**

WHEREFORE, Mr. Yu prays for judgment against ByteDance as follows:

1.      For compensatory damages, including but not limited to, lost back pay (including, but not limited to, salary and bonus wages), equity, and fringe benefits and future lost earnings, equity, and fringe benefits, emotional distress, and legal interest, according to proof as allowed by law;

2.      Liquidated damages as allowed by law;

3.      For injunctive relief, including reinstatement and a prohibition on further discrimination or retaliation;

4.      For punitive damages as allowed by law;

5.      For an award to Plaintiff of costs of suit incurred herein and reasonable attorney's fees;

6.      For prejudgment interest and post-judgment interest as allowed by law;

7.      For an injunction to prevent future violations of Government Code § 12940; and,

8.      For an award of such other and further relief as the Court deems just and proper.

DATED: November 17, 2022            Respectfully submitted,

By: *Yintao Yu*
Yintao Yu (Nov 17, 2022 14:55 PST)

     YINTAO YU
     *Plaintiff in Pro Per*

COMPLAINT FOR DAMAGES AND JURY DEMAND

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury of each and every cause of action so triable.

DATED:  November 17, 2022                    Respectfully submitted,


By: _Yintao Yu_____
     Yintao Yu (Nov 17, 2022 14:55 PST)

      YINTAO YU
      *Plaintiff in Pro Per*

# Ex. 2

1  Demery Ryan, Bar No. 217176
   dryan@littler.com
2  David S. Maoz, Bar No. 233857
   dmaoz@littler.com
3  Alexandra Bernstein, Bar No. 327492
   abernstein@littler.com
4  LITTLER MENDELSON P.C.
   2049 Century Park East
5  5th Floor
   Los Angeles, California  90067.3107
6  Telephone:     310.553.0308
   Fax No.:        800.715.1330
7
   Gregory G. Iskander, Bar No. 200215
8  giskander@littler.com
   LITTLER MENDELSON, P.C.
9  Treat Towers
   1255 Treat Boulevard
10 Suite 600
   Walnut Creek, California  94597
11 Telephone:     925.932.2468
   Fax No.:        925.946.9809
12
   Attorneys for Defendant
13 BYTEDANCE INC.

14            UNITED STATES DISTRICT COURT

15          NORTHERN DISTRICT OF CALIFORNIA

16

17 YINTAO YU,                                  Case No. 4:23-cv-00707-KAW

18            Plaintiff,                        **DEFENDANT'S NOTICE OF MOTION
                                               AND MOTION TO COMPEL
19      v.                                      ARBITRATION AND DISMISS
                                               PROCEEDINGS OR IN THE
20 BYTEDANCE, INC., and DOES 1 through 20,      ALTERNATIVE, STAY
   inclusive,                                   PROCEEDINGS PENDING
21                                              COMPLETION OF ARBITRATION;
            Defendants.                         MEMORANDUM OF POINTS AND
22                                              AUTHORITIES IN SUPPORT
                                               THEREOF**

23                                              **IMMEDIATE STAY REQUESTED**

24                                              Date:      May 4, 2023
                                               Time:      1:30 P.M.
25                                              Judge:     Magistrate Judge Kandis A.
                                                            Westmore
26                                              Dept:      TBD
                                               Trial Date: None Set
27                                              Complaint Filed:   November 17, 2022

28

LITTLER MENDELSON
P.C.
Attorneys at Law
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

**TO PLAINTIFF YINTAO YU:**

PLEASE TAKE NOTICE THAT on May 4, 2023, at 1:30 PM, or as soon thereafter as the matter may be heard, in the United States District Court for the Northern District of California, located at in the United States Courthouse located at 1301 Clay Street, Oakland, CA 94612, Defendant ByteDance, Inc. ("Defendant" or "BDI") will move the Court for an Order compelling Plaintiff Yintao Yu ("Plaintiff") to submit his claims against BDI to binding arbitration pursuant to the arbitration provision found in the Employee Confidentiality and Inventions Assignment Agreement ("CIAA") signed by Plaintiff, and dismissing his claims or, in the alternative, staying the above-entitled action pending completion of the arbitration proceedings so ordered.

This Motion is made on the grounds that Plaintiff unequivocally entered into a binding and enforceable Arbitration Provision applicable to this dispute. Plaintiff failed to honor the agreement by proceeding with this litigation, rather than in an arbitral forum, as the Arbitration Provision requires.

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of James Liu, the Declaration of Demery Ryan, Request for Judicial Notice, and all supporting exhibits, all pleading and papers on file in this action, and upon such other matters as may be presented to the Court at the time of the hearing.

Dated: February 23, 2023

LITTLER MENDELSON P.C.


/s/ Demery Ryan
Gregory G. Iskander
Demery Ryan
David S. Maoz
Alexandra Bernstein

Attorneys for Defendant
BYTEDANCE INC.

LITTLER MENDELSON
P.C.
Attorneys at Law
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

1

NOTICE OF MTC ARB & DISMISS OR STAY;
MPA ISO CASE NO. 4:23-CV-00707-KAW

# TABLE OF CONTENTS

**PAGE**

I.   INTRODUCTION ............................................................................................... 1

II.  STATEMENT OF ISSUES TO BE DECIDED. ............................................... 2

III. FACTUAL BACKGROUND .............................................................................. 2

    A.   Plaintiff Signed An Agreement Containing An Arbitration Provision That Requires Him To Submit His Claims To Binding Arbitration. .............................. 2

    B.   Plaintiff's Claims Asserted In This Lawsuit Are Covered By The Arbitration Provision. ................................................................................................. 3

    C.   Plaintiff Has Refused To Submit His Claims To Binding Arbitration. ................. 3

IV.  THE FEDERAL ARBITRATION ACT REQUIRES ARBITRATION OF PLAINTIFF'S CLAIMS. ..................................................................................... 4

    A.   The Arbitration Provision Is Governed By The Federal Arbitration Act. ............. 4

    B.   The Federal Arbitration Act Favors Arbitration. .................................................. 5

    C.   The Arbitration Provision Delegates The Decision About Arbitrability To The Arbitrator. ..................................................................................................... 6

    D.   Even In The Absence Of The Delegation Clause, The Federal Arbitration Act Limits The Court To Determining The Validity And Coverage Of The Arbitration Provision, Which In This Case Is Valid And Covers All Of Plaintiff's Claims. ................................................................................................. 7

        1.   A Valid Agreement To Arbitrate Exists. .................................................... 7

            a.   Plaintiff Assented To The Arbitration Provision In 2017. ............... 8

            b.   The Arbitration Provision Is Supported By Consideration. ............ 8

        2.   Plaintiff's Employment-Related Claims Against Defendant Are Covered By The Parties' Arbitration Provision. .......................................... 9

V.   CALIFORNIA LAW ALSO REQUIRES ARBITRATION OF PLAINTIFF'S CLAIMS. .............................................................................................................. 9

    A.   The Arbitration Provision Applies Equally To Both Parties. ............................. 10

    B.   The Arbitration Provision Provides For A Neutral Arbitrator. ........................... 11

    C.   The Arbitration Provision Provides For Adequate Discovery. ........................... 11

    D.   The Arbitration Provision Provides For Judicial Review Of The Written Arbitration Award. ............................................................................................. 11

    E.   The Arbitration Provision Satisfies Armendariz As To Arbitration Costs. .......... 12

LITTLER MENDELSON
P.C.
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

NOTICE OF MTC ARB & DISMISS OR STAY;
MPA ISO CASE NO. 4:23-CV-00707-KAW

**TABLE OF CONTENTS**
(CONTINUED)

PAGE

F.  The Arbitration Provision Does Not Limit Statutory Remedies............................ 12

VI.   THIS ACTION SHOULD BE DISMISSED OR STAYED PENDING COMPLETION OF BINDING ARBITRATION ............................................................. 13

VII.  IMMEDIATE STAY REQUESTED ................................................................ 13

VIII. CONCLUSION ......................................................................................... 14

LITTLER MENDELSON
P.C.
Attorneys at Law
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

ii

1

**TABLE OF AUTHORITIES**

2

Page

3

**Cases**

4

*Allied-Bruce Terminix Cos. v. Dobson*,
    513 U.S. 265 (1995) ........................................................................................................ 4, 5

*Armendariz v. Foundation Health Psychcare Servs.*,
    24 Cal. 4th 83 (2000) ........................................................................ 10, 11, 12, 13

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) ............................................................................................................ 5

*AT&T Tech. Inc. v. Communications Workers of Am.*,
    475 U.S. 643 (1986) ............................................................................................................ 6

*Bayscene Resident Negotiators v. Bayscene Mobilehome Park*,
    15 Cal. App. 4th 119 (1993) .......................................................................................... 10

*Brennan v. Opus Bank*,
    796 F.3d 1125 (9th Cir. 2015) ...................................................................................... 6, 7

*Citizens Bank v. Alafabco, Inc.*,
    539 U.S. 52 (2003) .............................................................................................................. 5

*Condee v. Longwood Management Corp.*,
    88 Cal. App. 4th 215 (2001) ............................................................................................ 7

*Cronus Invs., Inc. v. Concierge Servs.*,
    35 Cal.4th 376 (2005) ........................................................................................................ 4

*Div. of Labor Law Enforc. v. Transpacific Transp.*,
    69 Cal.App.3d 268 (1977) ................................................................................................ 8

*EEOC v. Waffle House*,
    534 U.S. 279 (2002) ............................................................................................................ 9

*Fadal Machining Ctrs., LLC v. Compumachine, Inc.*,
    461 F. App'x 630 (9th Cir. 2011) .................................................................................... 7

*First Options of Chi., Inc. v. Kaplan*,
    514 U.S. 938 (1995) ............................................................................................................ 7

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991) .............................................................................................................. 5

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
P.C.
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

NOTICE OF MTC ARB & DISMISS OR STAY;
MPA ISO CASE NO. 4:23-CV-00707-KAW

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Green Tree Financial Corp.-Alabama v. Randolph*,
531 U.S. 79 (2000) ........................................................................................ 5

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002) ........................................................................................ 7

*Johnmohammadi v. Bloomingdale's, Inc.*,
755 F.3d 1072 (9th Cir. 2014) ....................................................................... 13

*Jones v. Humanscale Corp.*,
130 Cal. App. 4th 401 (2005) ........................................................................ 9

*Khalatian v. Prime Time Shuttle, Inc.*,
237 Cal.App.4th 651 (2015) .......................................................................... 5

*Leo F. Piazza Paving Co. v. Bebek & Brkich*,
141 Cal. App. 2d 226 (1956) ......................................................................... 8

*Little v. Auto Stiegler, Inc.*,
29 Cal. 4th 1064 (2003) ................................................................................ 10

*Mahamedi IP Law, LLP v. Paradice & Li, LLP*,
2017 WL 2727874 (N.D. Cal. Feb. 14, 2017) ................................................ 14

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
514 U.S. 52 (1995) ..................................................................................... 4, 9

*Metalclad Corp. v. Ventana Envtl. Organizational P'ship*,
109 Cal.App.4th 1705 (2003) ........................................................................ 7

*Moncharsh v. Heily & Blase*,
3 Cal. 4th 1 (1992) ....................................................................................... 10

*Mount Diablo Medical Center v. Health Net of California, Inc.*,
101 Cal. App. 4th 711 (2002) ........................................................................ 4

*Omar v. Ralphs Grocery Co.*,
118 Cal. App. 4th 955 (2004), *rev. denied* .................................................... 7

*Pearson Dental Supplies, Inc. v. Superior Court*,
48 Cal. 4th 665 (2010) .................................................................................. 13

*Perry v. Thomas*,
482 U.S. 483 (1987) ...................................................................................... 4

LITTLER MENDELSON
P.C.
Attorneys at Law
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

iv

NOTICE OF MTC ARB & DISMISS OR STAY;
MPA ISO CASE NO. 4:23-CV-00707-KAW

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Reynolds v. NRC Envtl. Servs. Inc.*,
  2020 WL 6083112 (C.D. Cal. Aug. 24, 2020) ........................................................................ 13

*Rodriguez v. Am. Techs., Inc.*,
  136 Cal.App.4th 1110 (2006) ............................................................................................ 4, 5

*Rosenthal v. Great W. Fin. Sec. Corp.*,
  14 Cal.4th 394 (1996) ........................................................................................................... 7

*Scott v. Yoho*,
  248 Cal.App.4th 392 (2016) ................................................................................................. 5

*Southland Corp. v. Keating*,
  465 U.S. 1 (1984) .................................................................................................................. 5

*Sparling v. Hoffman Constr. Co.*,
  864 F.2d 635 (9th Cir. 1988) .......................................................................................... 2, 13

*Steiner v. Apple Computer, Inc.*,
  2007 WL 4219388 (N.D. Cal. Nov. 29, 2007) ................................................................... 14

*Stewart v. Preston Pipeline Inc.*,
  134 Cal.App.4th 1565 (2005) ............................................................................................... 8

*Strotz v. Dean Witter Reynolds*,
  223 Cal. App. 3d 208 (1990) ................................................................................................ 9

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
  363 U.S. 574 (1960) .............................................................................................................. 7

*United Transp. Union, AFL/CIO v. Southern Cal. Rapid Transit Dist.*,
  7 Cal. App. 4th 804 (1992) ................................................................................................. 10

*Valencia v. Smyth*,
  185 Cal.App.4th 153 (2010) ................................................................................................. 5

*Victrola 89, LLC v. Jaman Props. 8 LLC*,
  46 Cal.App.5th 337 (2020) ................................................................................................... 5

*Volt Info. Sciences v. Bd. of Trustees of the Leland Stanford Jr. Univ.*,
  489 U.S. 468 (1989) .............................................................................................................. 4

LITTLER MENDELSON
P.C.
Attorneys at Law
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

v

# TABLE OF AUTHORITIES
(continued)

**Page**

**Statutes**

9 U.S.C. § 2 ............................................................................................................... 4, 5

9 U.S.C. § 3 ............................................................................................................. 2, 13

Cal. Civ. Proc. Code § 1280 (d) ................................................................................ 11

Cal. Civ. Proc. Code § 1281.2 ............................................................................... 9, 10

Cal. Civ. Code, § 1550 ................................................................................................ 8

Cal. Civ. Code, § 1556 ................................................................................................ 8

LITTLER MENDELSON
P.C.
Attorneys at Law
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

## I.    INTRODUCTION

Defendant ByteDance Inc. ("Defendant" or "BDI") brings this Motion to Compel Arbitration ("Motion") because Plaintiff Yintao Yu ("Plaintiff" or "Yu") entered into a binding agreement to arbitrate while employed by Defendant, requiring Plaintiff to submit all employment-related claims to binding arbitration.  Notwithstanding the unambiguous language of the arbitration provision contained in the Employee Confidentiality and Inventions Assignment Agreement ("Arbitration Provision"), and the fair arbitration procedures set forth therein, Plaintiff now attempts to contravene his obligation to arbitrate his covered claims and dispute by filing suit in Court, instead of proceeding to arbitration as required.  However, because Plaintiff signed the Arbitration Provision and because the Arbitration Provision is a valid binding contract that clearly, expressly, and unambiguously covers all disputes relating to or arising from his employment with Defendant and separation therefrom, Plaintiff must now be compelled to arbitration where he can pursue his claims against Defendant.

Each and every one of Plaintiff's eleven causes of action pertains to his employment relationship with Defendant and, in turn, must be submitted to and proceed in arbitration.  There is no legal, factual, or other ground for Plaintiff to object to or oppose arbitration, and the entire weight of the legal authorities cited herein confirm as much.  Simply put, Plaintiff and Defendant bargained for arbitration, each gave adequate consideration under the law, and went as far as delegating the issue of arbitrability to the arbitrator, which Plaintiff assented to without objection.  Now, Defendant merely wants to obtain the benefit of the bargain that it contracted for with Plaintiff and, as a result, the parties should be ordered to proceed to arbitration.

In sum, the Court should reject Plaintiff's (mistaken or intentional) attempt to avoid his clear contractual obligation to arbitrate this dispute and his causes of action against Defendant, and, in doing so, honor and enforce both federal and state jurisprudence compelling arbitration when a binding agreement applies.  Defendant respectfully requests that the Court compel Plaintiff to arbitrate this dispute, stay all proceedings until the issue of arbitration is determined, and if ordered to arbitrate, dismiss Plaintiff's Complaint, or, in the alternative, stay these proceedings until the arbitration is completed. *See Sparling v. Hoffman Constr. Co*., 864 F.2d 635, 638 (9th Cir. 1988)

LITTLER MENDELSON
P.C.
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

1

NOTICE OF MTC ARB & DISMISS OR STAY;
MPA ISO CASE NO. 4:23-CV-00707-KAW

(court is within its discretion to dismiss where arbitration bars all claims); 9 U.S.C. § 3.

## II. STATEMENT OF ISSUES TO BE DECIDED.

1. Whether the parties have an arbitration agreement that is governed by the FAA.

2. Whether the parties have an arbitration agreement that clearly and unmistakably delegates questions of arbitrability to an arbitrator and if so, to compel Plaintiff to submit his claim to arbitration.

3. If the Court decides the gateway issues, whether the parties have an arbitration agreement that covers Plaintiff's claim against Defendant and if so, to compel Plaintiff to submit his claim to arbitration.

4. Whether the case should be dismissed or stayed pending arbitration.

5. Whether the case should be stayed immediately pending the outcome of this instant motion.

## III. FACTUAL BACKGROUND

### A. Plaintiff Signed An Agreement Containing An Arbitration Provision That Requires Him To Submit His Claims To Binding Arbitration.

BDI is a technology company that creates mobile applications for smartphones and social/media/entertainment platforms that are used by consumers across the United States and around the world. (Declaration of James Liu ("Liu Decl."), ¶ 3.) Defendant hired Plaintiff as an employee of BDI on or around August 30, 2017. (*Id*. ¶ 4.) On August 30, 2017, Plaintiff signed an Employee Confidentiality and Inventions Assignment Agreement ("CIAA"). (*Id.* ¶ 5, Ex. A.) The CIAA contains an Arbitration Provision. The Arbitration Provision states Plaintiff agrees that "any dispute, controversy or claim arising out of or relating to or resulting from Employee's employment with Employer, including any alleged violation of statute, common law or public policy shall be submitted to final and binding arbitration before the American Arbitration Association…" (*Id*. ¶ 5, Ex. A at §10(B).) The Arbitration Provision states that Plaintiff agrees to waive all rights to a jury trial. (*Id*.) The Arbitration Provision sets forth a set of procedures applicable to the arbitration proceeding, including, without limitation, that the arbitration will be governed by the Employment Arbitration Rules and Mediation Procedures of the AAA and the Federal Arbitration Act, that the

LITTLER MENDELSON
P.C.
Attorneys at Law
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

NOTICE OF MTC ARB & DISMISS OR STAY;
MPA ISO CASE NO. 4:23-CV-00707-KAW

arbitrator shall be mutually selected, and that the employer shall pay the arbitrator's fees and arbitration expenses. Plaintiff acknowledged acceptance of the Arbitration Provision by signing his name at the end.  (*Id.* ¶ 5, Ex. A.)

**B.     Plaintiff's Claims Asserted In This Lawsuit Are Covered By The Arbitration Provision.**

On November 17, 2022, Plaintiff filed the instant action in the Superior Court of California, County of San Francisco, alleging the following causes of action arising from his employment with Defendant and separation therefrom: (1) retaliation in violation of Labor Code § 1102.5; (2) disability discrimination in violation of Government Code § 12940(a); (3) failure to prevent discrimination in violation of Government Code § 12940(k); (4) retaliation in violation of Government Code § 12940(h); (5) interference with the California Family Rights Act in violation of Government Code § 112945.2(t); (6) retaliation in violation of the California Family Rights Act in violation of Government Code § 12945.2(l); (7) interference with Family Medical Leave Act rights in violation of 29 U.S.C. § 2615(a)(1); (8) breach of contract; (9) breach of the covenant of good faith and fair dealing; (10) wrongful termination in violation of public policy; and, (11) unfair business practices in violation of Business & Professions Code § 17200.  (Complaint, DKT. 1-1.) Defendant timely removed the action on February 16, 2023.   (Notice of Removal, DKT. 1.)

The Arbitration Provision to which Plaintiff agreed requires Plaintiff to arbitrate any employment-related claims that arise during or resulting from his employment. (Liu Decl., ¶ 5, Ex. A.)   This includes claims alleging "violation of statute, common law or public policy." (Liu Decl., ¶ 5, Ex. A at §10(B).)  All of Plaintiff's alleged claims in the instant lawsuit are clearly encompassed by the Arbitration Provision as they all relate to his employment with Defendant and separation therefrom.

**C.     Plaintiff Has Refused To Submit His Claims To Binding Arbitration.**

Despite agreeing to arbitrate his claims by signing the CIAA containing the Arbitration Provision, Plaintiff filed a Complaint in the Superior Court of San Francisco against Defendant on November 17, 2022. *See generally* Plaintiff's Complaint, DKT 1-1. Upon removal to the Northern District of California, on February 17, 2023, Defendant's Counsel emailed Plaintiff requesting

LITTLER MENDELSON
P.C.
Attorneys at Law
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

3

NOTICE OF MTC ARB & DISMISS OR STAY;
MPA ISO CASE NO. 4:23-CV-00707-KAW

1  Plaintiff stipulate to arbitrate his claims. (Declaration of Demery Ryan ("Ryan Decl.") ¶ 2, Ex. A.)

2  Plaintiff has not responded, necessitating the filing of the instant motion. (Ryan Decl. ¶ 3.)

3  **IV.  THE FEDERAL ARBITRATION ACT REQUIRES ARBITRATION OF PLAINTIFF'S CLAIMS.**

4  **A.  The Arbitration Provision Is Governed By The Federal Arbitration Act.**

5  The FAA provides that any "written provision in . . . a contract evidencing a transaction

6  involving commerce to settle by arbitration a controversy thereafter arising out of such contract or

7  transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law

8  or in equity for the revocation of any contract." 9 U.S.C. § 2. The term "involving commerce" is

9  interpreted broadly so that the FAA governs any agreement that affects commerce in any way. *See*

10  *Allied-Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 270-277, 282 (1995); *Perry v. Thomas*, 482

11  U.S. 483, 490 (1987) (stating that the FAA "embodies Congress' intent to provide for the

12  enforcement of arbitration agreements within the full reach of the Commerce Clause"). Thus, the

13  FAA applies to businesses which operate "within the flow of interstate commerce." *Allied-Bruce*

14  *Terminix Cos. v. Dobson,* 513 U.S. at 277.

15  For state law to apply exclusively to an arbitration agreement, the agreement must opt out

16  of the FAA and express that state law applies. *Mastrobuono v. Shearson Lehman Hutton, Inc*., 514

17  U.S. 52, 63-64 (1995), as explained in *Mount Diablo Medical Center v. Health Net of California,*

18  *Inc.*, 101 Cal. App. 4th 711, 722-723 (2002) (finding portions of the California Arbitration Act

19  ("CAA") applicable only because the choice-of-law paragraph provides that issues of contract

20  validity, interpretation and enforcement shall be governed by California law). *See also Volt Info.*

21  *Sciences v. Bd. of Trustees of the Leland Stanford Jr. Univ*., 489 U.S. 468, 470 (1989) (finding the

22  CAA applied instead of the FAA "in a case where the parties have agreed that their arbitration

23  agreement will be governed by the law of California").

24  Here, the Arbitration Provision expressly provides that it is governed by the FAA. (Liu

25  Decl., ¶ 5, Ex. A at § 10(B).) This alone is sufficient to apply the FAA. *See Cronus Invs., Inc. v.*

26  *Concierge Servs.,* 35 Cal.4th 376, 383 (2005); *Rodriguez v. Am. Techs., Inc.,* 136 Cal.App.4th 1110,

27  1122 (2006). The FAA governs—even absent evidence of an effect on interstate commerce—if the

28  parties so agree. *See Victrola 89, LLC v. Jaman Props. 8 LLC,* 46 Cal.App.5th 337, 355 (2020)

LITTLER MENDELSON
P.C.
Attorneys at Law
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

4

NOTICE OF MTC ARB & DISMISS OR STAY;
MPA ISO CASE NO. 4:23-CV-00707-KAW

("[T]he presence of interstate commerce is not the only manner under which the FAA may apply . . . [T]he parties may also voluntarily elect to have the FAA govern enforcement of the Agreement"); *Valencia v. Smyth,* 185 Cal.App.4th 153, 179 (2010); *Rodriguez v. Am. Techs.,* 136 Cal.App.4th 1110, 1116, 1121(2006).

Furthermore, Defendant's business affects and "involves interstate commerce." *Allied-Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 273–274, 281 (1995). "Involving commerce" is "functional[ly] equivalent" to "affecting commerce," which "normally signals Congress' intent to exercise its Commerce Clause powers to the full." *Id.* at 273. This is so "even if the parties did not contemplate an interstate commerce connection." *Id.* at 281; *accord Citizens Bank v. Alafabco, Inc.,* 539 U.S. 52, 56 (2003). Courts regularly apply the FAA where, as here, a contract involves transactions and communications over email and the Internet. *See Scott v. Yoho,* 248 Cal.App.4th 392, 402 (2016); *Khalatian v. Prime Time Shuttle, Inc.,* 237 Cal.App.4th 651, 658, 663 (2015). Accordingly, the FAA applies and requires arbitration of Plaintiff's claims.

### B.    The Federal Arbitration Act Favors Arbitration.

The FAA creates a general presumption in favor of arbitration and requires the enforcement of a written agreement to arbitrate. 9 U.S.C. § 2; *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991). The FAA was enacted to overcome courts' reluctance to enforce arbitration agreements. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *Allied-Bruce Terminix Cos.*, 513 U.S. at 270. The FAA not only placed arbitration agreements on equal footing with other contracts, but also established a federal policy *in favor* of arbitration. *Concepcion*, 563 U.S. at 339; *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 89-90 (2000); *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). This policy is so compelling that "even claims arising under a statute designed to further important social policies may be arbitrated." *Green Tree*, 531 U.S. at 90.

A court must interpret arbitration agreements liberally, resolving all doubt in favor of arbitration. *See AT&T Tech. Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986), quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960) ("An order to arbitrate the particular grievance should not be denied unless it may be said with

LITTLER MENDELSON
P.C.
Attorneys at Law
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

5

NOTICE OF MTC ARB & DISMISS OR STAY;
MPA ISO CASE NO. 4:23-CV-00707-KAW

positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage.").  Based on the foregoing, this Court should compel Plaintiff to arbitrate this matter.

**C.      The Arbitration Provision Delegates The Decision About Arbitrability To The Arbitrator.**

As a threshold matter, the parties' agreement to arbitrate delegates the decision about whether this dispute is arbitrable to the arbitrator to make.  Once the Court determines that this delegation of authority exists, the dispute must be ordered to arbitration so that the decision about arbitrability can be made by the arbitrator.  *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). If the delegation exists, the court "possesses no power to decide the arbitrability issue[s]" and must return the dispute to arbitration for the arbitrator's review. *Henry Schein*, Inc. v. Archer and White Sales, Inc., 139 S. Ct. 524, 529 (2019); *see also id.* at 528 ("When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract.").

Here, the parties unmistakably delegated the question of arbitrability to the arbitrator, and the dispute must therefore be transferred to arbitration.  In particular, Plaintiff's agreement to arbitrate with Defendant expressly references and incorporates the "Employment Arbitration Rules and Mediation Procedures of the AAA" (the "AAA Rules").  (Liu Decl., ¶ 5, Ex. A at § 10(B).) Under the AAA Rules, the arbitrator has the sole and exclusive power to decide arbitrability as the AAA Rules provide that the arbitrator alone is, "to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."[1]  This clear and unmistakable language compels arbitration of this dispute in its entirety, including arbitrability.

In fact, many state and federal courts throughout California have consistently held that incorporation of the AAA rules constitutes "clear and unmistakable" evidence of the parties' intent to delegate threshold questions of arbitrability to an arbitrator, which compel transfer of such

---

[1]    The AAA Rules are publicly available on AAA's website at https://adr.org/sites/default/files/EmploymentRules-Web.pdf. (Request for Judicial Notice ("RJN") Ex. 1).

LITTLER MENDELSON  
P.C.  
Attorneys at Law  
2049 Century Park East  
5th Floor  
Los Angeles, CA  
90067.3107  
310.553.0308

6

NOTICE OF MTC ARB & DISMISS OR STAY;  
MPA ISO CASE NO. 4:23-CV-00707-KAW

disputes to arbitration. *See, e.g.*, *Brennan*, 796 F.3d at 1130 ("[I]ncorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability."); *Fadal Machining Ctrs., LLC v. Compumachine, Inc*., 461 F. App'x 630, 632 (9th Cir. 2011) (concluding the same language in the AAA Commercial Arbitration Rules was a "clear and unmistakable" delegation of arbitrability questions to the arbitrator).

Given that there is an arbitration agreement in place between the parties that delegates the decision of arbitrability (and any objections or oppositions thereto) to the arbitrator, this Motion should be granted and this dispute should be transferred to arbitration on this ground alone.

**D.** **Even In The Absence Of The Delegation Clause, The Federal Arbitration Act Limits The Court To Determining The Validity And Coverage Of The Arbitration Provision, Which In This Case Is Valid And Covers All Of Plaintiff's Claims.**

The FAA restricts the Court's inquiry at this stage to two threshold questions: (1) whether there is a valid agreement to arbitrate, and (2) whether the agreement covers the dispute. *Howsam v. Dean Witter Reynolds, Inc*., 537 U.S. 79, 83-84 (2002); *Omar v. Ralphs Grocery Co*., 118 Cal. App. 4th 955, 960 (2004), *rev. denied*. Both factors are satisfied here.

**1.** **A Valid Agreement To Arbitrate Exists.**

"[A]rbitration is a matter of contract ...." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582 (1960). Ordinary state-law contract principles thus are used to determine whether the parties agreed to arbitrate. *See First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 944 (1995); *Metalclad Corp. v. Ventana Envtl. Organizational P'ship,* 109 Cal.App.4th 1705, 1712 (2003). Defendant need only show, by a preponderance of the evidence, that an agreement to arbitrate exists. *See Rosenthal v. Great W. Fin. Sec. Corp.,* 14 Cal.4th 394, 413 (1996); *Condee v. Longwood Management Corp*., 88 Cal. App. 4th 215, 218-19 (2001) (a petitioner may prove an arbitration agreement exists by providing the court with a copy or recitation of the agreement's terms). Defendant meets its burden of proving a valid and enforceable arbitration agreement exists because it has produced a signed copy of the Arbitration Provision executed by Plaintiff.

Under California law, a valid contract exists when (1) the parties are capable of contracting,

LITTLER MENDELSON
P.C.
Attorneys at Law
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

7

NOTICE OF MTC ARB & DISMISS OR STAY;
MPA ISO CASE NO. 4:23-CV-00707-KAW

and there is (2) a lawful object, (3) mutual consent, and (4) sufficient cause or consideration. Civ. Code, § 1550; see also *Div. of Labor Law Enforc. v. Transpacific Transp.*, 69 Cal.App.3d 268, 275 (1977). The Arbitration Provision satisfies all of these requirements. **First**, there is no dispute that the Parties are capable of contracting. *See* Civ. Code, § 1556 (stating that, with limited exceptions not applicable here, "[a]ll persons are capable of contracting"). **Second**, there is no dispute that the Parties' agreement to arbitrate had a lawful purpose—i.e., the prompt and efficient resolution of disputes in arbitration. *See Stewart v. Preston Pipeline Inc.*, 134 Cal.App.4th 1565, 1586 (2005).

### a. Plaintiff Assented To The Arbitration Provision In 2017.

Here, Plaintiff freely evidenced his assent to binding arbitration by signing the CIAA and subsequently the Arbitration Provision in 2017. (*See* Liu Decl., ¶ 5, Ex. A.) In determining whether there has been mutual consent to contract, courts only consider the parties' objective intent, that is, what a reasonable person would believe from the outward manifestations of the parties. *Leo F. Piazza Paving Co. v. Bebek & Brkich*, 141 Cal. App. 2d 226, 230 (1956). *See Stewart v. Preston Pipeline Inc.*, 134 Cal. App. 4th 1565, 1587 (2005) ("Mutual assent to contract is based upon objective and outward manifestations of the parties; a party's subjective intent, or subjective consent, therefore is irrelevant."). A party who signs a contract is deemed to assent to its terms, and failure to read or understand the instrument does not affect consent to be bound. *Id.*

In addition, the Arbitration Provision unambiguously and clearly states that *all* employment-related disputes must be resolved through final and binding arbitration, rather than by way of court or jury trial. (*See* Liu Decl., ¶ 5, Ex. A at § 10(B).) Accordingly, a valid agreement to arbitrate all disputes arising out of Plaintiff's employment with Defendant exists and there is simply no plausible basis for Plaintiff to claim he did not assent to the Arbitration Provision requiring him to arbitrate any claims arising out of his employment with Defendant.

### b. The Arbitration Provision Is Supported By Consideration.

Here, the Arbitration Provision requires *both* Defendant and Plaintiff to submit their respective disputes arising out of or related to the employment relationship to arbitration. (*Id.*) The Arbitration Provision states: "This agreement to arbitrate has been freely negotiated and is mutually

LITTLER MENDELSON
P.C.
Attorneys at Law
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

8

NOTICE OF MTC ARB & DISMISS OR STAY;
MPA ISO CASE NO. 4:23-CV-00707-KAW

entered into between the parties." (*Id*.)

"Where an agreement to arbitrate exists, the parties' mutual promises to forego a judicial determination and to arbitrate their disputes provide [sufficient] consideration for each other." *Strotz v. Dean Witter Reynolds*, 223 Cal. App. 3d 208, 216 (1990), overruled on other grounds by *Rosenthal v. Great Western Fin. Securities Corp*., 14 Cal. 4th 394, 882 (1996); *see Jones v. Humanscale Corp.*, 130 Cal. App. 4th 401, 415-16 (2005).

Given these facts and authorities, it is clear that a valid agreement to arbitrate exists.

> ### 2. Plaintiff's Employment-Related Claims Against Defendant Are Covered By The Parties' Arbitration Provision.

"Absent some ambiguity in the agreement . . . it is the language of the contract that defines the scope of disputes subject to arbitration." *EEOC v. Waffle House*, 534 U.S. 279, 289 (2002). *See also Mastrobuono*, 514 U.S. at 57-58. Here, the Arbitration Provision states broadly that it applies to any "dispute, claim, or controversy arising out of or relating to or resulting from Employee's employment with Employer… ." (Liu Decl., ¶ 5, Ex. A at § 10(B).)

There is no question the claims asserted in the instant lawsuit fall directly within the scope of the Arbitration Provision. Each of Plaintiff's claims are based on and relate to his employment with Defendant and arise out of alleged wrongful conduct he claims to have experienced in that context. Therefore, the mandatory and binding Arbitration Provision covers all of the claims in the Complaint.

## V. CALIFORNIA LAW ALSO REQUIRES ARBITRATION OF PLAINTIFF'S CLAIMS

Like the FAA, the California Code of Civil Procedure section 1281.2 requires a Court to order arbitration of any controversy covered by a written agreement to arbitrate. Section 1281.2 provides:

> On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party . . . refuses to arbitrate that controversy, the court **shall** order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists . . .

Cal. Civ. Proc. Code § 1281.2 (emphasis added).

LITTLER MENDELSON
P.C.
Attorneys at Law
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

9

NOTICE OF MTC ARB & DISMISS OR STAY;
MPA ISO CASE NO. 4:23-CV-00707-KAW

Under this statutory provision, California courts have consistently held that the state has a "strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution." *See Moncharsh v. Heily & Blase*, 3 Cal. 4th 1, 9 (1992) (*citing Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street*, 35 Cal. 3d 312, 322 (1983)); *United Transp. Union, AFL/CIO v. Southern Cal. Rapid Transit Dist.*, 7 Cal. App. 4th 804, 808 (1992) ("Doubts as to whether an arbitration clause applies to a particular dispute are to be resolved in favor of sending the parties to arbitration."); *Bayscene Resident Negotiators v. Bayscene Mobilehome Park*, 15 Cal. App. 4th 119, 127 (1993) (noting resolution of disputes by arbitration is "strongly favored").

As explained above, the FAA governs the Arbitration Provision in this case. Thus, this Court need not even consider *Armendariz v. Foundation Health Psychcare Servs.*, 24 Cal. 4th 83 (2000), which sets forth the minimum requirements for an enforceable arbitration agreement under California law. However, even if *Armendariz* applied, the Arbitration Provision satisfies all the requirements set forth in that case, including: (1) a modicum of bilaterality; (2) a neutral arbitrator; (3) adequate discovery; (4) availability of all types of relief otherwise available in court (monetary damages, injunction, reinstatement, etc.); (5) a written arbitration award that permits limited judicial review; and (6) arbitrator's fees and all costs unique to arbitration to be paid by the employer. *See Armendariz*, 24 Cal. 4th at 91; *Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064, 1080-81 (2003).

### A.     The Arbitration Provision Applies Equally To Both Parties.

Under *Armendariz*, the arbitration agreement must apply equally to both parties unless certain "business realities" justify one-sidedness. *Armendariz*, 24 Cal. 4th at 91, 117-18 (arbitration agreement is "unfairly one-sided" in the employment context when employer imposes arbitration on the employee but does not "accept such limitations when it seeks to prosecute a claim against the employee, without at least some reasonable justification for such one-sidedness based on 'business realities.'").

Here, the Arbitration Provision states that it is "mutually entered into between the parties" and requires *both* Plaintiff and Defendant to submit their respective disputes arising out of or related to the employment relationship to arbitration. (*See* Liu Decl., ¶ 5, Ex. A at § 10(B).) Because the

LITTLER MENDELSON P.C.
Attorneys at Law
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

10

NOTICE OF MTC ARB & DISMISS OR STAY;
MPA ISO CASE NO. 4:23-CV-00707-KAW

arbitration provision and all of the procedures within apply equally to both Defendant and Plaintiff for all disputes that might otherwise be resolved in a court of law, the *Armendariz* requirement for providing a "modicum of bilaterality" is easily satisfied.

**B.     The Arbitration Provision Provides For A Neutral Arbitrator.**

Under *Armendariz*, a neutral arbitrator is required, which "is essential to ensuring the integrity of the arbitration process." *Armendariz,* 24 Cal. 4th at 103. The California Arbitration Act requires a neutral arbitrator, which the Code states is one selected jointly by the parties or appointed by the court if the parties cannot jointly select one. Cal. Civ. Proc. Code § 1280 (d).

Here, the Arbitration Provision provides that the "arbitrator shall be selected by mutual agreement of the parties or, if the parties cannot agree, then by striking from a list of arbitrators supplied by the AAA." (Liu Decl., ¶ 5, Ex. A at § 10(B).) By having the parties jointly participate in selecting an Arbitrator, the parties are further ensured that a neutral arbitrator will be selected and the requirement for a neutral arbitrator is met.

**C.     The Arbitration Provision Provides For Adequate Discovery.**

Parties involved in arbitration are "at least entitled to discovery sufficient to adequately arbitrate their statutory claim, including access to essential documents and witnesses, as determined by the arbitrator(s)." *Armendariz*, 24 Cal. 4th at 106.

The Arbitration Provision states that the arbitration will be conducted in accordance with the AAA Rules. (*See* Liu Decl., ¶ 5, Ex. A at § 10(B).) The AAA Rules state that the arbitrator shall have the authority to order discovery, including "deposition, interrogatory, document production, or otherwise . . . to a full and fair exploration of the issues in dispute...". (RJN, Ex. 1., p. 14.) This is adequate discovery and satisfies *Armendariz*'s requirements.

**D.     The Arbitration Provision Provides For Judicial Review Of The Written Arbitration Award.**

*Armendariz* requires written findings to ensure that if the parties seek judicial review, however limited, the court can review the arbitration award to determine if it is consistent with protecting an employee's rights. *Armendariz*, 24 Cal. 4th at 107.

LITTLER MENDELSON
P.C.
Attorneys at Law
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

11

NOTICE OF MTC ARB & DISMISS OR STAY;
MPA ISO CASE NO. 4:23-CV-00707-KAW

The Arbitration Provision requires the arbitrator to "issue a written opinion stating the essential findings and conclusions on which the arbitrator's award is based." (Liu Decl., ¶ 5, Ex. A at § 10(B).) This provision meets the protections provided for in *Armendariz* and ensures fairness in the arbitration.

### E. The Arbitration Provision Satisfies *Armendariz* As To Arbitration Costs.

Under *Armendariz*, an employee cannot be required to "bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court." *Armendariz*, 24 Cal. 4th at 110-111. The employer must pay all types of costs unique to arbitration, including the arbitrator's fees. *Id.* at 113.

Here, the Arbitration Provision states the "employer will pay the arbitrator's fees and arbitration expenses and any other costs unique to the arbitration hearing (recognizing that each side bears its own deposition, witness, expert and attorneys' fees and other expenses to the same extent as if the matter were being heard in court)". (Liu Decl., ¶ 5, Ex. A at § 10(B).) The cost consideration therefore meets the *Armendariz* requirements.

### F. The Arbitration Provision Does Not Limit Statutory Remedies.

The *Armendariz* court found the arbitration provision it examined unenforceable, in part, because of the limitation on the remedies that would have been available to the plaintiff. *Armendariz*, 24 Cal. 4th at 103. The *Armendariz* arbitration provisions limited the plaintiff's recoverable damages to lost wages from the time of discharge until the arbitration award. *Id*.

Unlike *Armendariz*, the Arbitration Provision contains no limitation on the remedies available to Plaintiff in the arbitration. As the Arbitration Provision contains no limitation on the remedies available to Plaintiff in the arbitration, Defendant refers to the applicable AAA rules. The applicable AAA Rules state that "The arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court including awards of attorney's fees and costs, in accordance with applicable law." (RJN, Ex. 1, p. 24.) Because the Arbitration Provision satisfies *Armendariz*, this Court should compel Plaintiff's claims to arbitration.

Finally, each clause described above must be interpreted, "if reasonable, in a manner that renders it lawful . . . ." *Pearson Dental Supplies, Inc. v. Superior Court*, 48 Cal. 4th 665, 682 (2010).

LITTLER MENDELSON
P.C.
Attorneys at Law
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

12

NOTICE OF MTC ARB & DISMISS OR STAY;
MPA ISO CASE NO. 4:23-CV-00707-KAW

1    The Arbitration Provision's terms easily may be interpreted to meet the *Armendariz* standards, and

2    under *Pearson Dental*, any claims where there would be possible interpretations that render the

3    Arbitration Provision unlawful must be rejected.

4    **VI.    THIS ACTION SHOULD BE DISMISSED OR STAYED PENDING COMPLETION OF BINDING ARBITRATION**

5          All of Plaintiff's claims are arbitrable. Therefore, the only appropriate forum for Plaintiff

6    to pursue the claims he has asserted is arbitration, and his court action should be dismissed.

7    *Sparling v. Hoffman Constr. Co*., 864 F.2d 635, 638 (9th Cir. 1988) (court is within its discretion

8    to dismiss where arbitration bars all claims). In the Ninth Circuit, the district court has discretion

9    to dismiss a party's complaint where the court finds that the arbitration clause covers all of the

10   party's claims. *Reynolds v. NRC Envtl. Servs. Inc.*, 2020 WL 6083112, at *8 (C.D. Cal. Aug. 24,

11   2020); *see also, Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014)

12   (affirming dismissal of action where "all of [the plaintiff's] claims fall within the scope of th[e]

13   arbitration agreement"); *Sparling*, 864 F.2d 635 at 638 (affirming dismissal of action where "the

14   arbitration clause was broad enough to bar all of the plaintiff's claims since it required [the plaintiff]

15   to submit all claims to arbitration"). Because the agreement to arbitrate encompasses all of

16   Plaintiff's claims, the Court in its discretion is empowered to choose dismissal instead of a stay.

17   *Reynolds v. NRC Envtl. Servs. Inc.*, 2020 WL 6083112, at *8.  Alternatively, under the FAA, once

18   a district court is satisfied that a matter is referable to arbitration, it "shall . . . stay the trial of the

19   action until such arbitration has been had in accordance with the terms of the agreement ...." 9

20   U.S.C. § 3.

21         Defendant therefore respectfully submits that this Court dismiss Plaintiff's lawsuit entirely,

22   or in the alternative, issue a stay pending arbitration.

23   **VII.   IMMEDIATE STAY REQUESTED**

24         Defendant requests that the Court issue an immediate stay pending resolution of this matter.

25   *See Mahamedi IP Law, LLP v. Paradice & Li, LLP*, 2017 WL 2727874, at *1-2 (N.D. Cal. Feb. 14,

26   2017) (granting motion to stay discovery from defendant pending resolution of motion to compel

27   arbitration); *Steiner v. Apple Computer, Inc.*, 2007 WL 4219388, at *1-2 (N.D. Cal. Nov. 29, 2007)

28

LITTLER MENDELSON
P.C.
Attorneys at Law
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

13

("[Defendant]'s motion to stay is well taken. If [defendant]'s pending motion to compel arbitration is granted, litigation will proceed in an arbitral forum, not in this Court. And [if] a dispute is arbitrable, responsibility for the conduct of discovery lies with the arbitrators . . . .").

## VIII.  CONCLUSION

For the reasons stated above, Defendant respectfully requests that the Court compel Plaintiff to arbitrate his claims and enter an order staying this action pending determination of this motion and, if arbitration is ordered, until such arbitration is completed.

Dated: February 23, 2023

LITTLER MENDELSON P.C.

*/s Demery Ryan*

Gregory G. Iskander
Demery Ryan
David S. Maoz
Alexandra Bernstein
Attorneys for Defendant
BYTEDANCE INC.

4881-4402-4898.9 / 103032-1063

LITTLER MENDELSON
P.C.
Attorneys at Law
2049 Century Park East
5th Floor
Los Angeles, CA
90067.3107
310.553.0308

14

NOTICE OF MTC ARB & DISMISS OR STAY;
MPA ISO CASE NO. 4:23-CV-00707-KAW

# Ex. 3

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

YINTAO YU,

               Plaintiff,

     v.

BYTEDANCE, INC.,

               Defendant.

Case No. 23-cv-00707-SI

**ORDER DISMISSING CASE WITHOUT PREJUDICE FOR FAILURE TO PROSECUTE AND DENYING PENDING MOTIONS AS MOOT**

In an order filed March 21, 2023, the Court informed plaintiff Yintao Yu of resources available to self-represented litigants and set a new briefing schedule for Bytedance's motion to compel arbitration, with Yu's opposition due on April 14, 2023. The March 21 order also informed Yu that if he failed to file a response to the motion to compel, this case could be dismissed for failure to prosecute. Yu did not file a response to the motion to compel, nor has Yu taken any action since Bytedance removed this case from state court on February 16, 2023.

As it appears that Yu is no longer prosecuting this case, the Court DISMISSES this case without prejudice pursuant to Federal Rule of Civil Procedure 41(b).

**IT IS SO ORDERED**.

Dated: April 20, 2023

                           SUSAN ILLSTON
                           United States District Judge

United States District Court
Northern District of California

# Ex. 4

1   CHARLES H. JUNG (217909)
    (charles@njfirm.com)

2   ANDREW R. KISLIK (118772)
    (andy@njfirm.com)

3   JAIME DORENBAUM (289555)
    (jaime@njfirm.com)

4   NASSIRI & JUNG LLP

5   1700 Montgomery Street, Suite 207
    San Francisco, California 94111

6   Telephone: (415) 762-3100
    Facsimile: (415) 534-3200

7

8   Attorneys for Plaintiff
    YINTAO YU

**ELECTRONICALLY**

**F I L E D**
Superior Court of California,
County of San Francisco

**05/12/2023**
**Clerk of the Court**
BY: BOWMAN LIU
Deputy Clerk

9            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10              **FOR THE CITY AND COUNTY OF SAN FRANCISCO**

11

12   YINTAO YU, an individual,           Case No. CGC-23-606246

13            Plaintiff,       **FIRST AMENDED COMPLAINT FOR**
                               **PUBLIC INJUNCTION & RETALIATION**

14         v.
                                **JURY TRIAL DEMANDED**

15   BYTEDANCE, INC., a Delaware
    Corporation; SHUYI (SELENE) GAO, an

16   individual; and DOES 1 through 20,
    inclusive,

17
           Defendants.

18

19

20

21

22

23

24

25

26

27

28

1     Plaintiff YINTAO YU, hereby complains and submits the allegations below against

2   Defendants BYTEDANCE, INC., SHUYI GAO, and DOES 1 THROUGH 20. Plaintiff seeks a

3   public injunction in accordance with the *McGill* Rule (*McGill v. Citibank, N.A.,* 2 Cal. 5th 945

4   (2017)). Mr. Yu also seeks damages, restitution and injunctive relief. Mr. Yu will donate a

5   substantial portion of any monetary proceeds to causes that vindicate Asian American civil rights.

6   **I.     NATURE OF THE CASE**

7     1.     This case arises out of Plaintiff Yintao "Roger" Yu's employment with Defendant

8   BYTEDANCE, INC., his observation and reporting of illegal conduct, and consequent retaliatory

9   termination.

10   **II.    PARTIES**

11     2.     Plaintiff Yintao "Roger" Yu was the head of engineering of the U.S. offices of

12   Defendant ByteDance, Inc. from approximately August 2017 until his termination in November

13   2018. Bytedance gives employees numerical rankings to signify their seniority. As head of

14   engineering, Mr. Yu was given the level "4-2," with fewer than 20 employees in the entire

15   company having a higher designation. ByteDance employs well over 100,000 individuals today.

16   Mr. Yu is a resident of California.

17     3.     Upon information and belief, Defendant ByteDance, Inc. is a Delaware

18   corporation, whose principal place of business is San Francisco County, California. The majority

19   of the Company's executive and administrative functions are performed in California.

20     4.     Defendant Shuyi (Selene) Gao was the head of Human Resources for ByteDance,

21   Inc. Gao lives in and is a citizen of California.

22     5.     The true names and capacities of Defendants named herein as Does 1 through 20,

23   whether individual, corporate, associate or otherwise, and the true involvement of Defendants

24   sued herein as Does 1 through 20, are unknown to Plaintiff who therefore sues said Defendants by

25   such fictitious names. Plaintiff will amend this Complaint to show the true names, capacities, and

26   involvement of Does 1 through 20 when ascertained. Plaintiff is informed and believes and

27   thereon alleges that each of the Defendants designated as a "Doe" is responsible in some manner

28

1 │ for the events and happenings referred to herein, and that Plaintiff's injuries and damages as

2 │ hereinafter set forth were proximately caused by said Defendants.

3 │      6.     Plaintiff is informed and believes and thereon alleges that each of the Defendants

4 │ sued herein is or was the agent, employee, partner and/or representative of one or more of the

5 │ remaining Defendants, and each of them was at all times acting within the purpose and scope of

6 │ such agency and employment. Plaintiff is further informed and believes that each of the

7 │ Defendants herein gave consent to, ratified and authorized the acts alleged herein to each of the

8 │ remaining Defendants.

9 │ **III.    JURISDICTION AND VENUE**

10 │      7.     Venue is proper in this judicial district pursuant to Cal. Civ. Proc. Code § 395(a)

11 │ and Cal. Gov't Code § 12965. Defendant ByteDance, Inc. is registered for business tax certificate

12 │ with the Office of the Treasurer and Tax Collector, City and County of San Francisco. Defendant

13 │ ByteDance, Inc. resides in and transacts business in the County of San Francisco, and is within

14 │ the jurisdiction of this Court for the purposes of service of process.

15 │ **IV.    FACTS COMMON TO ALL CAUSES OF ACTION**

16 │     **A.    Mr. Yu Is Hired by Defendant ByteDance.**

17 │      8.     Plaintiff Yu was hired by Defendant ByteDance, Inc. ("ByteDance" or

18 │ "Defendant") on or around June 7, 2017, and began working in August 2017. In addition to his

19 │ base salary and the option to purchase 220,000 shares of ByteDance stock, Mr. Yu's employment

20 │ agreement also entitled him to $600,000, to be "paid within 30 days since the offer was signed,"

21 │ for the IP from his company Tank Exchange.

22 │      9.     Within the first 30 days of receiving the offer letter, Mr. Yu spoke with

23 │ ByteDance's hiring manager and in-house counsel. They told Mr. Yu that ByteDance had

24 │ concerns about paying him the $600,000 purchase price for Tank Exchange's intellectual property

25 │ without assurances that he would remain with ByteDance for the long term. ByteDance's

26 │ representatives encouraged him to sign a multi-year term employment agreement to ensure his

27 │ continued employment at ByteDance. Ultimately, the parties agreed upon a 2-year term

28 │ agreement that was binding on both parties and which superseded the "at will" provision

1    contained in his earlier agreement. On a visit to Beijing, Mr. Yu signed the employment contract.

2    ByteDance's representatives told him that he would receive a copy of this agreement, but it was

3    never shared with him. Under the terms of the supplemental employment agreement, the

4    employment relationship was set to last until August 2019, unless Mr. Yu was terminated "for

5    cause."

6        **B.    Mr. Yu Discovers Defendant ByteDance's Practice of Scraping User Content
         From Its Competitors for Its Own Profit.**

7

8        10.    Shortly after beginning his employment, Mr. Yu became aware that ByteDance

9    had for years engaged in a worldwide scheme (including in California) to steal and profit from the

10   content of others. The effort involved the use of software purposely unleashed to systematically

11   strip user content from competitor's websites — chiefly, Instagram and Snapchat — and populate

12   its own video services with these videos in an effort to make its own services appear more

13   popular to end users. These actions were taken without the permission of the content creators and

14   represented an unlawful effort to gain an edge against entrenched online video hosting websites.

15       11.    Specifically, ByteDance developed software that would scrape content posted by

16   end users on competitors' websites without permission, and upon information and belief, in

17   violation of the competitors' terms of use. ByteDance would then post the misappropriated

18   content on its own websites via fake social media accounts to attract greater engagement with

19   those accounts, and by extension, ByteDance's websites.

20       12.    The content ByteDance scraped from its competitors had been posted by users of

21   those competitors' websites. ByteDance's software used to scrape the users' content did not ask

22   the users for their permission.

23       **C.    Mr. Yu Reports His Concerns About ByteDance's Unlawful Activity to His
         Manager.**

24

25       13.    Upon learning of this program, Mr. Yu was troubled by ByteDance's efforts to

26   skirt legal and ethical lines, not to mention the tremendous liability that content scraping of this

27   magnitude could create for the company. It was his understanding that taking material from

28   competitors' websites without the creator's permission violated the law. Mr. Yu raised these

1     concerns with Wenjia Zhu, formerly Senior VP of Engineering and current Global TikTok R&D

2     Chief at ByteDance, numerous times, as early as October 2017 and again in February and March

3     2018. Mr. Zhu is and was in charge of the TikTok algorithm. Mr. Zhu reported directly to

4     ByteDance's CEO Yiming Zhang. When informed of Mr. Yu's concerns with the program, Mr.

5     Zhu was dismissive of them, remarking that it was not a big deal.

6         14.     At the same time, however, Mr. Zhu asked Mr. Yu to hide the illegal program,

7     especially to ByteDance employees in the United States, because, according to Mr. Zhu, the

8     United States has stricter intellectual property laws and has class actions. Thus, it seemed to Mr.

9     Yu from Mr. Zhu's responses that, while Mr. Zhu felt comfortable proceeding with the scheme,

10     he also believed it was illegal in the United States.

11         15.     After Mr. Yu reported his concerns to Mr. Zhu, the scraping activity continued

12     unabated. Worried that his concerns had not been addressed, Mr. Yu told U.S.-based colleagues

13     that he had reported the illegal activities to the higher executive team, but that nothing had

14     changed to that point.

15         16.     Mr. Yu learned that this program was vital to ByteDance's ceaseless efforts to

16     attract users to its social media platforms. By scraping the content from its competitor's sites,

17     ByteDance sought to lure participation away from competitors towards its websites. Such

18     participation can raise numerous real world risks, which have played out in the context of

19     ByteDance.

20         17.     For example, with increased participation, ByteDance has served as a useful

21     propaganda tool for the Chinese Communist Party ("CCP"). In one instance, Mr. Yu observed

22     that ByteDance promoted content that expressed hatred for Japan. In another instance, Mr. Yu

23     observed that ByteDance demoted content that expressed support for the protests in Hong Kong

24     ("Umbrella Revolution"), while it promoted content that expressed criticisms of the protests in

25     Hong Kong. Such nationalistic content served to both increase engagement on ByteDance's

26     websites and to promote support of the CCP. More generally, Mr. Yu observed that ByteDance

27     has been responsive to the CCP's requests to share information, and even to elevate or remove

28     content at the request of the CCP.

18.     ByteDance is similarly positioned to exploit nationalistic sentiments in other countries like the United States as well, since it collects data from its users in those countries – data which Mr. Yu observed it makes accessible to the CCP via a backdoor channel.

19.     Mr. Yu saw the backdoor channel in the code, which allows certain high level persons to access user data, no matter where the data is located, even if hosted by a U.S. company with servers located in the U.S. Chinese law requires the company to grant access to user data to the Chinese government. The company was aware that if the Chinese government's backdoor was removed from the international/U.S. version of the app, the Chinese government would, it feared, ban the company's valuable Chinese-version apps.  While the international/U.S. version of TikTok may be the most valuable in the company, the Chinese version of TikTok ("Douyin") and other apps exclusively for China also are valuable.  The company is vulnerable to the threat to shut down all the Chinese apps for failure to comply with the CCP's directives.

20.     At some point after expressing his concerns to U.S.-based employees regarding the scraping program, Mr. Yu noticed that ByteDance had modified the illegal content scraping program.  At a minimum it continued to scrape content from U.S-based users, including California based users, when they are abroad. Mr. Yu observed that the individual who modified the program's application to U.S. accounts was a software engineer in China under the report chain of Mr. Zhu.

**D.     Mr. Yu Discovered ByteDance Uses Bots to Artificially Inflate Its User Engagement Metrics That Would Violate the Law.**

21.     At or around the same time he discovered ByteDance's program to systematically scrape content from its competitors' websites, Mr. Yu learned that ByteDance also systematically created fabricated users to exaggerate its metrics, including its key engagement metrics. Potential investors considering investing in social media platforms heavily rely on such key metrics when making investment decisions.

22.     ByteDance programmed the fabricated users to "like" and "follow" real user accounts. The fake "likes", "follows" and similar fabrications would trigger push notifications to real users that would entice the users back to ByteDance's applications, thereby boosting many

5

1  engagement metrics including user retention rate, which is one of the key metrics relied on by
2  potential investors.

3      23.    Mr. Yu observed that the fabricated user accounts had a substantial impact on
4  retaining real world users. Thus, the program served ByteDance's commercial interests, while at
5  the same time serving to provide the CCP, through its backdoor and influence at ByteDance, with
6  a larger and more engaged audience for propaganda.

7      **E.    Mr. Yu Reports to His Manager ByteDance's Fraudulent Scheme to Inflate
8  Its Key Engagement Metrics.**

9      24.    Mr. Yu reported and raised concerns regarding ByteDance's use of fabricated
10  users to Mr. Zhu numerous times from October 2017 and into 2018. Mr. Yu expressed concerns
11  regarding the legal consequences of relying on such practices to inflate data that would be passed
12  on to potential investors and lenders. Specifically, Mr. Yu was concerned that providing the false
13  data to investors and lenders would implicate the company with fraudulent conduct. While Mr.
14  Zhu acknowledged the practice of creating fabricated users, he simply noted that the practice was
15  helpful to boosting ByteDance's engagement metrics. The practice of fabricating users continued.

16      **F.    ByteDance Discriminates Against Employees on Necessary Medical Leave.**

17      25.    In addition, on or around December 2017, Mr. Yu learned of efforts to terminate a
18  U.S. based employee, Witness A, who suffered from depression. Witness A, who had
19  demonstrably strong performance, had recently requested time off to address her medical
20  condition. Although Witness A's direct manager, Peiyu "Peggie" Li, was satisfied with her
21  performance and had recently given Witness A a score of "Meets Expectation" on her latest
22  performance review, her skip level manager, Ying Zhi, was not as accommodating. Without Ms.
23  Li's knowledge, Ms. Zhi had Witness A's performance score lowered to "Improvement Needed,"
24  and had informed HR to fire Witness A upon the formal release of the ratings. Upon learning of
25  this change, Mr. Yu confronted Ms. Zhi, who admitted that she had made the change because she
26  did not like Witness A taking time off work to address her depression and that she viewed her as a
27  "burden" she "wanted to get rid of." Ms. Zhi told him that due to Witness A's medical condition,
28  her "cost of management was too high." It is Mr. Yu's understanding that terminating Witness A

6

1    if she received a rating of "meets expectations" or above would violate ByteDance policy, which

2    is why Ms. Zhi had intervened to lower her score. Mr. Yu was shocked by Ms. Zhi's admission

3    and requested that she reconsider. However, Ms. Zhi responded that she "won't even consider

4    keeping [Witness A]. Her cost of management is way too high." Following this conversation,

5    Mr. Yu complained to Wei "Ronnie" Hua, ByteDance's Global Head of HR, about the legality of

6    Ms. Zhi's actions. On information and belief Defendant Shuyi (Selene) Gao jointly developed the

7    strategy to mask the illegal motivation and plan for terminating Witness A's employment.

8         26.    Ultimately, following Mr. Yu's reporting of the incident to HR, the company

9    decided not to terminate Witness A. However, Ms. Zhi's manager, Nan Zhang (aka Kelly

10   Zhang), was unhappy with Mr. Yu's decision to intercede on Witness A's behalf, particularly

11   given the fact he did not even work in her department. Mr. Yu was later informed that several of

12   Ms. Zhang's direct reports viewed his actions complaining about illegal conduct as problematic

13   and as a challenge to Ms. Zhang's leadership and authority. Ms. Zhang later became the general

14   manager of ByteDance's entire video - "IES" division — the department in which Mr. Yu worked

15   — and was in a position to retaliate against Mr. Yu for his actions. Ms. Zhang is now the chief

16   executive officer of ByteDance China. She is responsible for overseeing the operations and

17   management of the company's China portfolio, including the video-sharing platform Douyin

18   (Chinese version of TikTok), the news aggregator Toutiao, and many other apps.

19        **G.    CCP Control of ByteDance, a Culture of Lawlessness Within ByteDance, and**
          **Retaliation.**
20

21        27.    As a member of the executive team, Mr. Yu had visibility into the company's

22   decisions, and he was concerned about the company's compliance with U.S. laws. It was known

23   within the company that the CCP (the "Government") had a special office or unit in the company,

24   which was sometimes referred to as the "Committee." While the Government office or

25   Committee did not "work for" the company, it played a significant role. The Committee (1)

26   guided how the company advanced core Communist values; and (2) regulated and monitored the

27   company. For the Chinese version of the apps, the Committee possessed a "death switch" that

28   could turn off the apps entirely.

28. The Committee maintained supreme access to all the company data, even data stored in the United States. Any engineer in Beijing could access U.S. user data located in the U.S. After receiving criticism about access from abroad, individual engineers in China were restricted from accessing U.S. user data, but the Committee continued to have access.

29. Listening to the TikTok CEO's Congressional testimony in March, 2023, Mr. Yu was struck by the misdirection by the CEO. The location of the servers doesn't protect U.S. data: what matters is whether the backdoor has been closed.

30. During his employment, Mr. Yu felt qualms about Government control over ByteDance and TikTok. In addition to the presence of the Committee inside the company, the top executives all reported to the CEO who reported, directly or indirectly, to the CCP.

31. While employed, Mr. Yu observed that to address criticisms about CCP control of the company, the company moved its engineers from Beijing to locations outside the country, such as Singapore. However, there was no substantive change, as the engineering duties were performed by the same persons, simply from outside of the geographic bounds of China.

32. In addition, Mr. Yu observed a culture of lawlessness within the company. This ByteDance culture focused on growth at all costs. The attitude was to violate the law first, continue to grow, and pay fines later. Legal compliance and ethics were lesser considerations or even obstacles to overcome. Among the examples of this culture are the following:

a. Mr. Yu observed one senior executive bristle at the critique that TikTok's algorithm is like "digital cocaine," while acknowledging that time spent on the platform is the ultimate goal, and in fact the only thing the company cares about.

b. During a trip to ByteDance's California offices, ByteDance's CEO, Yiming Zhang, expressly requested US-based employees to scrape content from YouTube and BuzzFeed to use as content on TopBuzz, ByteDance's International/U.S. version of news aggregator app Toutiao. This was in furtherance of ByteDance's goal of making TopBuzz as successful as Toutiao, ByteDance's flagship news aggregator app for Chinese users. This goal was pursued by employing the same unlawful and unethical tactics that

contributed to Toutiao's success, which conduct had resulted in numerous lawsuits in China.

        c.     In 2017, Mr. Yu learned that the CEO of ByteDance, Yiming Zhang, facilitated bribes to Lu Wei who, at the time, served as the deputy head of the Propaganda Department of the CCP and was the head of the Cyberspace Administration of China ("CAC"), which regulates Internet-related matters and is one of the most powerful agencies in China. In 2015, Lu Wei had been named by Time magazine as one of the world's 100 most influential people. This bribe ensured that ByteDance would receive protection and support from Lu Wei and the CAC. It also provided ByteDance a competitive advantage in China. For example, Lu Wei protected ByteDance from accusations that ByteDance scraped online news articles from its competitors without their permission and posted the scraped articles to its own news aggregator app, Toutiao. Lu Wei also warned other Chinese companies words to the effect of, "do not mess with ByteDance;" "work with and cooperate with ByteDance" because "I like ByteDance;" "ByteDance is supported by my agency the CAC." Lu Wei was arrested around early 2018. Soon after Lu Wei was arrested, the Chinese Government permanently banned one of ByteDance's major apps ("NeiHan DuanZi") and fined the company. In 2019, it was reported that Lu Wei had been convicted by a Chinese court for bribery and sentenced to 14 years in prison.

      33.     This and other illegal conduct shocked Mr. Yu. He was surprised by the brazenly unlawful conduct within the company, which was euphemistically excused as "entrepreneurship." Mr. Yu was upset by the company's disregard for, *inter alia*, California's laws and practices.

**H.    In Retaliation for Disclosing ByteDance's Wrongful Conduct, ByteDance Unlawfully Discharges Mr. Yu.**

      34.     On or around March 2018, in consultation with his doctor, Mr. Yu was required to take his own medical leave for approximately seven months. On July 18, 2018, Mr. Yu mailed three letters to various supervisors at ByteDance notifying them that, upon consultation with his doctor, he expected to be able to return to work on September 11, 2018. ByteDance claims to

1    have mailed Mr. Yu a notice of termination on July 26, 2018, purportedly due to a reduction in

2    force. ByteDance also claims that on July 27, ByteDance e-mailed Mr. Yu a copy of the

3    termination notice. Mr. Yu never received any of these purported notices and ByteDance never

4    called him to notify him of his termination, even though the company acknowledges receiving his

5    requests to return to work.

6         35.    In October 2018, Mr. Yu was finally cleared to return to work by his doctor.

7    However, upon returning to the office for the first time, he was told he did not "need to come to

8    work now" and that the company "will contact you later." Mr. Yu remained on ByteDance's

9    payroll through November 2018 and the first tranche of equity under his stock option award from

10   the company should have vested on August 30, 2017, though ByteDance never vested these

11   shares.

12        36.    In November 2018, the company retaliated against Mr. Yu by terminating him.

13   **V.    TOLLING**

14        37.    On July 25, 2019, Plaintiff filed a complaint of discrimination with California's

15   Department of Fair Employment and Housing ("DFEH"), pursuant to the California Fair

16   Employment and Housing Act ("FEHA"), Cal. Gov't Code §12900 *et seq.*

17        38.    Pursuant to the Emergency Rules Related to COVID-19, Emergency Rule 9(a), the

18   statute of limitations on Plaintiff's claims was tolled an additional 178 days, until January 19,

19   2021.

20        39.    The Parties have entered into a series of Tolling Agreements, whereby the statute

21   of limitations for Plaintiff's claims was tolled through and including November 17, 2022.

22        40.    On May 1, 2023, Plaintiff filed his complaint for damages and injunctive relief

23   against Defendants.

24        ///

25        ///

26        ///

27        ///

28        ///

10

FIRST AMENDED COMPLAINT
CASE NO. CGC-23-606246

## VI.   CLAIMS

### FIRST CAUSE OF ACTION

**Public Injunction**
**Unfair Business Practices – Cal. Bus. & Prof. Code §§ 17200, 17203)**
**(Against Defendant ByteDance, Inc.)**

41.     Plaintiff re-alleges and incorporates herein by reference each and every allegation of the preceding paragraphs as though fully set forth herein, and alleges as follows:

42.     California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, prohibits any unlawful, unfair *or* fraudulent business practices. Under the UCL, any person who engages, has engaged, or purposes to engage in unfair competition may be enjoined.

43.     By scraping the content belonging to individuals who reside in California, including social media content that Plaintiff posted on his own Instagram profile, and by subsequently posting that content on Defendant's websites without the content creators' consent, Defendant engaged in unlawful, unfair, or fraudulent business practices.  Plaintiff is entitled to a public injunction to stop Defendant from scraping social media content belonging to residents of California.

44.     ByteDance also engaged in unlawful, unfair, or fraudulent conduct by systematically creating fabricated users to "like" and "follow" real user accounts, including Plaintiff's TikTok account, triggering push notifications that would entice users back to ByteDances' apps. By doing this, ByteDance artificially exaggerated key engagement metrics, which potential investors consider when investing in social media platforms.

45.     Defendant's violations of the UCL continue to this day. As a direct and proximate result of Defendant's violation of the UCL, Plaintiff has suffered actual damage.

46.     Unless restrained and enjoined, Defendant will continue to engage in the unlawful, unfair and fraudulent conduct described herein.

47.     Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order of this Court enjoining Defendants from continuing to engage, use, or employ the unlawful, unfair, and fraudulent practice of scraping content produced by individuals residing in California from its competitors' websites and posting that content on Defendant's websites without the consent of the

11

1 | owners of that content. ByteDance also should be enjoined from fabricating users and from using

2 | fabricated user accounts to create fake engagement and push notifications.

3 | **SECOND CAUSE OF ACTION**

4 | **Retaliation (Including, *Inter Alia*, Violation of Cal. Lab. Code § 1102.5)**
5 | **(Against Defendant ByteDance, Inc.)**

6 | 48. Plaintiff re-alleges and incorporates herein by reference each and every allegation

7 | of the preceding paragraphs as though fully set forth herein, and alleges as follows:

8 | 49. At all times relevant to this Complaint, Defendants have been subject to the

9 | requirements of Cal. Lab. Code § 1102.5, which applied to Plaintiff as an employee of

10 | Defendants.

11 | 50. Defendants violated Cal. Lab. Code § 1102.5 by abruptly terminating Plaintiff's

12 | employment in retaliation for his reporting and refusals to participate in activity that violated

13 | laws, rules, and regulations against invasion of privacy, misappropriation, anti-discrimination,

14 | anti-retaliation, among others.

15 | 51. In addition, at all times herein mentioned, FEHA, Cal. Gov't Code § 12940 *et seq.*,

16 | was in full force and effect and was fully binding upon Defendant. Cal. Gov't Code § 12940(a)

17 | prohibits an employer from discharging or discriminating against an employee because of a

18 | disability or because they are regarded as having a disability. Defendant retaliated against

19 | Plaintiff for disclosing information that he had reasonable cause to believe was unlawful to a

20 | person with authority over him, or another employee who had the authority to investigate,

21 | discover, or correct the violation or noncompliance. Additionally Defendant retaliated against

22 | Plaintiff for reporting discrimination and/or harassment and for refusing to participate in illegal

23 | activity.

24 | 52. As a direct, foreseeable, and proximate result of Defendant's unlawful actions,

25 | Plaintiff has suffered and continues to suffer substantial losses in earnings and other employment

26 | benefits and has incurred other economic losses, along with attorney's fees and litigation costs.

27 |

28 |

53.  As a direct, foreseeable, and proximate result of Defendant's unlawful actions, Plaintiff has suffered emotional distress, humiliation, shame, anxiety, and embarrassment, all to Plaintiff's damage in an amount to be proven at the time of trial.

54.  Defendant committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of the rights and safety of Plaintiff and others. Plaintiff is thus entitled to recover punitive damages from Defendant in an amount according to proof.

### THIRD CAUSE OF ACTION

**Failure to Prevent Discrimination:  Violation of Cal. Gov't Code § 12940(k)**
**(Against Defendant ByteDance, Inc.)**

55.  Plaintiff re-alleges and incorporates herein by reference each and every allegation of the preceding paragraphs as though fully set forth herein, and alleges as follows:

56.  At all times herein mentioned, FEHA, Gov. Code, § 12940, *et seq.*, was in full force and effect and fully binding upon Defendants.  Witness A was a member of a group protected by that statute in that he was an employee with a known medical condition and/or physical disability who made a request for a reasonable accommodation to treat her medical condition and/or disability.

57.  Defendants violated Cal. Gov't Code § 12940(k) because Defendants failed to take all reasonable steps necessary to prevent discrimination from occurring.  Among other things, Defendants failed to train and adequately supervise its employees in order to ensure that these employees were not violating FEHA in their treatment of other employees. Defendants also failed to prevent retaliation against Plaintiff for reporting discrimination against Witness A, an employee with a known medical condition who made a request for a reasonable accommodation.

58.  As a direct, foreseeable, and proximate result of Defendants' unlawful actions, Plaintiff has suffered and continues to suffer substantial losses in earnings and other employment benefits, and has incurred other economic losses.

59. As a direct, foreseeable, and proximate result of Defendants' unlawful actions, Plaintiff has suffered emotional distress, humiliation, shame, anxiety, and embarrassment, all to Plaintiff's damage in an amount to be proven at the time of trial.

60. Defendants committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of the rights and safety of Plaintiff and others. Plaintiff is thus entitled to recover punitive damages from Defendants in an amount according to proof.

## FOURTH CAUSE OF ACTION

### Retaliation in Violation of Cal. Gov't Code § 12940(h)
### (Against Defendant ByteDance, Inc.)

61. Plaintiff re-alleges and incorporates herein by reference each and every allegation of the preceding paragraphs as though fully set forth herein, and alleges as follows:

62. Cal. Gov't Code§ 12940(h) makes it an unlawful employment practice for an employer to discriminate against any person because the person has opposed any practices forbidden under the FEHA, including discrimination on the basis of a disability.

63. Plaintiff opposed and protested ByteDance's and Gao's discrimination against Witness A and attempts to eliminate her position. He made these complaints to HR and Witness A's managers.

64. In response to his complaints, ByteDance terminated his employment.

65. As a direct, foreseeable, and proximate result of Defendants' unlawful actions, Plaintiff has suffered and continues to suffer substantial losses in earnings and other employment benefits, and has incurred other economic losses.

66. As a direct, foreseeable, and proximate result of Defendants' unlawful actions, Plaintiff has suffered emotional distress, humiliation, shame, anxiety, and embarrassment, all to Plaintiff's damage in an amount to be proven at the time of trial.

67. Defendants committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive

14

1   amounting to malice, and in conscious disregard of the rights and safety of Plaintiff and others.

2   Plaintiff is thus entitled to recover punitive damages from Defendants in an amount according to

3   proof.

4                                **FIFTH CAUSE OF ACTION**

5                                    **Breach of Contract**
                               **(Against Defendant ByteDance, Inc.)**
6

7        68.    Plaintiff re-alleges and incorporates herein by reference each and every allegation

8   of the preceding paragraphs as though fully set forth herein, and alleges as follows:

9        69.    On or around September 30, 2017, Plaintiff and Defendant ByteDance, Inc.

10  entered into a written stock incentive plan, whereby Plaintiff was awarded 220,000 shares in

11  Defendant vesting over a four-year period.  Shortly thereafter, the Parties signed a two-year term

12  supplemental employment agreement in order to ensure Plaintiff's continued employment at

13  Defendant. The supplemental employment agreement lasted until August 2019, unless Mr. Yu

14  was terminated "for cause."

15       70.    Plaintiff completed all conditions necessary to satisfy his obligations under his

16  operative employment agreement by continuing to work for Defendant until he was terminated

17  without cause.

18       71.    The first and second tranches of options under the incentive plan were set to vest

19  on August 30, 2017 and 2018, respectively, though ByteDance never vested these shares.

20  Defendant breached the contract by failing to award Plaintiff the options owed to him under the

21  incentive plan and by terminating Plaintiff without cause.

22       72.    Accordingly, Plaintiff is entitled to the compensation owed under the incentive

23  plan, including the shares already vested at the time of his termination.

24                                **SIXTH CAUSE OF ACTION**

25                  **Breach of the Covenant of Good Faith and Fair Dealing**
                               **(Against Defendant ByteDance, Inc.)**
26

27       73.    Plaintiff re-alleges and incorporates herein by reference each and every allegation

28  of the preceding paragraphs as though fully set forth herein, and alleges as follows:

                                            15
                                ─────────────────────
                               FIRST AMENDED COMPLAINT
                               CASE NO. CGC-23-606246

74.     Plaintiff's employment agreement and stock incentive plan contained an implied-in-law covenant of good faith and fair dealing that neither party would do anything to injure the right of the other party to enjoy the actual benefits of those contracts.

75.     Plaintiff performed all of the duties and obligations required of him by Defendant during his employment, including those duties and obligations that would entitle Plaintiff to receive the compensation described in the employment agreement and stock incentive plan.

76.     Defendant breached the implied covenant when it took actions to prevent Plaintiff from earning their full compensation owed under these agreements.

77.     Defendant's termination of Plaintiff was done in bad faith.

78.     As a result of Defendant's bad faith and unfair dealing in performing the terms of the employment agreement and stock incentive plan, Defendant is liable for breaching the covenant of good faith and fair dealing inherent in those agreements.

79.     Accordingly, Plaintiff is entitled to the compensation owed under the employment agreement and stock incentive plan, included continued stock option vesting for the term of the agreements, and the compensation he lost because Defendant unlawfully terminated these contracts.

## SEVENTH CAUSE OF ACTION

### Wrongful Termination in Violation of Public Policy
### (Against Defendant ByteDance, Inc.)

80.     Plaintiff re-alleges and incorporates herein by reference each and every allegation of the preceding paragraphs as though fully set forth herein, and alleges as follows:

81.     Plaintiff's employment was terminated by Defendant in violation of fundamental public policies of the State of California, including without limitation, the right to refrain from participating in unlawful conduct (or conduct reasonably believed to be unlawful).

82.     The conduct detailed herein was wrongful and in violation of fundamental public policies of the State of California as reflected in laws that include, without limitation, the California Labor Code and Cal. Bus. & Prof. Code § 17200, *et seq*., and the California Penal Code.

1       83.     Defendants' actions were willful and malicious and were committed with the

2 wrongful intent to injure Plaintiff and in reckless disregard of Plaintiff's rights.

3       84.     As a proximate result of Defendants' actions, Plaintiff has suffered and will

4 continue to suffer damages that include his unvested stock options, loss of salary, bonuses, and

5 other losses along with attorney's fees and litigation costs.

6 **EIGHTH CAUSE OF ACTION**

7 **Unfair Business Practices – Cal. Bus. & Prof. Code §17200, *et seq.***<br>**(Against All Defendants)**

8

9       85.     Plaintiff re-alleges and incorporates herein by reference each and every allegation

10 of the preceding paragraphs as though fully set forth herein, and alleges as follows:

11       86.     Cal. Bus. & Prof. Code § 17200 prohibits any unlawful, unfair *or* fraudulent

12 business practices. By promising Plaintiff valuable equity and then firing him for an unlawful

13 reason and taking back his unvested options, Defendants engaged in unlawful, unfair, and

14 fraudulent business practices. Plaintiff is entitled to restitution of the ByteDance stock options

15 that rightfully belong to him, but which Defendants deprived him of possessing.

16

17 **NINTH CAUSE OF ACTION**<br>**Failure to Pay Wages, Including Failure to Pay All Wages Due Immediately Upon Termination**

18 **Cal. Lab. Code §§ 201, 202, 203, 588.1**<br>**(Against All Defendants)**

19

20       87.     Plaintiff re-alleges and incorporates herein by reference each and every allegation

21 of the preceding paragraphs as though fully set forth herein, and alleges as follows:

22       88.     Cal. Lab. Code § 201 provides that any discharged employee is entitled to all

23 wages due at the time of discharge.

24       89.     Where an employer willfully fails to pay discharged or quitting employees all

25 wages due as required under the California Labor Code, the employer is liable to such employees

26 under Cal. Lab. Code § 203 for waiting time penalties in the amount of one (1) day's

27 compensation at the employees' regular rate of pay for each day the wages are withheld, up to

28 thirty (30) days.

17

1       90.    Cal. Lab. Code § 558.1 provides that any person acting on behalf of the employer,

2 who violates, or causes to be violated Cal. Lab. Code § 203, *inter alia*, may be held liable as the

3 employer for such violation. At all relevant times herein, Defendant Gao acted as a managing

4 agent as defined by Cal. Civ. Code § 3294 over Defendants' failure to pay Plaintiff all wages

5 owed as alleged herein after he was discharged. Defendant Gao therefore violated or caused  Cal.

6 Lab. Code § 203 to be violated.

7       91.    During all relevant times, Defendants knowingly and willfully violated Cal. Lab.

8 Code §§ 201 and 202 by failing to pay Plaintiff all wages owed as alleged herein after he was

9 discharged. Defendants are therefore liable to Plaintiff for waiting time penalties as required by

10 Cal. Lab. Code § 203.

11       92.    Plaintiff respectfully requests that the Court award all waiting time penalties due

12 and the relief requested below in the Prayer for Relief.

13                                 **PRAYER FOR RELIEF**

14       WHEREFORE, Mr. Yu prays for judgment against Defendants as follows:

15       1.    A public injunction prohibiting ByteDance from continuing to engage, use, or

16 employ the unlawful, unfair, and fraudulent practice of scraping content produced by individuals

17 residing in California from its competitors' websites and posting that content on Defendant's

18 websites without the consent of the owners of that content; and ByteDance also should be

19 enjoined from fabricating users and from using fabricated user accounts to create fake

20 engagement and push notifications.

21       2.    For compensatory damages, including but not limited to, lost back pay (including,

22 but not limited to, salary and bonus wages), equity, and fringe benefits and future lost earnings,

23 equity, and fringe benefits, emotional distress, and legal interest, according to proof as allowed by

24 law;

25       3.    Liquidated damages as allowed by law;

26       4.    For injunctive relief, including reinstatement and a prohibition on further

27 discrimination or retaliation;

28       5.    For punitive damages as allowed by law;

1       6.      For an award to Plaintiff of costs of suit incurred herein and reasonable attorney's

2 fees;

3       7.      For prejudgment interest and post-judgment interest as allowed by law;

4       8.      For an injunction to prevent future violations of Cal. Gov't Code § 12940;

5       9.      For an injunction to prevent future violations of Cal. Bus. & Prof. Code § 17200;

6 and

7       10.      For an award of such other and further relief as the Court deems just and proper.

8 **DEMAND FOR JURY TRIAL**

9      Plaintiff hereby demands a trial by jury on all causes of action so triable.

10

11 DATED: May 12, 2023            Respectfully submitted,
                                      NASSIRI & JUNG LLP

12

13

14                               By:_____

15                                     Charles H. Jung

16                                Attorneys for Plaintiff
                                   YINTAO YU

17

18

19

20

21

22

23

24

25

26

27

28

19

# Ex. 5

CHARLES H. JUNG (217909)
(charles@njfirm.com)
ANDREW R. KISLIK (118772)
(andy@njfirm.com)
NASSIRI & JUNG LLP
1700 Montgomery Street, Suite 207
San Francisco, California 94111
Telephone: (415) 762-3100
Facsimile: (415) 534-3200

Attorneys for Plaintiff
YINTAO YU

ELECTRONICALLY
**FILED**
*Superior Court of California,
County of San Francisco*

**05/01/2023**
**Clerk of the Court**
BY: JEFFREY FLORES
**Deputy Clerk**

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE CITY AND COUNTY OF SAN FRANCISCO

**CGC-23-606246**

| | |
|---|---|
| YINTAO YU, an individual,<br><br>        Plaintiff,<br><br>    v.<br><br>BYTEDANCE, INC., a Delaware Corporation; SHUYI (SELENE) GAO, an individual; and DOES 1 through 20, inclusive,<br><br>        Defendants. | Case No.<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

1    YINTAO YU complains and alleges as follows:

2                    **I.    NATURE OF THE CASE**

3        1.    This case arises out of Plaintiff Yintao "Roger" Yu's termination of employment

4    from Defendant BYTEDANCE, INC., after he had engaged in legally-protected whistleblowing

5    activity, opposed disability discrimination, and shortly after his return from protected medical

6    leave.

7                        **II.    PARTIES**

8        2.    Plaintiff Yu was an employee of Defendant ByteDance, Inc. from approximately

9    August 2017 until his termination in November 2018.  He is a resident of California.

10        3.    Upon information and belief, Defendant ByteDance, Inc. is a Delaware

11    corporation, whose principal place of business is San Francisco County, California.  The majority

12    of the Company's executive and administrative functions are performed in California.

13        4.    Defendant Shuyi (Selene) Gao was the head of Human Resources for ByteDance,

14    Inc.  Gao lives in and is a citizen of California.

15        5.    The true names and capacities of Defendants named herein as Does 1 through 20,

16    whether individual, corporate, associate or otherwise, and the true involvement of Defendants

17    sued herein as Does 1 through 20, are unknown to Plaintiff who therefore sues said Defendants by

18    such fictitious names.  Plaintiff will amend this Complaint to show the true names, capacities, and

19    involvement of Does 1 through 20 when ascertained.  Plaintiff is informed and believes and

20    thereon alleges that each of the Defendants designated as a "Doe" is responsible in some manner

21    for the events and happenings referred to herein, and that Plaintiff's injuries and damages as

22    hereinafter set forth were proximately caused by said Defendants.

23        6.    Plaintiff is informed and believes and thereon alleges that each of the Defendants

24    sued herein is or was the agent, employee, partner and/or representative of one or more of the

25    remaining Defendants, and each of them was at all times acting within the purpose and scope of

26    such agency and employment.  Plaintiff is further informed and believes that each of the

27    Defendants herein gave consent to, ratified and authorized the acts alleged herein to each of the

28    remaining Defendants.

### III.  JURISDICTION AND VENUE

7.    Venue is proper in this judicial district pursuant to Cal. Civ. Proc. Code § 395(a) and Cal. Gov't Code § 12965. Defendant ByteDance, Inc. is registered for business tax certificate with the Office of the Treasurer and Tax Collector, City and County of San Francisco. Defendant ByteDance, Inc. resides in and transacts business in the County of San Francisco, and is within the jurisdiction of this Court for the purposes of service of process.

### IV.  FACTS COMMON TO ALL CAUSES OF ACTION

8.    Plaintiff Yu was hired by Defendant ByteDance, Inc. ("ByteDance" or "Defendant") on or around June 7, 2017, and began working in August 2017. In addition to his base salary and the option to purchase 220,000 shares of ByteDance stock, Mr. Yu's employment agreement also entitled him to $600,000, to be "paid within 30 days since the offer was signed," for the IP from his company Tank Exchange.

9.    Within the first 30 days of receiving the offer letter, Mr. Yu spoke with ByteDance's hiring manager and in-house counsel. They told Mr. Yu that ByteDance had concerns about paying him the $600,000 purchase price for Tank Exchange's intellectual property without assurances that he would remain with ByteDance for the long term. ByteDance's representatives encouraged him to sign a multi-year term employment agreement to ensure his continued employment at ByteDance. Ultimately, the parties agreed upon a 2-year term agreement that was binding on both parties and which superseded the "at will" provision contained in his earlier agreement. On a visit to Beijing, Mr. Yu signed the employment contract. ByteDance's representatives told him that he would receive a copy of this agreement, but it was never shared with him. Under the terms of the supplemental employment agreement, the employment relationship was set to last until August 2019, unless Mr. Yu was terminated "for cause."

10.    Shortly after beginning his employment, Mr. Yu became aware that ByteDance had for years engaged in a worldwide scheme to steal and profit from the copyrighted works of others. The effort involved the use of software to strip intellectual property from competitor's websites — chiefly, Instagram and Snapchat — and populate its own video services with these

2

1   videos in an effort to make its own services appear more popular to end users. These actions

2   were taken without the permission of the content creators and represented an unlawful effort to

3   gain an edge against entrenched online video hosting websites.

4       11.    Upon learning of this program, Mr. Yu was troubled by ByteDance's efforts to

5   skirt legal and ethical lines, not to mention the tremendous liability that intellectual property theft

6   of this magnitude could create for the company. It was his understanding that taking material

7   from competitors' websites without the creator's permission violated the law. Mr. Yu raised

8   these concerns with Wenjia Zhu, formerly Senior VP of Engineering and current CEO of Toutiao,

9   numerous times, as early as October 2017 and again in February and March 2018. Mr. Zhu

10  reports directly to ByteDance's CEO Yiming Zhang. When informed of Mr. Yu's concerns with

11  the program, Mr. Zhu was dismissive of them, and the intellectual property infringement

12  continued unabated.

13      12.    In addition, on or around December 2017, Mr. Yu learned of efforts to terminate a

14  U.S. based employee, Witness A, who suffered from depression. Witness A, who had

15  demonstrably strong performance, had recently requested time off to address her medical

16  condition. Although Witness A's direct manager, Peiyu "Peggie" Li, was satisfied with her

17  performance and had recently given Witness A a score of "Meets Expectation" on her latest

18  performance review, her skip level manager, Ying Zhi, was not as accommodating. Without Ms.

19  Li's knowledge, Ms. Zhi had Witness A's performance score lowered to "Improvement Needed,"

20  and had informed HR to fire Witness A upon the formal release of the ratings. Upon learning of

21  this change, Mr. Yu confronted Ms. Zhi, who admitted that she had made the change because she

22  did not like Witness A taking time off work to address her depression and that she viewed her as a

23  "burden" she "wanted to get rid of." Ms. Zhi told him that due to Witness A's medical condition,

24  her "cost of management was too high." It is Mr. Yu's understanding that terminating Witness A

25  if she received a rating of "meets expectations" or above would violate ByteDance policy, which

26  is why Ms. Zhi had intervened to lower her score. Mr. Yu was shocked by Ms. Zhi's admission

27  and requested that she reconsider. However, Ms. Zhi responded that she "won't even consider

28  keeping [Witness A]. Her cost of management is way too high." Following this conversation,

1   Mr. Yu complained to Wei "Ronnie" Hua, ByteDance's Head of HR, about the legality of Ms.

2   Zhi's actions. On information and belief Defendant Shuyi (Selene) Gao jointly developed the

3   strategy to mask the illegal motivation for terminating Witness A's employment.

4         13.    Ultimately, following Mr. Yu's reporting of the incident to HR, the company

5   decided not to terminate Witness A. However, Ms. Zhi's manager, Nan Zhang, was unhappy

6   with Mr. Yu's decision to intercede on Witness A's behalf, particularly given the fact he did not

7   even work in her department. Mr. Yu was later informed that several of Ms. Zhang's direct

8   reports viewed his actions as a challenge to Ms. Zhang's leadership and authority. Ms. Zhang

9   later became the general manager of ByteDance's entire video - "IES" division — the department

10   in which Mr. Yu worked — and was in a position to retaliate against Mr. Yu for his actions.

11         14.    On or around March 2018, in consultation with his doctor, Mr. Yu was required to

12   take his own medical leave for approximately seven months. On July 18, 2018, Mr. Yu mailed

13   three letters to various supervisors at ByteDance notifying them that, upon consultation with his

14   doctor, he expected to be able to return to work on September 11, 2018. ByteDance claims to

15   have mailed Mr. Yu a notice of termination on July 26, 2018, purportedly due to a reduction in

16   force. ByteDance also claims that on July 27, ByteDance e-mailed Mr. Yu a copy of the

17   termination notice. Mr. Yu never received any of these notices and ByteDance never called him

18   to notify him of his termination, even though the company acknowledges receiving his requests to

19   return to work.[1]

20         15.    In October 2018, Mr. Yu was finally cleared to return to work by his doctor.

21   However, upon returning to the office for the first time, he was told he did not "need to come to

22

23

24

25   [1] Mr. Yu never received either the written or electronic versions of these notices because the
     company sent them to old home addresses. The termination letter was sent to Mr. Yu's former
26   address in Seattle, even though his paystubs listed his current address in Palo Alto. Similarly,
     instead of using his current e-mail address, the company sent the termination notice to old e-mail
27   accounts he no longer used. There is no record of the company attempting to call Mr. Yu to
28   notify him of his termination.

COMPLAINT
CASE NO.

1 work now" and that the company "will contact you later." Mr. Yu remained on ByteDance

2 payroll through November 2018 and the first tranche of equity under his stock option award from

3 the company should have vested on August 30, 2017, though ByteDance never vested these

4 shares. In November 2018, Mr. Yu was terminated.

**V. PROCEDURAL HISTORY**

6      16.     On July 25, 2019, Plaintiff filed a complaint of discrimination with California's

7 Department of Fair Employment and Housing (DFEH), pursuant to the California Fair

8 Employment and Housing Act ("FEHA"), Cal. Gov't Code §12900 *et seq.*

9      17.     Pursuant to the Emergency Rules Related to COVID-19, Emergency Rule 9(a), the

10 statute of limitations on Plaintiff's claims was tolled an additional 178 days, until January 19,

11 2021.

12      18.     The Parties have entered into a series of Tolling Agreements, whereby the statute

13 of limitations for Plaintiff's claims was tolled through and including November 17, 2022.

**VI. CLAIMS**

**FIRST CAUSE OF ACTION**
**(Retaliation in Violation of Labor Code § 1102.5)**
**(Against All Defendants)**

17      19.     Plaintiff re-alleges and incorporates herein by reference each and every allegation

18 of the preceding paragraphs as though fully set forth herein, and alleges as follows:

19      20.     At all times relevant to this Complaint, Defendants have been subject to the

20 requirements of Cal. Lab. Code § 1102.5, which applied to Plaintiff as an employee of

21 Defendants.

22      21.     Defendants violated Cal. Lab. Code § 1102.5 by abruptly terminating Plaintiff's

23 employment in retaliation for his reporting and refusals to participate in activity that violated

24 laws, rules, and regulations against intellectual property misappropriation, anti-discrimination,

25 anti-retaliation, among others.

26      22.     In addition, at all times herein mentioned, FEHA, Cal. Gov't Code § 12940 *et seq.*,

27 was in full force and effect and was fully binding upon Defendant. Cal. Gov't Code § 12940(a)

28 prohibits an employer from discharging or discriminating against an employee because of a

5

1  disability or because they are regarded as having a disability. Defendant violated Section 1102.5
2  by abruptly terminating Plaintiff's employment due to his taking medical leave and for reporting
3  and objecting to Defendant's discrimination against Witness A on the basis of her medical
4  condition. Further, Defendant retaliated against Plaintiff for disclosing information that he had
5  reasonable cause to believe constituted a violation of California's FEHA to a person with
6  authority over him, or another employee who had the authority to investigate, discover, or correct
7  the violation or noncompliance.

8      23.     As a direct, foreseeable, and proximate result of Defendant's unlawful actions,
9  Plaintiff has suffered and continues to suffer substantial losses in earnings and other employment
10  benefits and has incurred other economic losses, along with attorney's fees and litigation costs.

11     24.     As a direct, foreseeable, and proximate result of Defendant's unlawful actions,
12  Plaintiff has suffered emotional distress, humiliation, shame, anxiety, and embarrassment, all to
13  Plaintiff's damage in an amount to be proven at the time of trial.

14     25.     Defendant committed the acts herein despicably, maliciously, fraudulently, and
15  oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive
16  amounting to malice, and in conscious disregard of the rights and safety of Plaintiff and others.
17  Plaintiff is thus entitled to recover punitive damages from Defendant in an amount according to
18  proof.

19                              **SECOND CAUSE OF ACTION**
                 **(Disability Discrimination: Violation of Cal. Gov't Code § 12940(a))**
20                                  **(Against All Defendants)**

21     26.     Plaintiff re-alleges and incorporates herein by reference each and every allegation
22  of the preceding paragraphs as though fully set forth herein, and alleges as follows:

23     27.     At all times herein mentioned, California's Fair Employment and Housing Act,
24  Cal. Gov't Code § 12900, *et seq.*, was in full force and effect and was fully binding upon
25  Defendants. Cal. Gov't Code § 12940(a) prohibits an employer from discharging an employee
26  because of a physical or mental disability or because he is regarded as having a physical or mental
27  disability.

28

28. Plaintiff was a qualified individual with a disability, able to perform the essential job duties of his position, with reasonable accommodation. ByteDance's termination of Plaintiff's employment because of his taking medical leave and need for treatment, violated Cal. Gov't Code § 12940(a).

29. As a direct, foreseeable, and proximate result of Defendants' unlawful actions, Plaintiff has suffered and continues to suffer substantial losses in earnings and other employment benefits, and has incurred other economic losses.

30. As a direct, foreseeable, and proximate result of Defendants' unlawful actions, Plaintiff has suffered emotional distress, humiliation, shame, anxiety, and embarrassment, all to Plaintiff's damage in an amount to be proven at the time of trial.

31. Defendants committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of the rights and safety of Plaintiff and others. Plaintiff is thus entitled to recover punitive damages from Defendants in an amount according to proof.

## THIRD CAUSE OF ACTION

**(Failure to Prevent Discrimination: Violation of Cal. Gov't Code § 12940(k))**
**(Against All Defendants)**

32. Plaintiff re-alleges and incorporates herein by reference each and every allegation of the preceding paragraphs as though fully set forth herein, and alleges as follows:

33. At all times herein mentioned, FEHA, Gov. Code, § 12940, *et seq.*, was in full force and effect and fully binding upon Defendants. Plaintiff was a member of a group protected by that statute in that he was an employee with a known medical condition and/or physical disability who made a request for a reasonable accommodation to treat his medical condition and/or disability.

34. Defendants violated Cal. Gov't Code § 12940(k) because Defendants failed to take all reasonable steps necessary to prevent discrimination from occurring. Among other things,

1  Defendants failed to train and adequately supervise its employees in order to ensure that these
2  employees were not violating FEHA in their treatment of other employees.

3      35.     As a direct, foreseeable, and proximate result of Defendants' unlawful actions,
4  Plaintiff has suffered and continues to suffer substantial losses in earnings and other employment
5  benefits, and has incurred other economic losses.

6      36.     As a direct, foreseeable, and proximate result of Defendants' unlawful actions,
7  Plaintiff has suffered emotional distress, humiliation, shame, anxiety, and embarrassment, all to
8  Plaintiff's damage in an amount to be proven at the time of trial.

9      37.     Defendants committed the acts herein despicably, maliciously, fraudulently, and
10  oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive
11  amounting to malice, and in conscious disregard of the rights and safety of Plaintiff and others.
12  Plaintiff is thus entitled to recover punitive damages from Defendants in an amount according to
13  proof.

14                       **FOURTH CAUSE OF ACTION**
                 **(Retaliation in Violation of Cal. Gov't Code § 12940(h))**
15                        **(Against All Defendants)**

16      38.     Plaintiff re-alleges and incorporates herein by reference each and every allegation
17
   of the preceding paragraphs as though fully set forth herein, and alleges as follows:
18
       39.     Cal. Gov't Code§ 12940(h) makes it an unlawful employment practice for an
19
   employer to discriminate against any person because the person has opposed any practices
20
   forbidden under the FEHA, including discrimination on the basis of a disability.
21
       40.     Plaintiff opposed and protested ByteDance's and Gao's discrimination against
22
   Witness A and attempts to eliminate her position. He made these complaints to HR and Witness
23
   A's managers.
24
       41.     In response to his complaints, ByteDance and Gao terminated his employment.
25
       42.     As a direct, foreseeable, and proximate result of Defendants' unlawful actions,
26
   Plaintiff has suffered and continues to suffer substantial losses in earnings and other employment
27
   benefits, and has incurred other economic losses.
28

                                    8
                               COMPLAINT
                               CASE NO.

1     43.   As a direct, foreseeable, and proximate result of Defendants' unlawful actions,

2  Plaintiff has suffered emotional distress, humiliation, shame, anxiety, and embarrassment, all to

3  Plaintiff's damage in an amount to be proven at the time of trial.

4     44.   Defendants committed the acts herein despicably, maliciously, fraudulently, and

5  oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive

6  amounting to malice, and in conscious disregard of the rights and safety of Plaintiff and others.

7  Plaintiff is thus entitled to recover punitive damages from Defendants in an amount according to

8  proof.

9                           **FIFTH CAUSE OF ACTION**

10         **(Interference with CFRA Rights: Violation of Cal. Gov't Code § 12945.2(t))**
                                **(Against All Defendants)**
11

12     45.   Plaintiff re-alleges and incorporates herein by reference each and every allegation

13  of the preceding paragraphs as though fully set forth herein, and alleges as follows:

14     46.   Defendant was subject to the provisions of Cal. Gov't Code § 12945.2(t), the

15  CFRA, because Defendant ByteDance, Inc. employed at least 50 part-time or full-time

16  employees. Plaintiff was entitled to the benefits of the CFRA because he worked more than

17  twelve months for Defendant and had at least 1250 hours of service in the year preceding his

18  CFRA leave. Defendant employed at least 50 employees within 75 miles of San Francisco during

19  the relevant time period.

20     47.   The CFRA requires an employer to grant leave to an employee to care for the

21  employee's own serious health condition. The CFRA also requires the employer to reinstate the

22  employee to the same or a comparable job upon completion of the leave.

23     48.   Defendants violated Cal. Gov't Code § 12945.2(t) by failing to reinstate the

24  employee to the same or a comparable job upon completion of the leave.

25     49.   Defendants further violated Section 12945.2(t) by terminating Plaintiff following

26  his return from medical leave.

27

28

50. As a direct, foreseeable, and proximate result of Defendants' unlawful actions, Plaintiff has suffered and continues to suffer substantial losses in earnings and other employment benefits and has incurred other economic losses.

51. As a direct, foreseeable, and proximate result of Defendants' unlawful actions, Plaintiff has suffered emotional distress, humiliation, shame, anxiety, and embarrassment, all to Plaintiff's damage in an amount to be proven at the time of trial.

52. Defendants committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of the rights and safety of Plaintiff and others. Plaintiff is thus entitled to recover punitive damages from Defendant in an amount according to proof.

### SIXTH CAUSE OF ACTION

**(Retaliation in violation of the CFRA:  Violation of Cal. Gov't Code § 12945.2(l))**
**(Against All Defendants)**

53. Plaintiff re-alleges and incorporates herein by reference each and every allegation of the preceding paragraphs as though fully set forth herein, and alleges as follows:

54. The CFRA requires employers to grant leave to employees to care for the employee's own serious health condition.  The CFRA also requires the employer to reinstate the employee to the same or a comparable job upon completion of the leave.

55. Defendants violated Cal. Gov't Code § 12945.2(l) by failing to reinstate Plaintiff to the same or a comparable job upon completion of the leave.

56. Defendants violated Cal. Gov't Code § 12945.2(l) by terminating Plaintiff following his return from medical leave.

57. As a direct, foreseeable, and proximate result of Defendants' unlawful actions, Plaintiff has suffered and continues to suffer substantial losses in earnings and other employment benefits and has incurred other economic losses.

1    58.    As a direct, foreseeable, and proximate result of Defendants' unlawful actions,

2    Plaintiff has suffered emotional distress, humiliation, shame, anxiety, and embarrassment, all to

3    Plaintiff's damage in an amount to be proven at the time of trial.

4    59.    Defendants committed the acts herein despicably, maliciously, fraudulently, and

5    oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive

6    amounting to malice, and in conscious disregard of the rights and safety of Plaintiff and others.

7    Plaintiff is thus entitled to recover punitive damages from Defendant in an amount according to

8    proof.

9    **SEVENTH CAUSE OF ACTION**

10   **(Breach of Contract)**
     **(Against Defendant ByteDance, Inc.)**
11

12   60.    Plaintiff re-alleges and incorporates herein by reference each and every allegation

13   of the preceding paragraphs as though fully set forth herein, and alleges as follows:

14   61.    On or around September 30, 2017, Plaintiff and Defendant ByteDance, Inc.

15   entered into a written stock incentive plan, whereby Plaintiff was awarded 220,000 shares in

16   Defendant vesting over a four-year period. Shortly thereafter, the Parties signed a two-year term

17   supplemental employment agreement in order to ensure Plaintiff's continued employment at

18   Defendant. The supplemental employment agreement lasted until August 2019, unless Mr. Yu

19   was terminated "for cause."

20   62.    Plaintiff completed all conditions necessary to satisfy his obligations under his

21   operative employment agreement by continuing to work for Defendant until he was terminated

22   without cause.

23   63.    The first and second tranches of options under the incentive plan were set to vest

24   on August 30, 2017 and 2018, respectively, though ByteDance never vested these shares.

25   Defendant breached the contract by failing to award Plaintiff the options owed to him under the

26   incentive plan.

27   64.    Accordingly, Plaintiff is entitled to the compensation owed under the incentive

28   plan, including the shares already vested at the time of his termination.

## EIGHTH CAUSE OF ACTION

### (Breach of the Covenant of Good Faith and Fair Dealing)
### (Against Defendant ByteDance, Inc.)

65.   Plaintiff re-alleges and incorporates herein by reference each and every allegation of the preceding paragraphs as though fully set forth herein, and alleges as follows:

66.   Plaintiff's employment agreement and stock incentive plan contained an implied-in-law covenant of good faith and fair dealing that neither party would do anything to injure the right of the other party to enjoy the actual benefits of those contracts.

67.   Plaintiff performed all of the duties and obligations required of him by Defendant during his employment, including those duties and obligations that would entitle Plaintiff to receive the compensation described in the employment agreement and stock incentive plan.

68.   Defendant breached the implied covenant when it took actions to prevent Plaintiff from earning their full compensation owed under these agreements.

69.   Defendant's termination of Plaintiff was done in bad faith.

70.   As a result of Defendant's bad faith and unfair dealing in performing the terms of the employment agreement and stock incentive plan, Defendant is liable for breaching the covenant of good faith and fair dealing inherent in those agreements.

71.   Accordingly, Plaintiff is entitled to the compensation owed under the employment agreement and stock incentive plan, included continued stock option vesting for the term of the agreements, and the compensation he lost because Defendant unlawfully terminated these contracts.

## NINTH CAUSE OF ACTION

### (Wrongful Termination in Violation of Public Policy)
### (Against All Defendants)

72.   Plaintiff re-alleges and incorporates herein by reference each and every allegation of the preceding paragraphs as though fully set forth herein, and alleges as follows:

73. Plaintiff's employment was terminated by Defendant in violation of fundamental public policies of the State of California, including without limitation, the right to refrain from participating in unlawful conduct (or conduct reasonably believed to be unlawful).

74. The conduct detailed herein was wrongful and in violation of fundamental public policies of the State of California as reflected in laws that include, without limitation, the California Labor Code and California Business & Professions Code § 17200, and the California Penal Code.

75. Defendants' actions were willful and malicious and were committed with the wrongful intent to injure Plaintiff and in reckless disregard of Plaintiff's rights.

76. As a proximate result of Defendants' actions, Plaintiff has suffered and will continue to suffer damages that include his unvested stock options, loss of salary, bonuses, and other losses along with attorney's fees and litigation costs.

## TENTH CAUSE OF ACTION

### (Unfair Business Practices – Cal. Bus. & Prof. Code §17200)
### (Against All Defendants)

77. Plaintiff re-alleges and incorporates herein by reference each and every allegation of the preceding paragraphs as though fully set forth herein, and alleges as follows:

78. Cal. Bus. & Prof. Code § 17200 prohibits any unlawful, unfair *or* fraudulent business practices. By promising Plaintiff valuable equity and then firing him for an unlawful reason and taking back his unvested options, Defendants engaged in unlawful, unfair, and fraudulent business practices. Plaintiff is entitled to restitution of the ByteDance stock options that rightfully belong to him, but which Defendants deprived him of possessing.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Yu prays for judgment against Defendants as follows:

1. For compensatory damages, including but not limited to, lost back pay (including, but not limited to, salary and bonus wages), equity, and fringe benefits and future lost earnings, equity, and fringe benefits, emotional distress, and legal interest, according to proof as allowed by law;

13

1   2.   Liquidated damages as allowed by law;

2   3.   For injunctive relief, including reinstatement and a prohibition on further

3        discrimination or retaliation;

4   4.   For punitive damages as allowed by law;

5   5.   For an award to Plaintiff of costs of suit incurred herein and reasonable attorney's

6        fees;

7   6.   For prejudgment interest and post-judgment interest as allowed by law;

8   7.   For an injunction to prevent future violations of Cal. Gov't Code § 12940; and,

9   8.   For an award of such other and further relief as the Court deems just and proper.

10               **DEMAND FOR JURY TRIAL**

11   Plaintiff hereby demands a trial by jury on all causes of action so triable.

12

13   DATED: May 1, 2023                    Respectfully submitted,
                                          NASSIRI & JUNG LLP
14

15

16   By: _____

17                                        Charles H. Jung
                                          Attorneys for Plaintiff
18                                        YINTAO YU

14

COMPLAINT
CASE NO.

# Ex. 6

CHARLES THOMPSON, State Bar No. 139841
  thompsoncha@gtlaw.com
DAVID BLOCH, State Bar No. 184530
  david.bloch@gtlaw.com
ANTHONY E. GUZMAN II, State Bar No. 311580
  guzmanan@gtlaw.com
GREENBERG TRAURIG, LLP
101 Second Street, Suite 2200
San Francisco, California 94105
Telephone: 415.655.1300
Facsimile: 415.707.2010

Attorneys for Defendant
BYTEDANCE INC.

DEMERY RYAN, State Bar No. 217176
  dryan@littler.com
DAVID S. MAOZ, State Bar No. 233857
  dmaoz@littler.com
LITTLER MENDELSON, P.C.
2049 Century Park East, 5th Floor
Los Angeles, California 90067
Telephone: 310.553.0308
Facsimile: 800.715.1330

Attorneys for Defendant
SHUYI (SELENE) GAO
[*Additional Counsel on Next Page*]

## THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YINTAO YU, an individual,<br><br>    Plaintiff<br><br>    v.<br><br>BYTEDANCE, INC., a Delaware Corporation; SHUYI (SELENE) GAO, an individual, and DOES 1 through 20, inclusive,<br><br>    Defendants. | Case No. 5:23-cv-3503-VKD<br><br>**NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**<br>Date:    August 22, 2023<br>Time:    10:00 a.m.<br>Location:  Ctrm 2, 5th Floor<br><br>Complaint Filed:         May 1, 2023<br>Amended Complaint Filed:  May 12, 2023<br>Removed On:          July 11, 2023 |

1

1

**ADDITIONAL COUNSEL**

2

GREGORY ISKANDER, State Bar No. 200215
  giskander@littler.com

3

LITTLER MENDELSON, P.C.

4

Treat Towers 1255 Treat Boulevard, Suite 600
Walnut Creek, California 94597

5

Telephone: 925.932.2468
Facsimile: 925.946.9809

6

7

Attorneys for Defendant
SHUYI (SELENE) GAO

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

**TO PLAINTIFF AND HIS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that at 10:00 a.m., August 22, 2023, or as soon thereafter as counsel may be heard in Courtroom 2, 5th Floor before the Honorable Virginia K. DeMarchi of the United States District Court for the Northern District of California, 280 South 1st Street, San Jose, CA 95113, defendants Bytedance Inc. and Shuyi (Selene) Gao will and hereby do move the Court for an order compelling plaintiff Yintao Yu to arbitration and staying proceedings pending the resolution thereof.

This Motion is pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*, which requires the enforcement of valid arbitration agreements between parties. Mr. Yu executed a valid and enforceable arbitration agreement with BDI in August 2017, which delegates the question of arbitrability to the arbitrator and, irrespective of delegation, covers the at issue claims and parties. Defendants also move to stay all other matters while arbitration is pending. 9 U.S.C. § 3.

This Motion is based upon this Notice, the below Memorandum of Points and Authorities, the Declaration of James Liu, the Request for Judicial Notice, the complete files and records in this case, and all other information the Court deems relevant and proper for consideration.

Dated: July 14, 2023          GREENBERG TRAURIG, LLP

By:      */s/ David S. Bloch*

Charles O. Thompson
David Bloch
Anthony E. Guzman II

Attorneys for Defendant
BYTEDANCE INC.

Dated: July 14, 2023          LITTLER MENDELSON, P.C.

By:      */s/ Demery Ryan*

Demery Ryan
David S. Maoz
Gregory Iskander

Attorneys for Defendant
SHUYI (SELENE) GAO

3

## **TABLE OF CONTENTS**

I.      INTRODUCTION ..........................................................................................................7

II.     STATEMENT OF CASE .............................................................................................8

     A.      In August 2017, Mr. Yu Agreed to Arbitrate All Disputes Related to His New Role as BDI's Head of Engineering for Flipagram. ...........................................................8

     B.      Flipagram Struggled Financially; in February 2018, BDI Announced the Layoff of Flipagram's Engineering and Business Development Teams. ...................................9

     C.      Rather Than Request Arbitration, Mr. Yu Initiated Two Lawsuits and a Media Campaign Alleging Himself to be the Victim of a Widespread Conspiracy Between BDI and the Chinese Communist Party. ..................................................................10

III.    LEGAL STANDARD....................................................................................................12

     A.      The Federal Arbitration Act Governs the Arbitration Clause....................................12

     B.      The Federal Arbitration Act Establishes a Presumption in Favor of Arbitration, with Doubts to be Resolved in Favor of Arbitration.........................................................13

IV.    LEGAL ARGUMENT...................................................................................................13

     A.      The Question of the Dispute's Arbitrability Has Been Delegated to the Arbitrator.13

     B.      Even Absent Delegation, the Dispute Remains Arbitrable......................................15

         1.      The Parties Entered a Valid Agreement to Arbitrate. ...................................16

         2.      Each of Plaintiff's Causes of Action Fall Within the Ambit of Claims Covered by the Arbitration Clause. ............................................................16

         3.      Any Unconscionable Provisions Must Be Severed with the Remainder of the Arbitration Clause Enforced. .......................................................................18

     C.      This Action Should Be Stayed Pending the Completion of Binding Arbitration.....18

V.     CONCLUSION: THE COURT SHOULD GRANT DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY THIS ACTION PENDING COMPLETION OF THAT ARBITRATION......................................................................................................19

ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(I)(3) .............................................20

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Allied–Bruce Terminix Companies, Inc. v. Dobson,*
    513 U.S. 265 (1995).................................................................................................13

*AT&T Mobility LLC v. Concepcion,*
    131 S. Ct. 1740 (2011)............................................................................................14

*AT&T Tech., Inc. v. Commc'n Workers of Am.,*
    475 U.S. 643 (1986)...........................................................................................8, 14

*Brennan v. Opus Bank,*
    796 F.3d 1125 (9th Cir. 2015) ..............................................................................15

*Capelli Enters. v. Fantastic Sams Salons Corp.,*
    2017 U.S. Dist. LEXIS 5600 (N.D. Cal. Jan. 13, 2017) (Davila, J.) ......................16

*Citizens Bank v. Alafabco, Inc.,*
    539 U.S. 52 (2003)................................................................................................13

*Duval v. Costco Wholesale Corp.,*
    2023 U.S. Dist. LEXIS 97688 (N.D. Cal. June 5, 2023) (Hixson, Mag. J.)............17

*EEOC v. Waffle House,*
    534 U.S. 279 (2002)..............................................................................................17

*Epic Sys. Corp. v. Lewis,*
    138 S. Ct. 1612 (2018)..........................................................................................14

*Granite Rock Co. v. Int'l Bhd. of Teamsters,*
    561 U.S. 287 (2010)..............................................................................................14

*Henry Schein, Inc. v. Archer and White Sales, Inc.,*
    139 S. Ct. 524 (2019)............................................................................................15

*Kilgore v. KeyBank, Nat. Ass'n,*
    718 F.3d 1052 (9th Cir. 2013) ..............................................................................14

*Lang v. Skytap, Inc.,*
    347 F. Supp. 3d 420 (N.D. Cal. 2018) (Westmore, Mag. J.) ..................................19

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
    460 U.S. 1 (1983)..................................................................................................18

*Rent-A-Center, West, Inc. v. Jackson,*
    561 U.S. 63 (2010)..........................................................................................15, 16

*Rodriguez v. Shen Zhen New World I, LLC*,
　2014 WL 908464 (C.D. Cal. Mar. 6, 2014) ........................................................................18

*S.S. by and through Stern v. Peloton Interactive, Inc.*,
　566 F. Supp. 3d 1019 (S.D. Cal. 2021) ...............................................................................13

*Southland Corp. v. Keating*,
　465 U.S. 1 (1984) ..................................................................................................................8

*Thomas v. Cricket Wireless, LLC*,
　506 F. Supp. 3d 891 (N.D. Cal. 2020) (Alsup, J.) ..............................................................18

*Threshold Enters. Ltd. v. Pressed Juicery, Inc.*,
　445 F. Supp. 3d 139 (N.D. Cal. 2020) (White, J.) ..............................................................13

*United States v. Jackson*,
　851 Fed. Appx. 35 (9th Cir. 2021) ......................................................................................13

*White v. Ring LLC*,
　2023 U.S. Dist. LEXIS 16427 (C.D. Cal. Jan. 25, 2023) ....................................................16

*Ziober v. BLB Res., Inc.*,
　839 F. 3d 814 (9th Cir. 2016) ..............................................................................................19

**California Cases**

*United Transp. v. Southern Cal. Rapid Transit Dist.*,
　7 Cal. App. 4th 804 (1992) ...................................................................................................8

**Federal Statutes**

9 U.S.C.

　§§ 1 *et seq.* ..........................................................................................................................3
　§ 2 .......................................................................................................................................13
　§ 3 ....................................................................................................................................3, 19

**California Statutes**

California Labor Code
　§ 1102.5 ...............................................................................................................................12

6

## I.     INTRODUCTION

The Federal Arbitration Act is a cornerstone of our judicial system that establishes a clear and "liberal federal policy favoring arbitration." *AT&T Tech., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 650 (1986). Through its passage, "Congress … withdrew the power of the States to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). California echoes this sentiment by recognizing a similarly strong policy in favor of private resolution, with "[d]oubts as to whether the arbitration clause applies to a particular dispute to be resolved in favor of sending the parties to arbitration." *United Transp. v. Southern Cal. Rapid Transit Dist.*, 7 Cal. App. 4th 804, 808 (1992).

This case exemplifies the importance of these policies by presenting to this Court, and requesting appropriate enforcement of, a private arbitration agreement between ByteDance Inc. ("BDI") and Yintao Yu ("Mr. Yu"). The agreement expressly applies to "any dispute, controversy or claim arising out of or relating to or resulting from [Mr. Yu's] employment with [BDI], including any alleged violations of statute, common law or public policy… ."

Despite this obligation, Mr. Yu has now filed two separate California state court employment lawsuits following his departure in 2018 as part of a department layoff that affected 16 other employees in addition to Mr. Yu. In November 2022, Mr. Yu filed his first action *pro se* in state court, and BDI promptly removed the action to the Northern District of California, where it was assigned to U.S. District Court Judge Susan Illston. After BDI moved to compel arbitration in that action, Mr. Yu abandoned the proceeding, leading Judge Illston to dismiss the action for failure to prosecute on April 20, 2023. On May 1, 2023, Mr. Yu refiled his suit in state court, now represented by counsel and naming BDI's Head of Talent Acquisition and Human Resources Business Partner of Product and Engineering, Shuyi (Selene) Gao ("Ms. Gao"), as an individual defendant. Thereafter, on May 12, 2023, Mr. Yu filed an amended complaint and began a national media campaign alleging for the first time that Mr. Yu's 2018 termination resulted not from a department-wide layoff, but from a sensationalized (and highly political) purported conspiracy

7

1    involving the Chinese Communist Party. Seventeen media outlets published stories covering Mr.

2    Yu's sensationalized allegations in May alone.

3           On July 13, 2023, BDI removed Yu's latest action to this Court. ECF 1.

4           Against this backdrop, BDI now moves to compel arbitration for a second time. The

5    agreement signed by Mr. Yu incorporates the rules of the American Arbitration Association and,

6    by extension, delegates the question of arbitrability to a mutually agreeable arbitrator. Even absent

7    delegation, however, the agreement remains valid and enforceable. As BDI's Head of Talent

8    Acquisition and Human Resources Business Partner of Product and Engineering and an

9    individually named defendant, Ms. Gao moves to compel on the same grounds under several non-

10   signatory theories (also delegated to the arbitrator), including as an agent or third-party

11   beneficiary, and on equitable estoppel grounds.

12          Therefore, because the parties agreed to a valid and enforceable arbitration agreement that

13   complies with all appropriate legal requirements, and for all reasons set forth below, BDI and Ms.

14   Gao respectfully request that this Court issue an order to compel the parties to arbitration and stay

15   proceedings in this action pending the resolution of the arbitration.

16   **II.    STATEMENT OF CASE**
              **A.    In August 2017, Mr. Yu Agreed to Arbitrate All Disputes Related to His New**
17                    **Role as BDI's Head of Engineering for Flipagram.**

18          BDI is a United States company that supports the TikTok brand and other mobile social,

19   media, and entertainment platforms in the U.S. Declaration of James Liu ¶ 3 ("Liu Dec."). In 2017,

20   an affiliate of BDI acquired the video editor and music platform, Flipagram, which was typically

21   used to turn digital pictures into slideshow video clips, similar to a "flipbook." Around June 2017,

22   BDI offered Mr. Yu the position of Head of Engineering for Flipagram. First Amended Complaint

23   (ECF 1-4) ¶ 8. Negotiations were complex, involving sophisticated parties and issues. In addition

24   to negotiating the terms of his employment with BDI, Mr. Yu concurrently negotiated the sale of

25   certain intellectual property connected to Mr. Yu's own company, Tank Exchange. *Id.* During

26   those negotiations, BDI presented Mr. Yu an Employee Confidentiality and Inventions Assignment

27   Agreement (the "Agreement") for review and signing. Liu Dec. ¶ 5, Ex. A.

28

8

The Agreement provides for binding arbitration of all disputes (the "Arbitration Clause"). *Id*. Ex. A at § 10(B). Under it, the parties would agree to arbitrate all disputes arising out of or related to Mr. Yu's employment before the American Arbitration Associations ("AAA"), noting:

> Employee agrees any dispute, controversy or claim arising out of or relating to or resulting from Employee's employment with Employer, including any alleged violation of statute, common law or public policy shall be submitted to final and binding arbitration before the American Arbitration Association . . .

Liu Dec. Ex. A at § 10(B).

Should disputes arise, the parties would agree to application of the "then-current Employment Arbitration Rules and Mediation Procedures of the AAA and the Federal Arbitration Act." *Id*.

If Mr. Yu had questions, the Agreement made clear he was free to seek legal counsel. *Id*. Ex. A at 1 ("If you have any questions concerning this Agreement, you may wish to consult an attorney."). The Arbitration Clause then confirmed and acknowledged Mr. Yu's consent, mutuality of obligation, and consequent impacts on his rights, stating:

> This agreement to arbitrate has been freely negotiated and is mutually entered into between the parties. Employee fully understands and agrees that Employee is giving up certain rights otherwise afforded to Employee by civil court actions, including but not limited to the right to a jury trial.

Liu Dec. Ex. A § 10(B).

After review, in August 2017, Mr. Yu signed and returned an executed copy of the Agreement to BDI. Liu Dec. ¶ 5, Ex. A. He began work as Head of Engineering for Flipagram thereafter. *Id*. ¶ 5.

**B.** **Flipagram Struggled Financially; in February 2018, BDI Announced the Layoff of Flipagram's Engineering and Business Development Teams.**

Notwithstanding BDI's investment—hiring engineers and business development staff—Flipagram struggled financially. In or around February 2018, BDI decided to lay off the Flipagram engineering and business development teams. The layoff affected seventeen employees, including Mr. Yu.

9

In March 2018, the department layoffs for Flipagram were officially announced. However, on March 16, 2018, Mr. Yu's father emailed BDI's human resource department, claiming that his son had suddenly taken ill, so he required leave. BDI postponed Mr. Yu's layoff until July 2018. Bizarrely, Mr. Yu refused to accept that his employment had been terminated. Over the next several months, Mr. Yu ignored his layoff entirely, held himself out as still employed by BDI, stated his intention to return to the BDI offices, and repeatedly trespassed at BDI's corporate office. Request for Judicial Notice ("RJN"), Ex. 5 ("Menlo Park Police Department Incident Report"). After several such incidents, Mr. Yu had to be escorted off BDI's premises by the Menlo Park Police Department. *Id.*

### C. Rather Than Request Arbitration, Mr. Yu Initiated Two Lawsuits and a Media Campaign Alleging Himself to be the Victim of a Widespread Conspiracy Between BDI and the Chinese Communist Party.

Mr. Yu then turned to unsuccessful cryptocurrency speculation. RJN Ex. 6 ("Yu Bankruptcy Dec."). After taking out hard-money loans[1] on several properties, beginning in 2022, Mr. Yu began filing serial bankruptcy petitions and lawsuits, including six (6) lawsuits and seven (7) bankruptcy petitions. *Id.* Rather than request arbitration with BDI pursuant to the Agreement, Mr. Yu included BDI in this procession of lawsuits.

In November 2022, Mr. Yu filed a lawsuit in San Francisco Superior Court, Case No. CGC-22-603019, alleging retaliation and leave claims. RJN Ex. 1 ("Previously Dismissed Complaint"). After removing to the Northern District of California, Case No. 23-cv-00707-SI, BDI moved to compel Mr. Yu's claims to arbitration. RJN Ex. 2 ("Previous Motion to Compel Arbitration"). U.S. District Court Judge Susan Illston dismissed the case for failure to prosecute on April 20, 2023, after Mr. Yu failed to respond to BDI's motion to compel arbitration. RJN Ex. 3 ("Order Dismissing Prior Complaint").

On May 1, 2023, Mr. Yu refiled his action back in San Francisco Superior Court, Case No. CGC-23-606246. Complaint (ECF 1-1). Perhaps hoping to avoid removal, Mr. Yu named BDI's Head of Talent Acquisition and Human Resources Business Partner of Product and Engineering,

---

[1] A hard-money loan is a short-term loan, often of last resort, given by private parties or companies that accept property or assets as collateral rather than by traditional lenders.

Ms. Shuyi (Selene) Gao, as an individual defendant and omitted his prior federal claim. *Id.* ¶ 4. On May 12, 2023, Mr. Yu filed a First Amended Complaint, now styled as one for "public injunction." He now alleges causes of action for: (1) Unfair Business Practices – Public Injunction; (2) Retaliation under California Labor Code § 1102.5; (3) Failure to Prevent Disability Discrimination under California's Fair Employment and Housing Act ("FEHA"); (4) Retaliation under FEHA; (5) Breach of Contract; (6) Breach of the Covenant of Good Faith and Fair Dealing; (7) Wrongful Termination in Violation of Public Policy; (8) Unfair Business Practices – Restitution; and (9) Failure to Pay All Wages Due on Termination. First Amended Complaint (ECF 1-4).

Upon filing the First Amended Complaint, Mr. Yu engaged in a nationwide media campaign alleging both: (a) widespread collusion between BDI and the Chinese Communist Party to steal and profit from the copyrighted works of others by scraping certain copyrighted user data from competitor websites; and (b) that BDI conspired to retaliate against him after he allegedly "blew the whistle" on such practice. *E.g.*, ECF 1-5 at 5-7, 37-39 (complex litigation motion and Yu declaration in support). Paragraphs 9 through 11 in all three of Mr. Yu's complaints reiterate this theme, albeit with minor differences in word choice. In his Previously Dismissed Complaint, he asserts:

> Shortly after beginning his employment, Mr. Yu became aware that BDI had for years engaged in a worldwide scheme (including in California) to steal and profit from the content of others. The effort involved the use of software purposely unleashed to systematically strip user content from competitor's websites — chiefly, Instagram and Snapchat — and populate its own video services with these videos in an effort to make its own services appear more popular to end users…[all in violation of]…the Digital Millennium Copyright Act and other laws protecting copyrighted works.

The language of the Complaint and First Amended Complaint are much the same, though in the First Amended Complaint he artfully avoids the word "copyright."[2]

---

[2] **Note**: Previously Dismissed Complaint (RJN Ex. 1) ¶¶ 9-10; *accord* Complaint (ECF 1-1) ¶¶ 10-11; First Amended Complaint (ECF 1-4) ¶¶ 10-11.

11

According to Mr. Yu, "ByteDance has served as a useful propaganda tool for the Chinese Communist Party" through this alleged data scraping practice and is now "positioned to exploit nationalistic sentiments in other countries like the United States … ." First Amended Complaint (ECF 1-4) ¶¶ 17-18. By the time BDI received word of the FAC's (unserved) filing, Mr. Yu's peddled story had already run in six different media outlets, including *The Hollywood Reporter*, *Bloomberg*, *The Washington Post*, and *The New York Times*. By the end of the month, the number was up to seventeen—all of which can now be found conveniently on the Internet biography of Mr. Yu's counsel.[3]

Despite the Arbitration Clause, despite his non-opposition to BDI's prior motion to compel arbitration in federal court, and despite his renewed attempt to evade this Court's jurisdiction, Mr. Yu still refuses to bring his claims in the appropriate forum. For this reason, BDI and Ms. Gao now move to compel arbitration and stay proceedings for the second time.

## III.     LEGAL STANDARD
### A.     The Federal Arbitration Act Governs the Arbitration Clause.

The Federal Arbitration Act ("FAA") applies to "all employment contracts" which "evidence a transaction involving commerce." 9 U.S.C. § 2. This threshold requirement has been interpreted to signal the broadest permissible exercise of Congressional power under the Commerce Clause. *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 55 (2003); *Allied–Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 268–69 (1995). Mr. Yu's agreement to arbitrate claims related to his employment with BDI meets this threshold through his employment's direct tie to BDI's broader business. *United States v. Jackson*, 851 Fed. Appx. 35, 36 (9th Cir. 2021) (noting that the Ninth Circuit has "held that the Internet is an instrument of, and intimately related to, interstate commerce"); *S.S. by and through Stern v. Peloton Interactive, Inc.*, 566 F. Supp. 3d 1019, 1042 (S.D. Cal. 2021) (finding that because "Peloton's Services (*e.g.*, its app, website, and

---

[3] **Note**: These articles can all be found listed and hyperlinked on the first page of the online bio for Mr. Yu's attorney of record, Charles Jung. Link: https://www.njfirm.com/charles-jung.  The Court may take judicial notice of the existence of published Web pages. *Threshold Enters. Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020) (White, J.).

on-demand fitness classes) … require use of the Internet, the Agreement would involve interstate commerce").

**B.** **The Federal Arbitration Act Establishes a Presumption in Favor of Arbitration, with Doubts to be Resolved in Favor of Arbitration.**

The FAA reflects "a liberal federal policy favoring arbitration agreements." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)); *accord*, *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745-49 (2011) (it is "beyond dispute that the FAA was designed to promote arbitration"). Arbitration agreements are interpreted in light of these "liberal … polic[ies] favoring arbitration" such that any doubts as to coverage "are to be resolved in favor of sending the parties to arbitration." *AT&T Tech.*, 475 U.S. at 650 (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)).

## IV.   LEGAL ARGUMENT

A party moving to compel arbitration need only prove: (1) the existence of an arbitration agreement; and (2) that the agreement covers the dispute. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 314 (2010). If both requirements are met, the FAA leaves courts no discretion on whether to compel the parties to arbitration. *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) ("The FAA 'leaves no place for the exercise of discretion by the district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'") (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)) (emphasis original).

These requirements are plainly met here. The Court must compel arbitration because: (1) the Arbitration Clause clearly and unmistakably delegates the question of arbitrability to the arbitrator by incorporating the AAA arbitration rules; and (2) even absent delegation, the Agreement and Arbitration Clause are valid and cover all aspects of Mr. Yu's claims against BDI and Ms. Gao.

**A.** **The Question of the Dispute's Arbitrability Has Been Delegated to the Arbitrator.**

13

The Arbitration Clause appropriately delegates the "gateway" questions of this dispute's arbitrability to a mutually agreeable AAA arbitrator, including: "(1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." Liu Dec. ¶ 5, Ex. A; *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). That agreement should be enforced under settled U.S. Supreme Court precedent.

The U.S. Supreme Court has repeatedly held that "[w]hen the parties contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 528 (2019); *accord Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) ("[W]e have held that parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."). As the Supreme Court further explained when it comes to delegation of the question of arbitrability, "[a] court has no business weighing the merits" of "the threshold issue of arbitrability." *Henry Schein*, 139 S. Ct. at 530 (quoting *AT&T Tech.*, 475 U.S. at 649–50). Indeed, "[j]ust as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator." *Henry Schein*, 139 S. Ct. at 530.

Delegation must be "clear and unmistakable" for this deference to apply. *Id.* at 529. Expressly incorporating the AAA arbitration rules satisfies this "clear and unmistakable" standard. *Brennan*, 796 F.3d at 1130 (holding that the district court did not err in concluding that these parties' incorporation of the AAA rules constituted "clear and unmistakable" evidence of their intent to arbitrate the issue of the claims' arbitrability); RJN Ex. 4 ("Employment Arbitration Rules and Mediation Procedures of the AAA") § 6 (arbitrator shall have sole and exclusive authority "to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement").

The Arbitration Clause here incorporates these AAA rules. It provides that "any dispute controversy or claim … shall be submitted to final and binding arbitration before the American Arbitration Association … in accordance with the then-current Employment Arbitration Rules and

14

Mediation Procedures of the AAA…" Liu Dec. Ex. A at § 10(B). The Employment Arbitration Rules and Mediation Procedures of the AAA state plainly that the arbitrator shall have the sole and exclusive authority "to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." *See* RJN Ex. 4 § 6. This clear and unmistakable delegation removes from this Court the authority to decide even "gateway" issues of arbitrability, "such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center*, 561 U.S. at 68–69. This includes the issue of whether the agreement equally extends to non-signatories or third-party beneficiaries. *White v. Ring LLC*, 2023 U.S. Dist. LEXIS 16427, *20 n.3 (C.D. Cal. Jan. 25, 2023) ("Because the issue of who is a proper party to the arbitration is an issue delegated to the arbitrator [by virtue of the incorporated arbitration rules], the Court concludes that the arbitrator should decide if Home Depot may enforce the arbitration agreement in the Ring Terms of Service as a third-party beneficiary."). Compelling arbitration is appropriate on this basis alone.

### B.     Even Absent Delegation, the Dispute Remains Arbitrable.

Even without the Agreement's clear and unmistakable delegation, this Court should still compel Mr. Yu's claims against BDI and Ms. Gao to arbitration because: (1) the Agreement and Arbitration Clause therein are valid and enforceable; (2) Mr. Yu's claims directly arise from or, at minimum, relate to his former employment with BDI as the Head of Engineering for Flipagram; and (3) the Agreement allows this Court to sever unconscionable terms, even if such terms are present (which they are not).   Because the FAA creates a strong preference for arbitration, it is Mr. Yu's burden to *disprove* that the Arbitration Clause applies or, alternatively, that it should not be enforced. "Generally, 'the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration.'" *Capelli Enters. v. Fantastic Sams Salons Corp.*, 2017 U.S. Dist. LEXIS 5600, *4 (N.D. Cal. Jan. 13, 2017) (Davila, J.) (quoting *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000)). Mr. Yu did not contest arbitration in response to BDI's first motion to compel, and has no basis to do so here.

15

1.   The Parties Entered a Valid Agreement to Arbitrate.

There is little dispute that BDI and Mr. Yu entered into a valid and enforceable arbitration agreement when Mr. Yu executed the Agreement and, by extension, the Arbitration Clause therein. Courts apply traditional contract principles to determine a contract's existence. *Duval v. Costco Wholesale Corp.*, 2023 U.S. Dist. LEXIS 97688 at *6 (N.D. Cal. June 5, 2023) (Hixson, Mag. J.) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally ... should apply ordinary state-law principles that govern the formation of contracts") (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Under these principles, the Agreement represented an enforceable offer, supported by the consideration of the proposed Head of Engineering position, and accepted by Mr. Yu through his physical signature, dated by his own hand as rendered on August 30, 2017. Liu Dec. ¶ 5, Ex. A. On this record, the burden is both slight and satisfied. *Duval*, 2023 WL 3852694, at *3 (acknowledging "the relatively low threshold to authenticate [a] signature").

2.   Each of Plaintiff's Causes of Action Fall Within the Ambit of Claims Covered by the Arbitration Clause.

Each of Mr. Yu's claims against BDI and Ms. Gao clearly fall within the scope of claims covered under the Agreement's Arbitration Clause, which provides:

> Employee agrees that ***any dispute, controversy or claim arising out of or relating to or resulting from*** Employee's employment with Employer, including any alleged violation of statute, common law or public policy shall be submitted to final and binding arbitration before the American Arbitration Association…

Liu Dec. Ex. A at § 10(B) (emphasis added); *EEOC v. Waffle House*, 534 U.S. 279, 289 (2002) ("Absent some ambiguity in the agreement ... it is the language of the contract that defines the scope of disputes subject to arbitration").

Each of Mr. Yu's ten causes of action directly arise from or, at minimum, relate to the facts and circumstances of his prior employment as the Head of Engineering for Flipagram. It was in that role that he allegedly "discovered" and "blew the whistle" on the alleged copyright and data scraping practice, allegedly received instruction to "cover up" evidence of its existence, and in

16

which he suffered purported retaliation for attempting to oppose. By alleging the practice infringed Mr. Yu's own copyrighted social media content, he equally invokes the work-for-hire provisions elsewhere in his Agreement and, in turn, the prospective ownership of such works. His statutory wage claim and contractual unvested stock option claim bear the same connection—representing the retaliatory consequences of his purported opposition to the imaginative, government-involved conspiracy he now claims.

On this record, Mr. Yu's claims unquestionably "arise out of," "relate to," and "result[]" from [his] employment with Employer." Liu Dec. Ex. A at § 10(B). Moreover, because this "any dispute … aris[ing] out of," "relat[ing] to," and "resulting from" language establishes the Arbitration Clause's scope in terms of claim subject matter, not party identity, Mr. Yu's claims against Ms. Gao are also covered. Alternatively, given her role at BDI, Ms. Gao is equally capable of enforcing the Arbitration Clause as a third-party beneficiary or agent pursuant to the Agreement's beneficiaries clause. *Rodriguez v. Shen Zhen New World I, LLC*, 2014 WL 908464, *5 (C.D. Cal. Mar. 6, 2014) (acknowledging a "third party beneficiary or an agent of one of the parties to the contract may have standing to compel arbitration"); Liu Dec. Ex. A § 10(C) ("The terms, provisions, covenants and agreements contained in this Agreement shall apply to, be binding upon and inure to the benefit of the parties and their respective heirs, legal representatives, successors, and assigns …"). She may also enforce the Arbitration Clause under equitable estoppel principles. *Rodriguez*, 2014 WL 908464, at *5-6 ("Where a non-signatory seeks to enforce an arbitration clause, the doctrine of equitable estoppel applies … when the signatory alleges substantially interdependent and concerted misconduct by the non-signatory and another signatory").

Regardless, even should the Court construe ambiguity in the Arbitration Clause's apparent scope (it should not), federal policy is clear: doubts must be resolved in favor of arbitration. *Thomas v. Cricket Wireless, LLC*, 506 F. Supp. 3d 891, 897 (N.D. Cal. 2020) (Alsup, J.) ("[A]ny doubts concerning the scope of arbitrable issues be resolved in favor of arbitration."); *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24 ("The Arbitration Act establishes that, as a matter of federal

17

law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."). On this basis, again, arbitration remains appropriate.

            3.     <u>Any Unconscionable Provisions Must Be Severed with the Remainder of the Arbitration Clause Enforced.</u>

      To the extent that this Court deems any portion of the Agreement or Arbitration Clause unconscionable (they are not), the law necessitates this Court sever the objectionable provision and and enforce the remainder. *Lang v. Skytap, Inc.*, 347 F. Supp. 3d 420, 431 (N.D. Cal. 2018) (Westmore, Mag. J.) ("Even if substantively unconscionable terms are found in an agreement, they do not automatically render the entire agreement unenforceable."). The Arbitration Clause itself says:

> [I]f one or more provisions of this Agreement are held to be unenforceable under applicable law, such provisions shall be modified to the minimum extent necessary to comply with applicable law and the intent of the parties. If any provision of this Agreement, or application of it to any person, place or circumstances, shall be held by an arbitrator or court of competent jurisdiction to be invalid, unenforceable, or void, the remainder of this Agreement and such provisions as applied to other persons, places, and circumstances shall remain in full force and effect.

Liu Dec. Ex. A at § 10(B).

      In accordance with this severability clause, unconscionable terms must be extricated with the Arbitration Clause's remainder both intact and enforceable.

      **C.**     **This Action Should Be Stayed Pending the Completion of Binding Arbitration.**

      BDI and Ms. Gao further request this Court stay this action pending the resolution of binding arbitration. Should the Court determine any portion of this matter referable to arbitration, the FAA requires district courts to stay proceedings upon request by either party. 9 U.S.C. § 3; *Ziober v. BLB Res., Inc.*, 839 F. 3d 814, 817 (9th Cir. 2016) ("Section 3 of the FAA specifically directs federal district courts to stay proceedings and compel arbitration of 'of any issue referable to arbitration under an agreement in writing for such arbitration.'").

18

### V.    CONCLUSION: THE COURT SHOULD GRANT DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY THIS ACTION PENDING COMPLETION OF THAT ARBITRATION

As demonstrated above, Defendants' motion to compel arbitration and to stay this action pending completion of that arbitration should be granted. Based on the FAA's strong preference for arbitration, it is Mr. Yu's burden to show that the Arbitration Clause is unenforceable or inapplicable.  He failed to even contest the Clause's application in his prior lawsuit, and there is no reason to believe he will marshal new or different facts here.

Given the Arbitration Clause's clear and unmistakable delegation of authority to the arbitrator, BDI and Ms. Gao request the question of arbitrability itself be referred to arbitration. Even should the Court find this delegation lacking (it is not), the inherent relationship between Mr. Yu's claims and his experiences while serving as the Head of Engineering for Flipagram renders his claims subject to arbitration. Therefore, BDI and Ms. Gao respectfully request that this Court grant their Motion to Compel Arbitration and Stay Proceedings pending the resolution of binding AAA arbitration.

Dated:  July 14, 2023                         GREENBERG TRAURIG, LLP


                                By:         _/s/ David S. Bloch_____
                                            Charles O. Thompson
                                            David Bloch
                                            Anthony E. Guzman II

                                            Attorneys for Defendant
                                            BYTEDANCE INC.


Dated:  July 14, 2023                         LITTLER MENDELSON, P.C.


                                By:         _/s/ Demery Ryan_____
                                            Demery Ryan
                                            David S. Maoz
                                            Gregory Iskander

                                            Attorneys for Defendant
                                            SHUYI (SELENE) GAO

## <u>ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(I)(3)</u>

I, David S. Bloch, hereby attest, pursuant to N.D. Cal. Civil Local Rule 5-1, that the concurrence to the filing of this document has been obtained from Demery Ryan, signatory hereto.

Dated: July 14, 2023                                  GREENBERG TRAURIG, LLP

By: _/s/David S. Bloch_
David S. Bloch

Attorneys for Defendant
ByteDance Inc.

20

# Ex. 7



# Employment

Arbitration Rules and Mediation Procedures



Available online at **adr.org/employment**

Rules Amended and Effective November 1, 2009
Introduction Revised October 1, 2017

## Regional Vice Presidents and Assistant Vice Presidents

**States: Delaware, District of Columbia, Maryland, New Jersey, Pennsylvania**
Kenneth Egger
Vice President
Phone: 215.731.2281
Email: EggerK@adr.org

**States: Colorado, Illinois, Iowa, Kansas, Michigan, Minnesota, Missouri, Montana, Nebraska, New Mexico, North Dakota, South Dakota, Wisconsin, Wyoming**
Jan Holdinski
Vice President
Phone: 248.352.5509
Email: HoldinskiJ@adr.org

**States: Connecticut, Maine, Massachusetts, New Hampshire, New York, Vermont**
Ann Lesser, Esq.
Vice President
Phone: 212.484.4084
Email: LesserA@adr.org

**States: Arkansas, Indiana, Kentucky, North Carolina, Ohio, Oklahoma, South Carolina, Tennessee, Virginia, West Virginia**
Aaron Schmidt
Vice President
Phone: 440.596.3789
Email: SchmidtA@adr.org

**States: Alaska, Arizona, California, Hawaii, Idaho, Nevada, Oregon, Utah, Washington**
Patrick Tatum
Vice President
Phone: 559.490.1905
Email: TatumP@adr.org

**States: Alabama, Florida, Georgia, Louisiana, Mississippi, Texas**
Charles Dorsey
Assistant Vice President
Phone: 866.686.6024
Email: DorseyC@adr.org

**States: Rhode Island**
Heather Santo
Assistant Vice President
Phone: 866.293.4053
Email: SantoH@adr.org

## Case Management Vice President and Assistant Vice Presidents

Southeast Case Management Center
Charles Dorsey
Assistant Vice President
Phone: 866.686.6024
Email: DorseyC@adr.org
**Administers cases in Alabama, Arkansas, Florida, Georgia, Kentucky, Louisiana, Mississippi, North Carolina, Ohio, Puerto Rico, South Carolina, Tennessee, US Virgin Islands, Virginia**

Northeast Case Management Center
Heather Santo
Assistant Vice President
Phone: 866.293.4053
Email: SantoH@adr.org
**Administers cases in Connecticut, Delaware, District of Columbia, Maine, Maryland, Massachusetts, Michigan, New Hampshire, New Jersey, New York, Pennsylvania, Rhode Island, Vermont, West Virginia**

Western Case Management Center
Patrick Tatum
Vice President
Phone: 559.490.1905
Email: TatumP@adr.org
**Administers cases in Alaska, Arizona, California, Hawaii, Idaho, Nevada, Oregon, Utah, Washington**

Central Case Management Center
Charles Dorsey
Assistant Vice President
Phone: 866.686.6024
Email: DorseyC@adr.org
**Administers cases in Colorado, Illinois, Indiana, Iowa, Kansas, Minnesota, Missouri, Montana, Nebraska, New Mexico, North Dakota, Oklahoma, South Dakota, Texas, Wisconsin, Wyoming**

## Table of Contents

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

The Employment Due Process Protocol . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

AAA's Employment ADR Rules . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

AAA's Policy on Employment ADR . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Notification. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Designing an ADR Program. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Types of Disputes Covered . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9


Employment Arbitration Rules and Mediation Procedures . . . . . . . . . . . . . . . . . . . 10

1. Applicable Rules of Arbitration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

2. Notification. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

3. AAA as Administrator of the Arbitration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

4. Initiation of Arbitration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

5. Changes of Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

6. Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

7. Administrative and Mediation Conferences . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

8. Arbitration Management Conference . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

9. Discovery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

10. Fixing of Locale (the city, county, state, territory, and/or country of the Arbitration). 14

11. Date, Time and Place (the physical site of the hearing within the designated locale) of Hearing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

12. Number, Qualifications and Appointment of Neutral Arbitrators. . . . . . . . . . . . . . 15

13. Party Appointed Arbitrators . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

14. Appointment of Chairperson by Party-Appointed Arbitrators or Parties. . . . . . . . . 16

15. Disclosure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

16. Disqualification of Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

17. Communication with Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

18. Vacancies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

19. Representation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

20. Stenographic Record. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

21. Interpreters. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

22. Attendance at Hearings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

23. Confidentiality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

24. Postponements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

25. Oaths . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Rules Amended and Effective November 1, 2009. Introduction Revised October 1, 2017.

EMPLOYMENT RULES   **3**

26. Majority Decision . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

27. Dispositive Motions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

28. Order of Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

29. Arbitration in the Absence of a Party or Representative . . . . . . . . . . . . . . . . . . . . . . . . . . 20

30. Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

31. Inspection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

32. Interim Measures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

33. Closing of Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

34. Reopening of Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

35. Waiver of Oral Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

36. Waiver of Objection/Lack of Compliance with These Rules . . . . . . . . . . . . . . . . . . . . . . 22

37. Extensions of Time . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

38. Serving of Notice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

39. The Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

40. Modification of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

41. Release of Documents for Judicial Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

42. Applications to Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

43. Administrative Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

44. Neutral Arbitrator's Compensation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

45. Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

46. Deposits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

47. Suspension for Non-Payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

48. Interpretation and Application of Rules . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

AAA Administrative Fees for Employment/Workplace Cases . . . . . . . . . . . . . . . . . . . 26

Optional Rules for Emergency Measures of Protection . . . . . . . . . . . . . . . . . . . . . . . . 27

O-1. Applicability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

O-2. Appointment of Emergency Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

O-3. Schedule . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

O-4. Interim Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

O-5. Constitution of the Panel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

O-6. Security . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

O-7. Special Master . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

O-8. Costs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Employment Mediation Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

M-1. Agreement of Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

M-2. Initiation of Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

M-3. Fixing of Locale (the city, county, state, territory and, if applicable, country of the mediation) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

M-4. Representation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

M-5. Appointment of the Mediator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

M-6. Mediator's Impartiality and Duty to Disclose . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

M-7. Vacancies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

M-8. Duties and Responsibilities of the Mediator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

M-9. Responsibilities of the Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

M-10. Privacy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

M-11. Confidentiality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

M-12. No Stenographic Record . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

M-13. Termination of Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

M-14. Exclusion of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

M-15. Interpretation and Application of Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

M-16. Deposits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

M-17. Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

M-18. Cost of the Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

# Employment Arbitration Rules and Mediation Procedures

## Introduction

Federal and state laws reflecting societal intolerance for certain workplace conduct, as well as court decisions interpreting and applying those statutes, have redefined responsible corporate practice and employee relations. Increasingly, employers and employees face workplace disputes involving alleged wrongful termination, sexual harassment, or discrimination based on race, color, religion, sex, sexual orientation, national origin, age and disability.

As courts and administrative agencies become less accessible to civil litigants, alternative dispute resolution (ADR) procedures have become more common in contracts of employment, personnel manuals, and employee handbooks as a means of resolving workplace disputes privately, promptly and economically. Millions of workers are now covered by employment ADR clauses administered by the American Arbitration Association (AAA).

The American Arbitration Association, a not-for-profit, public service organization, offers a broad range of dispute resolution services to business executives, attorneys, individuals, trade associations, unions, management, consumers, and all levels of government. Services are available through AAA headquarters in New York City and offices in major cities throughout the United States and internationally. Hearings may be held at locations convenient for the parties and are not limited to cities with AAA offices. In addition, the AAA serves as a center for education and training, issues specialized publications, and conducts research on various forms of alternative dispute resolution.

## The Employment Due Process Protocol

The *Employment Due Process Protocol* was developed in 1995 by a special Task Force composed of individuals representing management, labor, employment, civil rights organizations, private administrative agencies, government, and the American Arbitration Association. The Due Process Protocol, which was endorsed

by the Association in 1995, seeks to ensure fairness and equity in resolving workplace disputes. It encourages mediation and arbitration of statutory disputes, provided there are due process safeguards. It conveys the hope that ADR will reduce delays caused by the huge backlog of cases pending before administrative agencies and the courts. The Due Process Protocol "recognizes the dilemma inherent in the timing of an agreement to mediate and/or arbitrate statutory disputes" but does not take a position on whether an employer can require a pre-dispute, binding arbitration program as a condition of employment.

The Due Process Protocol has been endorsed by organizations representing a broad range of constituencies. They include the American Arbitration Association, the American Bar Association Labor and Employment Section, the American Civil Liberties Union, the Federal Mediation and Conciliation Service, the National Academy of Arbitrators, and the National Society of Professionals in Dispute Resolution. The National Employment Lawyers Association has endorsed the substantive provisions of the Due Process Protocol.

It has been incorporated into the Report of the United States Secretary of Labor's *Task Force in Excellence in State and Local Government* and cited with approval in numerous court opinions.

## AAA's Employment ADR Rules

On June 1, 1996, the Association issued National Rules for the Resolution of Employment Disputes (now known as the *Employment Arbitration Rules and Mediation Procedures*). The rules reflected the guidelines outlined in the Due Process Protocol and were based upon the AAA's California Employment Dispute Resolution Rules, which were developed by a committee of employment management and plaintiff attorneys, retired judges and arbitrators, in addition to Association executives. The revised rules were developed for employers and employees who wish to use a private alternative to resolve their disputes and included procedures which ensure due process in both the mediation and arbitration of employment disputes. The rules enabled parties to have complaints heard by an impartial person of their joint selection, with expertise in the employment field.

## AAA's Policy on Employment ADR

The AAA's policy on employment ADR is guided by the state of existing law, as well as its obligation to act in an impartial manner. In following the law, and in the interest of providing an appropriate forum for the resolution of employment

disputes, the Association administers dispute resolution programs which meet the due process standards as outlined in its *Employment Arbitration Rules and Mediation Procedures* and the Due Process Protocol. If the Association determines that a dispute resolution program on its face substantially and materially deviates from the minimum due process standards of the *Employment Arbitration Rules and Mediation Procedures* and the Due Process Protocol, the Association may decline to administer cases under that program. Other issues will be presented to the arbitrator for determination.

## Notification

If an employer intends to utilize the dispute resolution services of the Association in an employment ADR plan, it should at least 30 days prior to the planned effective date of the program: (1) notify the Association of its intention to do so; and (2) provide the Association with a copy of the employment dispute resolution plan. If an employer does not comply with this requirement, the Association reserves the right to decline its administrative services. Copies of all plans should be sent to the American Arbitration Association, 1101 Laurel Oak Road, Suite 100, Voorhees, NJ 08043; Email: **casefiling@adr.org**.

## Designing an ADR Program

The guiding principle in designing a successful employment ADR system is that it must be fair in fact and perception.

The American Arbitration Association encourages employers to consider the wide range of legally-available options to resolve workplace disputes outside the courtroom. A special emphasis is placed by the Association on encouraging the development of in-house dispute resolution procedures, such as open door policies, ombuds, peer review and internal mediation. The Association recommends an external mediation component to resolve disputes not settled by the internal dispute resolution process.

Programs which use arbitration as a final step may employ:

- pre-dispute, voluntary final and binding arbitration;
- pre-dispute, mandatory nonbinding arbitration;
- pre-dispute, mandatory final and binding arbitration; or
- post-dispute, voluntary final and binding arbitration.

Although the AAA administers binding arbitration systems that have been required as a condition of initial or continued employment, such programs must be consistent with the Association's *Employment Arbitration Rules and Mediation Procedures* and the *Employment Due Process Protocol.*

Specific guidance on the responsible development and design of employment ADR systems is contained in the Association's publication, *Resolving Employment Disputes: A Practical Guide*, which is available from the AAA's website, **www.adr.org**.

## Types of Disputes Covered

These dispute resolution procedures were developed for arbitration agreements contained in employee personnel manuals, an employment application of an individual employment agreement, independent contractor agreements for workplace disputes and other types of employment agreements or workplace agreements, or can be used for a specific dispute. They do not apply to disputes arising out of collective bargaining agreements.

## Employment Arbitration Rules and Mediation Procedures

### 1. Applicable Rules of Arbitration

The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association (hereinafter "AAA") or under its *Employment Arbitration Rules and Mediation Procedures* or for arbitration by the AAA of an employment dispute without specifying particular rules[*]. If a party establishes that an adverse material inconsistency exists between the arbitration agreement and these rules, the arbitrator shall apply these rules.

If, within 30 days after the AAA's commencement of administration, a party seeks judicial intervention with respect to a pending arbitration and provides the AAA with documentation that judicial intervention has been sought, the AAA will suspend administration for 60 days to permit the party to obtain a stay of arbitration from the court. These rules, and any amendment of them, shall apply in the form in effect at the time the demand for arbitration or submission is received by the AAA.

*\* The National Rules for the Resolution of Employment Disputes have been re-named the Employment Arbitration Rules and Mediation Procedures. Any arbitration agreements providing for arbitration under its National Rules for the Resolution of Employment Disputes shall be administered pursuant to these Employment Arbitration Rules and Mediation Procedures.*

### 2. Notification

An employer intending to incorporate these rules or to refer to the dispute resolution services of the AAA in an employment ADR plan, shall, at least 30 days prior to the planned effective date of the program:

  i.  notify the Association of its intention to do so and,

  ii.  provide the Association with a copy of the employment dispute resolution plan.

Compliance with this requirement shall not preclude an arbitrator from entertaining challenges as provided in Section 1. If an employer does not comply with this requirement, the Association reserves the right to decline its administrative services.

### 3. AAA as Administrator of the Arbitration

When parties agree to arbitrate under these rules, or when they provide for arbitration by the AAA and an arbitration is initiated under these rules, they thereby authorize the AAA to administer the arbitration. The authority and duties of the AAA are prescribed in these rules, and may be carried out through such of the AAA's representatives as it may direct. The AAA may, in its discretion, assign the administration of an arbitration to any of its offices.

### 4. Initiation of Arbitration

Arbitration shall be initiated in the following manner.

**a.**   The parties may submit a joint request for arbitration.

**b.**   In the absence of a joint request for arbitration:

**(i)**   The initiating party (hereinafter "Claimant[s]") shall:

**(1)**   File a written notice (hereinafter "Demand") of its intention to arbitrate at any office of the AAA, within the time limit established by the applicable statute of limitations. Any dispute over the timeliness of the demand shall be referred to the arbitrator. The filing shall be made in duplicate, and each copy shall include the applicable arbitration agreement. The Demand shall set forth the names, addresses, and telephone numbers of the parties; a brief statement of the nature of the dispute; the amount in controversy, if any; the remedy sought; and requested hearing location.

**(2)**   Simultaneously provide a copy of the Demand to the other party (hereinafter "Respondent[s]").

**(3)**   Include with its Demand the applicable filing fee, unless the parties agree to some other method of fee advancement.

**(ii)**   The Respondent(s) may file an Answer with the AAA within 15 days after the date of the letter from the AAA acknowledging receipt of the Demand. The Answer shall provide the Respondent's brief response to the claim and the issues presented. The Respondent(s) shall make its filing in duplicate with the AAA, and simultaneously shall send a copy of the Answer to the Claimant. If no answering statement is filed within the stated time, Respondent will be deemed to deny the claim. Failure to file an answering statement shall not operate to delay the arbitration.

**(iii)**   The Respondent(s):

**(1)**   May file a counterclaim with the AAA within 15 days after the date of the letter from the AAA acknowledging receipt of the Demand. The filing shall be made in duplicate. The counterclaim shall set forth the nature of the claim, the amount in controversy, if any, and the remedy sought.

**(2)** Simultaneously shall send a copy of any counterclaim to the Claimant.

**(3)** Shall include with its filing the applicable filing fee provided for by these rules.

**(iv)** The Claimant may file an Answer to the counterclaim with the AAA within 15 days after the date of the letter from the AAA acknowledging receipt of the counterclaim. The Answer shall provide Claimant's brief response to the counterclaim and the issues presented. The Claimant shall make its filing in duplicate with the AAA, and simultaneously shall send a copy of the Answer to the Respondent(s). If no answering statement is filed within the stated time, Claimant will be deemed to deny the counterclaim. Failure to file an answering statement shall not operate to delay the arbitration.

**c.** The form of any filing in these rules shall not be subject to technical pleading requirements.

## 5. Changes of Claim

Before the appointment of the arbitrator, if either party desires to offer a new or different claim or counterclaim, such party must do so in writing by filing a written statement with the AAA and simultaneously provide a copy to the other party(s), who shall have 15 days from the date of such transmittal within which to file an answer with the AAA. After the appointment of the arbitrator, a party may offer a new or different claim or counterclaim only at the discretion of the arbitrator.

## 6. Jurisdiction

**a.** The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.

**b.** The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

**c.** A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

## 7. Administrative and Mediation Conferences

Before the appointment of the arbitrator, any party may request, or the AAA, in its discretion, may schedule an administrative conference with a representative

of the AAA and the parties and/or their representatives. The purpose of the administrative conference is to organize and expedite the arbitration, explore its administrative aspects, establish the most efficient means of selecting an arbitrator, and to consider mediation as a dispute resolution option. There is no administrative fee for this service.

At any time after the filing of the Demand, with the consent of the parties, the AAA will arrange a mediation conference under its Mediation Procedures to facilitate settlement. The mediator shall not be any arbitrator appointed to the case, except by mutual written agreement of the parties. There is no additional filing fee for initiating a mediation under the AAA Mediation Procedures for parties to a pending arbitration.

## 8. Arbitration Management Conference

As promptly as practicable after the selection of the arbitrator(s), but not later than 60 days thereafter, an arbitration management conference shall be held among the parties and/or their attorneys or other representatives and the arbitrator(s). Unless the parties agree otherwise, the Arbitration Management Conference will be conducted by telephone conference call rather than in person. At the Arbitration Management Conference the matters to be considered shall include, without limitation:

    **i.**  the issues to be arbitrated;

    **ii.**  the date, time, place, and estimated duration of the hearing;

    **iii.**  the resolution of outstanding discovery issues and establishment of discovery parameters;

    **iv.**  the law, standards, rules of evidence and burdens of proof that are to apply to the proceeding;

    **v.**  the exchange of stipulations and declarations regarding facts, exhibits, witnesses, and other issues;

    **vi.**  the names of witnesses (including expert witnesses), the scope of witness testimony, and witness exclusion;

    **vii.**  the value of bifurcating the arbitration into a liability phase and damages phase;

    **viii.**  the need for a stenographic record;

    **ix.**  whether the parties will summarize their arguments orally or in writing;

    **x.**  the form of the award;

    **xi.**  any other issues relating to the subject or conduct of the arbitration;

    **xii.**  the allocation of attorney's fees and costs;

**xiii.** the specification of undisclosed claims;

**xiv.** the extent to which documentary evidence may be submitted at the hearing;

**xv.** the extent to which testimony may be admitted at the hearing telephonically, over the internet, by written or video-taped deposition, by affidavit, or by any other means;

**xvi.** any disputes over the AAA's determination regarding whether the dispute arose from an individually-negotiated employment agreement or contract, or from an employer plan (see Costs of Arbitration section).

The arbitrator shall issue oral or written orders reflecting his or her decisions on the above matters and may conduct additional conferences when the need arises.

There is no AAA administrative fee for an Arbitration Management Conference.

## 9. Discovery

The arbitrator shall have the authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration.

The AAA does not require notice of discovery related matters and communications unless a dispute arises. At that time, the parties should notify the AAA of the dispute so that it may be presented to the arbitrator for determination.

## 10. Fixing of Locale (the city, county, state, territory, and/or country of the Arbitration)

If the parties disagree as to the locale, the AAA may initially determine the place of arbitration, subject to the power of the arbitrator(s), after their appointment to make a final determination on the locale. All such determinations shall be made having regard for the contentions of the parties and the circumstances of the arbitration.

## 11. Date, Time and Place (the physical site of the hearing within the designated locale) of Hearing

The arbitrator shall set the date, time, and place for each hearing. The parties shall respond to requests for hearing dates in a timely manner, be cooperative in scheduling the earliest practicable date, and adhere to the established hearing schedule. The AAA shall send a notice of hearing to the parties at least 10 days in advance of the hearing date, unless otherwise agreed by the parties.

## 12. Number, Qualifications and Appointment of Neutral Arbitrators

**a.** If the arbitration agreement does not specify the number of arbitrators or the parties do not agree otherwise, the dispute shall be heard and determined by one arbitrator.

**b.** Qualifications

    **i.** Neutral arbitrators serving under these rules shall be experienced in the field of employment law.

    **ii.** Neutral arbitrators serving under these rules shall have no personal or financial interest in the results of the proceeding in which they are appointed and shall have no relation to the underlying dispute or to the parties or their counsel that may create an appearance of bias.

    **iii.** The roster of available arbitrators will be established on a non-discriminatory basis, diverse by gender, ethnicity, background, and qualifications.

    **iv.** The AAA may, upon request of a party within the time set to return their list or upon its own initiative, supplement the list of proposed arbitrators in disputes arising out of individually-negotiated employment contracts with persons from the Commercial Roster, to allow the AAA to respond to the particular need of the dispute. In multi-arbitrator disputes, at least one of the arbitrators shall be experienced in the field of employment law.

**c.** If the parties have not appointed an arbitrator and have not provided any method of appointment, the arbitrator shall be appointed in the following manner:

    **i.** Shortly after it receives the Demand, the AAA shall send simultaneously to each party a letter containing an identical list of names of persons chosen from the Employment Dispute Resolution Roster. The parties are encouraged to agree to an arbitrator from the submitted list and to advise the AAA of their agreement.

    **ii.** If the parties are unable to agree upon an arbitrator, each party to the dispute shall have 15 days from the transmittal date in which to strike names objected to, number the remaining names in order of preference, and return the list to the AAA. If a party does not return the list within the time specified, all persons named therein shall be deemed acceptable.

    **iii.** From among the persons who have been approved on both lists, and in accordance with the designated order of mutual preference, the AAA shall invite the acceptance of an arbitrator to serve. If the parties fail to agree on any of the persons named, or if acceptable arbitrators are unable to act, or if for any other reason the appointment cannot be made from the submitted list, the AAA shall have the power to make the appointment from among other members of the panel without the submission of additional lists.

## 13. Party Appointed Arbitrators

**a.** If the agreement of the parties names an arbitrator or specifies a method of appointing an arbitrator, that designation or method shall be followed.

**b.** Where the parties have agreed that each party is to name one arbitrator, the arbitrators so named must meet the standards of Section R-16 with respect to impartiality and independence unless the parties have specifically agreed pursuant to Section R-16(a) that the party-appointed arbitrators are to be non-neutral and need not meet those standards. The notice of appointment, with the name, address, and contact information of the arbitrator, shall be filed with the AAA by the appointing party. Upon the request of any appointing party, the AAA shall submit a list of members of the National Roster from which the party may, if it so desires, make the appointment.

**c.** If the agreement specifies a period of time within which an arbitrator shall be appointed and any party fails to make the appointment within that period, the AAA shall make the appointment.

**d.** If no period of time is specified in the agreement, the AAA shall notify the party to make the appointment. If within 15 days after such notice has been sent, an arbitrator has not been appointed by a party, the AAA shall make the appointment.

## 14. Appointment of Chairperson by Party-Appointed Arbitrators or Parties

**a.** If, pursuant to Section R-13, either the parties have directly appointed arbitrators, or the arbitrators have been appointed by the AAA, and the parties have authorized them to appoint a chairperson within a specified time and no appointment is made within that time or any agreed extension, the AAA may appoint the chairperson.

**b.** If no period of time is specified for appointment of the chairperson and the party-appointed arbitrators or the parties do not make the appointment within 15 days from the date of the appointment of the last party-appointed arbitrator, the AAA may appoint the chairperson.

**c.** If the parties have agreed that their party-appointed arbitrators shall appoint the chairperson from the National Roster, the AAA shall furnish to the party-appointed arbitrators, in the manner provided in Section R-12, a list selected from the National Roster, and the appointment of the chairperson shall be made as provided in that Section.

## 15. Disclosure

**a.** Any person appointed or to be appointed as an arbitrator shall disclose to the AAA any circumstance likely to give rise to justifiable doubt as to the arbitrator's impartiality or independence, including any bias or any financial or personal interest in the result of the arbitration or any past or present relationship with the parties or their representatives. Such obligation shall remain in effect throughout the arbitration.

**b.** Upon receipt of such information from the arbitrator or another source, the AAA shall communicate the information to the parties and, if it deems it appropriate to do so, to the arbitrator and others.

**c.** In order to encourage disclosure by arbitrators, disclosure of information pursuant to this Section R-15 is not to be construed as an indication that the arbitrator considers that the disclosed circumstance is likely to affect impartiality or independence.

## 16. Disqualification of Arbitrator

**a.** Any arbitrator shall be impartial and independent and shall perform his or her duties with diligence and in good faith, and shall be subject to disqualification for:

   **i.** partiality or lack of independence,

   **ii.** inability or refusal to perform his or her duties with diligence and in good faith, and

   **iii.** any grounds for disqualification provided by applicable law. The parties may agree in writing, however, that arbitrators directly appointed by a party pursuant to Section R-13 shall be nonneutral, in which case such arbitrators need not be impartial or independent and shall not be subject to disqualification for partiality or lack of independence.

**b.** Upon objection of a party to the continued service of an arbitrator, or on its own initiative, the AAA shall determine whether the arbitrator should be disqualified under the grounds set out above, and shall inform the parties of its decision, which decision shall be conclusive.

## 17. Communication with Arbitrator

**a.** No party and no one acting on behalf of any party shall communicate *ex parte* with an arbitrator or a candidate for arbitrator concerning the arbitration, except that a party, or someone acting on behalf of a party, may communicate *ex parte* with a candidate for direct appointment pursuant to Section R-13 in order to advise the candidate of the general nature of the controversy and of the anticipated proceedings and to discuss the candidate's qualifications, availability, or independence in relation to the parties or to discuss the suitability of candidates for selection as a third arbitrator where the parties or party-designated arbitrators are to participate in that selection.

**b.** Section R-17(a) does not apply to arbitrators directly appointed by the parties who, pursuant to Section R-16(a), the parties have agreed in writing are non-neutral. Where the parties have so agreed under Section R-16(a), the AAA shall as an administrative practice suggest to the parties that they agree further that Section R-17(a) should nonetheless apply prospectively.

## 18. Vacancies

**a.** If for any reason an arbitrator is unable to perform the duties of the office, the AAA may, on proof satisfactory to it, declare the office vacant. Vacancies shall be filled in accordance with applicable provisions of these Rules.

**b.** In the event of a vacancy in a panel of neutral arbitrators after the hearings have commenced, the remaining arbitrator or arbitrators may continue with the hearing and determination of the controversy, unless the parties agree otherwise.

**c.** In the event of the appointment of a substitute arbitrator, the panel of arbitrators shall determine in its sole discretion whether it is necessary to repeat all or part of any prior hearings.

## 19. Representation

Any party may be represented by counsel or other authorized representatives. For parties without representation, the AAA will, upon request, provide reference to institutions which might offer assistance. A party who intends to be represented shall notify the other party and the AAA of the name and address of the representative at least 10 days prior to the date set for the hearing or conference at which that person is first to appear. If a representative files a Demand or an Answer, the obligation to give notice of representative status is deemed satisfied.

## 20. Stenographic Record

Any party desiring a stenographic record shall make arrangements directly with a stenographer and shall notify the other parties of these arrangements at least three days in advance of the hearing. The requesting party or parties shall pay the cost of the record. If the transcripts agreed by the parties, or determined by the arbitrator to be the official record of the proceeding, it must be provided to the arbitrator and made available to the other parties for inspection, at a date, time, and place determined by the arbitrator.

## 21. Interpreters

Any party wishing an interpreter shall make all arrangements directly with the interpreter and shall assume the costs of the service.

## 22. Attendance at Hearings

The arbitrator shall have the authority to exclude witnesses, other than a party, from the hearing during the testimony of any other witness. The arbitrator also

shall have the authority to decide whether any person who is not a witness may attend the hearing.

### 23. Confidentiality

The arbitrator shall maintain the confidentiality of the arbitration and shall have the authority to make appropriate rulings to safeguard that confidentiality, unless the parties agree otherwise or the law provides to the contrary.

### 24. Postponements

The arbitrator: (1) may postpone any hearing upon the request of a party for good cause shown; (2) must postpone any hearing upon the mutual agreement of the parties; and (3) may postpone any hearing on his or her own initiative.

### 25. Oaths

Before proceeding with the first hearing, each arbitrator shall take an oath of office. The oath shall be provided to the parties prior to the first hearing. The arbitrator may require witnesses to testify under oath administered by any duly qualified person and, if it is required by law or requested by any party, shall do so.

### 26. Majority Decision

All decisions and awards of the arbitrators must be by a majority, unless the unanimous decision of all arbitrators is expressly required by the arbitration agreement or by law.

### 27. Dispositive Motions

The arbitrator may allow the filing of a dispositive motion if the arbitrator determines that the moving party has shown substantial cause that the motion is likely to succeed and dispose of or narrow the issues in the case.

### 28. Order of Proceedings

A hearing may be opened by: (1) recording the date, time, and place of the hearing; (2) recording the presence of the arbitrator, the parties, and their representatives, if any; and (3) receiving into the record the Demand and the Answer, if any. The arbitrator may, at the beginning of the hearing, ask for statements clarifying the issues involved.

The parties shall bear the same burdens of proof and burdens of producing evidence as would apply if their claims and counterclaims had been brought in court.

Witnesses for each party shall submit to direct and cross examination.

With the exception of the rules regarding the allocation of the burdens of proof and going forward with the evidence, the arbitrator has the authority to set the rules for the conduct of the proceedings and shall exercise that authority to afford a full and equal opportunity to all parties to present any evidence that the arbitrator deems material and relevant to the resolution of the dispute. When deemed appropriate, the arbitrator may also allow for the presentation of evidence by alternative means including web conferencing, internet communication, telephonic conferences and means other than an in-person presentation of evidence. Such alternative means must still afford a full and equal opportunity to all parties to present any evidence that the arbitrator deems material and relevant to the resolution of the dispute and when involving witnesses, provide that such witness submit to direct and cross-examination.

The arbitrator, in exercising his or her discretion, shall conduct the proceedings with a view toward expediting the resolution of the dispute, may direct the order of proof, bifurcate proceedings, and direct the parties to focus their presentations on issues the decision of which could dispose of all or part of the case.

Documentary and other forms of physical evidence, when offered by either party, may be received in evidence by the arbitrator.

The names and addresses of all witnesses and a description of the exhibits in the order received shall be made a part of the record.

### 29. Arbitration in the Absence of a Party or Representative

Unless the law provides to the contrary, the arbitration may proceed in the absence of any party or representative who, after due notice, fails to be present or fails to obtain a postponement. An award shall not be based solely on the default of a party. The arbitrator shall require the party who is in attendance to present such evidence as the arbitrator may require for the making of the award.

## 30. Evidence

The parties may offer such evidence as is relevant and material to the dispute and shall produce such evidence as the arbitrator deems necessary to an understanding and determination of the dispute. All evidence shall be taken in the presence of all of the arbitrators and all of the parties, except where any party or arbitrator is absent, in default, or has waived the right to be present, however "presence" should not be construed to mandate that the parties and arbitrators must be physically present in the same location.

An arbitrator or other person authorized by law to subpoena witnesses or documents may do so upon the request of any party or independently.

The arbitrator shall be the judge of the relevance and materiality of the evidence offered, and conformity to legal rules of evidence shall not be necessary. The arbitrator may in his or her discretion direct the order of proof, bifurcate proceedings, exclude cumulative or irrelevant testimony or other evidence, and direct the parties to focus their presentations on issues the decision of which could dispose of all or part of the case. All evidence shall be taken in the presence of all of the arbitrators and all of the parties, except where any party is absent, in default, or has waived the right to be present.

If the parties agree or the arbitrator directs that documents or other evidence may be submitted to the arbitrator after the hearing, the documents or other evidence shall be filed with the AAA for transmission to the arbitrator, unless the parties agree to a different method of distribution. All parties shall be afforded an opportunity to examine such documents or other evidence and to lodge appropriate objections, if any.

## 31. Inspection

Upon the request of a party, the arbitrator may make an inspection in connection with the arbitration. The arbitrator shall set the date and time, and the AAA shall notify the parties. In the event that one or all parties are not present during the inspection, the arbitrator shall make an oral or written report to the parties and afford them an opportunity to comment.

## 32. Interim Measures

At the request of any party, the arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court, as stated in Rule 39(d), Award.

A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.

## 33. Closing of Hearing

The arbitrator shall specifically inquire of all parties whether they have any further proofs to offer or witnesses to be heard. Upon receiving negative replies or if satisfied that the record is complete, the arbitrator shall declare the hearing closed.

If briefs are to be filed, the hearing shall be declared closed as of the final date set by the arbitrator for the receipt of briefs. If documents are to be filed as provided in Rule 30 and the date set for their receipt is later than that set for the receipt of briefs, the later date shall be the date of closing the hearing. The time limit within which the arbitrator is required to make the award shall commence to run, in the absence of other agreements by the parties, upon closing of the hearing.

## 34. Reopening of Hearing

The hearing may be reopened by the arbitrator upon the arbitrator's initiative, or upon application of a party for good cause shown, at any time before the award is made. If reopening the hearing would prevent the making of the award within the specific time agreed on by the parties in the contract(s) out of which the controversy has arisen, the matter may not be reopened unless the parties agree on an extension of time. When no specific date is fixed in the contract, the arbitrator may reopen the hearing and shall have 30 days from the closing of the reopened hearing within which to make an award.

## 35. Waiver of Oral Hearing

The parties may provide, by written agreement, for the waiver of oral hearings. If the parties are unable to agree as to the procedure, upon the appointment of the arbitrator, the arbitrator shall specify a fair and equitable procedure.

## 36. Waiver of Objection/Lack of Compliance with These Rules

Any party who proceeds with the arbitration after knowledge that any provision or requirement of these rules has not been complied with, and who fails to state objections thereto in writing or in a transcribed record, shall be deemed to have waived the right to object.

## 37. Extensions of Time

The parties may modify any period of time by mutual agreement. The AAA or the arbitrator may for good cause extend any period of time established by these Rules, except the time for making the award. The AAA shall notify the parties of any extension.

## 38. Serving of Notice

**a.** Any papers, notices, or process necessary or proper for the initiation or continuation of an arbitration under these rules, for any court action in connection therewith, or for the entry of judgment on any award made under these rules may be served on a party by mail addressed to the party, or its representative at the last known address or by personal service, in or outside the state where the arbitration is to be held, provided that reasonable opportunity to be heard with regard to the dispute is or has been granted to the party.

**b.** The AAA, the arbitrator, and the parties may also use overnight delivery or electronic facsimile transmission (fax), to give the notices required by these rules. Where all parties and the arbitrator agree, notices may be transmitted by electronic mail (e-mail), or other methods of communication.

**c.** Unless otherwise instructed by the AAA or by the arbitrator, any documents submitted by any party to the AAA or to the arbitrator shall simultaneously be provided to the other party or parties to the arbitration.

## 39. The Award

**a.** The award shall be made promptly by the arbitrator and, unless otherwise agreed by the parties or specified by law, no later than 30 days from the date of closing of the hearing or, if oral hearings have been waived, from the date of the AAA's transmittal of the final statements and proofs to the arbitrator. Three additional days are provided if briefs are to be filed or other documents are to be transmitted pursuant to Rule 30.

**b.** An award issued under these rules shall be publicly available, on a cost basis. The names of the parties and witnesses will not be publicly available, unless a party expressly agrees to have its name made public in the award.

**c.** The award shall be in writing and shall be signed by a majority of the arbitrators and shall provide the written reasons for the award unless the parties agree otherwise. It shall be executed in the manner required by law.

**d.** The arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court including awards of attorney's fees and costs, in accordance with applicable law. The arbitrator shall, in the award, assess arbitration fees, expenses, and compensation as provided in Rules 43, 44, and 45 in favor of any party and, in the event any administrative fees or expenses

are due the AAA, in favor of the AAA, subject to the provisions contained in the Costs of Arbitration section.

**e.**  If the parties settle their dispute during the course of the arbitration and mutually request, the arbitrator may set forth the terms of the settlement in a consent award.

**f.**  The parties shall accept as legal delivery of the award the placing of the award or a true copy thereof in the mail, addressed to a party or its representative at the last known address, personal service of the award, or the filing of the award in any manner that may be required by law.

**g.**  The arbitrator's award shall be final and binding.

## 40. Modification of Award

Within 20 days after the transmittal of an award, any party, upon notice to the other parties, may request the arbitrator to correct any clerical, typographical, technical, or computational errors in the award. The arbitrator is not empowered to redetermine the merits of any claim already decided. The other parties shall be given 10 days to respond to the request. The arbitrator shall dispose of the request within 20 days after transmittal by the AAA to the arbitrator of the request and any response thereto. If applicable law requires a different procedural time frame, that procedure shall be followed.

## 41. Release of Documents for Judicial Proceedings

The AAA shall, upon the written request of a party, furnish to the party, at that party's expense, certified copies of any papers in the AAA's case file that may be required in judicial proceedings relating to the arbitration.

## 42. Applications to Court

**a.**  No judicial proceeding by a party relating to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate.

**b.**  Neither the AAA nor any arbitrator in a proceeding under these rules is or shall be considered a necessary or proper party in judicial proceedings relating to the arbitration.

**c.**  Parties to these procedures shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction.

**d.**  Parties to an arbitration under these rules shall be deemed to have consented that neither the AAA nor any arbitrator shall be liable to any party in any action for damages or injunctive relief for any act or omission in connection with any arbitration under these rules.

### 43. Administrative Fees

As a not-for-profit organization, the AAA shall prescribe filing and other administrative fees to compensate it for the cost of providing administrative services. The AAA administrative fee schedule in effect at the time the demand for arbitration or submission agreement is received shall be applicable.

AAA fees shall be paid in accordance with the Costs of Arbitration section. The AAA may, in the event of extreme hardship on any party, defer or reduce the administrative fees. (To ensure that you have the most current information, see our website at **www.adr.org**).

### 44. Neutral Arbitrator's Compensation

Arbitrators shall charge a rate consistent with the arbitrator's stated rate of compensation. If there is disagreement concerning the terms of compensation, an appropriate rate shall be established with the arbitrator by the AAA and confirmed to the parties.

Any arrangement for the compensation of a neutral arbitrator shall be made through the AAA and not directly between the parties and the arbitrator. Payment of the arbitrator's fees and expenses shall be made by the AAA from the fees and moneys collected by the AAA for this purpose.

Arbitrator compensation shall be borne in accordance with the Costs of Arbitration section.

### 45. Expenses

Unless otherwise agreed by the parties or as provided under applicable law, the expenses of witnesses for either side shall be borne by the party producing such witnesses.

All expenses of the arbitrator, including required travel and other expenses, and any AAA expenses, as well as the costs relating to proof and witnesses produced at the direction of the arbitrator shall be borne in accordance with the Costs of Arbitration section.

### 46. Deposits

The AAA may require deposits in advance of any hearings such sums of money as it deems necessary to cover the expenses of the arbitration, including the arbitrator's fee, if any, and shall render an accounting and return any unexpended balance at the conclusion of the case.

### 47. Suspension for Non-Payment

If arbitrator compensation or administrative charges have not been paid in full, the AAA may so inform the parties in order that one of them may advance the required payment. If such payments are not made, the arbitrator may order the suspension or termination of the proceedings. If no arbitrator has yet been appointed, the AAA may suspend or terminate the proceedings.

### 48. Interpretation and Application of Rules

The arbitrator shall interpret and apply these rules as they relate to the arbitrator's powers and duties. When there is more than one arbitrator and a difference arises among them concerning the meaning or application of these Rules, it shall be resolved by a majority vote. If that is not possible, either an arbitrator or a party may refer the question to the AAA for final decision. All other procedures shall be interpreted and applied by the AAA.

## AAA Administrative Fees for Employment/Workplace Cases

*FOR THE CURRENT ADMINISTRATIVE FEE SCHEDULE, PLEASE VISIT **www.adr.org/employmentfeeschedule.***

## Optional Rules for Emergency Measures of Protection

### O-1. Applicability

Where parties by special agreement or in their arbitration clause have adopted these rules for emergency measures of protection, a party in need of emergency relief prior to the constitution of the panel shall notify the AAA and all other parties in writing of the nature of the relief sought and the reasons why such relief is required on an emergency basis. The application shall also set forth the reasons why the party is entitled to such relief. Such notice may be given by facsimile transmission, or other reliable means, but must include a statement certifying that all other parties have been notified or an explanation of the steps taken in good faith to notify other parties.

### O-2. Appointment of Emergency Arbitrator

Within one business day of receipt of notice as provided in Section O-1, the AAA shall appoint a single emergency arbitrator from a special AAA panel of emergency arbitrators designated to rule on emergency applications. The emergency arbitrator shall immediately disclose any circumstance likely, on the basis of the facts disclosed in the application, to affect such arbitrator's impartiality or independence. Any challenge to the appointment of the emergency arbitrator must be made within one business day of the communication by the AAA to the parties of the appointment of the emergency arbitrator and the circumstances disclosed.

### O-3. Schedule

The emergency arbitrator shall as soon as possible, but in any event within two business days of appointment, establish a schedule for consideration of the application for emergency relief. Such schedule shall provide a reasonable opportunity to all parties to be heard, but may provide for proceeding by telephone conference or on written submissions as alternatives to a formal hearing.

### O-4. Interim Award

If after consideration the emergency arbitrator is satisfied that the party seeking the emergency relief has shown that immediate and irreparable loss or damage will result in the absence of emergency relief, and that such party is entitled to

such relief, the emergency arbitrator may enter an interim award granting the relief and stating the reasons therefore.

## O-5. Constitution of the Panel

Any application to modify an interim award of emergency relief must be based on changed circumstances and may be made to the emergency arbitrator until the panel is constituted; thereafter such a request shall be addressed to the panel. The emergency arbitrator shall have no further power to act after the panel is constituted unless the parties agree that the emergency arbitrator is named as a member of the panel.

## O-6. Security

Any interim award of emergency relief may be conditioned on provision by the party seeking such relief of appropriate security.

## O-7. Special Master

A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate. If the AAA is directed by a judicial authority to nominate a special master to consider and report on an application for emergency relief, the AAA shall proceed as provided in Section O-1 of this article and the references to the emergency arbitrator shall be read to mean the special master, except that the special master shall issue a report rather than an interim award.

## O-8. Costs

The costs associated with applications for emergency relief shall be apportioned in the same manner as set forth in the Costs of Arbitration section.

## Employment Mediation Procedures

### M-1. Agreement of Parties

Whenever, by stipulation or in their contract, the parties have provided for mediation or conciliation of existing or future disputes under the auspices of the American Arbitration Association (AAA) or under these procedures, the parties and their representatives, unless agreed otherwise in writing, shall be deemed to have made these procedures, as amended and in effect as of the date of filing of a request for mediation, a part of their agreement and designate the AAA as the administrator of their mediation.

The parties by mutual agreement may vary any part of these procedures including, but not limited to, agreeing to conduct the mediation via telephone or other electronic or technical means.

### M-2. Initiation of Mediation

Any party or parties to a dispute may initiate mediation under the AAA's auspices by making a Request for Mediation to any of the AAA's regional offices or case management centers via telephone, email, regular mail or fax. Requests for Mediation may also be filed online via AAA WebFile® at **www.adr.org**.

The party initiating the mediation shall simultaneously notify the other party or parties of the request. The initiating party shall provide the following information to the AAA and the other party or parties as applicable:

    i.   A copy of the mediation provision of the parties' contract or the parties' stipulation to mediate.

    ii.   The names, regular mail addresses, email addresses (if available), and telephone numbers of all parties to the dispute and representatives, if any, in the mediation.

    iii.   A brief statement of the nature of the dispute and the relief requested.

    iv.   Any specific qualifications the mediator should possess.

Where there is no preexisting stipulation or contract by which the parties have provided for mediation of existing or future disputes under the auspices of the AAA, a party may request the AAA to invite another party to participate in "mediation by voluntary submission". Upon receipt of such a request, the AAA will contact the other party or parties involved in the dispute and attempt to obtain a submission to mediation.

## M-3. Fixing of Locale (the city, county, state, territory and, if applicable, country of the mediation)

i. When the parties' agreement to mediate is silent with respect to locale and the parties are unable to agree upon a locale, the AAA shall have the authority to consider the parties' arguments and determine the locale.

ii. When the parties' agreement to mediate requires a specific locale, absent the parties' agreement to change it, the locale shall be that specified in the agreement to mediate.

iii. If the reference to a locale in the agreement to mediate is ambiguous, the AAA shall have the authority to consider the parties' arguments and determine the locale.

## M-4. Representation

Any party may participate without representation (pro se), or by any representative of that party's choosing, or by counsel, unless such choice is prohibited by applicable law. A party intending to have representation shall notify the other party and the AAA of the name, telephone number and address, and email address if available of the representative.

## M-5. Appointment of the Mediator

Parties may search the online profiles of the AAA's Panel of Mediators at **www.aaamediation.org** in an effort to agree on a mediator. If the parties have not agreed to the appointment of a mediator and have not provided any other method of appointment, the mediator shall be appointed in the following manner:

i. Upon receipt of a request for mediation, the AAA will send to each party a list of mediators from the AAA's Panel of Mediators. The parties are encouraged to agree to a mediator from the submitted list and to advise the AAA of their agreement.

ii. If the parties are unable to agree upon a mediator, each party shall strike unacceptable names from the list, number the remaining names in order of preference, and return the list to the AAA. If a party does not return the list within the time specified, all mediators on the list shall be deemed acceptable to that party. From among the mediators who have been mutually approved by the parties, and in accordance with the designated order of mutual preference, the AAA shall invite a mediator to serve.

iii. If the parties fail to agree on any of the mediators listed, or if acceptable mediators are unable to serve, or if for any other reason the appointment cannot be made from the submitted list, the AAA shall have the authority to make the appointment from among other members of the Panel of Mediators without the submission of additional lists.

## M-6. Mediator's Impartiality and Duty to Disclose

AAA mediators are required to abide by the *Model Standards of Conduct for Mediators* in effect at the time a mediator is appointed to a case. Where there is a conflict between the *Model Standards* and any provision of these Mediation Procedures, these Mediation Procedures shall govern. The Standards require mediators to (i) decline a mediation if the mediator cannot conduct it in an impartial manner, and (ii) disclose, as soon as practicable, all actual and potential conflicts of interest that are reasonably known to the mediator and could reasonably be seen as raising a question about the mediator's impartiality.

Prior to accepting an appointment, AAA mediators are required to make a reasonable inquiry to determine whether there are any facts that a reasonable individual would consider likely to create a potential or actual conflict of interest for the mediator. AAA mediators are required to disclose any circumstance likely to create a presumption of bias or prevent a resolution of the parties' dispute within the time-frame desired by the parties. Upon receipt of such disclosures, the AAA shall immediately communicate the disclosures to the parties for their comments.

The parties may, upon receiving disclosure of actual or potential conflicts of interest of the mediator, waive such conflicts and proceed with the mediation. In the event that a party disagrees as to whether the mediator shall serve, or in the event that the mediator's conflict of interest might reasonably be viewed as undermining the integrity of the mediation, the mediator shall be replaced.

## M-7. Vacancies

If any mediator shall become unwilling or unable to serve, the AAA will appoint another mediator, unless the parties agree otherwise, in accordance with section M-5.

## M-8. Duties and Responsibilities of the Mediator

   i.   The mediator shall conduct the mediation based on the principle of party self-determination. Self-determination is the act of coming to a voluntary, uncoerced decision in which each party makes free and informed choices as to process and outcome.

   ii.  The mediator is authorized to conduct separate or ex parte meetings and other communications with the parties and/or their representatives, before, during, and after any scheduled mediation conference. Such communications

       may be conducted via telephone, in writing, via email, online, in person or otherwise.

**iii.** The parties are encouraged to exchange all documents pertinent to the relief requested. The mediator may request the exchange of memoranda on issues, including the underlying interests and the history of the parties' negotiations. Information that a party wishes to keep confidential may be sent to the mediator, as necessary, in a separate communication with the mediator.

**iv.** The mediator does not have the authority to impose a settlement on the parties but will attempt to help them reach a satisfactory resolution of their dispute. Subject to the discretion of the mediator, the mediator may make oral or written recommendations for settlement to a party privately or, if the parties agree, to all parties jointly.

**v.** In the event a complete settlement of all or some issues in dispute is not achieved within the scheduled mediation session(s), the mediator may continue to communicate with the parties, for a period of time, in an ongoing effort to facilitate a complete settlement.

**vi.** The mediator is not a legal representative of any party and has no fiduciary duty to any party.

**vii.** The mediator shall set the date, time, and place for each session of the mediation conference. The parties shall respond to requests for conference dates in a timely manner, be cooperative in scheduling the earliest practicable date, and adhere to the established conference schedule. The AAA shall provide notice of the conference to the parties in advance of the conference date, when timing permits.

## M-9. Responsibilities of the Parties

The parties shall ensure that appropriate representatives of each party, having authority to consummate a settlement, attend the mediation conference. Prior to and during the scheduled mediation conference session(s) the parties and their representatives shall, as appropriate to each party's circumstances, exercise their best efforts to prepare for and engage in a meaningful and productive mediation.

## M-10. Privacy

Mediation sessions and related mediation communications are private proceedings. The parties and their representatives may attend mediation sessions. Other persons may attend only with the permission of the parties and with the consent of the mediator.

## M-11. Confidentiality

Subject to applicable law or the parties' agreement, confidential information disclosed to a mediator by the parties or by other participants (witnesses) in the course of the mediation shall not be divulged by the mediator. The mediator shall maintain the confidentiality of all information obtained in the mediation, and all records, reports, or other documents received by a mediator while serving in that capacity shall be confidential.

The mediator shall not be compelled to divulge such records or to testify in regard to the mediation in any adversary proceeding or judicial forum.

The parties shall maintain the confidentiality of the mediation and shall not rely on, or introduce as evidence in any arbitral, judicial, or other proceeding the following, unless agreed to by the parties or required by applicable law:

   i.   Views expressed or suggestions made by a party or other participant with respect to a possible settlement of the dispute;

  ii.   Admissions made by a party or other participant in the course of the mediation proceedings;

 iii.   Proposals made or views expressed by the mediator; or

 iv.   The fact that a party had or had not indicated willingness to accept a proposal for settlement made by the mediator.

## M-12. No Stenographic Record

There shall be no stenographic record of the mediation process.

## M-13. Termination of Mediation

The mediation shall be terminated:

   i.   By the execution of a settlement agreement by the parties; or

  ii.   By a written or verbal declaration of the mediator to the effect that further efforts at mediation would not contribute to a resolution of the parties' dispute; or

 iii.   By a written or verbal declaration of all parties to the effect that the mediation proceedings are terminated; or

 iv.   When there has been no communication between the mediator and any party or party's representative for 21 days following the conclusion of the mediation conference.

## M-14. Exclusion of Liability

Neither the AAA nor any mediator is a necessary party in judicial proceedings relating to the mediation. Neither the AAA nor any mediator shall be liable to any party for any error, act or omission in connection with any mediation conducted under these procedures. Parties to a mediation under these procedures may not call the mediator, the AAA or AAA employees as a witness in litigation or any other proceeding relating to the mediation. The mediator, the AAA and AAA employees are not competent to testify as witnesses in any such proceeding.

## M-15. Interpretation and Application of Procedures

The mediator shall interpret and apply these procedures insofar as they relate to the mediator's duties and responsibilities. All other procedures shall be interpreted and applied by the AAA.

## M-16. Deposits

Unless otherwise directed by the mediator, the AAA will require the parties to deposit in advance of the mediation conference such sums of money as it, in consultation with the mediator, deems necessary to cover the costs and expenses of the mediation and shall render an accounting to the parties and return any unexpended balance at the conclusion of the mediation.

## M-17. Expenses

All expenses of the mediation, including required traveling and other expenses or charges of the mediator, shall be borne by the company unless they agree otherwise. The expenses of participants for either side shall be paid by the party requesting the attendance of such participants.

## M-18. Cost of the Mediation

*FOR THE CURRENT ADMINISTRATIVE FEE SCHEDULE, PLEASE VISIT*
***www.adr.org/employmentfeeschedule.***



© 2017 American Arbitration Association, Inc. All rights reserved. These Rules are the copyrighted property of the
American Arbitration Association (AAA) and are intended to be used in conjunction with the AAA's administrative services.
Any unauthorized use or modification of these Rules may violate copyright laws and other applicable laws.
Please contact 800.778.7879 or websitemail@adr.org for additional information.

## Regional Vice Presidents and Assistant Vice Presidents

**States: Delaware, District of Columbia, Maryland, New Jersey, Pennsylvania**
Kenneth Egger
Vice President
Phone: 215.731.2281
Email: EggerK@adr.org

**States: Colorado, Illinois, Iowa, Kansas, Michigan, Minnesota, Missouri, Montana, Nebraska, New Mexico, North Dakota, South Dakota, Wisconsin, Wyoming**
Jan Holdinski
Vice President
Phone: 248.352.5509
Email: HoldinskiJ@adr.org

**States: Connecticut, Maine, Massachusetts, New Hampshire, New York, Vermont**
Ann Lesser, Esq.
Vice President
Phone: 212.484.4084
Email: LesserA@adr.org

**States: Arkansas, Indiana, Kentucky, North Carolina, Ohio, Oklahoma, South Carolina, Tennessee, Virginia, West Virginia**
Aaron Schmidt
Vice President
Phone: 440.596.3789
Email: SchmidtA@adr.org

**States: Alaska, Arizona, California, Hawaii, Idaho, Nevada, Oregon, Utah, Washington**
Patrick Tatum
Vice President
Phone: 559.490.1905
Email: TatumP@adr.org

**States: Alabama, Florida, Georgia, Louisiana, Mississippi, Texas**
Charles Dorsey
Assistant Vice President
Phone: 866.686.6024
Email: DorseyC@adr.org

**States: Rhode Island**
Heather Santo
Assistant Vice President
Phone: 866.293.4053
Email: SantoH@adr.org

## Case Management Vice President and Assistant Vice Presidents

Southeast Case Management Center
Charles Dorsey
Assistant Vice President
Phone: 866.686.6024
Email: DorseyC@adr.org
**Administers cases in Alabama, Arkansas, Florida, Georgia, Kentucky, Louisiana, Mississippi, North Carolina, Ohio, Puerto Rico, South Carolina, Tennessee, US Virgin Islands, Virginia**

Northeast Case Management Center
Heather Santo
Assistant Vice President
Phone: 866.293.4053
Email: SantoH@adr.org
**Administers cases in Connecticut, Delaware, District of Columbia, Maine, Maryland, Massachusetts, Michigan, New Hampshire, New Jersey, New York, Pennsylvania, Rhode Island, Vermont, West Virginia**

Western Case Management Center
Patrick Tatum
Vice President
Phone: 559.490.1905
Email: TatumP@adr.org
**Administers cases in Alaska, Arizona, California, Hawaii, Idaho, Nevada, Oregon, Utah, Washington**

Central Case Management Center
Charles Dorsey
Assistant Vice President
Phone: 866.686.6024
Email: DorseyC@adr.org
**Administers cases in Colorado, Illinois, Indiana, Iowa, Kansas, Minnesota, Missouri, Montana, Nebraska, New Mexico, North Dakota, Oklahoma, South Dakota, Texas, Wisconsin, Wyoming**



AMERICAN ARBITRATION ASSOCIATION®

800.778.7879 | website email@adr.org | adr.org

# Ex. 8



2
0
1
8

# Administered
# Arbitration Rules

HKIAC | Hong Kong International
Arbitration Centre

2018 HKIAC ADMINISTERED
ARBITRATION RULES

# HONG KONG INTERNATIONAL ARBITRATION CENTRE ADMINISTERED ARBITRATION RULES 2018

## Introduction

These Rules have been adopted by the Council of the Hong Kong International Arbitration Centre (HKIAC) for use by parties who seek the procedural flexibility and cost-effectiveness of an arbitration administered by HKIAC.

## Application

These Rules may be adopted in a written agreement at any time before or after a dispute has arisen, and may be adopted for use in both domestic and international arbitrations commenced under a contract or treaty. Provisions regarding the scope of application of these Rules are set out in Article 1.

## Effectiveness

These Rules have been adopted to take effect from 1 November 2018.

## Suggested Clauses

1.  The following model clause may be adopted by the parties to a contract who wish to refer any future disputes to arbitration in accordance with these Rules:

    "Any dispute, controversy, difference or claim arising out of or relating to this contract, including the existence, validity, interpretation, performance, breach or termination thereof or any dispute regarding non-contractual obligations arising out of or relating to it shall be referred to and finally resolved by arbitration administered by the Hong Kong International Arbitration Centre (HKIAC) under the HKIAC Administered Arbitration Rules in force when the Notice of Arbitration is submitted.

    * The law of this arbitration clause shall be ... *(Hong Kong law)*.

    The seat of arbitration shall be ... *(Hong Kong)*.

    ** The number of arbitrators shall be ... *(one or three)*. The arbitration proceedings shall be conducted in ... *(insert language)*. "

---

\* Optional. This provision should be included particularly where the law of the substantive contract and the law of the seat are different. The law of the arbitration clause potentially governs matters including the formation, existence, scope, validity, legality, interpretation, termination, effects and enforceability of the arbitration clause and identities of the parties to the arbitration clause. It does not replace the law governing the substantive contract.

\*\* Optional

2. Parties to an existing dispute in which neither an arbitration clause nor a previous agreement with respect to arbitration exists, who wish to refer such dispute to arbitration under the HKIAC Administered Arbitration Rules, may agree to do so in the following terms:

"We, the undersigned, agree to refer to arbitration administered by the Hong Kong International Arbitration Centre (HKIAC) under the HKIAC Administered Arbitration Rules any dispute, controversy, difference or claim (including any dispute regarding non-contractual obligations) arising out of or relating to:

(Brief description of contract under which disputes, controversies, differences or claims have arisen or may arise.)

The law of this arbitration agreement shall be … *(Hong Kong law).*

The seat of arbitration shall be ... *(Hong Kong).*

\*\* The number of arbitrators shall be ... *(one or three).* The arbitration proceedings shall be conducted in ... *(insert language).*

Signed: _____ (Claimant)

Signed: _____ (Respondent)

Date: _____ "

\* Optional. This provision should be included particularly where the law of the substantive contract and the law of the seat are different. The law of the arbitration agreement potentially governs matters including the formation, existence, scope, validity, legality, interpretation, termination, effects and enforceability of the arbitration agreement and identities of the parties to the arbitration agreement. It does not replace the law governing the substantive contract.

\*\* Optional

3

# TABLE OF CONTENTS

**SECTION I.    GENERAL RULES**

Article 1      • Scope of Application .........................................7

Article 2      • Interpretation of Rules....................................7

Article 3      • Written Communications and
                 Calculation of Time Limits ..............................9

**SECTION II.   COMMENCEMENT OF THE
               ARBITRATION**

Article 4      • Notice of Arbitration ......................................11

Article 5      • Answer to the Notice of Arbitration............12

**SECTION III. THE ARBITRAL TRIBUNAL**

Article 6      • Number of Arbitrators ...................................15

Article 7      • Appointment of a Sole Arbitrator...............15

Article 8      • Appointment of Three Arbitrators...............16

Article 9      • Confirmation of the Arbitral Tribunal..........17

Article 10     • Fees and Expenses of the Arbitral Tribunal..18

Article 11     • Qualifications and Challenge of
                 the Arbitral Tribunal.......................................19

Article 12     • Replacement of an Arbitrator ......................21

**SECTION IV.  CONDUCT OF ARBITRATION**

Article 13     • General Provisions .........................................22

Article 14     • Seat and Venue of the Arbitration ...............23

Article 15     • Language........................................................23

Article 16     • Statement of Claim.......................................24

Article 17     • Statement of Defence....................................24

Article 18     • Amendments to the Claim or Defence.........25

Article 19     • Jurisdiction of the Arbitral Tribunal............25

Article 20     • Further Written Statements..........................27

Article 21     • Time Limits...................................................27

Article 22     • Evidence and Hearings ................................27

Article 23 • Interim Measures of Protection and Emergency Relief ...........................28

Article 24 • Security for Costs ...........................30

Article 25 • Tribunal-Appointed Experts.....................30

Article 26 • Default.............................................31

Article 27 • Joinder of Additional Parties .......................31

Article 28 • Consolidation of Arbitrations .....................35

Article 29 • Single Arbitration under Multiple Contracts .............................................38

Article 30 • Concurrent Proceedings...........................38

Article 31 • Closure of Proceedings.............................38

Article 32 • Waiver.............................................39

**SECTION V.   AWARDS, DECISIONS AND ORDERS OF THE ARBITRAL TRIBUNAL**

Article 33 • Decisions .......................................40

Article 34 • Costs of the Arbitration ...............................40

Article 35 • Form and Effect of the Award ....................41

Article 36 • Applicable Law, Amiable Compositeur........42

Article 37 • Settlement or Other Grounds for Termination ..............................................43

Article 38 • Correction of the Award ..............................44

Article 39 • Interpretation of the Award.........................44

Article 40 • Additional Award ...................................45

Article 41 • Deposits for Costs ..........................45

**SECTION VI. OTHER PROVISIONS**

Article 42 • Expedited Procedure .......................................47

Article 43 • Early Determination Procedure.................48

Article 44 • Disclosure of Third Party Funding of Arbitration ......................................50

Article 45 • Confidentiality.........................................50

Article 46 • Exclusion of Liability ....................51

---

**SCHEDULE 1**
**REGISTRATION AND ADMINISTRATIVE FEES**...........53

**SCHEDULE 2**
**ARBITRAL TRIBUNAL'S FEES, EXPENSES, TERMS
AND CONDITIONS – Based on Hourly Rates**...................55

**SCHEDULE 3**
**ARBITRAL TRIBUNAL'S FEES, EXPENSES, TERMS
AND CONDITIONS – Based on Sum in Dispute**.............59

**SCHEDULE 4**
**EMERGENCY ARBITRATOR PROCEDURES**.................63

**Members of HKIAC Rules Revision Committee**.............68

**Acknowledgements**................................................................68

# SECTION I. GENERAL RULES

## Article 1 – Scope of Application

1.1     These Rules shall govern arbitrations where an arbitration agreement (whether entered into before or after a dispute has arisen) either: (a) provides for these Rules to apply; or (b) subject to Articles 1.3 and 1.4 below, provides for arbitration "administered by HKIAC" or words to similar effect.

1.2     By agreeing to arbitration in accordance with Article 1.1, the parties accept that the arbitration shall be administered by HKIAC.

1.3     Nothing in these Rules shall prevent parties to a dispute or arbitration agreement from naming HKIAC as appointing authority, or from requesting certain administrative services from HKIAC, without subjecting the arbitration to the provisions contained in these Rules. For the avoidance of doubt, these Rules shall not govern arbitrations where an arbitration agreement provides for arbitration under other rules, including other rules adopted by HKIAC from time to time.

1.4     Subject to Article 1.5, these Rules shall come into force on 1 November 2018 and, unless the parties have agreed otherwise, shall apply to all arbitrations falling within Article 1.1 in which the Notice of Arbitration is submitted on or after that date.

1.5     Unless otherwise agreed by the parties: (a) Article 43 and paragraphs 1(a) and 21 of Schedule 4 shall not apply if the arbitration agreement was concluded before the date on which these Rules came into force; and (b) Articles 23.1, 28, 29 and Schedule 4 shall not apply if the arbitration agreement was concluded before 1 November 2013.

## Article 2 – Interpretation of Rules

2.1     HKIAC shall have the power to interpret all provisions of these Rules. The arbitral tribunal shall interpret the Rules insofar as they relate to its powers and duties hereunder. In the event of any inconsistency between such interpretation and any interpretation by HKIAC, the arbitral tribunal's interpretation shall prevail.

7

2.2   HKIAC has no obligation to give reasons for any decision it makes in respect of any arbitration commenced under these Rules. Unless otherwise determined by HKIAC, all decisions made by HKIAC under these Rules are final and, to the extent permitted by any applicable law, not subject to appeal.

2.3   Where the parties have designated an HKIAC body or person to perform a function that is delegated to HKIAC under the Rules, that function shall be performed by HKIAC.

2.4   References to "HKIAC" are to the Council of HKIAC or any other body or person designated by it to perform the functions referred to herein, or, where applicable, to the Secretary-General of HKIAC and other staff members of the Secretariat of HKIAC.

2.5   References to "Claimant" include one or more claimants.

2.6   References to "Respondent" include one or more respondents.

2.7   References to "additional party" include one or more additional parties and references to "party" or "parties" include Claimant, Respondent and/or an additional party.

2.8   References to the "arbitral tribunal" include one or more arbitrators. Except in Schedule 2, such references do not include an emergency arbitrator.

2.9   References to "witness" include one or more witnesses and references to "expert" include one or more experts.

2.10   References to "claim" or "counterclaim" include any claim or claims by any party against any other party. References to "defence" include any defence or defences by any party to any claim or counterclaim submitted by any other party, including any defence for the purpose of a set-off or cross-claim.

2.11   References to "arbitration agreement" include one or more arbitration agreements.

2.12   References to "language" include one or more languages.

2.13   References to "award" include, inter alia, an interim, interlocutory, partial or final award, save for any award made by an emergency arbitrator.

2.14    References to the "seat" of arbitration mean the place of arbitration as defined in Article 20.1 of the UNCITRAL Model Law on International Commercial Arbitration.

2.15    References to "written communications" include all notifications, proposals, pleadings, statements, documents, orders and awards that are produced, submitted or exchanged in the arbitration.

2.16    References to "communication" mean delivery, transmission or notification of a written communication by hand, registered post, courier service, facsimile, email or other means of telecommunication that provides a record of transmission.

2.17    These Rules include all Schedules attached thereto, as amended from time to time by HKIAC, in force on the date the Notice of Arbitration is submitted.

2.18    HKIAC may from time to time issue practice notes and guidelines to supplement, regulate and implement these Rules for the purpose of facilitating the administration of arbitrations governed by these Rules.

2.19    English is the original language of these Rules. In the event of any discrepancy or inconsistency between the English version and the version in any other language, the English version shall prevail.

## Article 3 – Written Communications and Calculation of Time Limits

3.1    Any written communication pursuant to these Rules shall be deemed to be received by a party, arbitrator, emergency arbitrator or HKIAC if:

(a)    communicated to the address, facsimile number and/or email address communicated by the addressee or its representative in the arbitration; or

(b)    in the absence of (a), communicated to the address, facsimile number and/or email address specified in any applicable agreement between the parties; or

(c)    in the absence of (a) and (b), communicated to any address, facsimile number and/or email address which the addressee holds out to the world at the time of such communication; or

(d)   in the absence of (a), (b) and (c), communicated to any last known address, facsimile number and/or email address of the addressee; or

(e)   uploaded to any secured online repository that the parties have agreed to use.

3.2   If, after reasonable efforts, communication cannot be effected in accordance with Article 3.1, a written communication is deemed to have been received if it is sent to the addressee's last-known address, facsimile number and/or email address by means that provides a record of attempted communication.

3.3   Any written communication shall be deemed received on the earliest day when it is communicated pursuant to paragraph 3.1(a) to (d), uploaded pursuant to paragraph 3.1(e), or attempted to be communicated pursuant to Article 3.2. For this purpose, the date shall be determined according to the local time at the place of receiving such written communication or a notice of the upload pursuant to paragraph 3.1(e).

3.4   Where a written communication is being communicated to more than one party, or more than one arbitrator, such written communication shall be deemed received when it is communicated pursuant to Article 3.1(a) to (d), or attempted to be communicated pursuant to Article 3.2, to the last intended recipient, or when a notice that such written communication has been uploaded pursuant to Article 3.1(e) is communicated to the last intended recipient.

3.5   Time limits under these Rules shall begin to run on the day following the day when any written communication is received or deemed received. If the last day of the time limit is an official holiday or a non-business day at the place of receipt, the time limit shall be extended until the first business day which follows. Official holidays or non-business days occurring during the running of the time limit shall be included in calculating the time limit.

3.6   If the circumstances of the case so justify, HKIAC may amend the time limits provided for in these Rules, as well as any time limits that it has set, whether any such time limits have expired. HKIAC shall not amend any time limits agreed by the parties or set by the arbitral tribunal or emergency arbitrator unless the parties agree or the arbitral tribunal or emergency arbitrator directs otherwise.

# SECTION II. COMMENCEMENT OF THE ARBITRATION

## Article 4 – Notice of Arbitration

4.1    The party initiating arbitration (the "Claimant") shall communicate a Notice of Arbitration to HKIAC and the other party (the "Respondent").

4.2    An arbitration shall be deemed to commence on the date on which a copy of the Notice of Arbitration is received by HKIAC. For the avoidance of doubt, this date shall be determined in accordance with the provisions of Articles 3.1 to 3.5.

4.3    The Notice of Arbitration shall include the following:

    (a)    a request that the dispute be referred to arbitration;

    (b)    the names and (in so far as known) the addresses, facsimile numbers and/or email addresses of the parties and of their representatives;

    (c)    a copy of the arbitration agreement invoked;

    (d)    a copy of the contract(s) or other legal instrument(s) out of or in relation to which the dispute arises, or reference thereto;

    (e)    a description of the general nature of the claim and an indication of the amount involved, if any;

    (f)    the relief or remedy sought;

    (g)    a proposal as to the number of arbitrators (i.e. one or three), if the parties have not previously agreed thereon;

    (h)    the Claimant's proposal and any comments regarding the designation of a sole arbitrator under Article 7, or the Claimant's designation of an arbitrator under Article 8;

    (i)    the existence of any funding agreement and the identity of any third party funder pursuant to Article 44; and

(j)  confirmation that copies of the Notice of Arbitration and any supporting materials included with it have been or are being communicated simultaneously to the Respondent by one or more means of service to be identified in such confirmation.

4.4  The Notice of Arbitration shall be accompanied by payment to HKIAC of the Registration Fee as required by Schedule 1.

4.5  The Notice of Arbitration may include the Statement of Claim.

4.6  If the Notice of Arbitration does not comply with these Rules or if the Registration Fee is not paid, HKIAC may request the Claimant to remedy the defect within an appropriate time limit. If the Claimant complies with such directions within the applicable time limit, the arbitration shall be deemed to have commenced under Article 4.2 on the date the initial version was received by HKIAC. If the Claimant fails to comply, the arbitration shall be deemed not to have commenced under Article 4.2 without prejudice to the Claimant's right to submit the same claim at a later date in a subsequent Notice of Arbitration.

4.7  Where an amendment is made to the Notice of Arbitration prior to the constitution of the arbitral tribunal, HKIAC has discretion to determine whether and to what extent such amendment affects other time limits under the Rules.

4.8  The Claimant shall notify, and lodge documentary verification with, HKIAC of the date the Respondent receives the Notice of Arbitration and any supporting materials included with it.

## Article 5 –  Answer to the Notice of Arbitration

5.1  Within 30 days from receipt of the Notice of Arbitration, the Respondent shall communicate an Answer to the Notice of Arbitration to HKIAC and the Claimant. The Answer to the Notice of Arbitration shall include the following:

12

(a)   the name, address, facsimile number, and/or email address of the Respondent and of its representatives (if different from the description contained in the Notice of Arbitration);

(b)   any plea that an arbitral tribunal constituted under these Rules lacks jurisdiction;

(c)   the Respondent's comments on the particulars set forth in the Notice of Arbitration, pursuant to Article 4.3(e);

(d)   the Respondent's answer to the relief or remedy sought in the Notice of Arbitration, pursuant to Article 4.3(f);

(e)   the Respondent's proposal as to the number of arbitrators (i.e. one or three), if the parties have not previously agreed thereon;

(f)   the Respondent's proposal and any comments regarding the designation of a sole arbitrator under Article 7 or the Respondent's designation of an arbitrator under Article 8;

(g)   the existence of any funding agreement and the identity of any third party funder pursuant to Article 44; and

(h)   confirmation that copies of the Answer to the Notice of Arbitration and any supporting materials included with it have been or are being communicated simultaneously to all other parties to the arbitration by one or more means of service to be identified in such confirmation.

5.2   The Answer to the Notice of Arbitration may also include the Statement of Defence, if the Notice of Arbitration contained the Statement of Claim.

5.3   Any counterclaim, set-off defence or cross-claim shall, to the extent possible, be raised with the Respondent's Answer to the Notice of Arbitration, which should include in relation to any such counterclaim, set-off defence or cross-claim:

(a)   a copy of the contract(s) or other legal instrument(s) out of or in relation to which it arises, or reference thereto;

13

(b)   a description of the general nature of the counterclaim, set-off defence and/or cross-claim, and an indication of the amount involved, if any; and

(c)   the relief or remedy sought.

5.4   HKIAC shall transmit the case file to the arbitral tribunal as soon as it has been constituted, provided that any deposit requested by HKIAC has been paid, unless HKIAC determines otherwise.

# SECTION III. THE ARBITRAL TRIBUNAL

## Article 6 – Number of Arbitrators

6.1     If the parties have not agreed upon the number of arbitrators before the arbitration commences or within 30 days from the date the Notice of Arbitration is received by the Respondent, HKIAC shall decide whether the case shall be referred to a sole arbitrator or to three arbitrators, taking into account the circumstances of the case.

6.2     Where a case is conducted under an Expedited Procedure in accordance with Article 42, the provisions of Article 42.2(a) and (b) shall apply.

## Article 7 – Appointment of a Sole Arbitrator

7.1     Unless the parties have agreed otherwise:

(a)     where the parties have agreed before the arbitration commences that the dispute shall be referred to a sole arbitrator, they shall jointly designate the sole arbitrator within 30 days from the date the Notice of Arbitration was received by the Respondent.

(b)     where the parties have agreed after the arbitration commences to refer the dispute to a sole arbitrator, they shall jointly designate the sole arbitrator within 15 days from the date of that agreement.

(c)     where the parties have not agreed upon the number of arbitrators and HKIAC has decided that the dispute shall be referred to a sole arbitrator, the parties shall jointly designate the sole arbitrator within 15 days from the date HKIAC's decision was received by the last of them.

7.2     If the parties fail to designate the sole arbitrator within the applicable time limit, HKIAC shall appoint the sole arbitrator.

15

7.3   Where the parties have agreed on a different procedure for designating the sole arbitrator and such procedure does not result in a designation within a time limit agreed by the parties or set by HKIAC, HKIAC shall appoint the sole arbitrator.

## Article 8 – Appointment of Three Arbitrators

8.1   Where a dispute between two parties is referred to three arbitrators, the arbitral tribunal shall be constituted as follows, unless the parties have agreed otherwise:

(a)   where the parties have agreed before the arbitration commences that the dispute shall be referred to three arbitrators, each party shall designate in the Notice of Arbitration and the Answer to the Notice of Arbitration, respectively, one arbitrator. If either party fails to designate an arbitrator, HKIAC shall appoint the arbitrator.

(b)   where the parties have agreed after the arbitration commences to refer the dispute to three arbitrators, the Claimant shall designate an arbitrator within 15 days from the date of that agreement, and the Respondent shall designate an arbitrator within 15 days from receiving notice of the Claimant's designation. If a party fails to designate an arbitrator, HKIAC shall appoint the arbitrator.

(c)   where the parties have not agreed upon the number of arbitrators and HKIAC has decided that the dispute shall be referred to three arbitrators, the Claimant shall designate an arbitrator within 15 days from receipt of HKIAC's decision, and the Respondent shall designate an arbitrator within 15 days from receiving notice of the Claimant's designation. If a party fails to designate an arbitrator, HKIAC shall appoint the arbitrator.

(d)   the two arbitrators so appointed shall designate a third arbitrator, who shall act as the presiding arbitrator. Failing such designation within 30 days from the confirmation or appointment of the second arbitrator, HKIAC shall appoint the presiding arbitrator.

16

---

8.2    Where there are more than two parties to the arbitration and the dispute is to be referred to three arbitrators, the arbitral tribunal shall be constituted as follows, unless the parties have agreed otherwise:

(a)    the Claimant or group of Claimants shall designate an arbitrator and the Respondent or group of Respondents shall designate an arbitrator in accordance with the procedure in Article 8.1(a), (b) or (c), as applicable;

(b)    if the parties have designated arbitrators in accordance with Article 8.2(a), the procedure in Article 8.1(d) shall apply to the designation of the presiding arbitrator;

(c)    in the event of any failure to designate arbitrators under Article 8.2(a) or if the parties do not all agree that they represent two separate sides (as Claimant and Respondent respectively) for the purposes of designating arbitrators, HKIAC may appoint all members of the arbitral tribunal with or without regard to any party's designation.

8.3    Where the parties have agreed on a different procedure for designating three arbitrators and such procedure does not result in the designation of an arbitrator within a time limit agreed by the parties or set by HKIAC, HKIAC shall appoint the arbitrator.

## Article 9 –  Confirmation of the Arbitral Tribunal

9.1    All designations of any arbitrator, whether made by the parties or the arbitrators, are subject to confirmation by HKIAC, upon which the appointments shall become effective.

9.2    Where the parties have agreed that an arbitrator is to be appointed by one or more of the parties or by the arbitrators already confirmed or appointed, that agreement shall be deemed an agreement to designate an arbitrator under the Rules.

9.3    The designation of an arbitrator shall be confirmed taking into account any agreement by the parties as to an arbitrator's qualifications, any information provided under Article 11.4, and in accordance with Article 10.

17

## Article 10 –  Fees and Expenses of the Arbitral Tribunal

10.1   The fees and expenses of the arbitral tribunal shall be determined according to either:

(a)   an hourly rate in accordance with Schedule 2; or

(b)   the schedule of fees based on the sum in dispute in accordance with Schedule 3.

The parties shall agree the method for determining the fees and expenses of the arbitral tribunal, and shall inform HKIAC of the applicable method within 30 days of the date on which the Respondent receives the Notice of Arbitration. If the parties fail to agree on the applicable method, the arbitral tribunal's fees and expenses shall be determined in accordance with Schedule 2.

10.2   Where the fees of the arbitral tribunal are to be determined in accordance with Schedule 2,

(a)   the applicable rate for each co-arbitrator shall be the rate agreed between that co-arbitrator and the designating party;

(b)   the applicable rate for a sole or presiding arbitrator designated by the parties or the co-arbitrators, as applicable, shall be the rate agreed between that arbitrator and the parties,

subject to paragraphs 9.3 to 9.5 of Schedule 2. Where the rate of an arbitrator is not agreed in accordance with Article 10.2(a) or (b), or where HKIAC appoints an arbitrator, HKIAC shall determine the rate of that arbitrator.

10.3   Where the fees of the arbitral tribunal are determined in accordance with Schedule 3, HKIAC shall fix the fees in accordance with that Schedule and the following rules:

(a)   the fees of the arbitral tribunal shall be reasonable in amount, taking into account the amount in dispute, the complexity of the subject-matter, the time spent by the arbitral tribunal and any secretary appointed under Article 13.4, and any other circumstances of the case, including, but not limited to, the discontinuation of the arbitration in case of settlement or for any other reason;

---

(b)   where a case is referred to three arbitrators, HKIAC, at its discretion, shall have the right to increase the total fees up to a maximum which shall normally not exceed three times the fees of a sole arbitrator;

(c)   the arbitral tribunal's fees may exceed the amounts calculated in accordance with Schedule 3 where, in the opinion of HKIAC, there are exceptional circumstances, which include, but are not limited to, the parties conducting the arbitration in a manner not reasonably contemplated at the time when the arbitral tribunal was constituted.

## Article 11 –   Qualifications and Challenge of the Arbitral Tribunal

11.1   An arbitral tribunal confirmed under these Rules shall be and remain at all times impartial and independent of the parties.

11.2   Subject to Article 11.3, as a general rule, where the parties to an arbitration under these Rules are of different nationalities, a sole or presiding arbitrator shall not have the same nationality as any party unless specifically agreed otherwise by all parties.

11.3   Notwithstanding the general rule in Article 11.2, in appropriate circumstances and provided that none of the parties objects within a time limit set by HKIAC, a sole or presiding arbitrator may be of the same nationality as any of the parties.

11.4   Before confirmation or appointment, a prospective arbitrator shall (a) sign a statement confirming his or her availability to decide the dispute and his or her impartiality and independence; and (b) disclose any circumstances likely to give rise to justifiable doubts as to his or her impartiality or independence. An arbitrator, once confirmed or appointed and throughout the arbitration, shall disclose without delay any such circumstances to the parties unless they have already been informed by him or her of these circumstances.

19

11.5     No party or its representatives shall have any ex parte communication relating to the arbitration with any arbitrator, or with any candidate to be designated as arbitrator by a party, except to advise the candidate of the general nature of the dispute, to discuss the candidate's qualifications, availability, impartiality or independence, or to discuss the suitability of candidates for the designation of a third arbitrator where the parties or party-designated arbitrators are to designate that arbitrator. No party or its representatives shall have any ex parte communication relating to the arbitration with any candidate for the presiding arbitrator.

11.6     Any arbitrator may be challenged if circumstances exist that give rise to justifiable doubts as to the arbitrator's impartiality or independence, or if the arbitrator does not possess qualifications agreed by the parties, or if the arbitrator becomes de jure or de facto unable to perform his or her functions or for other reasons fails to act without undue delay. A party may challenge the arbitrator designated by it or in whose appointment it has participated only for reasons of which it becomes aware after the designation has been made.

11.7     A party that intends to challenge an arbitrator shall send notice of its challenge within 15 days after the confirmation or appointment of that arbitrator has been communicated to the challenging party or within 15 days after that party became aware of the circumstances mentioned in Article 11.6.

11.8     The notice of challenge shall be communicated to HKIAC, all other parties, the challenged arbitrator and any other members of the arbitral tribunal. The notice of challenge shall state the reasons for the challenge.

11.9     Unless the arbitrator being challenged resigns or the non-challenging party agrees to the challenge within 15 days from receiving the notice of challenge, HKIAC shall decide on the challenge. Pending the determination of the challenge, the arbitral tribunal (including the challenged arbitrator) may continue the arbitration.

11.10    If an arbitrator resigns or a party agrees to a challenge under Article 11.9, no acceptance of the validity of any ground referred to in Article 11.6 shall be implied.

### Article 12 – Replacement of an Arbitrator

12.1   Subject to Articles 12.2, 27.13 and 28.8, where an arbitrator dies, has been successfully challenged, has been otherwise removed or has resigned, a substitute arbitrator shall be appointed pursuant to the rules that were applicable to the appointment of the arbitrator being replaced. These rules shall apply even if, during the process of appointing the arbitrator being replaced, a party had failed to exercise its right to designate or to participate in the appointment.

12.2   If, at the request of a party, HKIAC determines that, in view of the exceptional circumstances of the case, it would be justified for a party to be deprived of its right to designate a substitute arbitrator, HKIAC may, after giving an opportunity to the parties and the remaining arbitrators to express their views:

(a)   appoint the substitute arbitrator; or

(b)   authorise the other arbitrators to proceed with the arbitration and make any decision or award.

12.3   If an arbitrator is replaced, the arbitration shall resume at the stage where the arbitrator was replaced or ceased to perform his or her functions, unless the arbitral tribunal decides otherwise.

21

# SECTION IV. CONDUCT OF ARBITRATION

## Article 13 – General Provisions

13.1    Subject to these Rules, the arbitral tribunal shall adopt suitable procedures for the conduct of the arbitration in order to avoid unnecessary delay or expense, having regard to the complexity of the issues, the amount in dispute and the effective use of technology, and provided that such procedures ensure equal treatment of the parties and afford the parties a reasonable opportunity to present their case.

13.2    At an early stage of the arbitration and in consultation with the parties, the arbitral tribunal shall prepare a provisional timetable for the arbitration, which shall be provided to the parties and HKIAC.

13.3    Subject to Article 11.5, all written communications between any party and the arbitral tribunal shall be communicated to all other parties and HKIAC.

13.4    The arbitral tribunal may, after consulting with the parties, appoint a secretary. The secretary shall remain at all times impartial and independent of the parties and shall disclose any circumstances likely to give rise to justifiable doubts as to his or her impartiality or independence prior to his or her appointment. A secretary, once appointed and throughout the arbitration, shall disclose without delay any such circumstances to the parties unless they have already been informed by him or her of these circumstances.

13.5    The arbitral tribunal and the parties shall do everything necessary to ensure the fair and efficient conduct of the arbitration.

13.6    The parties may be represented by persons of their choice, subject to Article 13.5. The names, addresses, facsimile numbers and/or email addresses of party representatives shall be communicated to all other parties, HKIAC, any emergency arbitrator, and the arbitral tribunal once constituted. The arbitral tribunal, emergency arbitrator or HKIAC may require proof of authority of any party representatives.

13.7   After the arbitral tribunal is constituted, any change or addition by a party to its legal representatives shall be communicated promptly to all other parties, the arbitral tribunal and HKIAC.

13.8   Where the parties agree to pursue other means of settling their dispute after the arbitration commences, HKIAC, the arbitral tribunal or emergency arbitrator may, at the request of any party, suspend the arbitration or Emergency Arbitrator Procedure, as applicable, on such terms as it considers appropriate. The arbitration or Emergency Arbitrator Procedure shall resume at the request of any party to HKIAC, the arbitral tribunal or emergency arbitrator.

13.9   In all matters not expressly provided for in these Rules, HKIAC, the arbitral tribunal, emergency arbitrator and the parties shall act in the spirit of these Rules.

13.10  The arbitral tribunal or emergency arbitrator shall make every reasonable effort to ensure that an award is valid.

## Article 14 – Seat and Venue of the Arbitration

14.1   The parties may agree on the seat of arbitration. Where there is no agreement as to the seat, the seat of arbitration shall be Hong Kong, unless the arbitral tribunal determines, having regard to the circumstances of the case, that another seat is more appropriate.

14.2   Unless the parties have agreed otherwise, the arbitral tribunal may meet at any location outside of the seat of arbitration which it considers appropriate for consultation among its members, hearing witnesses, experts or the parties, or the inspection of goods, other property or documents. The arbitration shall nonetheless be treated for all purposes as an arbitration conducted at the seat.

## Article 15 – Language

15.1   The arbitration shall be conducted in the language of the arbitration. Where the parties have not previously agreed on such language, any party shall communicate in English or Chinese prior to any determination by the arbitral tribunal under Article 15.2.

23

15.2 Subject to agreement by the parties, the arbitral tribunal shall, promptly after its constitution, determine the language of the arbitration. This determination shall apply to all written communications and the language to be used in any hearing.

15.3 The arbitral tribunal may order that any supporting materials submitted in their original language shall be accompanied by a translation, in whole or in part, into the language of the arbitration as agreed by the parties or determined by the arbitral tribunal.

## Article 16 – Statement of Claim

16.1 Unless the Statement of Claim was contained in the Notice of Arbitration (or the Claimant elects to treat the Notice of Arbitration as the Statement of Claim), the Claimant shall communicate its Statement of Claim to all other parties and to the arbitral tribunal within a time limit to be determined by the arbitral tribunal.

16.2 The Statement of Claim shall include the following particulars:

    (a) a statement of the facts supporting the claim;

    (b) the points at issue;

    (c) the legal arguments supporting the claim; and

    (d) the relief or remedy sought.

16.3 The Claimant shall annex to its Statement of Claim all supporting materials on which it relies.

16.4 The arbitral tribunal may vary any of the requirements in Article 16 as it deems appropriate.

## Article 17 – Statement of Defence

17.1 Unless the Statement of Defence was contained in the Answer to the Notice of Arbitration (or the Respondent elects to treat the Answer to the Notice of Arbitration as the Statement of Defence), the Respondent shall communicate its Statement of Defence to all other parties and to the arbitral tribunal within a time limit to be determined by the arbitral tribunal.

17.2    The Statement of Defence shall reply to the particulars of the Statement of Claim (set out in Article 16.2(a) to (c)). If the Respondent has raised an objection to the jurisdiction or to the proper constitution of the arbitral tribunal, the Statement of Defence shall contain the factual and legal basis of such objection.

17.3    Where there is a counterclaim, set-off defence or cross-claim, the Statement of Defence shall also include the following particulars:

(a)    a statement of the facts supporting the counterclaim, set-off defence or cross-claim;

(b)    the points at issue;

(c)    the legal arguments supporting the counterclaim, set-off defence or cross-claim; and

(d)    the relief or remedy sought.

17.4    The Respondent shall annex to its Statement of Defence all supporting materials on which it relies.

17.5    The arbitral tribunal may vary any of the requirements in Article 17 as it deems appropriate.

## Article 18 –   Amendments to the Claim or Defence

18.1    During the course of the arbitration, a party may amend or supplement its claim or defence, unless the arbitral tribunal considers it inappropriate to allow such amendment having regard to the circumstances of the case. However, a claim or defence may not be amended in such a manner that the amended claim or defence falls outside the jurisdiction of the arbitral tribunal.

18.2    HKIAC may adjust its Administrative Fees and the arbitral tribunal's fees (where appropriate) if a party amends its claim or defence.

## Article 19 –   Jurisdiction of the Arbitral Tribunal

19.1    The arbitral tribunal may rule on its own jurisdiction under these Rules, including any objections with respect to the existence, validity or scope of the arbitration agreement.

19.2   The arbitral tribunal shall have the power to determine the existence or validity of any contract of which an arbitration agreement forms a part. For the purposes of Article 19, an arbitration agreement which forms part of a contract, and which provides for arbitration under these Rules, shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitral tribunal that the contract is null and void shall not necessarily entail the invalidity of the arbitration agreement.

19.3   A plea that the arbitral tribunal does not have jurisdiction shall be raised if possible in the Answer to the Notice of Arbitration, and shall be raised no later than in the Statement of Defence, or, with respect to a counterclaim, in the Defence to the Counterclaim. A party is not precluded from raising such a plea by the fact that it has designated or appointed, or participated in the designation or appointment of, an arbitrator. A plea that the arbitral tribunal is exceeding the scope of its authority shall be raised as soon as the matter alleged to be beyond the scope of its authority is raised during the arbitration. The arbitral tribunal may, in either case, admit a later plea if it considers the delay justified.

19.4   Subject to Article 19.5, if a question arises as to:

(a)   the existence, validity or scope of the arbitration agreement; or

(b)   whether all of the claims have been properly made in a single arbitration pursuant to Article 29; or

(c)   the competence of HKIAC to administer an arbitration;

before the constitution of the arbitral tribunal, the arbitration shall proceed and any such question shall be decided by the arbitral tribunal once constituted.

19.5   The arbitration shall proceed only if and to the extent that HKIAC is satisfied, prima facie, that an arbitration agreement under the Rules may exist or the arbitration has been properly commenced under Article 29. Any question as to the jurisdiction of the arbitral tribunal shall be decided by the arbitral tribunal once constituted, pursuant to Article 19.1.

26

19.6    HKIAC's decision pursuant to Article 19.5 is without prejudice to the admissibility or merits of any party's claim or defence.

## Article 20 – Further Written Statements

The arbitral tribunal shall decide which further written statements, if any, in addition to the Statement of Claim and the Statement of Defence, shall be required from the parties and shall set the time limits for communicating such statements.

## Article 21 – Time Limits

21.1    The time limits set by the arbitral tribunal for the communication of written statements should not exceed 45 days, unless the arbitral tribunal considers otherwise.

21.2    The arbitral tribunal may, even in circumstances where the relevant time limit has expired, extend time limits where it concludes that an extension is justified.

## Article 22 – Evidence and Hearings

22.1    Each party shall have the burden of proving the facts relied on to support its claim or defence.

22.2    The arbitral tribunal shall determine the admissibility, relevance, materiality and weight of the evidence, including whether to apply strict rules of evidence.

22.3    At any time during the arbitration, the arbitral tribunal may allow or require a party to produce documents, exhibits or other evidence that the arbitral tribunal determines to be relevant to the case and material to its outcome. The arbitral tribunal shall have the power to admit or exclude any documents, exhibits or other evidence.

22.4    The arbitral tribunal shall decide whether to hold hearings for presenting evidence or for oral arguments, or whether the arbitration shall be conducted solely on the basis of documents and other materials. The arbitral tribunal shall hold such hearings at an appropriate stage of the arbitration, if so requested by a party or if it considers fit. In the event of a hearing, the arbitral tribunal shall give the parties adequate advance notice of the relevant date, time and place.

22.5    The arbitral tribunal may determine the manner in which a witness or expert is examined.

22.6    The arbitral tribunal may make directions for the translation of oral statements made at a hearing and for a record of the hearing if it deems that either is necessary in the circumstances of the case.

22.7    Hearings shall be held in private unless the parties agree otherwise. The arbitral tribunal may require any witness or expert to leave the hearing room at any time during the hearing.

## Article 23 –   Interim Measures of Protection and Emergency Relief

23.1    A party may apply for urgent interim or conservatory relief ("Emergency Relief") prior to the constitution of the arbitral tribunal pursuant to Schedule 4.

23.2    At the request of either party, the arbitral tribunal may order any interim measures it deems necessary or appropriate.

23.3    An interim measure, whether in the form of an order or award or in another form, is any temporary measure ordered by the arbitral tribunal at any time before it issues the award by which the dispute is finally decided, that a party, for example and without limitation:

(a)    maintain or restore the status quo pending determination of the dispute; or

(b)    take action that would prevent, or refrain from taking action that is likely to cause, current or imminent harm or prejudice to the arbitral process itself; or

28

 

(c)    provide a means of preserving assets out of which a subsequent award may be satisfied; or

(d)    preserve evidence that may be relevant and material to the resolution of the dispute.

23.4    When deciding a party's request for an interim measure under Article 23.2, the arbitral tribunal shall take into account the circumstances of the case. Relevant factors may include, but are not limited to:

(a)    harm not adequately reparable by an award of damages is likely to result if the measure is not ordered, and such harm substantially outweighs the harm that is likely to result to the party against whom the measure is directed if the measure is granted; and

(b)    there is a reasonable possibility that the requesting party will succeed on the merits of the claim. The determination on this possibility shall not affect the discretion of the arbitral tribunal in making any subsequent determination.

23.5    The arbitral tribunal may modify, suspend or terminate an interim measure it has granted, upon application of any party or, in exceptional circumstances and upon prior notice to the parties, on the arbitral tribunal's own initiative.

23.6    The arbitral tribunal may require the party requesting an interim measure to provide appropriate security in connection with the measure.

23.7    The arbitral tribunal may require any party promptly to disclose any material change in the circumstances on the basis of which an interim measure was requested or granted.

23.8    The party requesting an interim measure may be liable for any costs and damages caused by the measure to any party if the arbitral tribunal later determines that, in the circumstances then prevailing, the measure should not have been granted. The arbitral tribunal may award such costs and damages at any point during the arbitration.

23.9    A request for interim measures addressed by any party to a competent authority shall not be deemed incompatible with the arbitration agreement, or as a waiver thereof.

29

---

## Article 24 – Security for Costs

The arbitral tribunal may make an order requiring a party to provide security for the costs of the arbitration.

## Article 25 – Tribunal-Appointed Experts

25.1   To assist it in the assessment of evidence, the arbitral tribunal, after consulting with the parties, may appoint one or more experts. Such expert shall report to the arbitral tribunal, in writing, on specific issues to be determined by the arbitral tribunal. After consulting with the parties, the arbitral tribunal shall establish terms of reference for the expert, and shall communicate a copy of the expert's terms of reference to the parties and HKIAC.

25.2   The parties shall give the expert any relevant information or produce for his or her inspection any relevant documents or goods that he or she may require of them. Any dispute between a party and such expert as to the relevance of the required information or production shall be referred to the arbitral tribunal for decision.

25.3   Upon receipt of the expert's report, the arbitral tribunal shall send a copy of the report to the parties who shall be given the opportunity to express their opinions on the report. The parties shall be entitled to examine any document on which the expert has relied in his or her report.

25.4   At the request of either party, the expert, after delivering the report, shall attend a hearing at which the parties shall have the opportunity to be present and to examine the expert. At this hearing either party may present experts in order to testify on the points at issue. The provisions of Articles 22.2 to 22.7 shall be applicable to such proceedings.

25.5   The provisions of Article 11 shall apply by analogy to any expert appointed by the arbitral tribunal.

## Article 26 – Default

26.1   If, within the time limit set by the arbitral tribunal, the Claimant has failed to communicate its written statement without showing sufficient cause for such failure, the arbitral tribunal may terminate the arbitration unless another party has brought a claim and wishes the arbitration to continue, in which case the tribunal may proceed with the arbitration in respect of the other party's claim.

26.2   If, within the time limit set by the arbitral tribunal, the Respondent has failed to communicate its written statement without showing sufficient cause for such failure, the arbitral tribunal may proceed with the arbitration.

26.3   If one of the parties, duly notified under these Rules, fails to present its case in accordance with these Rules including as directed by the arbitral tribunal, without showing sufficient cause for such failure, the arbitral tribunal may proceed with the arbitration and make an award on the basis of the evidence before it.

## Article 27 – Joinder of Additional Parties

27.1   The arbitral tribunal or, where the arbitral tribunal is not yet constituted, HKIAC shall have the power to allow an additional party to be joined to the arbitration provided that:

(a)   prima facie, the additional party is bound by an arbitration agreement under these Rules giving rise to the arbitration, including any arbitration under Article 28 or 29; or

(b)   all parties, including the additional party, expressly agree.

27.2   Any decision pursuant to Article 27.1 is without prejudice to the arbitral tribunal's power to decide any question as to its jurisdiction arising from such decision.

27.3   Any Request for Joinder shall be raised no later than in the Statement of Defence, except in exceptional circumstances.

31

27.4    Before the arbitral tribunal is constituted, a party wishing to join an additional party to the arbitration shall communicate a Request for Joinder to HKIAC, all other parties and any confirmed or appointed arbitrators.

27.5    After the arbitral tribunal is constituted, a party wishing to join an additional party to the arbitration shall communicate a Request for Joinder to the arbitral tribunal, HKIAC and all other parties.

27.6    The Request for Joinder shall include the following:

(a)    the case reference of the existing arbitration;

(b)    the names and addresses, facsimile numbers and/or email addresses, if known, of each of the parties, including the additional party, their representatives and any arbitrators who have been confirmed or appointed in the arbitration;

(c)    a request that the additional party be joined to the arbitration;

(d)    a copy of the contract(s) or other legal instrument(s) out of or in relation to which the request arises, or reference thereto;

(e)    a statement of the facts supporting the request;

(f)    the points at issue;

(g)    the legal arguments supporting the request;

(h)    any relief or remedy sought;

(i)    the existence of any funding agreement and the identity of any third party funder pursuant to Article 44; and

(j)    confirmation that copies of the Request for Joinder and any supporting materials included with it have been or are being communicated simultaneously to all other parties and any confirmed or appointed arbitrators, by one or more means of service to be identified in such confirmation.

27.7    Within 15 days of receiving the Request for Joinder, the additional party shall communicate an Answer to the Request for Joinder to HKIAC, all other parties and any confirmed or appointed arbitrators. The Answer to the Request for Joinder shall include the following:

32

(a) the name, address, facsimile number and/or email address of the additional party and its representatives (if different from the description contained in the Request for Joinder);

(b) any plea that the arbitral tribunal has been improperly constituted and/or lacks jurisdiction over the additional party;

(c) the additional party's comments on the particulars set forth in the Request for Joinder pursuant to Article 27.6(a) to (g);

(d) the additional party's answer to any relief or remedy sought in the Request for Joinder, pursuant to Article 27.6(h);

(e) details of any claims by the additional party against any other party to the arbitration;

(f) the existence of any funding agreement entered into by the additional party and the identity of any third party funder pursuant to Article 44; and

(g) confirmation that copies of the Answer to the Request for Joinder and any supporting materials included with it have been or are being communicated simultaneously to all other parties and any confirmed or appointed arbitrators, by one or more means of service to be identified in such confirmation.

27.8 HKIAC or the arbitral tribunal may vary any of the requirements in Article 27.6 and 27.7 as it deems appropriate.

27.9 An additional party wishing to be joined to the arbitration shall communicate a Request for Joinder to HKIAC, all other parties and any confirmed or appointed arbitrators. The provisions of Article 27.6 shall apply to such Request for Joinder.

27.10 Within 15 days of receiving a Request for Joinder, the parties shall communicate their comments on the Request for Joinder to HKIAC, all other parties and any confirmed or appointed arbitrators. Such comments may include (without limitation):

(a) any plea that the arbitral tribunal lacks jurisdiction over the additional party;

33

(b)   comments on the particulars set forth in the Request for Joinder, pursuant to Article 27.6(a) to (g);

(c)   answer to any relief or remedy sought in the Request for Joinder pursuant to Article 27.6(h);

(d)   details of any claims against the additional party; and

(e)   confirmation that copies of the comments have been or are being communicated simultaneously to all other parties and any confirmed or appointed arbitrators, by one or more means of service to be identified in such confirmation.

27.11  Where an additional party is joined to the arbitration, the arbitration against that additional party shall be deemed to commence on the date on which HKIAC or the arbitral tribunal once constituted, received the Request for Joinder.

27.12  Where an additional party is joined to the arbitration, all parties to the arbitration shall be deemed to have waived their right to designate an arbitrator.

27.13  Where an additional party is joined to the arbitration before the arbitral tribunal is constituted, HKIAC may revoke any confirmation or appointment of an arbitrator, and shall appoint the arbitral tribunal with or without regard to any party's designation.

27.14  The revocation of the confirmation or appointment of an arbitrator pursuant to Article 27.13 is without prejudice to:

(a)   the validity of any act done or order made by that arbitrator before his or her confirmation or appointment was revoked;

(b)   his or her entitlement to be paid his or her fees and expenses subject to Schedule 2 or 3 as applicable; and

(c)   the date when any claim or defence was raised for the purpose of applying any limitation bar or any similar rule or provision.

27.15  HKIAC may adjust its Administrative Fees and the arbitral tribunal's fees (where appropriate) after a Request for Joinder has been submitted.

## Article 28 – Consolidation of Arbitrations

28.1　HKIAC shall have the power, at the request of a party and after consulting with the parties and any confirmed or appointed arbitrators, to consolidate two or more arbitrations pending under these Rules where:

(a)　the parties agree to consolidate; or

(b)　all of the claims in the arbitrations are made under the same arbitration agreement; or

(c)　the claims are made under more than one arbitration agreement, a common question of law or fact arises in all of the arbitrations, the rights to relief claimed are in respect of, or arise out of, the same transaction or a series of related transactions and the arbitration agreements are compatible.

28.2　Any party wishing to consolidate two or more arbitrations pursuant to Article 28.1 shall communicate a Request for Consolidation to HKIAC, all other parties and any confirmed or appointed arbitrators.

28.3　The Request for Consolidation shall include the following:

(a)　the case references of the arbitrations pending under the Rules requested to be consolidated, where applicable;

(b)　the names and addresses, facsimile numbers and/or email addresses of each of the parties to the arbitrations, their representatives and any arbitrators who have been confirmed or appointed in the arbitrations;

(c)　a request that the arbitrations be consolidated;

(d)　a copy of the arbitration agreement giving rise to the arbitrations;

(e)　a copy of the contract(s) or other legal instrument(s) out of or in relation to which the Request for Consolidation arises, or reference thereto;

(f)　a description of the general nature of the claim and an indication of the amount involved, if any, in each of the arbitrations;

(g)   a statement of the facts supporting the Request for Consolidation, including, where applicable, evidence of all parties' written consent to consolidate the arbitrations;

(h)   the points at issue;

(i)   the legal arguments supporting the Request for Consolidation;

(j)   details of any applicable mandatory provision affecting consolidation of arbitrations;

(k)   comments on the constitution of the arbitral tribunal if the Request for Consolidation is granted, including whether to preserve the appointment of any arbitrators already designated or confirmed; and

(l)   confirmation that copies of the Request for Consolidation and any supporting materials included with it have been or are being communicated simultaneously to all other relevant parties and any confirmed or appointed arbitrators, by one or more means of service to be identified in such confirmation.

28.4   HKIAC may vary any of the requirements in Article 28.3 as it deems appropriate.

28.5   Where the non-requesting parties or any confirmed or appointed arbitrators are requested to provide comments on the Request for Consolidation, such comments may include (without limitation) the following particulars:

(a)   comments on the particulars set forth in the Request for Consolidation pursuant to Article 28.3(a) to (j);

(b)   responses to the comments made in the Request for Consolidation pursuant to Article 28.3(k); and

(c)   confirmation that copies of the comments have been or are being communicated simultaneously to all other relevant parties and any confirmed or appointed arbitrators, by one or more means of service to be identified in such confirmation.

36

28.6    Where HKIAC decides to consolidate two or more arbitrations, the arbitrations shall be consolidated into the arbitration that commenced first, unless all parties agree or HKIAC decides otherwise taking into account the circumstances of the case. HKIAC shall communicate such decision to all parties and to any confirmed or appointed arbitrators in all arbitrations.

28.7    The consolidation of two or more arbitrations is without prejudice to the validity of any act done or order made by a competent authority in support of the relevant arbitration before it was consolidated.

28.8    Where HKIAC decides to consolidate two or more arbitrations, the parties to all such arbitrations shall be deemed to have waived their right to designate an arbitrator, and HKIAC may revoke any confirmation or appointment of an arbitrator. HKIAC shall appoint the arbitral tribunal in respect of the consolidated proceedings with or without regard to any party's designation.

28.9    The revocation of the confirmation or appointment of an arbitrator pursuant to Article 28.8 is without prejudice to:

(a)    the validity of any act done or order made by that arbitrator before his or her confirmation or appointment was revoked;

(b)    his or her entitlement to be paid his or her fees and expenses subject to Schedule 2 or 3 as applicable; and

(c)    the date when any claim or defence was raised for the purpose of applying any limitation bar or any similar rule or provision.

28.10   HKIAC may adjust its Administrative Fees and the arbitral tribunal's fees (where appropriate) after a Request for Consolidation has been submitted.

37

## Article 29 –  Single Arbitration under Multiple Contracts

Claims arising out of or in connection with more than one contract may be made in a single arbitration, provided that:

    (a)   a common question of law or fact arises under each arbitration agreement giving rise to the arbitration; and

    (b)   the rights to relief claimed are in respect of, or arise out of, the same transaction or a series of related transactions; and

    (c)   the arbitration agreements under which those claims are made are compatible.

## Article 30 – Concurrent Proceedings

30.1   The arbitral tribunal may, after consulting with the parties, conduct two or more arbitrations under the Rules at the same time, or one immediately after another, or suspend any of those arbitrations until after the determination of any other of them, where:

    (a)   the same arbitral tribunal is constituted in each arbitration; and

    (b)   a common question of law or fact arises in all the arbitrations.

30.2   HKIAC may adjust its Administrative Fees and the arbitral tribunal's fees (where appropriate) where the arbitrations are conducted pursuant to Article 30.1.

## Article 31 – Closure of Proceedings

31.1   When it is satisfied that the parties have had a reasonable opportunity to present their case, whether in relation to the entire proceedings or a discrete phase of the proceedings, the arbitral tribunal shall declare the proceedings or the relevant phase of the proceedings closed. Thereafter, no further submissions or arguments may be made, or evidence produced in respect of the entire proceedings or the discrete phase, as applicable, unless the arbitral tribunal reopens the proceedings or the relevant phase of the proceedings in accordance with Article 31.4.

31.2    Once the proceedings are declared closed, the arbitral tribunal shall inform HKIAC and the parties of the anticipated date by which an award will be communicated to the parties. The date of rendering the award shall be no later than three months from the date when the arbitral tribunal declares the entire proceedings or the relevant phase of the proceedings closed, as applicable. This time limit may be extended by agreement of the parties or, in appropriate circumstances, by HKIAC.

31.3    Article 31.2 shall not apply to any arbitration conducted pursuant to the Expedited Procedure under Article 42.

31.4    The arbitral tribunal may, if it considers it necessary, decide, on its own initiative or upon application of a party, to reopen the proceedings at any time before the award is made.

## Article 32 – Waiver

32.1    A party that knows, or ought reasonably to know, that any provision of, or requirement arising under, these Rules (including the arbitration agreement) has not been complied with and yet proceeds with the arbitration without promptly stating its objection to such non-compliance, shall be deemed to have waived its right to object.

32.2    The parties waive any objection, on the basis of the use of any procedure under Articles 27, 28, 29, 30 or 43 and any decision made in respect of such procedure, to the validity and/or enforcement of any award made by the arbitral tribunal in the arbitration(s), in so far as such waiver can validly be made.

# SECTION V. AWARDS, DECISIONS AND ORDERS OF THE ARBITRAL TRIBUNAL

## Article 33 – Decisions

33.1   When there is more than one arbitrator, any award or other decision of the arbitral tribunal shall be made by a majority of the arbitrators. If there is no majority, the award shall be made by the presiding arbitrator alone.

33.2   With the prior agreement of all members of the arbitral tribunal, the presiding arbitrator may make procedural rulings alone.

## Article 34 – Costs of the Arbitration

34.1   The arbitral tribunal shall determine the costs of the arbitration in one or more orders or awards. The term "costs of the arbitration" includes only:

    (a)   the fees of the arbitral tribunal, as determined in accordance with Article 10;

    (b)   the reasonable travel and other expenses incurred by the arbitral tribunal;

    (c)   the reasonable costs of expert advice and of other assistance required by the arbitral tribunal, including fees and expenses of any tribunal secretary;

    (d)   the reasonable costs for legal representation and other assistance, including fees and expenses of any witnesses and experts, if such costs were claimed during the arbitration; and

    (e)   the Registration Fee and Administrative Fees payable to HKIAC in accordance with Schedule 1, and any expenses payable to HKIAC.

34.2   With respect to the costs of legal representation and other assistance referred to in Article 34.1(d), the arbitral tribunal, taking into account the circumstances of the case, may direct that the recoverable costs of the arbitration, or any part of the arbitration, shall be limited to a specified amount.

34.3   The arbitral tribunal may apportion all or part of the costs of the arbitration referred to in Article 34.1 between the parties if it determines that apportionment is reasonable, taking into account the circumstances of the case.

34.4   The arbitral tribunal may take into account any third party funding arrangement in determining all or part of the costs of the arbitration referred to in Article 34.1.

34.5   Where arbitrations are consolidated pursuant to Article 28, the arbitral tribunal in the consolidated arbitration shall determine the costs of the arbitration in accordance with Articles 34.2 to 34.4. Such costs include, but are not limited to, the fees of any arbitrator designated, confirmed or appointed and any other costs incurred in an arbitration that was subsequently consolidated into another arbitration.

34.6   When the arbitral tribunal issues an order for the termination of the arbitration or makes an award on agreed terms, it shall determine the costs of the arbitration referred to in Article 34.1 (to the extent not already determined) and may apportion all or part of such costs, in the text of that order or award.

## Article 35 – Form and Effect of the Award

35.1   The arbitral tribunal may make a single award or separate awards regarding different issues at different times and in respect of all parties involved in the arbitration in the form of interim, interlocutory, partial or final awards. If appropriate, the arbitral tribunal may also issue interim awards on costs and any awards pursuant to Article 41.5.

35.2   Awards shall be made in writing and shall be final and binding on the parties and any person claiming through or under any of the parties. The parties and any such person waive their rights to any form of recourse or defence in respect of the setting-aside, enforcement and execution of any award, in so far as such waiver can validly be made.

35.3   The parties undertake to comply without delay with any order or award made by the arbitral tribunal or any emergency arbitrator, including any order or award made in any proceedings under Articles 27, 28, 29, 30 or 43.

41

35.4    An award shall state the reasons upon which it is based unless the parties have agreed that no reasons are to be given.

35.5    An award shall be signed by the arbitral tribunal. It shall state the date on which it was made and the seat of arbitration as determined under Article 14 and shall be deemed to have been made at the seat of the arbitration. Where there are three arbitrators and any of them fails to sign, the award shall state the reason for the absence of the signature(s).

35.6    The arbitral tribunal shall communicate to HKIAC originals of the award signed by the arbitral tribunal. HKIAC shall affix its seal to the award and, subject to any lien, communicate it to the parties.

## Article 36 –   Applicable Law, Amiable Compositeur

36.1    The arbitral tribunal shall decide the substance of the dispute in accordance with the rules of law agreed upon by the parties. Any designation of the law or legal system of a given jurisdiction shall be construed, unless otherwise expressed, as directly referring to the substantive law of that jurisdiction and not to its conflict of laws rules. Failing such designation by the parties, the arbitral tribunal shall apply the rules of law which it determines to be appropriate.

36.2    The arbitral tribunal shall decide as amiable compositeur or ex aequo et bono only if the parties have expressly agreed that the arbitral tribunal should do so.

36.3    In all cases, the arbitral tribunal shall decide the case in accordance with the terms of the relevant contract(s) and may take into account the usages of the trade applicable to the transaction(s).

## Article 37 – Settlement or Other Grounds for Termination

37.1   If, before the arbitral tribunal is constituted, a party wishes to terminate the arbitration, it shall communicate this to all other parties and HKIAC. HKIAC shall set a time limit for all other parties to indicate whether they agree to terminate the arbitration. If no other party objects within the time limit, HKIAC may terminate the arbitration. If any party objects to the termination of the arbitration, the arbitration shall proceed in accordance with the Rules.

37.2   If, after the arbitral tribunal is constituted and before the final award is made:

(a)   the parties settle the dispute, the arbitral tribunal shall either issue an order for the termination of the arbitration or, if requested by the parties and accepted by the arbitral tribunal, record the settlement in the form of an arbitral award on agreed terms. The arbitral tribunal is not obliged to give reasons for such an award.

(b)   continuing the arbitration becomes unnecessary or impossible for any reason not mentioned in Article 37.2(a), the arbitral tribunal shall issue an order for the termination of the arbitration. The arbitral tribunal shall issue such an order unless a party raises a justifiable objection, having been given a reasonable opportunity to comment upon the proposed course of action.

37.3   The arbitral tribunal shall communicate copies of the order to terminate the arbitration or of the arbitral award on agreed terms, signed by the arbitral tribunal, to HKIAC. Subject to any lien, HKIAC shall communicate the order for termination of the arbitration or the arbitral award on agreed terms to the parties. Where an arbitral award on agreed terms is made, the provisions of Articles 35.2, 35.3, 35.5 and 35.6 shall apply.

## Article 38 – Correction of the Award

38.1   Within 30 days after receipt of the award, either party, with notice to all other parties, may request the arbitral tribunal to correct in the award any errors in computation, any clerical or typographical errors, or any errors of similar nature. The arbitral tribunal may set a time limit, normally not exceeding 15 days, for all other parties to comment on such request.

38.2   The arbitral tribunal shall make any corrections it considers appropriate within 30 days after receipt of the request but may extend such time limit if necessary.

38.3   The arbitral tribunal may within 30 days after the date of the award make such corrections on its own initiative.

38.4   The arbitral tribunal has the power to make any further correction to the award which is necessitated by or consequential on (a) the interpretation of any point or part of the award under Article 39; or (b) the issue of any additional award under Article 40.

38.5   Such corrections shall be in writing, and the provisions of Articles 35.2 to 35.6 shall apply.

## Article 39 – Interpretation of the Award

39.1   Within 30 days after receipt of the award, either party, with notice to all other parties, may request that the arbitral tribunal give an interpretation of the award. The arbitral tribunal may set a time limit, normally not exceeding 15 days, for all other parties to comment on such request.

39.2   Any interpretation considered appropriate by the arbitral tribunal shall be given in writing within 30 days after receipt of the request but the arbitral tribunal may extend such time limit if necessary.

39.3   The arbitral tribunal has the power to give any further interpretation of the award which is necessitated by or consequential on (a) the correction of any error in the award under Article 38; or (b) the issue of any additional award under Article 40.

39.4   Any interpretation given under Article 39 shall form part of the award and the provisions of Articles 35.2 to 35.6 shall apply.

## Article 40 – Additional Award

40.1   Within 30 days after receipt of the award, either party, with notice to all other parties, may request the arbitral tribunal to make an additional award as to claims presented in the arbitration but omitted from the award. The arbitral tribunal may set a time limit, normally not exceeding 30 days, for all other parties to comment on such request.

40.2   If the arbitral tribunal considers the request for an additional award to be justified, it shall make the additional award within 60 days after receipt of the request but may extend such time limit if necessary.

40.3   The arbitral tribunal has the power to make an additional award which is necessitated by or consequential on (a) the correction of any error in the award under Article 38; or (b) the interpretation of any point or part of the award under Article 39.

40.4   When an additional award is made, the provisions of Articles 35.2 to 35.6 shall apply.

## Article 41 – Deposits for Costs

41.1   As soon as practicable after receipt of the Notice of Arbitration by the Respondent, HKIAC shall, in principle, request the Claimant and the Respondent each to deposit with HKIAC an equal amount as an advance for the costs referred to in Article 34.1(a), (b), (c) and (e). HKIAC shall provide a copy of such request to the arbitral tribunal.

41.2   Where the Respondent submits a counterclaim or cross-claim, or it otherwise appears appropriate in the circumstances, HKIAC may request separate deposits.

41.3   During the course of the arbitration, HKIAC may request the parties to make supplementary deposits with HKIAC. HKIAC shall provide a copy of such request to the arbitral tribunal.

41.4    If the required deposits are not paid in full to HKIAC within 30 days after receipt of the request, HKIAC shall so inform the parties in order that one or another of them may make the required payment. If such payment is not made, the arbitral tribunal may order the suspension or termination of the arbitration or continue with the arbitration on such basis and in respect of such claim or counterclaim as the arbitral tribunal considers fit.

41.5    If a party pays the required deposits on behalf of another party, the arbitral tribunal may, at the request of the paying party, make an award for reimbursement of the payment.

41.6    When releasing the final award, HKIAC shall render an account to the parties of the deposits received by HKIAC. Any unexpended balance shall be returned to the parties in the shares in which it was paid by the parties to HKIAC, or as otherwise instructed by the arbitral tribunal.

41.7    HKIAC shall place the deposits made by the parties in an account at a reputable licensed deposit-taking institution. In selecting the account, HKIAC shall have due regard to the possible need to make the deposited funds available immediately.

# SECTION VI. OTHER PROVISIONS

## Article 42 – Expedited Procedure

42.1   Prior to the constitution of the arbitral tribunal, a party may apply to HKIAC for the arbitration to be conducted in accordance with Article 42.2 where:

   (a)   the amount in dispute representing the aggregate of any claim and counterclaim (or any set-off defence or cross-claim) does not exceed the amount set by HKIAC, as stated on HKIAC's website on the date the Notice of Arbitration is submitted; or

   (b)   the parties so agree; or

   (c)   in cases of exceptional urgency.

42.2   When HKIAC, after considering the views of the parties, grants an application made pursuant to Article 42.1, the arbitral proceedings shall be conducted in accordance with an Expedited Procedure based upon the foregoing provisions of these Rules, subject to the following changes:

   (a)   the case shall be referred to a sole arbitrator, unless the arbitration agreement provides for three arbitrators;

   (b)   if the arbitration agreement provides for three arbitrators, HKIAC shall invite the parties to agree to refer the case to a sole arbitrator. If the parties do not agree, the case shall be referred to three arbitrators;

   (c)   HKIAC may shorten the time limits provided for in the Rules, as well as any time limits that it has set;

   (d)   after the submission of the Answer to the Notice of Arbitration, the parties shall in principle be entitled to submit one Statement of Claim and one Statement of Defence (and Counterclaim) and, where applicable, one Statement of Defence in reply to the Counterclaim;

   (e)   the arbitral tribunal shall decide the dispute on the basis of documentary evidence only, unless it decides that it is appropriate to hold one or more hearings;

47

(f) subject to any lien, the award shall be communicated to the parties within six months from the date when HKIAC transmitted the case file to the arbitral tribunal. In exceptional circumstances, HKIAC may extend this time limit;

(g) the arbitral tribunal may state the reasons upon which the award is based in summary form, unless the parties have agreed that no reasons are to be given.

42.3 Upon the request of any party and after consulting with the parties and any confirmed or appointed arbitrators, HKIAC may, having regard to any new circumstances that have arisen, decide that the Expedited Procedure under Article 42 shall no longer apply to the case. Unless HKIAC considers that it is appropriate to revoke the confirmation or appointment of any arbitrator, the arbitral tribunal shall remain in place.

## Article 43 – Early Determination Procedure

43.1 The arbitral tribunal shall have the power, at the request of any party and after consulting with all other parties, to decide one or more points of law or fact by way of early determination procedure, on the basis that:

(a) such points of law or fact are manifestly without merit; or

(b) such points of law or fact are manifestly outside the arbitral tribunal's jurisdiction; or

(c) even if such points of law or fact are submitted by another party and are assumed to be correct, no award could be rendered in favour of that party.

43.2 Any party making a request for early determination procedure shall communicate the request to the arbitral tribunal, HKIAC and all other parties.

43.3 Any request for early determination procedure shall be made as promptly as possible after the relevant points of law or fact are submitted, unless the arbitral tribunal directs otherwise.

48

43.4  The request for early determination procedure shall include the following:

(a)  a request for early determination of one or more points of law or fact and a description of such points;

(b)  a statement of the facts and legal arguments supporting the request;

(c)  a proposal of the form of early determination procedure to be adopted by the arbitral tribunal;

(d)  comments on how the proposed form referred to in Article 43.4(c) would achieve the objectives stated in Articles 13.1 and 13.5; and

(e)  confirmation that copies of the request and any supporting materials included with it have been or are being communicated simultaneously to all other parties by one or more means of service to be identified in such confirmation.

43.5  After providing all other parties with an opportunity to submit comments on the request, the arbitral tribunal shall issue a decision either dismissing the request or allowing the request to proceed by fixing the early determination procedure in the form it considers appropriate. The arbitral tribunal shall make such decision within 30 days from the date of filing the request. This time limit may be extended by agreement of the parties or, in appropriate circumstances, by HKIAC.

43.6  If the request is allowed to proceed, the arbitral tribunal shall make its order or award, which may be in summary form, on the relevant points of law or fact. The arbitral tribunal shall make such order or award within 60 days from the date of its decision to proceed. This time limit may be extended by agreement of the parties or, in appropriate circumstances, by HKIAC.

43.7  Pending the determination of the request, the arbitral tribunal may decide whether and to what extent the arbitration shall proceed.

49

## Article 44 –  Disclosure of Third Party Funding of Arbitration

44.1     If a funding agreement is made, the funded party shall communicate a written notice to all other parties, the arbitral tribunal, any emergency arbitrator and HKIAC of:

(a)     the fact that a funding agreement has been made; and

(b)     the identity of the third party funder.

44.2     The notice referred to in Article 44.1 must be communicated:

(a)     in respect of a funding agreement made on or before the commencement of the arbitration, in the application for the appointment of an emergency arbitrator, the Notice of Arbitration, the Answer to the Notice of Arbitration, the Request for Joinder or the Answer to the Request for Joinder (as applicable); or

(b)     in respect of a funding agreement made after the commencement of the arbitration, as soon as practicable after the funding agreement is made.

44.3     Any funded party shall disclose any changes to the information referred to in Article 44.1 that occur after the initial disclosure.

## Article 45 – Confidentiality

45.1     Unless otherwise agreed by the parties, no party or party representative may publish, disclose or communicate any information relating to:

(a)     the arbitration under the arbitration agreement; or

(b)     an award or Emergency Decision made in the arbitration.

45.2     Article 45.1 also applies to the arbitral tribunal, any emergency arbitrator, expert, witness, tribunal secretary and HKIAC.

45.3     Article 45.1 does not prevent the publication, disclosure or communication of information referred to in Article 45.1 by a party or party representative:

(a)   (i)   to protect or pursue a legal right or interest of the party; or

     (ii)   to enforce or challenge the award or Emergency Decision referred to in Article 45.1;

in legal proceedings before a court or other authority; or

(b)   to any government body, regulatory body, court or tribunal where the party is obliged by law to make the publication, disclosure or communication; or

(c)   to a professional or any other adviser of any of the parties, including any actual or potential witness or expert; or

(d)   to any party or additional party and any confirmed or appointed arbitrator for the purposes of Articles 27, 28, 29 or 30; or

(e)   to a person for the purposes of having, or seeking, third party funding of arbitration.

45.4   The deliberations of the arbitral tribunal are confidential.

45.5   HKIAC may publish any award, whether in its entirety or in the form of excerpts or a summary, only under the following conditions:

(a)   all references to the parties' names and other identifying information are deleted; and

(b)   no party objects to such publication within the time limit fixed for that purpose by HKIAC. In the case of an objection, the award shall not be published.

## Article 46 – Exclusion of Liability

46.1   None of the Council members of HKIAC nor any body or person specifically designated by it to perform the functions in these Rules, nor the Secretary-General of HKIAC or other staff members of the Secretariat of HKIAC, the arbitral tribunal, any emergency arbitrator, tribunal-appointed expert or tribunal secretary shall be liable for any act or omission in connection with an arbitration conducted under these Rules, save where such act was done or omitted to be done dishonestly.

46.2   After the award has been made and the possibilities of correction, interpretation and additional awards referred to in Articles 38 to 40 have lapsed or been exhausted, neither HKIAC nor the arbitral tribunal, any emergency arbitrator, tribunal-appointed expert or tribunal secretary shall be under an obligation to make statements to any person about any matter concerning the arbitration, nor shall a party seek to make any of these persons a witness in any legal or other proceedings arising out of the arbitration.

# SCHEDULE 1
# REGISTRATION AND
# ADMINISTRATIVE FEES

**(All amounts are in Hong Kong Dollars, hereinafter "HKD")**

**Effective 1 November 2018**

## 1. Registration Fee

1.1    When submitting a Notice of Arbitration, the Claimant shall pay a Registration Fee in the amount set by HKIAC, as stated on HKIAC's website on the date the Notice of Arbitration is submitted.

1.2    If the Claimant fails to pay the Registration Fee, HKIAC shall not proceed with the arbitration subject to Article 4.6 of the Rules.

1.3    The Registration Fee is not refundable save in exceptional circumstances as determined by HKIAC in its sole discretion.

## 2. HKIAC's Administrative Fees

2.1    HKIAC's Administrative Fees shall be determined in accordance with the following table:

| SUM IN DISPUTE (in HKD) | | ADMINISTRATIVE FEES (in HKD) |
|---|---|---|
| Up to | 400,000 | 19,800 |
| From | 400,001 | 19,800 + 1.300% of amt. |
| to | 800,000 | over 400,000 |
| From | 800,001 | 25,000 + 1.000% of amt. |
| to | 4,000,000 | over 800,000 |
| From | 4,000,001 | 57,000 + 0.545% of amt. |
| to | 8,000,000 | over 4,000,000 |
| From | 8,000,001 | 78,800 + 0.265% of amt. |
| to | 16,000,000 | over 8,000,000 |
| From | 16,000,001 | 100,000 + 0.200% of amt. |
| to | 40,000,000 | over 16,000,000 |
| From | 40,000,001 | 148,000 + 0.110% of amt. |
| to | 80,000,000 | over 40,000,000 |
| From | 80,000,001 | 192,000 + 0.071% of amt. |
| to | 240,000,000 | over 80,000,000 |
| From | 240,000,001 | 305,600 + 0.059% of amt. |
| to | 400,000,000 | over 240,000,000 |
| Over | 400,000,000 | 400,000 |

53

2.2   Claims and counterclaims are added for the determination of the amount in dispute. The same rule applies to any set-off defence or cross-claim, unless the arbitral tribunal, after consulting with the parties, concludes that such set-off defence or cross-claim will not require significant additional work.

2.3   An interest claim shall not be taken into account for the calculation of the amount in dispute, except where HKIAC determines that doing so would be appropriate.

2.4   Where there are alternative claims, only the principal claim shall be taken into account for the calculation of the amount in dispute, except where HKIAC considers it appropriate to take into account the amount of any alternative claim.

2.5   Pursuant to Articles 18.2, 27.15, 28.10 or 30.2 or where in the opinion of HKIAC there are exceptional circumstances, HKIAC may depart from the table in paragraph 2.1 when calculating its Administrative Fees.

2.6   If the amount in dispute is not quantified, HKIAC's Administrative Fees shall be fixed by HKIAC, taking into account the circumstances of the case.

2.7   Amounts in currencies other than Hong Kong Dollars shall be converted into Hong Kong Dollars at the rate of exchange published by HSBC Bank on the date the Notice of Arbitration is submitted or at the time any new claim, set-off defence, cross-claim or amendment to a claim or defence is filed.

2.8   The parties are jointly and severally liable for HKIAC's Administrative Fees.

# SCHEDULE 2
# ARBITRAL TRIBUNAL'S FEES,EXPENSES, TERMS AND CONDITIONS

**Based on Hourly Rates**

**Effective 1 November 2018**

## 1. Scope of Application and Interpretation

1.1    Subject to any variations agreed by all parties or changes HKIAC considers appropriate, this Schedule shall apply to arbitrations in which the arbitral tribunal's fees and expenses are to be determined in accordance with Article 10.1(a) of the Rules and to the appointment of an emergency arbitrator under Schedule 4.

1.2    HKIAC may interpret the terms of this Schedule as well as the scope of application of the Schedule as it considers appropriate.

1.3    This Schedule is supplemented by the Practice Note on Costs of Arbitration Based on Schedule 2 and Hourly Rates in force on the date the Notice of Arbitration is submitted.

## 2. Payments to Arbitral Tribunal

2.1    Payments to the arbitral tribunal shall generally be made by HKIAC from funds deposited by the parties in accordance with Article 41 of the Rules. HKIAC may direct the parties, in such proportions as it considers appropriate, to make one or more interim or final payments to the arbitral tribunal.

2.2    If insufficient funds are held at the time a payment is required, the invoice for the payment may be submitted to the parties for settlement by them direct.

2.3    Payments to the arbitral tribunal shall be made in Hong Kong Dollars unless the tribunal directs otherwise.

2.4    The parties are jointly and severally liable for the fees and expenses of an arbitrator, irrespective of which party appointed the arbitrator.

### 3. Arbitral Tribunal's Expenses

3.1     The arbitral tribunal shall be reimbursed for its reasonable expenses in accordance with the Practice Note referred to at paragraph 1.3.

3.2     The expenses of the arbitral tribunal shall not be included in the arbitral tribunal's fees charged by reference to hourly rates under paragraph 9 of this Schedule.

## 4. Administrative Expenses

The parties shall be responsible for expenses reasonably incurred and relating to administrative and support services engaged for the purposes of the arbitration, including, but not limited to, the cost of hearing rooms, interpreters and transcription services. Such expenses may be paid directly from the deposits referred to in Article 41 of the Rules as and when they are incurred.

## 5. Fees and Expenses Payable to Replaced Arbitrators

Where an arbitrator is replaced pursuant to Articles 12, 27, 28 or 42.3 of the Rules, HKIAC shall decide the amount of fees and expenses to be paid for the replaced arbitrator's services (if any), having taken into account the circumstances of the case, including, but not limited to, the applicable method for determining the arbitrator's fees, work done by the arbitrator in connection with the arbitration, and the complexity of the subject-matter.

## 6. Fees and Expenses of Tribunal Secretary

Where the arbitral tribunal appoints a secretary in accordance with Article 13.4 of the Rules, such secretary shall be remunerated at a rate which shall not exceed the rate set by HKIAC, as stated on HKIAC's website on the date the Notice of Arbitration is submitted. The secretary's fees and expenses shall be charged separately. The arbitral tribunal shall determine the total fees and expenses of a secretary under Article 34.1(c) of the Rules.

## 7. Lien on Award

HKIAC and the arbitral tribunal shall have a lien over any awards issued by the arbitral tribunal to secure the payment of their outstanding fees and expenses, and may accordingly refuse to communicate any such awards to the parties until all such fees and expenses have been paid in full, whether jointly or by one or other of the parties.

## 8. Governing Law

The terms of this Schedule and any non-contractual obligation arising out of or in connection with them shall be governed by and construed in accordance with Hong Kong law.

## 9. Arbitral Tribunal's Fee Rates

9.1 An arbitrator shall be remunerated at an hourly rate for all work reasonably carried out in connection with the arbitration.

9.2 Subject to paragraphs 9.3 to 9.5 of this Schedule, the rate referred to in paragraph 9.1 is to be agreed in accordance with Article 10.2 of the Rules. An arbitrator shall agree upon fee rates in accordance with paragraph 9 of this Schedule prior to his or her confirmation or appointment by HKIAC.

9.3 An arbitrator's agreed hourly rate shall not exceed a rate set by HKIAC, as stated on HKIAC's website on the date the Notice of Arbitration is submitted.

9.4 Subject to paragraph 9.3, an arbitrator may review and increase his or her agreed hourly rate by no more than 10% on each anniversary of his or her confirmation or appointment.

9.5 Higher rates may be charged if expressly agreed by all parties to the arbitration or if HKIAC so determines in exceptional circumstances.

9.6 If an arbitrator is required to travel for the purposes of fulfilling obligations as an arbitrator, the arbitrator shall be entitled to charge and to be reimbursed for:

   (a) time spent travelling but not working at a rate of 50% of the agreed hourly rate; or

   (b) time spent working whilst travelling at the full agreed hourly rate.

## 10. Cancellation Fees

10.1   All hearings booked shall be paid for, subject to the following conditions:

(a)   if a booking is cancelled at the request of the arbitral tribunal, it will not be charged;

(b)   if a booking is cancelled at the request of any party less than 30 days before the first day booked it shall be paid at a daily rate of 75% of eight times the applicable hourly rate;

(c)   if a booking is cancelled at the request of any party less than 60 days but more than 30 days before the first day booked it shall be paid at a daily rate of 50% of eight times the applicable hourly rate;

(d)   if a booking is cancelled at the request of any party more than 60 days before the first day booked it will not be charged; and

(e)   in all cases referred to above, if an arbitrator has spent time on the case during the day(s) booked, he or she shall be paid based on (i) the hourly rate pursuant to paragraph 9; or (ii) the cancellation fee pursuant to paragraph 10.1(b) to (d), whichever is higher.

10.2   Where hearing days are cancelled or postponed other than by agreement of all parties or request of the arbitral tribunal, this may be taken into account when considering any subsequent apportionment of costs.

# SCHEDULE 3
# ARBITRAL TRIBUNAL'S FEES,EXPENSES, TERMS AND CONDITIONS

## Based on Sum in Dispute

## (All amounts are in Hong Kong Dollars, hereinafter "HKD")

## Effective 1 November 2018

## 1. Scope of Application and Interpretation

1.1   Subject to paragraph 1.2 below and any variations agreed by all parties or changes HKIAC considers appropriate, this Schedule applies to arbitrations in which the arbitral tribunal's fees and expenses are to be determined in accordance with Article 10.1(b) of the Rules.

1.2   This Schedule shall not apply to the appointment of an emergency arbitrator under Schedule 4.

1.3   HKIAC may interpret the terms of this Schedule as well as the scope of application of the Schedule as it considers appropriate.

1.4   This Schedule is supplemented by the Practice Note on Costs of Arbitration Based on Schedule 3 and the Sum in Dispute in force on the date the Notice of Arbitration is submitted.

## 2. Payments to Arbitral Tribunal

2.1   Payments to the arbitral tribunal shall generally be made by HKIAC from funds deposited by the parties in accordance with Article 41 of the Rules. HKIAC may direct the parties, in such proportions as it considers appropriate, to make one or more interim or final payments to the arbitral tribunal.

2.2   If insufficient funds are held at the time a payment is required, the invoice for the payment may be submitted to the parties for settlement by them direct.

2.3   Payments to the arbitral tribunal shall be made in Hong Kong Dollars unless the tribunal directs otherwise.

59

2.4    The parties are jointly and severally liable for the fees and expenses of an arbitrator, irrespective of which party appointed the arbitrator.

## 3. Arbitral Tribunal's Expenses

3.1    The arbitral tribunal shall be reimbursed for its reasonable expenses in accordance with the Practice Note referred to at paragraph 1.4.

3.2    The expenses of the arbitral tribunal shall not be included in the determination of fees charged in accordance with paragraph 6 of this Schedule.

## 4. Administrative Expenses

The parties shall be responsible for expenses reasonably incurred and relating to administrative and support services engaged for the purposes of the arbitration, including, but not limited to, the cost of hearing rooms, interpreters and transcription services. Such expenses may be paid directly from the deposits referred to in Article 41 of the Rules as and when they are incurred.

## 5. Fees and Expenses Payable to Replaced Arbitrators

Where an arbitrator is replaced pursuant to Articles 12, 27,  28 or 42.3 of the Rules, HKIAC shall decide the amount of fees and expenses to be paid for the replaced arbitrator's services (if any), having taken into account the circumstances of the case, including, but not limited to, the applicable method for determining the arbitrator's fees, work done by the arbitrator in connection with the arbitration, and the complexity of the subject-matter.

## 6. Determination of Arbitral Tribunal's Fees

6.1    The arbitral tribunal's fees shall be calculated in accordance with the following table. The fees calculated in accordance with the table represent the maximum amount payable to one arbitrator.

| SUM IN DISPUTE (in HKD) | | ARBITRATOR'S FEES (in HKD) |
|------|------|------|
| Up to | 400,000 | 11.000% of amount in dispute |
| From to | 400,001 800,000 | 44,000 + 10.000% of amt. over 400,000 |
| From to | 800,001 4,000,000 | 84,000 + 5.300% of amt. over 800,000 |
| From to | 4,000,001 8,000,000 | 253,600 + 3.780% of amt. over 4,000,000 |
| From to | 8,000,001 16,000,000 | 404,800 + 1.730% of amt. over 8,000,000 |
| From to | 16,000,001 40,000,000 | 543,200 + 1.060% of amt. over 16,000,000 |
| From to | 40,000,001 80,000,000 | 797,600 +0.440% of amt. over 40,000,000 |
| From to | 80,000,001 240,000,000 | 973,600 + 0.250% of amt. over 80,000,000 |
| From to | 240,000,001 400,000,000 | 1,373,600 + 0.228% of amt. over 240,000,000 |
| From to | 400,000,001 600,000,000 | 1,738,400 + 0.101% of amt. over 400,000,000 |
| From to | 600,000,001 800,000,000 | 1,940,000 + 0.067% of amt. over 600,000,000 |
| From to | 800,000,001 4,000,000,000 | 2,074,400 + 0.044% of amt. over 800,000,000 |
| Over | 4,000,000,000 | 3,482,400 + 0.025% of amt. over 4,000,000,000 |
| | | Maximum of 12,574,000 |

---

6.2     The arbitral tribunal's fees shall cover the activities of an arbitrator from the time of his or her confirmation or appointment until the last award.

6.3     Claims and counterclaims are added for the determination of the amount in dispute. The same rule applies to any set-off defence or cross-claim, unless the arbitral tribunal, after consulting with the parties, concludes that such set-off defence or cross-claim will not require significant additional work.

6.4     An interest claim shall not be taken into account for the calculation of the amount in dispute, except where HKIAC determines that doing so would be appropriate.

6.5     Where there are alternative claims, only the principal claim shall be taken into account for the calculation of the amount in dispute, except where HKIAC considers it appropriate to take into account the amount of any alternative claim.

6.6     Pursuant to Articles 10.3(c), 18.2, 27.15, 28.10 or 30.2 or where in the opinion of HKIAC there are exceptional circumstances, the arbitral tribunal's fees may depart from the amounts calculated in accordance with paragraph 6.1.

6.7     If the amount in dispute is not quantified, the arbitral tribunal's fees shall be fixed by HKIAC, taking into account the circumstances of the case.

## 7. Lien on Award

HKIAC and the arbitral tribunal shall have a lien over any awards issued by the arbitral tribunal to secure the payment of their outstanding fees and expenses, and may accordingly refuse to communicate any such awards to the parties until all such fees and expenses have been paid in full, whether jointly or by one or other of the parties.

## 8. Governing Law

The terms of this Schedule and any non-contractual obligation arising out of or in connection with it shall be governed by and construed in accordance with Hong Kong law.

## SCHEDULE 4
## EMERGENCY ARBITRATOR PROCEDURES

### Effective 1 November 2018

1.  A party requiring Emergency Relief may submit an application (the "Application") for the appointment of an emergency arbitrator to HKIAC (a) before, (b) concurrent with, or (c) following the filing of a Notice of Arbitration, but prior to the constitution of the arbitral tribunal.

2.  The Application shall be submitted in accordance with any of the means specified in Articles 3.1 and 3.2 of the Rules. The Application shall include the following information:

    (a)  the names and (in so far as known) the addresses, facsimile numbers and/or email addresses of the parties to the Application and of their representatives;

    (b)  a description of the circumstances giving rise to the Application and of the underlying dispute referred to arbitration;

    (c)  a statement of the Emergency Relief sought;

    (d)  the reasons why the applicant needs the Emergency Relief on an urgent basis that cannot await the constitution of an arbitral tribunal;

    (e)  the reasons why the applicant is entitled to such Emergency Relief;

    (f)  any relevant agreement and, in particular, the arbitration agreement;

    (g)  comments on the language, the seat of the Emergency Relief proceedings, and the applicable law;

    (h)  confirmation of payment of the amount referred to in paragraph 5 of this Schedule (the "Application Deposit");

    (i)  the existence of any funding agreement and the identity of any third party funder pursuant to Article 44; and

(j)   confirmation that copies of the Application and any supporting materials included with it have been or are being communicated simultaneously to all other parties to the arbitration by one or more means of service to be identified in such confirmation.

3.   The Application may contain such other documents or information as the applicant considers appropriate or as may contribute to the efficient examination of the Application.

4.   If HKIAC determines that it should accept the Application, HKIAC shall seek to appoint an emergency arbitrator within 24 hours after receipt of both the Application and the Application Deposit.

5.   The Application Deposit is the amount set by HKIAC, as stated on HKIAC's website on the date the Application is submitted. The Application Deposit consists of HKIAC's emergency administrative fees and the emergency arbitrator's fees and expenses. The emergency arbitrator's fees shall be determined by reference to his or her hourly rate subject to the terms of Schedule 2 and shall not exceed the amount set by HKIAC, as stated on HKIAC's website on the date the Application is submitted unless the parties agree or HKIAC determines otherwise in exceptional circumstances. HKIAC may, at any time during the Emergency Relief proceedings, request additional deposits to cover any increase in the emergency arbitrator's fees or HKIAC's emergency administrative fees, taking into account, inter alia, the nature of the case and the nature and amount of work performed by the emergency arbitrator and HKIAC. If the party which submitted the Application fails to pay the additional deposits within the time limit fixed by HKIAC, the Application shall be dismissed.

6.   Once the emergency arbitrator has been appointed, HKIAC shall communicate the appointment to the parties to the Application and shall communicate the case file to the emergency arbitrator. Thereafter, the parties shall communicate with the emergency arbitrator directly, with a copy to all other parties to the Application and HKIAC. Any written communications from the emergency arbitrator to the parties shall also be copied to HKIAC.

7.  Article 11 of the Rules shall apply to the emergency arbitrator, except that the time limits set out in Articles 11.7 and 11.9 are shortened to three days.

8.  Where an emergency arbitrator dies, has been successfully challenged, has been otherwise removed, or has resigned, HKIAC shall seek to appoint a substitute emergency arbitrator within 24 hours. If an emergency arbitrator withdraws or a party agrees to terminate an emergency arbitrator's appointment under paragraph 8 of this Schedule, no acceptance of the validity of any ground referred to in Article 11.6 of the Rules shall be implied. If the emergency arbitrator is replaced, the Emergency Relief proceedings shall resume at the stage where the emergency arbitrator was replaced or ceased to perform his or her functions, unless the substitute emergency arbitrator decides otherwise.

9.  If the parties have agreed on the seat of arbitration, such seat shall be the seat of the Emergency Relief proceedings. Where the parties have not agreed on the seat of arbitration, and without prejudice to the arbitral tribunal's determination of the seat of arbitration pursuant to Article 14.1 of the Rules, the seat of the Emergency Relief proceedings shall be Hong Kong.

10. Taking into account the urgency inherent in the Emergency Relief proceedings and ensuring that each party has a reasonable opportunity to be heard on the Application, the emergency arbitrator may conduct such proceedings in such a manner as the emergency arbitrator considers appropriate. The emergency arbitrator shall have the power to rule on objections that the emergency arbitrator has no jurisdiction, including any objections with respect to the existence, validity or scope of the arbitration clause or of the separate arbitration agreement, and shall resolve any disputes over the applicability of this Schedule.

11. Articles 23.2 to 23.8 shall apply, mutatis mutandis, to any Emergency Relief granted by the emergency arbitrator.

12.     Any decision, order or award of the emergency arbitrator on the Application (the "Emergency Decision") shall be made within 14 days from the date on which HKIAC transmitted the case file to the emergency arbitrator. This time limit may be extended by agreement of the parties or, in appropriate circumstances, by HKIAC.

13.     The Emergency Decision may be made even if in the meantime the case file has been transmitted to the arbitral tribunal.

14.     Any Emergency Decision shall:

(a)     be made in writing;

(b)     state the date when it was made and reasons upon which the Emergency Decision is based, which may be in summary form (including a determination on whether the emergency arbitrator has jurisdiction to grant the Emergency Relief); and

(c)     be signed by the emergency arbitrator.

15.     Any Emergency Decision may fix and apportion the costs of the Emergency Relief proceedings, subject always to the power of the arbitral tribunal to fix and apportion finally such costs in accordance with Article 34 of the Rules. The costs of the Emergency Relief proceedings include HKIAC's emergency administrative fees, the fees and expenses of the emergency arbitrator and any tribunal secretary, and the reasonable legal and other costs incurred by the parties for the Emergency Relief proceedings.

16.     Any Emergency Decision shall have the same effect as an interim measure granted pursuant to Article 23 of the Rules and shall be binding on the parties when rendered.

17.     Any Emergency Decision ceases to be binding:

(a)     if the emergency arbitrator or the arbitral tribunal so decides;

(b)     upon the arbitral tribunal rendering a final award, unless the arbitral tribunal expressly decides otherwise;

(c)     upon the termination of the arbitration before the rendering of a final award; or

(d)   if the arbitral tribunal is not constituted within 90 days from the date of the Emergency Decision. This time limit may be extended by agreement of the parties or, in appropriate circumstances, by HKIAC.

18.   Subject to paragraph 13 of this Schedule, the emergency arbitrator shall have no further power to act once the arbitral tribunal is constituted.

19.   The emergency arbitrator may not act as arbitrator in any arbitration relating to the dispute that gave rise to the Application and in respect of which the emergency arbitrator has acted, unless otherwise agreed by the parties to the arbitration.

20.   The Emergency Arbitrator Procedure is not intended to prevent any party from seeking urgent interim or conservatory measures from a competent authority at any time.

21.   The Emergency Arbitrator Procedure shall be terminated if a Notice of Arbitration has not been submitted by the applicant to HKIAC within seven days of HKIAC's receipt of the Application, unless the emergency arbitrator extends this time limit.

22.   Where the Emergency Arbitrator Procedure is terminated without an Emergency Decision, the emergency arbitrator may fix and apportion any costs of the Emergency Relief proceedings, subject to the power of the arbitral tribunal to fix and apportion finally such costs in accordance with Article 34 of the Rules.

67

## Members of HKIAC Rules
## Revision Committee

Nils Eliasson (Chair), Matthew Gearing QC, Briana Young, Cameron Hassall, Sarah Grimmer and Joe Liu

## Acknowledgements

HKIAC expresses its gratitude and appreciation to the following individuals for their advice, comments and input in the preparation of these Rules (in alphabetical order):

Andrew Aglionby, Charles Allen, Craig Arnott, Chiann Bao, Louise Barrington, Othmane Benlafkih, Christopher Bogart, Carlotta Bruessel, Ben Bury, Eric Chan, Y.K. Chan, Alex Charter, Teresa Cheng GBS SC JP, John Choong, Peter Chow, Vincent Connor, Sapfo Constantatos, Helen Dodds, Ning Fei, David Fong, Steven Friel, Ben Hayward, Raymond Ho, Thomas Ho, Lara Hofer, Neil Kaplan CBE QC SBS, Joshua Karton, Nigel Kat SC, Yi Kang, Jun Hee Kim, Sian Knight, David Kreider, James Kwan, Brenda Kwok, Kirti Ladharam, Hermione Lam, S.K. Lee, T.Y. Lee, Haifeng Li, Lianjun Li, Song Lu, James MacKinnon, Damien McDonald, Paul Mitchard QC, Christopher Moger QC, Danny Mok, Michael Moser, Charlie Morris, Catherine Mun, James Ng, Abayomi Okubote, Robert Pé, Robin Peard, Oliver Perez, Peter Quayle, Evgeny Raschevsky, Anselmo Reyes SC, James Rogers, Kim Rooney, Dorothee Ruckteschler, Fergus Saurin, Kathryn Sanger, Kiran Sanghera, Matthew Saunders, John Scott QC, SC, Helen Shi, Lianne Sneddon, William Stone SC, Krill Strunnikov, Ronald Sum, Amelia Szeto, Karen Tan, Mohammed Talib, Xiuming Tao, Mary Thomson, Thomas Walsh, Shengchang Wang, Romesh Weeramantry, Nicolas Wiegand, Peter Wong, Samuel Wong, Terence Wong, William Wong SC, Kate Wyllie, Ing Loong Yang, Peiming Yang, Philip Yang, Albert Yeu, Bernard Yue and Rimsky Yuen GBM SC JP.



For further information relating to dispute resolution at HKIAC,
please contact:

The Secretary-General
Hong Kong International Arbitration Centre
38/F, Two Exchange Square, 8 Connaught Place, Central, Hong Kong
**Tel:** +852 2525 2381   **Fax:** +852 2524 2171
**E-mail:** adr@hkiac.org   **Webpage:** http://www.hkiac.org



# Ex. 9



# MENLO PARK POLICE DEPARTMENT

## CAD INCIDENT REPORT
### 1811120051

07/06/2023

| Location | | | | Cross Streets | | City | |
|---|---|---|---|---|---|---|---|
| BITE DANCE, 68 WILLOW RD #108 | | | | WILLOW PL/PAULSON CI | | MENLO PARK | |

| Incident Type | | | | Call Taker | | Dispatcher | |
|---|---|---|---|---|---|---|---|
| 602 - TRESPASSING | | | | BASURTO, CHRISTINE | | BASURTO, CHRISTINE | |

| Date | Priority | Primary Unit | Beat | Fire Zone | Area | Map | Source |
|---|---|---|---|---|---|---|---|
| 11/12/2018 | 2 | S9 | 2 | | 25 | F7 | W |

| Caller Name | | | Caller Phone |
|---|---|---|---|
| | Caller Address | | |
| | Private Security | | |

| Dispositions | Weapon | Alm Level | Case Number |
|---|---|---|---|
| Warning Issued, Advised | | | |

| Vehicles | Associated Incidents |
|---|---|
| | |

| Incident Times | | Special Circumstances | | | | |
|---|---|---|---|---|---|---|
| Received | 11:42:39 | | | | | |
| Created | 11:46:19 | Persons | Sex | DOB | Race | DL |
| Dispatched | 11:46:58 | | | | | |
| En Route | | | | | | |
| On Scene | 11:48:58 | | | | | |
| Closed | 12:15:05 | | | | | |
| Revd-Closed | 32:26 | | | | | |

| Unit Times | Officers | Dispatched | Enroute | On Scene | Clear | Disp-On Scene | Enrt-On Scene | On Scene-Clear | Disp-Clear |
|---|---|---|---|---|---|---|---|---|---|
| B24 | Grieves, Michael | 11:46:58 | | 11:50:10 | 12:13:27 | 03:12 | N/A | 23:17 | 26:29 |
| S8 | Weber, Dennis | 11:47:09 | | | 12:13:34 | N/A | N/A | N/A | 26:25 |
| S9 | Cooley, Jeffrey | 11:47:26 | | 11:48:58 | 12:15:05 | 01:32 | N/A | 26:07 | 27:39 |

**Incident Comments**
RP advised having issues with past employee who is on site right now. Susp    refuses to leave from the office,
not verbally harrasing just should not be on site, rp is private security, third party info
Cellular E911 Call:
Lat:37.452296 Lon:-122.16614
Service Class: WPH2

| TIME | # | EVENT | BY |
|---|---|---|---|
| 11:46:19 | 1 | Incident initiated at Bite Dance, 68 Willow Rd #108, Menlo Park | C BASURTO |
| 11:46:58 | 2 | B24 DISP. Bite Dance, 68 Willow Rd #108, Menlo Park | C BASURTO |
| 11:47:09 | 3 | S8 DISP. Bite Dance, 68 Willow Rd #108, Menlo Park | C BASURTO |
| 11:47:26 | 4 | S9 DISP. Bite Dance, 68 Willow Rd #108, Menlo Park | C BASURTO |
| 11:48:58 | 5 | S9 10-97. Bite Dance, 68 Willow Rd #108, Menlo Park | J COOLEY |
| 11:50:10 | 6 | B24 10-97. Bite Dance, 68 Willow Rd #108, Menlo Park | M GRIEVES |
| 11:51:12 | 7 | S9 making contact | C BASURTO |
| 11:54:39 | 8 | B24 CODE4. | C BASURTO |
| 12:12:56 | 9 | S9 Subj was escorted off premesis. | J COOLEY |
| 12:13:27 | 10 | B24 10-8. Disposition: AD | M GRIEVES |
| 12:13:27 | 11 | B24  subject advised of 602 from the property | M GRIEVES |
| 12:13:34 | 12 | S8 10-8. Freed | C BASURTO |
| 12:14:07 | 13 | S9 Subject    was admonished and his work badge was confiscated. | J COOLEY |
| 12:15:05 | 14 | S9 10-8. Disposition: WA | J COOLEY |
| 12:15:05 | 15 | S9 10-8. | J COOLEY |
| 12:15:05 | 16 | S9 Closed - Disposition WA | J COOLEY |

Menlo Park Police Department
CONTROLLED DOCUMENT
DO NOT DUPLICATE
DATED 07/06/23 BY A Criado

*CONTROLLED DOCUMENT - MPPD*

# Ex. 10

Arasto Farsad, Esq. (SBN 273118)
Nancy Weng, Esq. (SBN 251215)
**FARSAD LAW OFFICE, P.C.**
1625 The Alameda, Suite 525
San Jose, CA 95126
Tel: (408) 641–9966
Fax: (408) 866–7334
Email Addresses: farsadlaw1@gmail.com
nancy@farsadlaw.com

### UNITED STATES BANKRUPTCY COURT

### NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>Y. ROGER YU,<br><br>                               Debtor. | Case No.  23-50023 MEH<br>Chapter 7<br><br>**DECLARATION OF ROGER YU IN SUPPORT OF OPPOSITION TO MOTION FOR RELIEF FROM STAY**<br><br>Date: February 16, 2023<br>Time: 2:30 p.m.<br>Place: Either in person at 280 S. 1st St., Courtroom 11, San Jose, CA 95113 OR by Tele / Video Conference<br><br>**Judge: Honorable M. Elaine Hammond** |

I, Roger Yu, am the Debtor in the instant case. I have personal knowledge of the information contained herein and, if called upon to testify, could and would do so competently. I hereby declare as follows:

1.  I was heavily invested in Crypto currency during its rise in 2020.  I took out second mortgages and further leveraged my bets with large loans from other investors in order to buy / trade Crypto.  My profits were up significantly and it all seemed to be going very well.  However, by the first half of 2022, the crypto market crashed and I lost everything. As a result, I am now clinically depressed.  I am still working but am suffering from serious depression and panic attacks due to the stress.

DECLARATION OF ROGER YU IN SUPPORT                                Case No. 23-50023 MEH
OF OPPOSITION TO MOTION FOR RELIEF
FROM STAY

2.    I took out four hard money loans as second mortgages on four different properties with the Movant, Douglas Sykes.  Douglas Sykes is an aggressive, hard money lender.  Douglas Sykes moved to foreclose upon one property, 115 College Avenue, Mountain View, CA 94040 ("residence") as the secondary lienholder.  This is my home.

3.    As for Douglas Sykes' note on the Property, I made timely payments from its inception in December 2020 to March 2022. Douglas Sykes claims in his Motion for Relief that no payments were ever made. This is a lie.

4.    The note matured on December 1, 2022, and Douglas Sykes started foreclosure proceedings by recording an official notice of default ("NOD") in June of 2022. A foreclosure sale was then initially set in October, 2022.

5.    Since that time, I have been desperately trying to find solutions to stop the foreclosure having never been in this precarious financial situation before.  This is my first bankruptcy case. This case was initially filed in Pro Per on January 11, 2023 and the instant counsel substituted into the case on January 24, 2023.

6.    I am the 50% owner of Property.  The other 50% of the Property is owned by Ben Yu, my relative who also lives with me at the Property.

7.    As stated above, I am the borrower on the three other properties in default with Douglas Sykes but not on the titles. Those properties are: 1047 Cherry St., San Carlos, CA 94070 ("Cherry"); 36500 Alder Ct., Fremont, CA 94536 ("Alder"); and 37591 3rd St., Fremont, CA 94536 ("3rd St.").[1]

8.    **In 2017**, I had transferred title to these properties to separate trusts whereby I am not the settlor or the beneficiary of the trusts.

9.    Douglas Sykes holds a second deed of trust on the Property.

---

[1].    All of these properties are being dealt with in their own Chapter 13 cases. The subject case is only dealing with the Property -- 115 College Avenue in Mountain View.

DECLARATION OF ROGER YU IN SUPPORT     -2-     Case No. 22-50907 MEH
OF OPPOSITION TO MOTION FOR RELIEF
FROM STAY

10. Douglas Sykes also holds a second deed of trust on the Cherry, Alder and 3rd St. properties. All of the loans from Douglas Sykes were taken out around the same time and all of the money resulting from those loans was lost in the same manner.

11. As to my residence, the current liens and arrears are as follows:

    a.   Shellpoint - Mortgage Principal owed: $464,161.00 with $58,621.97 in arrears;

    b.   Douglas Sykes - $285,000 principal borrowed at 8.5% interest (exact amount owed is in dispute).

12. I made timely, monthly payments of $2,018.75 to Douglas Sykes as called for under his note every month from December 2021 to March 2022.

13. However, Douglas Sykes is attempting to foreclose for the wrong amount owed, as stated in my Opposition.

14. As stated above, I went into a deep depression after losing all of my own and my investors' monies. This money included the Movant's loans. When my residence was hit with the Notice of Trustee's Sale ("NTS") in October of 2022, Ben Yu, my relative, who lived (and still lives with me at the Property), proceeded to file a lawsuit to stop the foreclosure / attempted foreclosure of the Property because I did not have the mental capacity to deal with it at the time. Ben Yu was 50% owner and so he had standing to do so.

15. This case is identified as Santa Clara Superior Court Case number 22CV404291 and is titled Ben Yu v. Entra Default Solutions, LLC. (Entra being the foreclosure trustee.) It was filed on October 10, 2022.  Ben Yu (in pro per)'s  complaint and TRO application was so deficient, it was denied based on lack of proof of service and not enough allegations to succeed on the merits. Further, Ben Yu sued the wrong party - foreclosure trustee as the defendant and not Douglas Sykes, the foreclosing party.

16. Ben Yu begged me to take proactive steps and help stop the foreclosure and save our home -- since Ben Yu had very little knowledge of the loan and the events surrounding it.

17. By the time I got involved, Ben Yu had already filed the state court case and two bankruptcies which were both dismissed on procedural grounds (Case Nos. 22-50976 SLJ and 22-51110 MEH).

DECLARATION OF ROGER YU IN SUPPORT OF OPPOSITION TO MOTION FOR RELIEF FROM STAY

-3-

Case No. 22-50907 MEH

18. I then and filed my first state court lawsuit on January 10, 2023 under case number 23CV409727, in Santa Clara Superior Court, and of course, in Pro Per. The complaint alleged violations of California Civil Code section 1671 and Unfair Business Practices centered on the charging of a very high default interest rate at 13.5%. This time, the correct defendant, Movant Douglas Sykes was sued. However, once again, without legal counsel, the TRO to stop the foreclosure in this case was denied based on the lack of service and adherence to local Ex Parte rules.

19. I then filed the instant bankruptcy to stay the foreclosure of my home.

20. I need my home for reorganization I can continue living and working under shelter (and in Mountain View / where my business has been and where all of his contacts are) so I can fund a soon to be proposed plan of reorganization. Although the property is red-tagged, dilapidated and on a very small lot, the location is ideal for my business in IT.

21. I continue to work and can fund the plan my counsel has proposed through my income.

Executed on <u>February 15, 2023,</u> at <u>San Jose,</u> California.

<u>/s/ Roger Yu</u>
ROGER YU
Debtor herein

DECLARATION OF ROGER YU IN SUPPORT
OF OPPOSITION TO MOTION FOR RELIEF
FROM STAY

-4-

Case No. 22-50907 MEH

13.5%. This time, the correct defendant, Movant Douglas Sykes was sued. However, once again, without legal counsel, the TRO to stop the foreclosure in this case was denied based on the lack of service and adherence to local Ex Parte rules.

19. I then filed the instant bankruptcy to stay the foreclosure of my home.

20. I need my home for reorganization I can continue living and working under shelter (and in Mountain View / where my business has been and where all of his contacts are) so I can fund a soon to be proposed plan of reorganization. Although the property is red-tagged, dilapidated and on a very small lot, the location is ideal for my business in IT.

21. I continue to work and can fund the plan my counsel has proposed through my income.

Executed on February 15, 2023, at Mountain View, California.

ROGER YU
Debtor in possession