1  CHARLES THOMPSON, State Bar No. 139841
    thompsoncha@gtlaw.com
2  DAVID BLOCH, State Bar No. 184530
    guzmanan@gtlaw.com
3  MELISSA KENDRA, State Bar No. 291905
    melissa.kendra@gtlaw.com
4  ANTHONY E. GUZMAN II, State Bar No. 311580
    guzmanan@gtlaw.com
5  GREENBERG TRAURIG, LLP
6  101 Second Street, Suite 2200
   San Francisco, California 94105
7  Telephone: 415.655.1300
   Facsimile: 415.707.2010
8

9  Attorneys for Defendant
   BYTEDANCE INC.
10

11              THE UNITED STATES DISTRICT COURT

12           FOR THE NORTHERN DISTRICT OF CALIFORNIA

13

14  YINTAO YU, an individual,              Case No.  4:23-cv-04910-SI

15        Plaintiff                        **DECLARATION OF JINMEI XIAO IN
                                           SUPPORT OF MOTION TO COMPEL
16        v.                               ARBITRATION**

17  BYTEDANCE, INC., a Delaware            [Originally  San  Francisco  Superior  Court
    Corporation; SHUYI (SELENE) GAO, an    No. CGC-23-608845]
18  individual,
                                           State Action filed:  September 5, 2023
19        Defendants.                      Removal Date:        September 25, 2023
                                           Trial Date:          None
20

21

22

23

24

25

26

27

28

**DECLARATION OF JINMEI XIAO IN SUPPORT OF MOTION TO COMPEL ARBITRATION**
ACTIVE 690573911v3

I, JINMEI XIAO, declare the following:

1.      I am over 18-years-old, competent to testify on the matters set forth herein, and would so testify if called to do so. The statements herein are based upon my own personal knowledge.

2.      I am an employee of ByteDance Inc. ("BDI") and have been since May 7, 2012.

3.      In 2017 and 2018, I was the Director of Human Resources for BDI. In this role, I oversaw the department that was and is responsible for preparing, presenting, collecting, storing, and maintaining onboarding documents and personnel records.  As such, I became familiar with and had access to BDI's business records, such as personnel files and employees' employment information and records (including, title, duties, dates of employment, assignment dates, wage rates and increases, performance evaluations, disciplinary actions taken and onboarding and termination  documentation) regularly created at or near the time of the relevant events as part of BDI's usual practices and maintained in the ordinary course of its business. My team regularly created, maintained, and referenced such business records and information and I have found these record-keeping practices to be accurate and trustworthy.

4.      In 2017, I was personally involved in the negotiation of key terms for several Yintao (Roger) Yu's onboarding agreements. I communicated with Yu directly in negotiating many aspects of his original offer of employment, which included, among other things, an award of 220,000 stock options, an agreement to acquire certain intellectual property belonging to Yu's own company for $600,000, and his agreement to maintain confidentiality. I personally signed this offer letter on behalf of BDI. A true and correct copy of this signed offer is attached hereto as **Exhibit 1**.

5.      Yu and I also discussed entering into a supplemental Undertaking Agreement that would require him to pay back $100,000 to BDI in the event Yu either voluntarily resigned or was terminated for cause within two years. A true and correct copy of a WeChat message between Yu and I discussing this agreement is attached hereto as **Exhibit 2**. A true and correct copy of an August 22, 2017 email chain in which BDI sent Yu the draft of this Undertaking Agreement is

**DECLARATION OF JINMEI XIAO IN SUPPORT OF MOTION TO COMPEL ARBITRATION**

attached hereto as **Exhibit 3**. A true and correct copy of the draft Undertaking Agreement that was attached to the August 22, 2017 email is attached hereto as **Exhibit 4**.

6.    At no time was I ever made aware of any request by Yu or anyone else to modify any of Yu's agreements to remove or otherwise alter the arbitration clauses already included therein. Had I received such a request, I would have denied it.

*        *        *

Pursuant to the laws of the State of California, I declare under penalty of perjury that the foregoing is true and correct. Executed this 5th day of October 2023, at Beijing, China.

*/s/ Jinmei Xiao*
Jinmei Xiao

3

**DECLARATION OF JINMEI XIAO IN SUPPORT OF MOTION TO COMPEL ARBITRATION**

1
2

## <u>ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(I)(3)</u>

3       I, Charles Thompson, hereby attest, pursuant to N.D. Cal. Civil Local Rule 5-1, that the

4   concurrence to the filing of this document has been obtained from Jinmei Xiao, signatory hereto.

5

6   Dated: October 5, 2023                    GREENBERG TRAURIG, LLP

7                                             By: _/s/ Charles Thompson_____
                                              Charles Thompson

8
                                              Attorneys for Defendant
9                                             BYTEDANCE INC.

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

4

**DECLARATION OF JINMEI XIAO IN SUPPORT OF MOTION TO COMPEL ARBITRATION**

# Ex. 1

# Bytedance Inc.

Room 137, 68 Willow Road
Menlo Park, CA 94025

June 7, 2017

Dear Mr. Roger Yu,

Thank you for your interest in Bytedance! Bytedance (the "Company") is delighted to offer you a full-time position. We believe your expertise skills, and experience will be among our most valuable assets. This offer letter (the "Agreement") confirms the terms of your employment with the Company, including the terms as follows:

1.  **Salary**
    a.  Your base salary will be $13,333.33 USD per month, payable in accordance with the Company's standard payroll practice, subject to applicable United States government required deductions and withholding taxes. Because your position is the exempt employee, your duties may necessitate working overtime for no additional compensation from the Company or its subsidiaries. Your performance and salary will be reviewed periodically by the management team.

2.  **Benefits**
    a.  As an employee of the Company, you will be offered a number of Company-paid benefits in the United States including the following:
        i.   Medical insurance
        ii.  Dental Insurance
        iii. Vision Insurance
        iv.  401K
    b.  When the insurances and 401K can be enrolled in and activated, the Company will cover the employee part of your medical, dental, and vision insurance premiums. Other parts of the medical, dental, and vision insurance premiums will be covered by yourself, depending on the insurance plan.
    c.  Based on your attendance, $35 for three meals per working day will be offered. However, if you take any sick leave or vacation, it will not be applied for those specific days.
    d.  If you are to travel for business, full travel insurance can be reimbursed by the Company.
    e.  All the benefits are at the sole discretion of the Company, and can be adjusted anytime based on the performance of the Company.

3.  **Vacation, Holidays, and Sick Days**

Bates000015

a. Vacation / PTO: You will be offered a total of 10 paid time off days per yearly anniversary from your Start Date. Each vacation day will accumulate at a rate of 1 day per month. You can aggregate up to a maximum of 10 vacation days over time.

b. Holidays: The Company, for its US employees allows employees to have the following statutory holidays as paid holiday vacation.

    i. American Holidays

        1. New Year's Day, one day off, on the 1st of January

        2. Martin Luther King Jr. Day, one day off, on the third Monday in January

        3. President's Day, one day off, on the third Monday in February

        4. Memorial Day, one day off, on the last Monday in May

        5. Independence Day, one day off, on the 4th of July

        6. Labor Day, one day off, on the first Monday in September

        7. Columbus Day, one day off, on the second Monday in October

        8. Thanksgiving Day, one day off, on the fourth Thursday in November

        9. Christmas Day, one day off, on the 25th of December

c. Sick Days: You will receive a total of 4 sick days per half year, immediately available upon the commencement of your employment.

d. All the Vacation, Holidays, and Sick Days are at the sole discretion of the Company, and can be adjusted anytime based on the performance of the Company.

4. **Travel**

a. Your role at the Company will require that you travel for work-related duties and business. Your travel expenses which include lodging and transportation will be reimbursed by providing the related bills and invoices.

5. **Bonus Target**

a. You are eligible to participate in the Company bonus target plan. Your annual bonus target will range from 0-6 months of your monthly salary. The exact bonus amount is at the sole discretion of the Company, based on your performance and the performance of the Company. The components of your bonus are subject to periodic review. The annual performance bonus evaluation and payment will occur at every April regardless of your Start Date.

6. **Payment for acquisition**

a. Amount of $ 600,000 USD will be paid within 30 days since the offer was signed.

7. **Stock Option**

a. Upon approval by our Board of Directors, you will be granted 220,000 shares of Bytedance ordinary share option. The stock option offered will vest in the following schedule starting from your Start Date, and is only offered upon the condition of your continued employment with the Company.

    i. 15% on the one-year anniversary date of your Start Date, and

    ii. 25% on the second year anniversary of your Start Date, and

    iii. 25% on the third year anniversary of your Start Date, and

    iv. 35% on the fourth year anniversary date of your Start Date.

Bates000016

The exercise price of the stock will be $0.02 per share, further details on the stock option will be available to you in two months since your start date. Please be aware that this program and subsequent processes could be changed at any time, at the discretion of the Board.

**8. Background Check**

    a.  This offer is contingent on the successful completion of a background check.

**9. At-Will Employment**

    a . If you accept our offer of employment, you will be an employee-at-will, meaning that either you or the Company may terminate our relationship and this Agreement at any time for any reason, with or without cause.

**10. Confidential Information**

    a.  During your employment, you may have access to confidential, proprietary, and/or trade secret information belonging to the Company. You agree that you will keep all of this information strictly confidential and refrain from using it for your own purposes or from disclosing it to anyone outside the Company.

**11. Return of Property and Documents**

    a.  You agree that, upon conclusion of the employment, you will immediately return to the Company all of its property, equipment, and documents, including electronically stored information.

**12. Employment Eligibility**

    a.  To comply with immigration laws, you must provide the Company with documentation of your identity and eligibility for employment in the United States; please bring such documentation on your first day of hire. In addition, if you are working in the United States pursuant to a US visa status, please provide new or renewed evidence of your eligibility for employment before the expiration of your initial work authorization.

In addition, by accepting this offer, you agree that you will follow all of the Company's policies that apply to full-time employees.

This letter constitutes the complete understanding between you and the Company regarding your employment and supersedes all prior discussions or agreements. This letter may only be modified by a written agreement signed by both of us.

Bates000017

This offer will remain open for **3 (three)** business days following your receipt of this letter. To indicate your acceptance of Bytedance's offer, you will sign and date this Agreement. The offer will not be effective until the Company countersigns the Agreement.

Roger, we are very excited about the possibility of you joining us. Please let us know if we can answer any questions for you about any of the matters outlined in this official offer letter.

Sincerely,

Jinmei Xiao
Director of Human Resources
Bytedance Inc.

06/07/2017

I, Roger Yu , accept employment with Bytedance Inc. under the terms set forth in this letter.

06/07/2017

Signature
Yintao Roger Yu

Date
(mm/dd/yyyy)

Bates000018

# Ex. 2



City of New York, State of New York, County of New York

I, Dan McCourt, hereby certify that the document "**08.10.2017 WeChat Message bet. Jinmei and Yu(690529543.1)**" is, to the best of my knowledge and belief, a true and accurate translation from Chinese into English.

_____
Dan McCourt

Sworn to before me this
September 27, 2023

_____
Signature, Notary Public



_____
Stamp, Notary Public

LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS
1250 BROADWAY, 32ND FLOOR, NEW YORK, NY 10001  |  T 212.689.5555  |  F 212.689.1059  |  WWW.TRANSPERFECT.COM
OFFICES IN 90 CITIES WORLDWIDE

Xiao Jinmei

 Hi Roger, I discussed with Hua Wei, and he agreed that the 600,000 of funds cannot be bound, provided that you provide proof of the whereabouts of the money, such as payment records for investors' exit, and employee severance expenses (the reason is that these expenses have already been incurred and have nothing to do with your own income). Your personal income still needs to be bound, what do you think?

OK 

Then can it be taken care of before I join the company? 

 We can sign a supplementary agreement. If you agree with the aforementioned situation, then we should be able to do it.

OK 

Can this matter be taken care of before I join the company? 

 Now I'm going to contact the legal affairs [department] for coordination. Please wait a moment.

肖金梅



hi Roger 我和华巍商量了，他同意可以不对60万资金做规定，前提是你提供这笔钱的去向证明，比如说继续投资方退出的打款记录，员工的遣散费用（原因是这部分费用已经发生和你本人收益无关）。你个人的所得部分是需要做规定的，你觉得如何？


好吧

那可以在入职前处理一下吗？

我们签一个补充协议，你同意上述情况，应该就可以操作了

可以

能在入职前处理单这个事情吗？

我现在去找法务协调，你稍等一会



# Ex. 3



**TRANSPERFECT**

City of New York, State of New York, County of New York

I, Dan McCourt, hereby certify that the document "**2017.08.22 Re Tank Exchange, Inc. with Attachments**" is, to the best of my knowledge and belief, a true and accurate translation from Chinese into English.

_____
Dan McCourt

Sworn to before me this
September 27, 2023

_____
Signature, Notary Public



_____
Stamp, Notary Public

LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS

1250 BROADWAY, 32ND FLOOR, NEW YORK, NY 10001  |  T 212.689.5555  |  F 212.689.1059  |  WWW.TRANSPERFECT.COM

OFFICES IN 90 CITIES WORLDWIDE

**From:**      Yuanyuan Xin
**To:**        yintaoyu@gmail.com
**Cc:**        jinmei xiao; fanlinlinfll@bytedance.com; Ben Li; 夏一博
**Subject:**   Re: Tank Exchange, Inc.
**Date:**      Tuesday, August 22, 2017 12:32:38 AM
**Attachments:** Side letter to Roger"s offer letter.doc
               Undertaking Agreement (August 22, 2017).doc
               Patent Assignment (Bytedance).doc
               Part 2 - Patent.pdf

Hi Yintao,

Attached are the three revised agreements, as well as the original patent
transfer agreement as an attachment.

Regards,
Yuanyuan

From: Yuanyuan Xin <xinyuanyuan@bytedance.com>
Date: Tuesday, August 22, 2017 2:00 PM
To: <yintaoyu@gmail.com>
Cc: jinmei xiao <xiaojinmei@bytedance.com>, <fanlinlinfll@bytedance.com>, Ben Li
<lizhi.ben@bytedance.com>, Xia Yibo <xiayibo@bytedance.com>
Subject: Re: Tank Exchange, Inc.

Attached is a side letter to the original offer letter. There are three documents in total.

Regards,
Yuanyuan

From: Yuanyuan Xin <xinyuanyuan@bytedance.com>
Date: Tuesday, August 22, 2017 12:45 PM
To: <yintaoyu@gmail.com>
Cc: jinmei xiao <xiaojinmei@bytedance.com>, <fanlinlinfll@bytedance.com>, Ben Li
<lizhi.ben@bytedance.com>, Xia Yibo <xiayibo@bytedance.com>
Subject: Re: Tank Exchange, Inc.

Attached is the patent transfer agreement. We're stilling a previous transfer agreement and
Tank's bank account number.

Regards,
Yuanyuan

From: Yuanyuan Xin <xinyuanyuan@bytedance.com>
Date: Tuesday, August 22, 2017 12:12 PM

To: <yintaoyu@gmail.com>
Cc: jinmei xiao <xiaojinmei@bytedance.com>, <fanlinlinfll@bytedance.com>, Ben Li
<lizhi.ben@bytedance.com>, Xia Yibo <xiayibo@bytedance.com>
Subject: Re: Tank Exchange, Inc.

Hi Yintao,

Attached is the Undertaking agreement that has been modified after discussion. Please
verify your personal information.

The remaining two agreements will be sent to you later. Many thanks.

Regards,
Yuanyuan

---

From: Yuanyuan Xin <xinyuanyuan@bytedance.com>
Date: Tuesday, August 22, 2017 11:52 AM
To: <yintaoyu@gmail.com>
Subject: Tank Exchange, Inc.

Hi Yintao,

When asking the lawyer to give us the assignment agreement at noon, please also provide
the account information of the company (Tank Exchange, Inc.), and we will put it in the
patent assignment contract.

Many thanks.

Regards,
Yuanyuan

---

From: Yuanyuan Xin <xinyuanyuan@bytedance.com>
Date: Tuesday, August 22, 2017 11:30 AM
To: Yuanyuan Xin <xinyuanyuan@bytedance.com>, <yintaoyu@gmail.com>
Subject: Tank Exchange, Inc.

Tank Exchange, Inc.
In Delaware

Assignment time: Oct 20, 2015 (**Assignment agreement**)

Yintao Yu
E90558407

California

Regards,
Yuanyuan

<u>COMBINED ASSIGNMENT/DECLARATION (37 CFR 1.63)</u>

For good and valuable consideration, the receipt of which is hereby acknowledged, the person(s) named below (referred to as "INVENTOR" whether singular or plural) has sold, assigned, and transferred and does hereby sell, assign, and transfer to **Tank Exchange, Inc.**, a Delaware corporation, having a place of business at 645 High St, Palo Alto, California 94301 ("ASSIGNEE"), for itself and its successors, transferees, and assignees, the following:

1.      The entire worldwide right, title, and interest in all inventions and improvements ("SUBJECT MATTER") that are disclosed in the following provisional application filed under 35 U.S.C. § 111(b), non-provisional application filed under 35 U.S.C. § 111(a), international application filed according to the Patent Cooperation Treaty (PCT), or U.S. national phase application filed under 35 U.S.C. § 371 ("APPLICATION"):

- Application No. **14/918,279**, entitled "**Commodity Exchange For Pre-Pruchasing Commodities and Trading Future Rights To Receive Commoditits**" filed on **October 20, 2015**.

2.      The entire worldwide right, title, and interest in and to:
(a) the APPLICATION; (b) all applications claiming priority from the APPLICATION; (c) all provisional, utility, divisional, continuation, substitute, renewal, reissue, and other applications related thereto which have been or may be filed in the United States or elsewhere in the world; (d) all patents (including reissues and re-examinations) which may be granted on the applications set forth in (a), (b), and (c) above; and (e) all right of priority in the APPLICATION and in any underlying provisional or foreign application, together with all rights to recover damages for infringement of provisional rights.

INVENTOR agrees that ASSIGNEE may apply for and receive patents for SUBJECT MATTER in ASSIGNEE's own name.

INVENTOR agrees to do the following, when requested, and without further consideration, in order to carry out the intent of this Assignment: (1) execute all oaths, assignments, powers of attorney, applications, and other papers necessary or desirable to fully secure to ASSIGNEE the rights, titles and interests herein conveyed; (2) communicate to ASSIGNEE all known facts relating to the SUBJECT MATTER; and (3) generally do all lawful acts that ASSIGNEE shall consider desirable for securing, maintaining, and enforcing worldwide patent protection relating to the SUBJECT MATTER and for vesting in ASSIGNEE the rights, titles, and interests herein conveyed.  INVENTOR further agrees to provide any successor, assign, or legal representative of ASSIGNEE with the benefits and assistance provided to ASSIGNEE hereunder.

INVENTOR represents that INVENTOR has the rights, titles, and interests to convey as set forth herein, and covenants with ASSIGNEE that the INVENTOR has not made and will not hereafter make any assignment, grant, mortgage, license, or other agreement affecting the rights, titles, and interests herein conveyed.

INVENTOR grants the attorney of record the power to insert on this Assignment any further identification that may be necessary or desirable in order to comply with the rules of the United States Patent and Trademark Office for recordation of this document.

1

| Title: | **Commodity Exchange For Pre-purchasing Commoditities And Trading Future Rights To Receive Commoditities** |
| Date Filed: | **October 20, 2015** |
| Application No.: | **14/918,279** |

This Assignment may be executed in one or more counterparts, each of which shall be deemed an original and all of which may be taken together as one and the same Assignment.

### DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

By signing below, INVENTOR further attests to the following:

- The APPLICATION was made or authorized to be made by INVENTOR.
- INVENTOR believes that INVENTOR is the original inventor or an original joint inventor of a claimed invention in the APPLICATION.
- INVENTOR acknowledges the duty to disclose to the United States Patent and Trademark Office all information known to INVENTOR to be material to patentability as defined in 37 CFR § 1.56, which for a continuation-in-part includes information known to INVENTOR to be material to patentability as defined in 37 CFR § 1.56 that became available between the filing date of the prior patent application and the National or PCT filing date of the continuation-in-part application.
- INVENTOR has reviewed and understands the contents of the APPLICATION, including the claims.

INVENTOR hereby acknowledges that any willful false statement made in this document is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

Name and Signature

**Yintao Yu**

Date of Signature

12/5/2015

2

**Dated _____, 2017**

**Tank Exchange, Inc.**
(as Assignor)

and

**Bytedance Inc.**
(as Assignee)

---

**Patent Assignment Agreement**

---

**CONTENTS**

**Clause**                                                                                                   **Page**

1.      DEFINITIONS AND INTERPRETATION ........................................................................... 2
2.      ASSIGNMENT ................................................................................................................ 3
3.      FURTHER ASSURANCE ............................................................................................... 3
4.      GENERAL ...................................................................................................................... 4
SCHEDULE 1 THE PATENTS ........................................................................................................ 6
        **Part 1** Registered Patents ...................................................................................................... 6

**THIS AGREEMENT** is made on _____, 2017.

**BETWEEN:**

(1)    **Tank Exchange, Inc.**, a company incorporated and registered in **Delaware, United States**, with company number **5744699** (the "**Assignor**"); and

(2)    **Bytedance Inc.**, a company incorporated and registered in **Delaware, United States**, with company number **5943290** (the "**Assignee**").

**BACKGROUND**

(A)    Pursuant to the (i) Patent Registration Application for "Commodity Exchange for Pre-Purchasing Commodities and Trading Future Rights to Receive Commodities" and (ii) Combined Assignment/Declaration by Yintao Yu dated December 5, 2015, the Assignor is the owner of Patents (as defined below).

(B)    The Assignor and Assignee desire that the Patents be assigned by the Assignor to the Assignee on the terms set out in this Agreement.

IT IS AGREED as follows:

**1.     DEFINITIONS AND INTERPRETATION**

1.1    **Definitions**

In this Agreement, save as otherwise specifically provided the following words have the following meanings:

"**Agreement**" means this Patent assignment;

"**Encumbrance**" means any mortgage, charge, pledge, option, licence, attachment, restriction, prior assignment, security interest, title retention, preferential right, lien, right of pre-emption, right of set-off or any limitation or restriction howsoever created or arising upon the ability of the Assignor to assign the Patents; and

"**Patents**" means the registered Patents and the applications owned by the Assignor, short particulars of which are set out in Schedule 1, together with any and all inventions subsisting therein or relating thereto. The Combined Assignment/Declaration by Yintao Yu dated December 5, 2015 is also set out in Schedule 1.

1.2    **Interpretation**

In this Agreement (except where the context otherwise requires):

(a)    any reference to the Background or a Clause or Schedule is to the relevant background item, clause or schedule of or to this Agreement.  Any reference to a paragraph is to the relevant paragraph of the Schedule in which it appears;

(b)    the index and clause headings are included for convenience only and shall not affect the interpretation of this Agreement;

(c)    reference to a party includes its successors and permitted assigns;

(d)    reference to "writing" or "written" includes faxes and any non-transitory form of visible reproduction of words (but not e-mail).

1.3     **Schedules**

The Schedules form part of this Agreement and shall have effect as if set out in full in the body of this Agreement and any reference to this Agreement includes the Schedules.

**2.      ASSIGNMENT**

2.1     In return for a consideration of **US$600,000** from the Assignee, wired to the Assignor's bank account:

Wire Routing Transit Number: 121000248

Bank Name: Wells Fargo Bank

City, State: San Francisco, California

Account Number: 5609343701

Title of account: Tank Exchange, Inc.

and receipt of which the Assignor hereby acknowledges, the Assignor hereby assigns with full title guarantee to the Assignee absolutely all its right, title and interest in and to the Patents, subject to all Encumbrances, including:

(a)     the absolute entitlement to any registered Patents granted pursuant to any of the applications comprised in the Patents; and

(b)     the right to bring, make, oppose, defend, appeal proceedings, claims or actions and obtain relief (and to retain any damages recovered) in respect of any infringement, or any other cause of action arising from ownership of any of the Patents whether occurring before, on or after the date of this Agreement;

(c)     all rights to claim priority from the Patents;

(d)     all rights to any extensions, renewals or amendments to the Patents;

(e)     the right to file divisional applications based on any Patent and to prosecute and obtain grant of patent on each and any such divisional application;

(f)     in respect of each and any invention disclosed in the Patents, the right to file an application, claim priority from such application, and prosecute and obtain grant of patent or similar protection in or in respect of any country or territory in the world; and

(g)     the right to extend to or register in, or in respect of, any country or territory in the world each and any of the Patents, and each and any of the applications comprised in the Patents or filed as aforesaid, and to extend to or register in or in respect of any country or territory in the world any patent or like protection granted on any of such applications;

**3.      FURTHER ASSURANCE**

3.1     The Assignor shall, at its own cost, perform (or procure the performance of) all further acts and things, and execute and deliver (or procure the execution or delivery of) all further documents, necessary or desirable and requested by the Assignee in order to ensure that the full benefit of the right, title and interest assigned and transferred to the Assignee under this Agreement vests in the Assignee, including registration of the Assignee as applicant or registered proprietor of the Patents listed in Part 1 and Part 2 of Schedule 1 at the relevant intellectual property registry or authority.

3

**4.      GENERAL**

4.1      **Waivers**

No failure or delay by either party in exercising any right or remedy provided by law under or pursuant to this Agreement shall impair such right or remedy or operate or be construed as a waiver or variation of it or preclude its exercise at any subsequent time and no single or partial exercise of any such right or remedy shall preclude any other or further exercise of it or the exercise of any other right or remedy.

4.2      **Amendment**

No variation of this Agreement shall be valid unless it is in writing and signed by or on behalf of both parties.

4.3      **Severability**

If and to the extent that any provision of this Agreement is held to be illegal, void or unenforceable, such provision shall be given no effect and shall be deemed not to be included in this agreement but without invalidating any of the remaining provisions of this agreement.

4.4      **Entire Agreement**

This agreement sets out the entire agreement and understanding between the parties in respect of the subject matter of this Agreement. It is agreed that:

(a)      neither party has entered into this Agreement in reliance upon any representation, warranty or undertaking of the other party which is not expressly set out in this Agreement;

(b)      neither party shall have any remedy in respect of misrepresentation or untrue statement made by the other party which is not contained in this Agreement;

(c)      this clause shall not exclude any liability for, or remedy in respect of, fraudulent misrepresentation.

4.5      **Governing law and Dispute Resolution**

(a)      This Agreement, the relationship between the parties and any non-contractual rights and the performance of the obligations in connection with this Agreement, shall be governed by, and interpreted in accordance with Hong Kong Law.

(b)      Each of the parties agree that any dispute, controversy or claim arising out of or relating to this Agreement, including any alleged violation of statute, common law or public policy shall be submitted to final and binding arbitration before Hong Kong International Arbitration Centre (the "HKIAC") to be held in Hong Kong before a single arbitrator, in accordance with the Hong Kong International Arbitration Centre Administered Arbitration Rules (the "HKIAC Rules") then in force.  Each party to the arbitration shall cooperate with each other party to the arbitration in making full disclosure of and providing complete access to all information and documents reasonably requested by such other party in connection with such arbitral proceedings, subject only to any confidentiality obligations binding on such party. The award of the arbitral tribunal shall be final and binding upon the parties thereto, and the prevailing party may apply to a court of competent jurisdiction for enforcement of such award. During the course of the arbitral tribunal's adjudication of any dispute, this Award Agreement shall continue to be performed except with respect to the part in dispute and under adjudication.

4

4.6     **No Third Party Rights**

A person who is not a party to this Agreement shall have no right under the Contracts (Rights of Third Parties) Act 1999 to enforce any of its terms.

**EACH PARTY** has executed this Agreement, or caused this Agreement to be executed by its duly authorised representatives.

**SCHEDULE 1**

**THE PATENTS**

**Part 1**
**Registered Patents and/or Patents Applications**

| Country | Title | Filing No. | Filing Date | Registration Date | Registration No. |
|---------|-------|------------|-------------|-------------------|------------------|
|         |       |            |             |                   |                  |

**Part 2**

**Combined Assignment/Declaration by Yintao Yu dated December 5, 2015**

6

**SIGNATURES**

| | | |
|---|---|---|
| SIGNED by | ) | …………………………………….. |
| Yintao Yu | | |
| Title: | ) | |
| on behalf of Tank Exchange, Inc. | ) | |
| | ) | |

| | | |
|---|---|---|
| SIGNED by | ) | …………………………………….. |
| Yiming Zhang | | |
| Title: Director | ) | |
| on behalf of | ) | |
| Bytedance Inc. | ) | |

7

**Side Letter**

This side letter (the "Sider Letter") is made as of _____, 2017 by and between Bytedance Inc. (the "Company"), a company incorporated in Delaware, United States, and Yintao Yu, a PRC citizen with PRC passport number E90558407 (the "Employee"), an employee of the Company or its affiliate.

W I T N E S S E T H:

WHEREAS, the Employee signed an offer letter with Bytedance Inc. on _____, 2017, pursuant to which the Company offered to give a payment for acquisition of US$600,000.

WHEREAS, on _____, 2017, the Company and Tank Exchange, Inc., a company incorporated in Delaware, United States, entered into a patent assignment agreement (the "Patent Assignment Agreement"), pursuant to which the Company agreed to pay US$600,000 for the acquisition of certain patent held by Tank Exchange, Inc.

THEREFORE, the Employee hereby confirms that: by signing and executing the Patent Assignment Agreement with Tank Exchange, Inc., the Company has satisfied its obligation under the offer letter for a payment for acquisition of US$600,000.

*(Remainder of page intentionally left blank.)*

IN WITNESS WHEREOF, each party hereto has caused this Side Letter to be duly executed as of the day and year first above written.

BYTEDANCE INC.

By:_____
Name:
Title:

Employee:

_____
By:

[*Signature Page*]

2

**UNDERTAKING AGREEMENT**

This Undertaking Agreement (the "Agreement") is made as of _____, 2017 by and between Bytedance Inc. (the "Company"), a company incorporated in Delaware, United States, and <u>Yintao Yu</u>, a PRC citizen with PRC passport number: <u>E90558407</u> (the "Employee"), an employee of the Company or its affiliate. For the purpose of this Agreement, the Company shall include all of its parent, subsidiaries and affiliated companies.

W I T N E S S E T H:

For good and valuable consideration, the receipt of which is hereby acknowledged, the parties hereto hereby agree as follow:

     1.   <u>Undertakings and Covenants</u>. The Employee undertakes, covenants and agrees to the Company as follows:

        If, within twenty-four (24) months of the first day of the employment with the Company, (i) the Employee voluntarily terminates his employment with the Company for any reason, or (ii) the Employee's employment is terminated by the Company "For Cause" (as defined below), then the Employees shall pay to the Company immediately, an amount of <u>US$100,000</u>.

For purposes of this Agreement, a termination "For Cause" means the Company's termination of the Employee's employment upon the occurrence of the following events, as determined in the reasonable judgment of the Company:

        the Employee's conviction of, or pleading guilty or no contest to (i) any felony, (ii) any misdemeanor (other than a traffic violation) during and/or involving the Employee's employment with the Company, or (iii) any other crime involving moral turpitude or that would impair the Employee's ability to perform his duties or impair the business reputation of the Company, in any jurisdiction.

     2.   <u>Governing Law</u>. This Agreement shall be governed by the laws of the Hong Kong.

     3.   <u>Dispute Resolution</u>. Any dispute, controversy or claim arising out of or relating to this Agreement shall be submitted to arbitration upon the request of any party with notice to the other parties. The arbitration shall be conducted in Hong Kong under the auspices of the Hong Kong International Arbitration Centre (the "HKIAC"). There shall be three arbitrators. The complainant and the respondent to such dispute shall each select one arbitrator within thirty (30) days after giving or receiving the demand for arbitration. Such arbitrators shall be freely selected, and the parties shall not be limited in their selection to any prescribed list. The Chairman of the HKIAC shall select the third arbitrator, who shall be qualified to practice law in Hong Kong. If either party to the arbitration does not appoint an arbitrator who has consented to participate within thirty (30) days after selection of the first

arbitrator, the relevant appointment shall be made by the Chairman of the HKIAC.  The arbitration proceedings shall be conducted in English.  The arbitration tribunal shall apply the arbitration rules of the HKIAC in effect at the time of the arbitration.  However, if such rules are in conflict with the provisions of this Section, including the provisions concerning the appointment of arbitrators, the provisions of this Section shall prevail.

4.      <u>Modifications</u>. No change, modification or waiver of any provision hereof shall be valid unless in writing, and signed by the party to be bound.

5.      <u>Severability</u>.  If any provision of this Agreement shall, for any reason, be held to be illegal, invalid or unenforceable, such illegality, invalidity or unenforceability shall not affect any other provision of this Agreement, but this Agreement shall be construed as if such illegal, invalid or unenforceable provision had never been contained herein.

6.      <u>No Waiver of Rights</u>.  No delay or failure on the part of the Company in exercising any rights under this Agreement and no partial or single exercise thereof, shall constitute a waiver of such rights or of any other rights under this Agreement.

*(Remainder of page intentionally left blank.)*

IN WITNESS WHEREOF, each party hereto has caused this Agreement to be duly executed as of the day and year first above written.

BYTEDANCE INC.


By:_____
Name:
Title:


Employee:


_____
By: Yintao Yu


[*Signature Page*]


3

| From: | Yuanyuan Xin |
|---|---|
| To: | yintaoyu@gmail.com |
| Cc: | jinmei xiao; fanlinlinfll@bytedance.com; Ben Li; 夏一博 |
| Subject: | Re: Tank Exchange, Inc. |
| Date: | Tuesday, August 22, 2017 12:32:38 AM |
| Attachments: | Side letter to Roger"s offer letter.doc |
| | Undertaking Agreement (August 22, 2017).doc |
| | Patent Assignment (Bytedance).doc |
| | Part 2 - Patent.pdf |

Hi Yintao,

附件是修改后的三份协议，以及原来的专利转让协议作为附件

Regards,
Yuanyuan

---

**发件人:** Yuanyuan Xin <xinyuanyuan@bytedance.com>
**日期:** 2017年8月22日 星期二 14:00
**收件人:** <yintaoyu@gmail.com>
**抄送:** jinmei xiao <xiaojinmei@bytedance.com>, <fanlinlinfll@bytedance.com>, Ben Li <lizhi.ben@bytedance.com>, 夏一博 <xiayibo@bytedance.com>
**主题:** Re: Tank Exchange, Inc.

附件是side letter to the original offer letter. 一共三份文件

Regards,
Yuanyuan

---

**发件人:** Yuanyuan Xin <xinyuanyuan@bytedance.com>
**日期:** 2017年8月22日 星期二 12:45
**收件人:** <yintaoyu@gmail.com>
**抄送:** jinmei xiao <xiaojinmei@bytedance.com>, <fanlinlinfll@bytedance.com>, Ben Li <lizhi.ben@bytedance.com>, 夏一博 <xiayibo@bytedance.com>
**主题:** Re: Tank Exchange, Inc.

附件是专利转让协议，还缺一份之前的转让协议和Tank的银行账号

Regards,
Yuanyuan

---

**发件人:** Yuanyuan Xin <xinyuanyuan@bytedance.com>
**日期:** 2017年8月22日 星期二 12:12

收件人: <yintaoyu@gmail.com>
抄送: jinmei xiao <xiaojinmei@bytedance.com>, <fanlinlinfll@bytedance.com>, Ben Li <lizhi.ben@bytedance.com>, 夏一博 <xiayibo@bytedance.com>
主题: Re: Tank Exchange, Inc.

Hi Yintao,

附件是经讨论修改的Undertaking agreement, 请核对一下个人信息

余下两份协议稍后发给你　多谢

Regards,
Yuanyuan

---

发件人: Yuanyuan Xin <xinyuanyuan@bytedance.com>
日期: 2017年8月22日 星期二 11:52
收件人: <yintaoyu@gmail.com>
主题: Tank Exchange, Inc.

Hi Yintao,

中午请律师把assignment　agreement给我们的时候，麻烦也提供一下公司（Tank　Exchange, Inc.）的账户信息，我们放在专利转让合同里

多谢

Regards,
Yuanyuan

---

发件人: Yuanyuan Xin <xinyuanyuan@bytedance.com>
日期: 2017年8月22日 星期二 11:30
收件人: Yuanyuan Xin <xinyuanyuan@bytedance.com>, <yintaoyu@gmail.com>
主题: <无主题>

Tank Exchange, Inc.
In Delaware

Assignment time: Oct 20, 2015 (**Assignment agreement** )

Yintao Yu
E90558407

加州


Regards,
Yuanyuan

## <u>COMBINED ASSIGNMENT/DECLARATION (37 CFR 1.63)</u>

For good and valuable consideration, the receipt of which is hereby acknowledged, the person(s) named below (referred to as "INVENTOR" whether singular or plural) has sold, assigned, and transferred and does hereby sell, assign, and transfer to **Tank Exchange, Inc.**, a Delaware corporation, having a place of business at 645 High St, Palo Alto, California 94301 ("ASSIGNEE"), for itself and its successors, transferees, and assignees, the following:

1.     The entire worldwide right, title, and interest in all inventions and improvements ("SUBJECT MATTER") that are disclosed in the following provisional application filed under 35 U.S.C. § 111(b), non-provisional application filed under 35 U.S.C. § 111(a), international application filed according to the Patent Cooperation Treaty (PCT), or U.S. national phase application filed under 35 U.S.C. § 371 ("APPLICATION"):

- Application No. **14/918,279**, entitled "**Commodity Exchange For Pre-Pruchasing Commodities and Trading Future Rights To Receive Commoditits**" filed on **October 20, 2015**.

2.     The entire worldwide right, title, and interest in and to:
(a) the APPLICATION; (b) all applications claiming priority from the APPLICATION; (c) all provisional, utility, divisional, continuation, substitute, renewal, reissue, and other applications related thereto which have been or may be filed in the United States or elsewhere in the world; (d) all patents (including reissues and re-examinations) which may be granted on the applications set forth in (a), (b), and (c) above; and (e) all right of priority in the APPLICATION and in any underlying provisional or foreign application, together with all rights to recover damages for infringement of provisional rights.

INVENTOR agrees that ASSIGNEE may apply for and receive patents for SUBJECT MATTER in ASSIGNEE's own name.

INVENTOR agrees to do the following, when requested, and without further consideration, in order to carry out the intent of this Assignment: (1) execute all oaths, assignments, powers of attorney, applications, and other papers necessary or desirable to fully secure to ASSIGNEE the rights, titles and interests herein conveyed; (2) communicate to ASSIGNEE all known facts relating to the SUBJECT MATTER; and (3) generally do all lawful acts that ASSIGNEE shall consider desirable for securing, maintaining, and enforcing worldwide patent protection relating to the SUBJECT MATTER and for vesting in ASSIGNEE the rights, titles, and interests herein conveyed.  INVENTOR further agrees to provide any successor, assign, or legal representative of ASSIGNEE with the benefits and assistance provided to ASSIGNEE hereunder.

INVENTOR represents that INVENTOR has the rights, titles, and interests to convey as set forth herein, and covenants with ASSIGNEE that the INVENTOR has not made and will not hereafter make any assignment, grant, mortgage, license, or other agreement affecting the rights, titles, and interests herein conveyed.

INVENTOR grants the attorney of record the power to insert on this Assignment any further identification that may be necessary or desirable in order to comply with the rules of the United States Patent and Trademark Office for recordation of this document.

| Title: | **Commodity Exchange For Pre-purchasing Commodities And Trading Future Rights To Receive Commodities** |
|---|---|
| Date Filed: | **October 20, 2015** |
| Application No.: | **14/918,279** |

This Assignment may be executed in one or more counterparts, each of which shall be deemed an original and all of which may be taken together as one and the same Assignment.

### DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

By signing below, INVENTOR further attests to the following:

- The APPLICATION was made or authorized to be made by INVENTOR.
- INVENTOR believes that INVENTOR is the original inventor or an original joint inventor of a claimed invention in the APPLICATION.
- INVENTOR acknowledges the duty to disclose to the United States Patent and Trademark Office all information known to INVENTOR to be material to patentability as defined in 37 CFR § 1.56, which for a continuation-in-part includes information known to INVENTOR to be material to patentability as defined in 37 CFR § 1.56 that became available between the filing date of the prior patent application and the National or PCT filing date of the continuation-in-part application.
- INVENTOR has reviewed and understands the contents of the APPLICATION, including the claims.

INVENTOR hereby acknowledges that any willful false statement made in this document is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

Name and Signature

**Yintao Yu**

Date of Signature

12/5/2015

**Dated _____, 2017**


**Tank Exchange, Inc.**
(as Assignor)


and


**Bytedance Inc.**
(as Assignee)


_____

**Patent Assignment Agreement**
_____

## CONTENTS

**Clause**                                                                                   **Page**

1.  DEFINITIONS AND INTERPRETATION ................................................................. 2

2.  ASSIGNMENT ...................................................................................................... 3

3.  FURTHER ASSURANCE ...................................................................................... 3

4.  GENERAL .............................................................................................................. 4

SCHEDULE 1 THE PATENTS ...................................................................................... 6

   **Part 1** Registered Patents ........................................................................................ 6

**THIS AGREEMENT** is made on _____, 2017.

**BETWEEN:**

(1)    **Tank Exchange, Inc.**, a company incorporated and registered in **Delaware, United States**, with company number **5744699** (the "**Assignor**"); and

(2)    **Bytedance Inc.**, a company incorporated and registered in **Delaware, United States**, with company number **5943290** (the "**Assignee**").

**BACKGROUND**

(A)    Pursuant to the (i) Patent Registration Application for "Commodity Exchange for Pre-Purchasing Commodities and Trading Future Rights to Receive Commodities" and (ii) Combined Assignment/Declaration by Yintao Yu dated December 5, 2015, the Assignor is the owner of Patents (as defined below).

(B)    The Assignor and Assignee desire that the Patents be assigned by the Assignor to the Assignee on the terms set out in this Agreement.

IT IS AGREED as follows:

**1.    DEFINITIONS AND INTERPRETATION**

1.1    **Definitions**

In this Agreement, save as otherwise specifically provided the following words have the following meanings:

"**Agreement**" means this Patent assignment;

"**Encumbrance**" means any mortgage, charge, pledge, option, licence, attachment, restriction, prior assignment, security interest, title retention, preferential right, lien, right of pre-emption, right of set-off or any limitation or restriction howsoever created or arising upon the ability of the Assignor to assign the Patents; and

"**Patents**" means the registered Patents and the applications owned by the Assignor, short particulars of which are set out in Schedule 1, together with any and all inventions subsisting therein or relating thereto. The Combined Assignment/Declaration by Yintao Yu dated December 5, 2015 is also set out in Schedule 1.

1.2    **Interpretation**

In this Agreement (except where the context otherwise requires):

(a)    any reference to the Background or a Clause or Schedule is to the relevant background item, clause or schedule of or to this Agreement.  Any reference to a paragraph is to the relevant paragraph of the Schedule in which it appears;

(b)    the index and clause headings are included for convenience only and shall not affect the interpretation of this Agreement;

(c)    reference to a party includes its successors and permitted assigns;

(d)    reference to "writing" or "written" includes faxes and any non-transitory form of visible reproduction of words (but not e-mail).

1.3 **Schedules**

The Schedules form part of this Agreement and shall have effect as if set out in full in the body of this Agreement and any reference to this Agreement includes the Schedules.

**2.** **ASSIGNMENT**

2.1 In return for a consideration of <u>US$600,000</u> from the Assignee, wired to the Assignor's bank account:

Wire Routing Transit Number: 121000248

Bank Name: Wells Fargo Bank

City, State: San Francisco, California

Account Number: 5609343701

Title of account: Tank Exchange, Inc.

and receipt of which the Assignor hereby acknowledges, the Assignor hereby assigns with full title guarantee to the Assignee absolutely all its right, title and interest in and to the Patents, subject to all Encumbrances, including:

(a) the absolute entitlement to any registered Patents granted pursuant to any of the applications comprised in the Patents; and

(b) the right to bring, make, oppose, defend, appeal proceedings, claims or actions and obtain relief (and to retain any damages recovered) in respect of any infringement, or any other cause of action arising from ownership of any of the Patents whether occurring before, on or after the date of this Agreement;

(c) all rights to claim priority from the Patents;

(d) all rights to any extensions, renewals or amendments to the Patents;

(e) the right to file divisional applications based on any Patent and to prosecute and obtain grant of patent on each and any such divisional application;

(f) in respect of each and any invention disclosed in the Patents, the right to file an application, claim priority from such application, and prosecute and obtain grant of patent or similar protection in or in respect of any country or territory in the world; and

(g) the right to extend to or register in, or in respect of, any country or territory in the world each and any of the Patents, and each and any of the applications comprised in the Patents or filed as aforesaid, and to extend to or register in or in respect of any country or territory in the world any patent or like protection granted on any of such applications;

**3.** **FURTHER ASSURANCE**

3.1 The Assignor shall, at its own cost, perform (or procure the performance of) all further acts and things, and execute and deliver (or procure the execution or delivery of) all further documents, necessary or desirable and requested by the Assignee in order to ensure that the full benefit of the right, title and interest assigned and transferred to the Assignee under this Agreement vests in the Assignee, including registration of the Assignee as applicant or registered proprietor of the Patents listed in Part 1 and Part 2 of Schedule 1 at the relevant intellectual property registry or authority.

**4.      GENERAL**

**4.1      Waivers**

No failure or delay by either party in exercising any right or remedy provided by law under or pursuant to this Agreement shall impair such right or remedy or operate or be construed as a waiver or variation of it or preclude its exercise at any subsequent time and no single or partial exercise of any such right or remedy shall preclude any other or further exercise of it or the exercise of any other right or remedy.

**4.2      Amendment**

No variation of this Agreement shall be valid unless it is in writing and signed by or on behalf of both parties.

**4.3      Severability**

If and to the extent that any provision of this Agreement is held to be illegal, void or unenforceable, such provision shall be given no effect and shall be deemed not to be included in this agreement but without invalidating any of the remaining provisions of this agreement.

**4.4      Entire Agreement**

This agreement sets out the entire agreement and understanding between the parties in respect of the subject matter of this Agreement. It is agreed that:

(a)      neither party has entered into this Agreement in reliance upon any representation, warranty or undertaking of the other party which is not expressly set out in this Agreement;

(b)      neither party shall have any remedy in respect of misrepresentation or untrue statement made by the other party which is not contained in this Agreement;

(c)      this clause shall not exclude any liability for, or remedy in respect of, fraudulent misrepresentation.

**4.5      Governing law and Dispute Resolution**

(a)      This Agreement, the relationship between the parties and any non-contractual rights and the performance of the obligations in connection with this Agreement, shall be governed by, and interpreted in accordance with Hong Kong Law.

(b)      Each of the parties agree that any dispute, controversy or claim arising out of or relating to this Agreement, including any alleged violation of statute, common law or public policy shall be submitted to final and binding arbitration before Hong Kong International Arbitration Centre (the "HKIAC") to be held in Hong Kong before a single arbitrator, in accordance with the Hong Kong International Arbitration Centre Administered Arbitration Rules (the "HKIAC Rules") then in force.  Each party to the arbitration shall cooperate with each other party to the arbitration in making full disclosure of and providing complete access to all information and documents reasonably requested by such other party in connection with such arbitral proceedings, subject only to any confidentiality obligations binding on such party. The award of the arbitral tribunal shall be final and binding upon the parties thereto, and the prevailing party may apply to a court of competent jurisdiction for enforcement of such award. During the course of the arbitral tribunal's adjudication of any dispute, this Award Agreement shall continue to be performed except with respect to the part in dispute and under adjudication.

4.6     **No Third Party Rights**

A person who is not a party to this Agreement shall have no right under the Contracts (Rights of Third Parties) Act 1999 to enforce any of its terms.

**EACH PARTY** has executed this Agreement, or caused this Agreement to be executed by its duly authorised representatives.

**SCHEDULE 1**

**THE PATENTS**

**Part 1**
**Registered Patents and/or Patents Applications**

| Country | Title | Filing No. | Filing Date | Registration Date | Registration No. |
|---------|-------|-----------|-------------|-------------------|------------------|
|         |       |           |             |                   |                  |

**Part 2**

**Combined Assignment/Declaration by Yintao Yu dated December 5, 2015**

6

**SIGNATURES**

| | | |
|---|---|---|
| SIGNED by | ) | ……………………………….. |
| Yintao Yu | | |
| Title: | ) | |
| on behalf of Tank Exchange, Inc. | ) | |
| | ) | |

| | | |
|---|---|---|
| SIGNED by | ) | ……………………………….. |
| Yiming Zhang | | |
| Title: Director | ) | |
| on behalf of | ) | |
| Bytedance Inc. | ) | |

**Side Letter**

This side letter (the "Sider Letter") is made as of _____, 2017 by and between Bytedance Inc. (the "Company"), a company incorporated in Delaware, United States, and <u>Yintao Yu</u>, a PRC citizen with PRC passport number <u>E90558407</u> (the "Employee"), an employee of the Company or its affiliate.

W I T N E S S E T H:

WHEREAS, the Employee signed an offer letter with Bytedance Inc. on _____, 2017, pursuant to which the Company offered to give a payment for acquisition of US$600,000.

WHEREAS, on _____, 2017, the Company and Tank Exchange, Inc., a company incorporated in Delaware, United States, entered into a patent assignment agreement (the "Patent Assignment Agreement"), pursuant to which the Company agreed to pay US$600,000 for the acquisition of certain patent held by Tank Exchange, Inc.

THEREFORE, the Employee hereby confirms that: by signing and executing the Patent Assignment Agreement with Tank Exchange, Inc., the Company has satisfied its obligation under the offer letter for a payment for acquisition of US$600,000.

*(Remainder of page intentionally left blank.)*

IN WITNESS WHEREOF, each party hereto has caused this Side Letter to be duly executed as of the day and year first above written.

BYTEDANCE INC.

By:_____
Name:
Title:

Employee:

_____
By:

[*Signature Page*]

**UNDERTAKING AGREEMENT**

This Undertaking Agreement (the "Agreement") is made as of _____, 2017 by and between Bytedance Inc. (the "Company"), a company incorporated in Delaware, United States, and Yintao Yu, a PRC citizen with PRC passport number: E90558407 (the "Employee"), an employee of the Company or its affiliate. For the purpose of this Agreement, the Company shall include all of its parent, subsidiaries and affiliated companies.

W I T N E S S E T H :

For good and valuable consideration, the receipt of which is hereby acknowledged, the parties hereto hereby agree as follow:

      1.     <u>Undertakings and Covenants</u>. The Employee undertakes, covenants and agrees to the Company as follows:

            If, within twenty-four (24) months of the first day of the employment with the Company, (i) the Employee voluntarily terminates his employment with the Company for any reason, or (ii) the Employee's employment is terminated by the Company "For Cause" (as defined below), then the Employees shall pay to the Company immediately, an amount of <u>US$100,000</u>.

For purposes of this Agreement, a termination "For Cause" means the Company's termination of the Employee's employment upon the occurrence of the following events, as determined in the reasonable judgment of the Company:

            the Employee's conviction of, or pleading guilty or no contest to (i) any felony, (ii) any misdemeanor (other than a traffic violation) during and/or involving the Employee's employment with the Company, or (iii) any other crime involving moral turpitude or that would impair the Employee's ability to perform his duties or impair the business reputation of the Company, in any jurisdiction.

      2.     <u>Governing Law</u>.  This Agreement shall be governed by the laws of the Hong Kong.

      3.     <u>Dispute Resolution</u>.  Any dispute, controversy or claim arising out of or relating to this Agreement shall be submitted to arbitration upon the request of any party with notice to the other parties.  The arbitration shall be conducted in Hong Kong under the auspices of the Hong Kong International Arbitration Centre (the "HKIAC").  There shall be three arbitrators.  The complainant and the respondent to such dispute shall each select one arbitrator within thirty (30) days after giving or receiving the demand for arbitration.  Such arbitrators shall be freely selected, and the parties shall not be limited in their selection to any prescribed list.  The Chairman of the HKIAC shall select the third arbitrator, who shall be qualified to practice law in Hong Kong.  If either party to the arbitration does not appoint an arbitrator who has consented to participate within thirty (30) days after selection of the first

arbitrator, the relevant appointment shall be made by the Chairman of the HKIAC. The arbitration proceedings shall be conducted in English. The arbitration tribunal shall apply the arbitration rules of the HKIAC in effect at the time of the arbitration. However, if such rules are in conflict with the provisions of this Section, including the provisions concerning the appointment of arbitrators, the provisions of this Section shall prevail.

4.      <u>Modifications</u>. No change, modification or waiver of any provision hereof shall be valid unless in writing, and signed by the party to be bound.

5.      <u>Severability</u>.  If any provision of this Agreement shall, for any reason, be held to be illegal, invalid or unenforceable, such illegality, invalidity or unenforceability shall not affect any other provision of this Agreement, but this Agreement shall be construed as if such illegal, invalid or unenforceable provision had never been contained herein.

6.      <u>No Waiver of Rights</u>.  No delay or failure on the part of the Company in exercising any rights under this Agreement and no partial or single exercise thereof, shall constitute a waiver of such rights or of any other rights under this Agreement.

*(Remainder of page intentionally left blank.)*

IN WITNESS WHEREOF, each party hereto has caused this Agreement to be duly executed as of the day and year first above written.

BYTEDANCE INC.

By:_____
Name:
Title:

Employee:

_____
By: Yintao Yu

[*Signature Page*]

# Ex. 4

## UNDERTAKING AGREEMENT

This Undertaking Agreement (the "Agreement") is made as of _____, 2017 by and between Bytedance Inc. (the "Company"), a company incorporated in Delaware, United States, and Yintao Yu, a PRC citizen with PRC passport number: E90558407 (the "Employee"), an employee of the Company or its affiliate. For the purpose of this Agreement, the Company shall include all of its parent, subsidiaries and affiliated companies.

## W I T N E S S E T H:

For good and valuable consideration, the receipt of which is hereby acknowledged, the parties hereto hereby agree as follow:

1.      Undertakings and Covenants. The Employee undertakes, covenants and agrees to the Company as follows:

> If, within twenty-four (24) months of the first day of the employment with the Company, (i) the Employee voluntarily terminates his employment with the Company for any reason, or (ii) the Employee's employment is terminated by the Company "For Cause" (as defined below), then the Employees shall pay to the Company immediately, an amount of US$100,000.

For purposes of this Agreement, a termination "For Cause" means the Company's termination of the Employee's employment upon the occurrence of the following events, as determined in the reasonable judgment of the Company:

> the Employee's conviction of, or pleading guilty or no contest to (i) any felony, (ii) any misdemeanor (other than a traffic violation) during and/or involving the Employee's employment with the Company, or (iii) any other crime involving moral turpitude or that would impair the Employee's ability to perform his duties or impair the business reputation of the Company, in any jurisdiction.

2.      Governing Law. This Agreement shall be governed by the laws of the Hong Kong.

3.      Dispute Resolution. Any dispute, controversy or claim arising out of or relating to this Agreement shall be submitted to arbitration upon the request of any party with notice to the other parties. The arbitration shall be conducted in Hong Kong under the auspices of the Hong Kong International Arbitration Centre (the "HKIAC"). There shall be three arbitrators. The complainant and the respondent to such dispute shall each select one arbitrator within thirty (30) days after giving or receiving the demand for arbitration. Such arbitrators shall be freely selected, and the parties shall not be limited in their selection to any prescribed list. The Chairman of the HKIAC shall select the third arbitrator, who shall be qualified to practice law in Hong Kong. If either party to the arbitration does not appoint an arbitrator who has consented to participate within thirty (30) days after selection of the first

arbitrator, the relevant appointment shall be made by the Chairman of the HKIAC. The arbitration proceedings shall be conducted in English. The arbitration tribunal shall apply the arbitration rules of the HKIAC in effect at the time of the arbitration. However, if such rules are in conflict with the provisions of this Section, including the provisions concerning the appointment of arbitrators, the provisions of this Section shall prevail.

      4.     Modifications. No change, modification or waiver of any provision hereof shall be valid unless in writing, and signed by the party to be bound.

      5.     Severability. If any provision of this Agreement shall, for any reason, be held to be illegal, invalid or unenforceable, such illegality, invalidity or unenforceability shall not affect any other provision of this Agreement, but this Agreement shall be construed as if such illegal, invalid or unenforceable provision had never been contained herein.

      6.     No Waiver of Rights. No delay or failure on the part of the Company in exercising any rights under this Agreement and no partial or single exercise thereof, shall constitute a waiver of such rights or of any other rights under this Agreement.

*(Remainder of page intentionally left blank.)*

IN WITNESS WHEREOF, each party hereto has caused this Agreement to be duly executed as of the day and year first above written.

BYTEDANCE INC.

By:_____
Name:
Title:

Employee:

_____
By: Yintao Yu

[*Signature Page*]

3