1  CHARLES THOMPSON, State Bar No. 139841
     thompsoncha@gtlaw.com
2  DAVID BLOCH, State Bar No. 184530
     david.bloch@gtlaw.com
3  MELISSA KENDRA, State Bar No. 291905
     melissa.kendra@gtlaw.com
4  ANTHONY E. GUZMAN II, State Bar No. 311580
     guzmanan@gtlaw.com
5  GREENBERG TRAURIG, LLP
   101 Second Street, Suite 2200
6  San Francisco, California 94105
   Telephone: 415.655.1300
7  Facsimile: 415.707.2010

Attorneys for Defendant
BYTEDANCE INC.

[*Additional Counsel on Next Page*]

THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| YINTAO YU, an individual,<br><br>        Plaintiff<br><br>        v.<br><br>BYTEDANCE, INC., a Delaware Corporation; SHUYI (SELENE) GAO, an individual,<br><br>        Defendants. | Case No. 3:23-cv-04910-SI<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION**<br><br>[Originally San Francisco Superior Court No. CGC-23-608845]<br><br>Date:     November 17, 2023<br>Time:     10:00 a.m.<br>Location: Courtroom 1, Floor 17<br><br>State Action filed: September 5, 2023<br>Removal Date:    September 25, 2023<br>Trial Date:        None |
|---|---|

1
**DEFENDANTS' REPLY ISO MOTION TO COMPEL ARBITRATION**

**ADDITIONAL COUNSEL**

GREGORY ISKANDER, State Bar No. 200215
  giskander@littler.com
DEMERY RYAN, State Bar No. 217176
  dryan@littler.com
LITTLER MENDELSON, P.C.
2049 Century Park East, 5th Floor
Los Angeles, California 90067
Telephone: 310.553.0308
Facsimile: 800.715.1330

DAVID S. MAOZ, State Bar No. 233857
  dmaoz@littler.com
LITTLER MENDELSON, P.C.
Treat Towers 1255 Treat Boulevard, Suite 600
Walnut Creek, California 94597
Telephone: 925.932.2468
Facsimile: 925.946.9809

Attorneys for Defendant
SHUYI (SELENE) GAO

I. INTRODUCTION

Yu's Opposition completely fails to avoid his obligation to arbitrate his state court claims. Although BDI moved to compel these claims to arbitration based on four separate arbitration agreements, Yu only responds with respect to one of those agreements—the ECIAA ("Employee Confidentiality and Inventions Assignment Agreement")—while disregarding the Stock Option Award Agreement, Patent Acquisition Agreement, and Undertaking Agreement to which his state court claims remain equally bound. Ultimately, with respect to all four of the agreements, Yu fails to place any of those agreements "in issue" so as to warrant the jury trial he now seeks under Section 4 of the Federal Arbitration Act ("FAA"): he fails to provide the requisite unequivocal denial to adequately challenge the authentication of his handwritten signatures, and he fails to provide legally sufficient or admissible evidence to corroborate his specious denial. All are fatal to his challenge. For these reasons, BDI respectfully renews its request that this Court compel Yu to arbitrate the threshold issue of arbitrability of his state court claims under the ECIAA or the other three agreements, while staying these proceedings in the interim and enjoining Yu from continuing to litigate any compelled claims in his concurrent state court proceeding.

II. LAW & ARGUMENT

    A.    <u>Yu Fails to Place the ECIAA "In Issue" For Purposes of an FAA Jury Trial</u>

Yu's challenge to the ECIAA's formation is unavailing because he fails to sufficiently place the agreement "in issue" within the meaning of Section 4 of the FAA. Section 4 of the FAA provides that "[i]f the making of the arbitration agreement . . . be in issue, the [district] court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. The "'making of an arbitration agreement' is 'in issue' only if a material fact exists to the agreement's formation." *Rahimi v. Nintendo of Am., Inc.*, 936 F. Supp. 2d 1141, 1144 (N.D. Cal. 2013). To that end, "there must be an unequivocal denial that an agreement has been made, accompanied by supporting affidavits providing some evidence substantiating the claim." *Canada Life Assur. Co. v. Guardian Life Ins. Co. of Am.*, 242 F. Supp. 2d 344, 354 (S.D.N.Y. 2003) (citing *Sphere Drake Ins. Ltd. V. Clarendon Nat'l Ins. Co.*, 263 F.3d 26, 30 (2d Cir. 2001)). Yu has failed to satisfy this burden. His soft denials fall far short of the "unequivocal denial" required to put the making of the arbitration agreement at issue, and

the specious "corroboration" he provides is inadmissible and insufficient. This Court has full authority to determine that Yu agreed to the ECIAA—and, thereby, the agreement to arbitrate related claims—as a matter of law.

### 1. Yu Fails to Unequivocally Deny the Making of the ECIAA

Defendants have authenticated Yu's handwritten signatures on the ECIAA, among others—a burden that is "not high." *Prostek v. Lincare, Inc.*, 2023 WL 2588098, *5 (E.D. Cal. Mar. 21, 2023). BDI has offered declarations from Human Resources professionals who attested to more than sufficient corroboration to authenticate Yu's handwritten signature on the various agreements: many of these persons discussed some of the agreements with Yu, did not receive or otherwise hear of a request from Yu to alter or delete the arbitration provisions therein, and witnessed him sign some of the agreements. See *Kalasho v. BMW of North America, LLC*, 520 F. Supp. 3d 1288, 1293 (S.D. Cal. 2021) (witness testimony sufficient where declarant "states that the attached [] Agreement is a true copy of the original document kept in Dealer's files, that such documents and files are prepared by Dealer in its ordinary course of business when a vehicle is leased, and that [declarant] maintains control over the original documents kept in Dealer's files"); *Prostek*, 2023 WL 2588098, at *7 (same). Additionally, BDI has offered further evidence via a properly certified handwriting expert who has authenticated Yu's signatures on the various agreements. From this evidence, the Court can certainly conclude that a jury "*could* reasonably find [] the evidence [] authentic" per Federal Rule of Evidence 901. *Kalasho*, 520 F. Supp. 3d at 1288 (emphasis added).[1]

Yu attempts to challenge BDI's authentication by stating: "I am confident that this is not a document I signed, and that the arbitration agreement contained on page 11 of the ECIAA was not included in any document that I signed." He argues that this is an "unequivocal denial" sufficient to meet the requisite standard delineated above. Opp. 7:13-18. Not so.

---

[1] **Note**: Although the Opposition suggests that "authenticating" a signature is not the same as "establishing whether a signature is in fact proof of execution," it provides no citation for this proposition, Opp. 9:13-17, no theory or explanation for how an authentic signature on the ECIAA would ***not*** constitute proof of execution, and no explanation for why Yu applied the authentication standard himself in his opposition to BDI's prior motion to compel arbitration filed on July 29, 2023 with this court. Previous Opp., ECF 24, Case No. 3:23-cv-03503-SI. Indeed, that opposition argued the authentication standard almost exclusively, using the word "authenticate" 10 times; "authenticity" 8 times; "authentic" 5 times; "authenticated" 2 times; and "authentication" 2 times.

For the purposes of challenging a handwritten signature's authenticity, soft or evasive denials that do not directly allege a "skilled forgery" are insufficient. *Prostek*, 2023 WL 2588098, *6 (authenticity challenge insufficient where employee denied recollection of the agreement, claimed "she would not have signed it if she had seen," but "d[id] not deny that the signature on the Arbitration Agreement [wa]s hers or claim that the signature was somehow forged") (citing *Iyere v. Wise Auto Group*, 87 Cal. App. 5th 747, 758 (2023) (authenticity challenge insufficient where "a party confronted with his or her handwritten signature on an arbitration agreement is unable to allege that the signature is inauthentic or forged")). Soft denials are viewed with particular suspicion when the employee—as here—nonetheless acknowledges having signed at least some documents. *Id.* at *7 (employee's "acknowledgment that she signed a 'stack of documents,' combined with her failure" to unequivocally deny the signature itself "[wa]s determinative").

Further, even express forgery allegations fail to raise a genuine issue when overly vague or undetailed. *See, e.g., Spaeny v. TJX Companies, Inc.*, 2022 WL 334186, *2 (C.D. Cal. Feb. 3, 2022) (unequivocal forgery allegation insufficient where "plaintiff d[id] not attest that she witnessed her records being forged, nor d[id] she explain in any detail who specifically committed forgery, when, how often, or how she would have witnessed such conduct"); *Stafford v. BAART Behavioral Health Services*, 2015 WL 13764217, at *5 (C.D. Cal. July 20, 2015) (In light of "Stafford's failure to provide anything more than bare assertions that the signature is not hers, the Court would find that Stafford's signature on the arbitration agreement is authentic and that the arbitration agreement is valid").

Here, Yu admits that he signed several documents on the same date[2] and, notably, fails to directly allege that the handwritten signature on the ECIAA is inauthentic or otherwise forged. *Compare* Yu Dec. ¶ 6 ("I never signed any document … with the title ECIAA") with *Degla Grp. for Invs., Inc. v. Boconcept USA, Inc.*, 2010 WL 11509053, at *9 (C.D. Cal. Sept. 30, 2010) ("Counter-defendants assert that Hasan Sidky 'did not sign any guarantee,' but do not address the fact that his name is handwritten in the signature block below the Acknowledgment."). As to the

---

[2] **Note**: Yu Dec. ¶ 4 (referring to "documents I signed that day").

latter, his Opposition instead *suggests* that the signature page of the ECIAA might have been swapped, but Yu fails to endorse or reference this theory in his declaration. *Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995) (self-serving interpretation of agreement's omission of certain language insufficient corroborating evidence to raise genuine dispute); *Prostek*, 2023 WL 2588098, at *8 ("If a party cannot challenge the handwritten signature [directly], there is no basis to conclude that the signature was skillfully forged or that the party did not actually sign the document"). His failure to directly allege that his signature is inauthentic or forged—coupled with his admission that he signed some documents—is therefore fatal to his challenge to the ECIAA's formation. *Prostek*, 2023 WL 2588098, at *7 ("These [two] facts are key" and "determinative").

Further, even had he alleged actual forgery (which he did not), Yu "d[id] not attest that []he witnessed h[is] records being forged, nor d[id] []he explain in any detail who specifically committed the forgery, [or] when, how often, or how []he would have witnessed such conduct." *Spaeny*, 2022 WL 334186, at *2. Notably, Yu's declaration does not reference the words "authentic," "forged, "unequivocal," or "deny." And his Opposition's purported "unequivocal denial" merely rests on Yu's "den[ial of] his agreement to the ECIAA"—it makes no mention of the signature itself. Opp. 7:16. These vague and amorphous "denials" fall far short of the unequivocal repudiation of authenticity required by this Circuit for presumptively genuine handwritten signatures. *Walley v. Bank*, 2022 WL 2189635, at *2 (C.D. Cal. Apr. 21, 2022) (no "genuine dispute of material fact" where plaintiff "argues that the arbitration agreement was fraudulently executed, but he submits no evidence or even a specific allegation of fraud").

Yu's challenge to the formation of this agreement must therefore fail because he has not "unequivocally denied" that the agreement was made.

### 2. Yu Fails to Provide Legally Sufficient or Admissible Evidence to Support His Otherwise Uncorroborated Soft Denial

Yu has also failed to corroborate his purported unequivocal denial with "evidentiary facts showing that there is a dispute of fact to be tried." *Oppenheimer*, 56 F.3d at 358 ("If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial" alone). Rather, the sole evidence he offers is not only legally

insufficient and/or factually inadmissible, but it supports the existence of a valid arbitration agreement.

First, and perhaps most importantly, the declaration of Yu's former counsel, David Lowe, affirmatively demonstrates that a valid agreement to arbitrate exists. Exhibit B to the Lowe Declaration contains a series of email communications between Lowe and prior counsel for Defendant BDI. Lowe specifically states on behalf of his client that an "arbitration provision is acceptable" and that he has "reviewed the existing arbitration agreement and would be willing to recommend to Mr. Yu that we not contest…" enforcement. Lowe Dec. Ex. B. By Plaintiff's former counsel's own words (and as expressly set forth in the tolling agreement also contained in Exhibit B), an agreement to arbitrate clearly exists.

Second, Lowe's Declaration provides no corroboration that Yu did not sign the ECIAA. Lowe states that in January 2021 he verbally told BDI's former counsel that "it was Yu's position that he had never signed the [ECIAA] or agreed to arbitration." Lowe Decl. ¶ 6. Setting aside that this contains a double layer of inadmissible hearsay and wholly contradicts its own Exhibit B, Lowe's Declaration provides no insight into the underlying facts surrounding the ECIAA's actual formation more than three years earlier: Lowe does not state that he spoke to independent witnesses, made an independent assessment, or reviewed any evidence suggesting a forgery. He instead merely regurgitates Yu's conclusory denial, which neither changes the character of the denial nor provides independent corroboration—while waiving the Attorney-Client Privilege. As such, this purported evidence is also insufficient to raise a genuine dispute on summary judgment. *Arellano v. Cnty. of San Diego*, 2020 WL 4921983, at *13 (S.D. Cal. Aug. 21, 2020) ("[E]vidence [was] insufficient to raise a genuine dispute [when] based on inadmissible hearsay in a conclusory, uncorroborated, self-serving declaration that includes facts beyond the [declarants] personal knowledge.").

Third, Yu's identification of the ECIAA's alleged "red flags"—including the lack of a page number or handwritten date accompanying some, but not all, of Yu's three handwritten signatures on the ECIAA—fails to raise a genuine issue of fact. *Oppenheimer & Co.*, 56 F.3d at 358 (finding

7
**DEFENDANTS' REPLY ISO MOTION TO COMPEL ARBITRATION**

self-serving interpretation of agreement's omission of certain language insufficient corroborating evidence to raise genuine dispute, even when paired with a direct denial).

Fourth, Chrisman's declaration similarly fails to provide the requisite corroboration. As set forth in BDI's concurrent Motion to Exclude, Chrisman's "certification" was via a truncated online course that is not recognized by either of the two accrediting bodies in the field of forensic document examination, her analysis is unprincipled and inconsistent with established authorities, and her conclusions are internally contradictory.[3] Ultimately, "experts are expected to verify the reliability of the data underlying their conclusions independently instead of simply adopting the representations of an interested party." *Baker v. Firstcom*, 2018 WL 2676636, at *2 (C.D. Cal. May. 8, 2018) (excluding "Beth Chrisman on the grounds that her methods and testimony do not comport with the legal requirements of an expert witness"). Chrisman fails to meet this expectation, thus defeating any utility derived from her "findings."

Nevertheless, should the Court find her testimony determinative of whether Yu raised a sufficiently genuine dispute over the ECIAA's formation, BDI at a minimum requests that this Court hold its decision on this issue in abeyance pending its determination of BDI's Motion to Exclude Chrisman's Declaration and accompanying Daubert hearing if needed. *Haas v. Travelex Ins. Servs. Inc.*, 2023 WL 4281248, at *3 (C.D. Cal. June 27, 2023) (finding no genuine dispute despite dueling experts where one expert was unqualified and excludable under Fed. R. Evid. 702).

Per the above, Yu has failed to satisfy his burden of lodging an adequate challenge to the formation of the ECIAA: he has failed to unequivocally deny the three separate handwritten signatures contained within the ECIAA and has simultaneously failed to provide legally sufficient corroborating evidence. As such, this Court should compel Yu's claims to arbitration, where the arbitrator can there determine threshold issues of arbitrability under the ECIAA based on its express incorporation of the AAA rules. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) ("We therefore hold that the district court did not err in concluding that these parties'

---

[3] **Note**: For a detailed assessment of the deficiencies in the Chrisman Declaration, please see Defendants' concurrently filed Motion to Exclude Expert Testimony of Beth Chrisman.

incorporation of the AAA rules constituted "clear and unmistakable" evidence of their intent to submit the arbitrability dispute to arbitration.").

### B. The Three Other Agreements Provide an Equal and Independent Basis for Compelling Yu's State Court Claims to Arbitration on the Threshold Issue of Arbitrability

Irrespective of the ECIAA, the three other agreements Yu signed provide three separate and independent ground for this Court to compel all of Yu's state court claims to arbitration and enjoin the continued litigation of the state court claims, pursuant to the authority delegated to this Court under the FAA and Convention. As such, Yu's failure to unequivocally deny the formation of those three other agreements or the enforceability of their respective delegation clauses is fatal to his challenge to Defendants' motion.

#### 1. Yu's Other Agreements and State Court Claims Are Still Squarely at Issue

Yu suggests that this Court's power to compel arbitration is limited to the ECIAA declaratory relief claim. He is wrong. Both the FAA and Convention empower federal courts to compel arbitration, even when the allegedly arbitrable claims are not immediately before it. *Prograph Int'l Inc. v. Barhydt*, 928 F. Supp. 983, 992 (N.D. Cal. 1996) (Orrick, J.) (granting employer's request under the Convention to compel former employee to arbitrate claims it had already filed against employer in a separate and concurrent state court action).

Regardless, declaratory relief actions that seek to invalidate or enjoin the enforcement of an arbitration agreement squarely place in issue the claims such actions seek to keep from arbitration. *Camp 1 Truckee LLC v. Daxko, LLC*, 2022 WL 3215075, *10 (E.D. Cal. Aug. 9, 2022) (compelling arbitration where resisting party filed a state court action seeking declaratory judgment to invalidate an arbitration agreement, after responding party removed and moved to compel arbitration of the same claims the declaratory relief action sought to guard); *Aberle Hosiery Co. v. Am. Arb. Ass'n*, 337 F. Supp. 90, 91 (E.D. Pa. 1972) (adjudicating post-removal motion to compel arbitration of claims underlying state court declaratory relief action to invalidate arbitration agreement, as motion was essentially "a counterclaim arising out of the subject matter of a plaintiff's suit"). Here, the purpose of Yu's declaratory relief action was to prevent BDI from compelling arbitration of his state court claims. Third Complaint ¶ 14 (specifically identifying

attempts to compel these claims to arbitration in separate proceedings). A finding that such state court claims are arbitrable under one or more of the other three agreements would necessarily moot Yu's declaratory relief action. *Camp 1 Truckee,* 2022 WL 3215075, at *10 (recognizing that where "the parties agreed to arbitrate arbitrability, it is entirely possible that the arbitrator will…resolve the [declaratory] dispute" over the arbitration agreement altogether by finding the underlying claims arbitrable). As such, contrary to his claims, Yu's declaratory relief action equally implicates all four of the agreements rather than just the ECIAA.

### 2. Yu Does Not Unequivocally Deny That He Entered into the Other Agreements

Because Yu's declaratory relief action implicates all four of the agreements, Yu's failure to meaningfully challenge the formation of the remaining three agreements is therefore fatal to his Opposition. Indeed, Yu fails to both unequivocally deny entering into those agreements and to present evidence substantiating any such denial. Yu's declaration fails to deny that he signed the Stock Option Award Agreement, the Undertaking Agreement, or the Patent Assignment Agreement. *Honig v. Comcast of Georgia I, LLC*, 537 F. Supp. 2d 1277, 1283 (N.D. Ga. 2008) (no unequivocal denial when the plaintiff did not deny in "an affidavit or a declaration, but instead relie[d] solely upon a conclusory statement in her brief"). His failure to deny these agreements is particularly glaring considering several HR representatives **personally witnessed his signing**. Fan Dec. ¶¶ 4-5 Wu Dec. ¶ 5. Nor does he challenge the delegation clauses within those agreements.

Rather, Yu argues that the choice-of-law provisions within those agreements (delegating Hong Kong law) render them void and unconscionable under California law. Opp. 11, n. 10. This argument fails for two reasons. First, the enforceability and scope of those agreements are reserved for the arbitrator based on their incorporation of the HKIAC rules and thus premature at this stage. *Fujitsu Semiconductor Ltd. v. Cypress Semiconductor Corp.*, 2023 WL 3852701, at *6 (N.D. Cal. June 5, 2023) (incorporation of near identical Japanese arbitration rules in Convention sufficient for delegation). Second, the Convention displaces state laws that void or render unconscionable[4]

---

[4] **Note**: Although this Circuit has yet to reach the question, other Circuits have found that unconscionability arguments as a whole are unavailable to invalidate Convention agreements at the arbitration enforcement stage. See, e.g., *Bautista v. Star Cruises*, 396 F.3d 1289, 1302 (11th Cir. 2005) (unconscionability defense unavailable because "[d]omestic defenses to arbitration are transferrable to a Convention Act case only if they fit within the limited scope of defenses

out-of-state choice-of-law or venue provisions. *See, e.g., Amizola v. Dolphin Shipowner, S.A.*, 354 F. Supp. 2d 689, 694 (E.D. La. 2004) (finding Convention preempted near identical LA statute); *MouseBelt Labs Pte. Ltd. v. Armstrong*, 2023 WL 3735997, at *7 (N.D. Cal. May 24, 2023) (finding in choice-of-law dispute that "allowing each state ... to impose its own test for threshold questions of arbitrability would create an unmanageable tangle of arbitration law in the United States, lead to forum shopping, and frustrate the uniform standards the New York Convention and Chapter 2 of the FAA were enacted to create.").

In sum, Yu's failure to challenge the formation or delegation provisions of the three other agreements provides this Court with an equal and independent basis upon which to compel arbitration of Yu's state court claims as to the threshold issue of their arbitrability.

### C. A Stay of These Proceedings and Limited Injunction of the Concurrent State Court Proceedings Is Still Warranted

In the event this Court compels less than all of Yu's state court claims to arbitration on the threshold issue of arbitrability (it should not), a stay of the remaining state court proceedings pending that determination is appropriate. Although generally discretionary, when claims are legally or factually interrelated, a stay of non-arbitrable claim is often both "proper" and "even incumbent upon the Court." *Lee v. Tesla, Inc.*, 2020 WL 10573281, at *10 (C.D. Cal. Oct. 1, 2020) (staying non-arbitrable UCL claim because "to order public injunctive relief under the … UCL … [plaintiff] must succeed on the merits of his [own] claims under those statutes"). To do otherwise would risk inconsistent judgments and inefficiencies on this Court. *Id.* at *9; *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979) (courts may consider whether "it is efficient for its own docket" to deny a stay of non-arbitrable claims pending arbitration).

Allowing Yu to continue litigating any state court claims compelled to arbitration similarly risks irreparable injury. *Prograph Int'l Inc. v. Barhydt*, 928 F. Supp. 983, 992 (N.D. Cal. 1996) (Orrick, J.) (employer "would be irreparably harmed if [the employee] were permitted to continue

---

described" in the treaty); *Rogers v. Royal Caribbean Cruise Line*, 547 F.3d 1148, 1158 (9th Cir. 2008) (citing *Bautista* with approval when holding that "[e]ven assuming unconscionability renders an agreement 'null and void' under the Convention, [the employees] ha[d] not carried their burden of establishing that the arbitration clause…is unconscionable").

litigating these claims in state court while the same claims are being arbitrated"). Yu's demonstrated history of gamesmanship confirms the risks attendant to failing to issue a stay as to his state court claims. Indeed, in his various claims against BDI, Yu has withdrawn his own request for a temporary stay of the state court proceedings upon BDI's removal of the instant action; thereafter refused to stipulate to a stay in the state court proceedings, forcing Defendant Gao to file a motion for temporary stay; filed a non-opposition styled as an "opposition" in response to the motion for stay; and "reserved the right to challenge any future request to stay the state court action." Opp. 13, n. 8. Such gamesmanship and its attendant risks weigh heavily in favor of this Court granting a stay should any state court claims not be compelled to arbitration.[5]

## III.   CONCLUSION

As set forth above, Yu has utterly failed to place the ECIAA's formation sufficiently "in issue" under Section 4 of the FAA; therefore, this Court should compel Yu's state court claims to arbitration on the threshold issue of their arbitrability under the ECIAA. This Court should also concurrently stay both this and the concurrent state court proceeding pending that arbitrable determination. Alternatively, even if the Court finds that Yu has raised a sufficient factual dispute under the ECIAA (he has not), the three other agreements provide an equal and independent basis upon which the Court should grant the requested relief.

Dated: October 27, 2023

GREENBERG TRAURIG, LLP

By: _____
Charles O. Thompson
David Bloch
Melissa Kendra
Anthony E. Guzman II

Attorneys for Defendant
BYTEDANCE INC.

---

[5] **Note**: Yu also argues in a footnote that this court lacks the power to enjoin him from proceeding in state court based on the Anti-Injunction Act. Not only does this argument lack citation, it is legally wrong. *Americana Fabrics, Inc. v. L & L Textiles, Inc.*, 754 F.2d 1524, 1527 (9th Cir. 1985) (enforcing order rejecting argument that federal court "had no power to stay a previously filed action in a California court…because the Anti-Injunction Act, 28 U.S.C. § 2283, forbids a district court from staying a pending state court proceeding.").

| | | |
|---|---|---|
| Dated: October 27, 2023 | | LITTLER MENDELSON, P.C. |
| | By: | /s/Demery Ryan |
| | | Gregory Iskander |
| | | Demery Ryan |
| | | David Maoz |
| | | Attorneys for Defendant |
| | | SHUYI (SELENE) GAO |

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(I)(3)**

I, Charles Thompson, hereby attest, pursuant to N.D. Cal. Civil Local Rule 5-1, that the concurrence to the filing of this document has been obtained from Demery Ryan, signatory hereto.

Dated: October 27, 2023

GREENBERG TRAURIG, LLP

By: /s/ *Charles Thompson*
Charles Thompson

Attorneys for Defendant
BYTEDANCE INC.

**DEFENDANTS' REPLY ISO MOTION TO COMPEL ARBITRATION**