CHARLES H. JUNG (217909)
(charles@njfirm.com)
JAIME DORENBAUM (289555)
(jaime@njfirm.com)
PAGE R. BARNES (154539)
(page@njfirm.com)
NASSIRI & JUNG LLP
1700 Montgomery Street, Suite 207
San Francisco, California 94111
Telephone:  (415) 762-3100
Facsimile:   (415) 534-3200

Attorneys for Plaintiff
YINTAO YU

CHARLES THOMPSON, State Bar No. 139841
thompsoncha@gtlaw.com
DAVID BLOCH, State Bar No. 184530
david.bloch@gtlaw.com
MELISSA KENDRA, State Bar No. 291905
melissa.kendra@gtlaw.com
ANTHONY E. GUZMAN II, State Bar No. 311580
guzmanan@gtlaw.com
GREENBERG TRAURIG, LLP
101 Second Street, Suite 2200
San Francisco, California 94105
Telephone: 415.655.1300
Facsimile: 415.707.2010

Attorneys for Defendant
BYTEDANCE INC.

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| YINTAO YU, an individual,<br><br>                    Plaintiff,<br><br>    v.<br><br>BYTEDANCE, INC., a Delaware Corporation; SHUYI (SELENE) GAO, an individual,<br><br>                  Defendants. | Case No. 3:23-cv-04910-SI<br><br>**JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER**<br><br>**Date:**     January 12, 2024<br>**Time:**    2:30 p.m.<br>**Location:**  Public Hearing Zoom Webinar<br><br>*State Court Action Filed: September 5, 2023*<br>*Removed: September 25, 2023* |

# ADDITIONAL COUNSEL

GREGORY ISKANDER, State Bar No. 200215
giskander@littler.com
DEMERY RYAN, State Bar No. 217176
dryan@littler.com
LITTLER MENDELSON, P.C.
2049 Century Park East, 5th Floor
Los Angeles, California 90067
Telephone: 310.553.0308
Facsimile: 800.715.1330

Attorneys for Defendant
SHUYI (SELENE) GAO

DAVID S. MAOZ, State Bar No. 233857
dmaoz@littler.com
LITTLER MENDELSON, P.C.
Treat Towers 1255 Treat Boulevard, Suite 600
Walnut Creek, California 94597
Telephone: 925.932.2468
Facsimile: 925.946.9809

Attorneys for Defendant
SHUYI (SELENE) GAO

Plaintiff YINTAO YU ("Plaintiff" or "Yu") and Defendants BYTEDANCE INC. ("BDI") and SHUYI (SELENE) GAO ("Gao") (collectively, Defendants"), by and through their respective counsel of record, jointly submit this JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER pursuant to the *Standing Order for All Judges of the Northern District of California* and Civil Local Rule 16-9. As this is a joint statement, the Parties specifically do not admit any statements made herein as admissions of fact, and reserve the right to object to, oppose, etc., all positions taken by the other parties.

## I. JURISDICTION AND SERVICE:

This Court has original jurisdiction over Plaintiff's complaint under 28 U.S.C. § 1331 and 9 U.S.C. §§ 203 and 205 because it is "[a]n action or proceeding falling under the Convention" and is therefore "deemed to arise under the laws and treaties of the United States." 9 U.S.C. § 203.

There have been no issues regarding personal jurisdiction. Defendants dispute venue based on their pending motion to compel arbitration, which seeks an arbitrable rather than judicial venue for the dispute. The Parties are unaware of any additional parties that remain to be served.

## II. FACTS:

**Plaintiff's Position:** From August 2017 to November 2018, Plaintiff Yintao Yu worked as the head of engineering for the U.S. offices of ByteDance., Inc. ("ByteDance"). On his first day at ByteDance, on or around August 30, 2017, Plaintiff was shown to a small conference room at ByteDance's Beijing headquarters. Plaintiff was presented with documents to sign. Plaintiff denies he was presented with an "Employee Confidentiality Inventions and Assignment Agreement" ("ECIAA"). Plaintiff further denies that he ever signed the ECIAA.

After Plaintiff's employment ended in November 2018, Plaintiff brought claims against ByteDance and Defendant Shuyi (Selene) Gao. Plaintiff's current operative complaint against ByteDance and Gao in Case No. CGC-23-606246 was filed in San Francisco Superior Court on

May 12, 2023 ("State Court Case"). After removing the litigation to federal court, ByteDance and Gao immediately filed a motion to compel arbitration.

In support of their motion to compel arbitration, ByteDance and Gao submitted the ECIAA. Having reviewed the ECIAA, Plaintiff is confident that this is not a document he signed and that the arbitration agreement contained on page 11 of the ECIAA was not included in any document that he signed. Plaintiff never signed any document from ByteDance with the title ECIAA, nor did ByteDance ever present any documents titled ECIAA with an arbitration provision to him for signature.

ByteDance and Gao maintain that Plaintiff signed the ECIAA and have sought to compel arbitration of the pending State Court Case. Thus, an actual controversy relating to the legal rights and duties of the respective parties has arisen and now exists between Plaintiff, ByteDance, and Gao concerning whether Plaintiff executed the form ECIAA agreement proffered by Defendants. Plaintiff seeks a declaration that he did not execute the form ECIAA proffered by Defendants. Plaintiff also seeks an injunction prohibiting ByteDance and Gao from seeking to enforce the form ECIAA against him.

**Defendants' Position:** BDI is a U.S. company that supports mobile social, media, and entertainment platforms in the U.S. In 2017, an affiliate of BDI acquired a video editor and music platform called Flipagram. In June 2017, BDI offered Yu the position of Head of Engineering for Flipagram.[1] Among other things, the offer agreed to provide Yu with a conditional grant of 220,000 stock options in BDI's non-U.S. affiliate holding company and parent company, ByteDance Ltd. ("BDL"), and a $600,000 acquisition payment for certain intellectual property connected to Yu's own company, Tank Exchange.

---

[1] **Note**: Contrary to Plaintiff's representation, Yu was the Head of Engineering only for Flipagram. At no point was Yu ever the Head of Engineering for BDI.

In furtherance of this offer, Yu executed several separate agreements, including an Employee Confidentiality and Inventions Assignment Agreement ("ECIAA"), a Stock Option Award Agreement ("Option Agreement"), a Patent Assignment Agreement ("Patent Agreement"), and an Undertaking Agreement—all containing arbitration clauses. The ECIAA requires binding arbitration in the U.S. pursuant to the American Arbitration Association ("AAA") rules for any disputes, controversies or claims arising out of, relating to, or resulting from Yu's employment. The Option Agreement, Patent Agreement, and Undertaking Agreement alternatively require binding arbitration in Hong Kong pursuant to the Hong Kong International Arbitration Center ("HKIAC") rules for any disputes, controversies, or claims arising out of or relating to their respective terms. Yu executed these agreements in Beijing, China in August and September 2017 as part of his onboarding with BDI.

In or around March 2018, a reduction in force ("RIF") of Flipagram's engineering and business development teams was formally announced, which affected seventeen employees in total, including Yu.  Thereafter—but, curiously, on the same day—BDI received an email purportedly from Yu's father in China, claiming that Yu had suddenly taken ill and required leave. In deference to his alleged illness, BDI postponed Yu's layoff until July 2018.

Yu has since filed three separate suits in San Francisco Superior Court that were all removed to the Northern District of California, including: (1) a Complaint filed in November 2022 that this Court dismissed without prejudice after Yu failed to respond to BDI's motion to compel arbitration; (2) a Complaint and Amended Complaint filed in May 2023 that this Court remanded after dismissing the properly removed federal copyright components of Yu's claims, which is now stayed; and (3) the immediate declaratory relief action related to Yu's agreement to arbitrate his claims against Defendants.

III. LEGAL ISSUES:

**Plaintiff's Position:** Plaintiff believes that key issues have been raised in the parties' respective briefing on Defendants' Motion to Compel Arbitration, at the hearing on the same held on December 1, 2023, and in the Court's Order dated December 8, 2023 (ECF No. 38). The parties have also identified certain legal issues regarding cross-border discovery that may arise. On December 22, 2023, the parties met and conferred regarding a discovery plan. During the meet and confer, the parties discussed potential legal issues relating to the taking of depositions for key witnesses residing in China, including but not limited to whether Chinese nationals may be deposed, and if so, when and where those depositions may take place. Also, as discussed further below, Plaintiffs have identified certain concerns regarding evidence preservation that they will raise as this case proceeds.

**Defendants' Position:** Defendants anticipate the following legal issues with respect to their pending motion to compel arbitration:

- Whether Yu has clearly and unequivocally denied the physical signatures on the various arbitration agreements so as to sufficiently place their formation in issue, and whether this outcome changes if Yu's handwriting expert is excluded under *Daubert* or the Federal Rules of Evidence;

- Whether Yu has sufficiently manifested assent to the Undertaking Agreement irrespective of whether it lacks his physical signature;

- Whether the Parties clearly and unmistakably delegated the threshold questions of arbitrability under the various arbitration agreements by incorporating either the AAA or HKIAC rules;

- Whether Yu's claims are arbitrable under the Option Agreement, Patent Agreement, and/or Undertaking Agreement, irrespective of whether he executed

-4-

the ECIAA;

- Whether Yu's claims can be compelled to arbitration based on his execution of the Patent Agreement as CEO of his former company, Tank Exchange, when the Parties executed the agreement pursuant to Yu's personal BDI employment offer.

The above list is limited to the issues relevant to Defendants' motion to compel arbitration and, by extension, its counterclaim for declaratory relief under the ECIAA, Option Agreement, Patent Agreement, and Undertaking Agreement. Defendants may discover new and additional issues for identification as litigation continues.

IV.  **MOTIONS:**

**Plaintiff's Position:** Plaintiff anticipates filing dispositive motions and, if necessary, discovery motions as discussed further below. Plaintiff also anticipates filing trial-related motions such as motions in limine.

**Defendants' Position:** Defendants' anticipated motions depend on the outcome of this Court's decision on the pending motion to compel arbitration. In the event the Court denies this motion in favor of an FAA jury trial, Defendants anticipate filing discovery motions as disputes arise, as well as a motion to exclude Plaintiff's handwriting expert under *Daubert* and the Federal Rules of Evidence and any and all other relevant pre-trial motions in limine.

V.  **AMENDMENT OF PLEADINGS:**

The Parties do not currently anticipate amending the pleadings.

VI.  **EVIDENCE PRESERVATION:**

**Plaintiff's Position:** On December 22, 2023, the parties met and conferred regarding their discovery plan. During that meeting, Plaintiff learned that ByteDance appears to have failed to adequately preserve evidence relating to this case. As early as January 2021 when ByteDance and Plaintiff entered into a tolling agreement regarding the dispute that is subject to the pending State

Court Case, and likely much earlier, ByteDance should have been aware that litigation with Plaintiff relating to his employment with the company was likely. Further, ByteDance must have known that it likely possessed information relevant to that probable litigation, such as Plaintiff's emails and work files. During the recent meet and confer, however, ByteDance represented that it had located less than 100 emails from Plaintiff's mailbox. ByteDance represented it had conducted searches of Plaintiff's email to determine whether he had been sent or sent drafts of the agreements at issue in the Motion to Compel Arbitration briefs. Plaintiff sent and received significantly more emails to and from his ByteDance account when he worked there. This discrepancy suggests that ByteDance has failed to preserve evidence in compliance with its obligations. If that is the case, Plaintiff will have been prejudiced in his ability to present his claims and would likely seek a negative inference regarding the spoliation of evidence.

The parties also met and conferred regarding Plaintiff's evidence. On November 2, 2023, ByteDance, for the first time, requested Plaintiff return his ByteDance-issued work computer dating back to 2018 when Plaintiff worked for ByteDance. Nonetheless, a thorough search was conducted to locate the computer referenced. It was not located. As far as Plaintiff is aware, ByteDance's untimely request is the first time ByteDance has requested that Plaintiff return any computer the company says was issued to him. Accordingly, ByteDance has waived any rights or claims to any purported computer. Plaintiff is aware of his preservation obligation, and has taken the appropriate steps to preserve evidence.

**Defendants' Position:** Yu has likely engaged in several aspects of evidence spoliation:

- Yu acknowledges that he can no longer locate the BDI-issue laptop he failed to return following his termination. This laptop is believed to have contained evidence that Yu in fact executed the relevant agreements at issue, such that its unexplained "misplacement" should therefore entitle Defendants to adverse evidentiary

inferences. Contrary to Plaintiff's allegation, BDI requested the return of Yu's company issued laptop on several occasions, including as part of the separation documentation emailed and mailed to him on July 27, 2018. Yu also agreed to return the laptop on several occasions, including as part of his original offer letter signed on June 7, 2017.

- Yu has not identified the location or condition of the packaging from an "anonymously" sent delivery he allegedly received, which included a thumb drive containing private recordings between BDI and its attorneys over privileged matters. Absent sufficient sequestration and preserved storage, Defendants will likely have no way to identify potential fingerprints, sender addresses or other indicia that would otherwise disclose whether Yu (or another identifiable actor) engaged in unlawful surveillance of BDI's private phone lines.

Separately, Plaintiff's allegation of spoliation by Defendants is baseless and misinterprets the contents of the meet-and-confer conversations on December 22, 2023. For clarity of record, Defendants represented that they have thus far located less than 100 emails ***sent from*** Yu's work email account during his employment, not "to or from." Despite this, Defendants represented that they had not completed their search and that the majority of communication within BDI generally occurred through its internal company messaging system, Lark—a system that is currently being searched but from which Defendants have not yet received the results. Defendants continue to abide by their preservation obligation as they always have.

VII. DISCLOSURES:

The Parties have stipulated to timely serve their Rule 26(f) disclosures on January 19, , 2024.

## VIII. DISCOVERY:

The Parties have conducted their Rule 26(f) meet-and-confer conference and exchanged their respective initial disclosures. The Parties have not conducted formal discovery. Plaintiff served written discovery demands and a notice of deposition in the State Court Case. As that matter has been stayed, however, there has been no exchange of formal discovery in that matter either.

The Parties anticipate limiting discovery to the issues raised in this matter, including whether Plaintiff executed or otherwise entered into any of the agreements for which this Court sets a jury trial and whether those agreements cover the Parties and claims at issue. Limiting discovery in this manner will promote efficiency and expedite the narrow disputes in this case. The Parties have met and conferred about producing documents and communications, taking depositions, and conducting expert discovery on these issues. While the Parties have not entered a stipulated e-discovery order, they have developed a proposed discovery plan framework, as outlined below in Section XV.

With respect to potential discovery disputes, the Parties submit the following respective statements.

**Plaintiff's Position:** As discussed above in Section VI, Plaintiff anticipates that there may be a dispute regarding the alleged spoliation of evidence by BDI.

The parties have also discussed a potential issue related to evidence anonymously sent to Plaintiff, which BDI claims contains privileged attorney-client communications. Plaintiff has preserved the thumb drive containing the disputed evidence. Plaintiff has sequestered the subject evidence and has not reviewed its contents since BDI's assertion of privilege. Plaintiff believes the evidence should be reviewed by a neutral third-party to decide whether the evidence is privileged and whether it contains information relevant to his claim for declaratory relief.

Plaintiff has also raised concerns that ByteDance has not produced the supplemental

employment agreement he signed. ByteDance has claimed the supplemental agreement is reflected in the unsigned Undertaking Agreement. But the unsigned Undertaking Agreement is not the supplemental agreement that Plaintiff signed.

At this time, Plaintiff is not aware of other potential discovery disputes, which he intends to raise.

**Defendants' Position:** Apart from the spoliation issue identified in Section VI, Defendants anticipate potential discovery disputes regarding:

- The location, time, and method of certain international depositions;
- Limitations on international depositions based on their anticipated undue expense and burden;
- The anticipated burden and expense associated with the translation of extensive document and communication productions originally in Mandarin;
- The forensic imaging of Yu's phones, tablets, laptops, and other personal devices;
- The production and forensic imaging of the "anonymously" sent thumb drive containing, potentially among other things, the unlawfully recorded and privileged phone conversations between BDI and its counsel. Yu should continue to sequester this drive and immediately provide the same to Defendants' chosen third-party for forensic imaging. Defendants may then produce any relevant non-privileged information contained thereon, as well as an accompanying privilege log;
- The identification and deposition of the allegedly "anonymous" witnesses to the signed Undertaking Agreement that Plaintiff represented as existing but whom Plaintiff has not identified.

Defendants may discover new and additional issues for identification as litigation continues.

**IX.    CLASS ACTIONS:**

Not applicable.

**X.    RELATED CASES:**

The pending State Court Case (Case No. CGC-23-606246 filed in San Francisco Superior Court on May 12, 2023) that this Court previously remanded to the state court has been stayed by that Court pending the outcome of Defendants' Motion to Compel Arbitration. If the Court grants the Motion, the State Court Case will remain stayed until arbitration is completed.

**XI.    RELIEF:**

**Plaintiff's Relief:** Plaintiff seeks a declaratory judgment that he did not execute the ECIAA. Plaintiff also seeks an injunction prohibiting Defendants from seeking to enforce the ECIAA against him.

**Defendants' Relief:** Defendants seek: (1) a declaratory judgment that Yu entered into the ECIAA, Option Agreement, Patent Agreement, and Undertaking Agreement; (2) a declaratory judgement and/or order compelling Yu to arbitration on either the merits or arbitrability of his state court claims under any of the various agreements; and (3) a declaratory judgment and/or order enjoining Yu from filing or otherwise continuing to litigate any state court claims compelled to arbitration in state court or any other judicial forum.

**XII.    SETTLEMENT AND ADR:**

The Parties have each submitted their respective ADR forms pursuant to L.R. 3-5 and complied with their requirements. Further, prior to initiating this litigation, Plaintiff and BDI engaged in pre-litigation mediation on several occasions. Since those mediation conferences, there have been no additional efforts to settle or pursue ADR other than Defendants' efforts to compel arbitration.

**Plaintiff's Position:** Plaintiff is not amenable to voluntarily submitting to arbitration. As

Plaintiff has repeatedly maintained before this Court, his position is the parties never agreed to arbitrate this dispute. However, Plaintiff believes the parties' previous mediations were productive until they were abruptly deserted. Plaintiff would be willing to resume informal mediation subject to Defendants withdrawing their pending Motion to Compel Arbitration without prejudice.

**Defendants' Position:** Defendants are amenable to resolving the claims through arbitration, as already mutually agreed upon by the Parties. Based on Yu's conduct to date, Defendants believe this avenue is possible only through an order by this Court compelling the same.

XIII. **OTHER REFERENCES:**

**Plaintiff's Position:** This case is properly before this Court and should not be referenced to binding arbitration for the reasons argued in opposition to Defendants' Motion to Compel Arbitration.

**Defendants' Position:** This Court should compel arbitration pursuant to any of the variously submitted agreements and the arbitration clauses therein, as requested through Defendants' motion to compel arbitration.

XIV. **NARROWING OF ISSUES:**

The Parties have not discussed ways to further narrow the issues for trial. However, should the Court retain jurisdiction over the matter for purposes of a jury trial, the Parties will explore ways to narrow the presentation of issues for trial.

XV. **SCHEDULING:**

**Plaintiff's Position:**

- Document production and any Written Discovery to be completed by March 15, 2024.

- Depositions of fact witnesses to be completed by May 17, 2024.

- Fact Discovery cut-off May 17, 2024
- Expert discovery cut-off June 28, 2024.
- Trial: Early August 2024

**Defendants' Position:**

- Written Discovery Completed:         April 1, 2024
- Fact Witness Depositions Completed:  June 1, 2024
- Expert Discovery Cut Off:            July 1, 2024
- Trial:                               Early August 2024

## XVI. Trial:

**Plaintiff's Position:** Pursuant to 9 U.S.C. § 4, Plaintiff has requested a jury trial to decide whether he executed the ECIAA. Plaintiff anticipates that a jury trial may take 3 days but in an abundance of caution would request the Court reserve 5 days for a jury trial, which would include the time for hearing pre-trial motions and jury selection.

**Defendants' Position:** Defendants maintain that Yu has failed to place the formation of the ECIAA, Option Agreement, Patent Agreement, and Undertaking Agreement in issue for the purposes of any jury trial under the FAA. This Court may therefore resolve the issue on the papers. If set for an FAA jury trial, Defendants agree with a three (3) to five (5) day trial estimate, depending on the number of agreements then at issue.

## XVII. Disclosure of Non-party Interested Entities or Persons:

The Parties are unaware of conflicts or any other interested parties as defined in L.R. 3-15.

## XVIII. Professional Conduct:

Counsel for the Parties have reviewed the Guidelines for Professional conduct for the Northern District of California.

**XIX. OTHER:**

None.

DATED: January 5, 2024                  NASSIRI & JUNG LLP


By: /s/ *Jaime Dorenbaum*

Jaime Dorenbaum
Attorneys for Plaintiff
YINTAO YU


DATED: January 5, 2024                  GREENBERG TRAURIG, LLP


By: /s/ *Anthony E. Guzman II*

Charles Thompson
David Bloch
Melissa Kendra
Anthony E. Guzman II
Attorneys for Defendant
BYTEDANCE INC.


DATED: January 5, 2024                  LITTLER MENDELSON, P.C.


By: /s/ *Demery Ryan*

Gregory Iskander
Demery Ryan
David S. Maoz
Attorneys for Defendant
SHUYI (SELENE) GAO

## ATTESTATION

Pursuant to Civil Local Rule 5-1(i)(3) regarding signatures, I attest that concurrence in the filing of this document has been obtained from the other signatories.

DATED: January 5, 2024

NASSIRI & JUNG LLP

By: */s/ Jaime Dorenbaum*

Jaime Dorenbaum
Attorneys for Plaintiff
YINTAO YU

**[PROPOSED] CASE MANAGEMENT ORDER**

The above JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER is approved as the Case Management Order for this case and all parties shall comply with its provisions. [In addition, the Court makes the further orders stated below:]

**IT IS SO ORDERED.**

Date: _____

                                         HON. SUSAN ILLSTON
                                  UNITED STATES DISTRICT JUDGE
                                  NORTHERN DISTRICT OF CALIFORNIA