CHARLES H. JUNG (217909)
(charles@njfirm.com)
JAIME DORENBAUM (289555)
(jaime@njfirm.com)
NASSIRI & JUNG LLP
1700 Montgomery Street, Suite 207
San Francisco, California 94111
Telephone:  (415) 762-3100
Facsimile:   (415) 534-3200

Attorneys for Plaintiff
YINTAO YU

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YINTAO YU, an individual,<br><br>Plaintiff,<br><br>v.<br><br>BYTEDANCE, INC., a Delaware Corporation; SHUYI (SELENE) GAO, an individual,<br><br>Defendants.<br>_____<br>BYTEDANCE, INC., a Delaware Corporation,<br><br>Counterclaimant,<br><br>v.<br><br>YINTAO YU, an individual,<br><br>Counter-Defendant. | Case No. 3:23-cv-04910-SI<br><br>**PLAINTIFF/COUNTER-DEFENDANT YINTAO YU'S NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE A MOTION FOR RECONSIDERATION OF ORDER RE: DISCOVERY (ECF NO. 78)**<br><br>*State Action Filed:  September 5, 2023*<br>*Removed:              September 25, 2023*<br>*Trial Date:            November 18, 2024* |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**NOTICE IS HEREBY GIVEN** that Plaintiff/Counter Defendant Yintao Yu ("Plaintiff" or "Mr. Yu") will and hereby does move for leave of Court pursuant to Civil Local Rule 7-9 to file a Motion for Reconsideration of the Court's Order Re: Discovery dated May 3, 2024 (the "Order") (ECF No. 78). Plaintiff's Motion for Leave is based on material facts which were not presented to the Court prior to the Order, and a manifest failure to consider material facts. *See* Civil L.R. 7-9(b)(1), (b)(3). Plaintiff brings this Motion to protect the identity of anonymous Declarant. Without reconsideration, ByteDance has demonstrated it may retaliate against the Declarant. Indeed, the Declarant ███████████████████████████████████████████.

The Declarant's ██████ is supported by ByteDance's retaliation against Mr. Yu and others. ByteDance wrongfully terminated Mr. Yu for raising concerns about the company's unlawful conduct. And the company has continued to intimidate Mr. Yu since he filed his underlying lawsuit. The company sent a private investigator to his acquaintance's out-of-state home to contact Plaintiff, apparently launched cyberattacks against Plaintiff and his lawyer, and has repeatedly filed irrelevant but private information on the public docket to try to embarrass Mr. Yu. In addition to this, ByteDance has previously admitted that it spied on journalists to identify internal leakers. One internal whistleblower comes forward with information that his father living in China was detained by the Chinese national police in retaliation for an interview the whistleblower gave about and criticizing ByteDance's censorship practices. Thus, the Court should grant leave to consider whether the Declarant's identity should be protected.

//

//

//

//

//

//

//

1  This motion is based on this Notice of Motion and Motion, the Memorandum of Points and

2  Authorities and declarations filed herewith, the pleadings and papers on file in this action, and upon

3  such other evidence or argument as may be presented to the Court at the time of the hearing.

4

5  DATED: May 21, 2024                          Respectfully submitted,
                                                NASSIRI & JUNG LLP
6

7                                    By:    /s/ Jaime Dorenbaum

8  _____

9                                            Jaime Dorenbaum
                                             Attorneys for Plaintiff/Counter-Defendant
10                                           YINTAO YU

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The Court should grant leave to reconsider whether unmasking the Declarant's identity poses a risk to their safety and well-being. There is significant evidence that it does.

First, there are the Declarant's ███████████. The Declarant ████████████ ████████████████████████████████████. Even now, the Declarant is not coming forward, demonstrating that a credible fear remains. This fear is not diminished ████ █████████████████████████████████████████████████ ███████████████████, the Declarant understood that supporting a position contrary to ByteDance invites retaliation.

Second, there is ByteDance's retaliation against others. ByteDance whistleblowers, particularly those residing in China, face serious risks to their safety and well-being. In one instance detailed below, ByteDance worked with China's state police to detain a family member of a ByteDance whistleblower. This is in addition to the retaliation that Plaintiff experienced first-hand, as detailed in the underlying state court case. (State Court Complaint, Case No. 3:23-cv-03503 (N.D. Cal.) at ECF No. 1-3.) This retaliation has continued since Plaintiff filed the underlying case. In May 2023, when the news of the underlying state court case broke in the New York Times, Mr. Yu and his counsel experienced alarming and anomalous activity on their electronic devices consistent with an intrusion. When confronted with the allegation, ByteDance did not deny the intrusion (stating "you are not the Court and therefore are not entitled to make demands, . . ."). In August 2023, while Mr. Yu was represented by counsel, ByteDance or its counsel deployed a private investigator out of state to harass Mr. Yu's acquaintance from college. Since then, ByteDance's counsel has repeatedly and improperly filed confidential information about Mr. Yu, including his Social Security number and USCIS identification number, on the public docket. ByteDance's counsel has done this several times despite being made aware of these violations. Thus, neither ByteDance nor its counsel should be entrusted with the sensitive information about the Declarant's identity.

To be sure, Plaintiff was previously aware of a risk to the Declarant's safety. But Plaintiff

did not meaningfully brief the issue for fear that doing so would breach the mediation privilege and Plaintiff's contractual obligations to maintain confidentiality. Plaintiff also was concerned about disclosing any information that could lead to the identification of the Declarant. Plaintiff hereby seeks to explain more fully the true risk posed to the Declarant.

Further, since filing his opposition statement, Plaintiff has become aware of other instances where ByteDance retaliated against whistleblowers in a manner that risked the physical safety of those whistleblowers or those close to them. These facts show that the Declarant's personal safety and well-being are at risk unless the Court reconsiders its Order. For this reason, Plaintiff respectfully requests the Court grant leave to reconsider.

## II.    FACTS

### A.    The Declarant's ███████ to Remain Anonymous

The Declarant's ████████████████████████████████████████
████. The Declarant ████████████████████████████████████████
████████████. ██████████████████████████████████████
██████████████████ ████████████████████████████████████
███████████████████████████. (Declaration of Yintao Yu, filed concurrently, at Ex. A ("Yu Decl.").)

### B.    ByteDance's Retaliatory Practices

When it comes to stifling dissent, ByteDance is no ordinary company. As both government officials and employees have noted, the company has a tight relationship with the Chinese Communist Party ("C.C.P.") and has taken extraordinary and retaliatory measures against whistleblowers and dissenters. (*See* Declaration of Charles Jung, filed concurrently ("Jung Decl."), Ex. E, Press Release, U.S. Senator Ron Wyden, Wyden Statement on Aid to Israel and Ukraine, Crackdown on Fentanyl Trafficking and TikTok Divestment Legislation (Apr. 24, 2024) ("I believe there is a legitimate security risk caused by TikTok's relationship to its China-based corporate parent").)

ByteDance's close relationship with the C.C.P. has facilitated state repression and reprisals

on the company's whistleblowers. That was the experience of ██████. ██████'s father was

detained by the Chinese state police after ████ gave an interview to the European press in

which he confirmed ByteDance's censorship practices and criticized the company.[1]   While ██

████'s father was being detained, the national police demanded ██████ retract his statements to

the press. The police also threatened ██████ to "keep his mouth shut." As a result, ██████ is

afraid to return to China. And his father's detention has traumatized the family.[2] (Declaration of

██████, filed concurrently, ¶¶ 2-14 ("████ Decl.").)

ByteDance already has retaliated against individuals in this case via acts of intimidation.

First, Mr. Yu and his counsel each experienced intrusions on their electronic devices the days after

the underlying lawsuit was reported in The New York Times. (Yu Decl. ¶¶ 2-8; Jung Decl. ¶¶ 2-6,

Ex. A.) ByteDance has a documented history of conducting cyber-surveillance of employees and

journalists to identify corporate whistleblowers. Cecilia Kang, *ByteDance Inquiry Finds Employees*

*Obtained User Data of 2 Journalists*, THE NEW YORK TIMES (Dec. 22, 2022),

https://www.nytimes.com/2022/12/22/technology/byte-dance-tik-tok-internal-investigation.html

(attached as Jung Decl. Ex. F); Emily Baker-White, *TikTok Parent ByteDance Planned To Use*

*TikTok To Monitor The Physical Location Of Specific American Citizens*, FORBES (Oct. 20, 2022

3:24 PM), https://www.forbes.com/sites/emilybaker-white/2022/10/20/tiktok-bytedance-

surveillance-american-userdata/?sh=5c437cd16c2d (attached as Jung Decl. Ex. G); Ken Dilanian &

Rebecca Shabad, *The DOJ and FBI Are Investigating TikTok Over Allegations That Employees*

---

[1] Chinese detention facilities are notorious for employing torture techniques such as beatings, sleep deprivation, being forced into painful positions for long periods, and withholding food, water, or medication. *See Amnesty: Chinese Police Use Torture to Extract Confessions*, VOICE OF AMERICA, (Nov. 12, 2015 7:56 AM) https://www.voanews.com/a/report-finds-chinese-police-using-torture-to-extract-confessions/3054494.html (last visited May 21, 2024) (attached as Jung Decl. Ex. H); *see also Torture in China: Who, What, Why and How*, AMNESTY INTERNATIONAL (Nov. 11, 2015) https://www.amnesty.org/en/latest/campaigns/2015/11/torture-in-china-who-what-why-and-how (last visited May 21, 2024) (attached as Jung Decl. Ex. I).
[2] Since 2020, in the U.S. District Court for the Eastern District of New York, over 40 Chinese national police from the Ministry of Public Security (MPS) were charged by the U.S. Department of Justice, for harassment and intimidation conduct. Those charged Chinese national police were from the same agency who detained ██████'s father and intimidated his family. *See U.S. v. Bai, et al.*, Case No. 1:23-mj-00334-SJB (E.D.N.Y. 2023); *U.S. v. Jin, et al.*, Case No. 1:20-mj-01103-RER (E.D.N.Y. 2020).

1   *Spied on Journalists*, NBC NEWS (Mar. 17, 2023), https://www.nbcnews.com/politics/justice-

2   department/doj-fbi-are-investigating-tiktok-allegations-employees-spied-journalis-rcna75497

3   (attached as Jung Decl. Ex. B). When confronted with the allegation that ByteDance launched

4   cyberattacks against Plaintiff and individuals associated with him, ByteDance's counsel did not

5   deny the allegation. (*See* Jung Decl. Ex. D.)

6          Second, ByteDance sent a private investigator to the out of state residence of a former

7   acquaintance of Plaintiff's in August 2023. The investigator, Rick Bourns of Holmes Risk

8   Management in Washington state, appeared at the acquaintance's home, trespassing onto his

9   property and going upstairs to the acquaintance's apartment. Bourns left a business card with a

10  handwritten note saying, "Please call 206-[XXX-XXXX]."  The acquaintance called Bourns the

11  same day. On the call, Bourns said ByteDance hired him to locate Mr. Yu and asked the

12  acquaintance to have Plaintiff call Bourns directly. The acquaintance alerted Plaintiff of Bourns'

13  visit and his request to talk to Plaintiff. (Declaration of Yinchu Xia, filed concurrently, ¶¶ 3-12 ("Xia

14  Decl.").) Mr. Yu was represented by counsel at the time of this contact. It's difficult to explain this

15  unusual attempt at an *ex parte* communication with Mr. Yu through an out of state acquaintance was

16  plainly an intimidation tactic.[3] The message was that ByteDance could and would pressure Mr. Yu

17  via anyone he ever interacted with, no matter how close they remained to Plaintiff.

18         Third, ByteDance and its counsel have repeatedly failed to maintain confidentiality when

19  required to do so. ByteDance's counsel filed a declaration on the public docket disclosing Plaintiff's

20  Social Security number and USCIS identification number, among additional irrelevant and private

21  information aimed at embarrassing Plaintiff. (*See* ECF No. 14-2 at 65-66; Case No.  3:23-cv-03503

22  (N.D. Cal.) at ECF No. 27-3.) ByteDance's counsel also filed a confidential settlement

23  communication twice, which it selectively redacted to obscure the fact that the communication was

24  stamped "PRIVILEGED AND CONFIDENTIAL FOR SETTLEMENT PURPOSES ONLY" (ECF

25  No. 52-4 at 1; Underlying Action, Case No. 23-cv-03503-SI (N.D. Cal.) at ECF No. 26-2.) More

---

[3] ByteDance's counsel did not claim responsibility for hiring Bourns when confronted with information about the private detective. (*See* Jung Decl. Ex. D ("Because the August 30 letter contains no allegation of wrongdoing, there is nothing for us to respond to").)

recently, ByteDance's counsel filed its reply in support of its discovery statement on the public

docket even though the Court had granted Plaintiff's request to seal the matter. (*See* ECF Nos. 77 &

77-1.) This required the Court's staff to remove the filing from the public docket.

### III.    ARGUMENT

ByteDance has demonstrated that it will work with the C.C.P. to silence critics, that it will

terminate insiders who voice legitimate concerns, and it will intimidate individuals associated with

those insiders. Thus, the Court should grant leave to consider the risk posed by exposing the

Declarant's identity to ByteDance.

### A.    The Court Should Grant Leave Under Local Rule 7-9.

A district court "has the inherent power to reconsider and modify its interlocutory orders

prior to the entry of judgment . . . ." *U.S. v. LoRusso, et al.,* 695 F.2d 45, 53 (2d Cir. 1982). Pursuant

to Civil L.R. 7-9, a party may move for leave to file a motion for reconsideration if "a material

difference in fact or law exists from which was presented to the Court before entry of the

interlocutory order" and the party moving for leave can shows "that in the exercise of reasonable

diligence the party applying for reconsideration did not know such fact or law at the time of the

interlocutory order. Civil L.R. 7-9(b)(1). Alternatively, a party may move for leave to file a motion

for reconsideration in the event of a "manifest failure by the Court to consider material facts or

dispositive legal arguments which were presented to the court before such interlocutory order." *Id.*

7-9(b)(3).

Plaintiff moves for leave under both grounds. Civil L.R. 7-9(b)(1), (b)(3). Although Plaintiff

was previously aware of some risks to the Declarant's safety, Plaintiff reasonably omitted such

concerns from his prior briefing. Plaintiff avoided discussing the Declarant out of caution to avoid

the risk of breaching California's mediation privilege and the confidentiality agreement with the

mediator. Plaintiff would have had to disclose that the Declarant ███████████████████

███████. Plaintiff further would have had to disclose that the Declarant ██████ ByteDance's

headquarters in Beijing, China. These are facts that Plaintiff reasonably believed were privileged. To

be sure, Plaintiff's papers alluded to concerns regarding ByteDance's retaliation against

1  whistleblowers. (ECF No. 74 at 3:4-8.) Thus, Plaintiff also brings this motion under Civil L.R. 7-

2  9(b)(3).

3  **B.     The Declarant's Identity Should Be Protected.**

4  Courts have the power to limit discovery to protect a person's personal information.

5  *Stallworth v. Brollini*, 288 F.R.D. 439, 444 (N.D. Cal. Dec. 21, 2012) (Beeler, J.).

6  Relevant factors to be considered in this balancing test include the type of record
   requested, the information it does or might contain, the potential for harm in any

7  subsequent non-consensual disclosure, the injury from disclosure to the relationship
   in which the record was generated, the adequacy of safeguards to prevent

8  unauthorized disclosure, the degree of need for access, and whether there is an
   express statutory mandate, articulated public policy, or other recognizable public

9  interest militating toward access.

10  *Id.*

11  These factors weigh against disclosing the Declarant's identity to ByteDance or its counsel.

12  *See In re Bofi Holding, Inc. Sec. Litig.*, 2021 WL 3700744 (S.D. Cal. Aug. 8, 2021) (Curiel, J.)

13  (finding good cause to seal documents to protect the identities of confidential witnesses who are

14  former Bofi employees and who reportedly fear retaliation and potential harassment); *see also*

15  *Tierno v. Rite Aid Corp.*, 2008 WL 2705089 at n.2 (N.D. Cal. Jul. 8, 2008) (Henderson, J.) (stating

16  that the disclosure of the names of employees of the defendant who have cooperated with the

17  plaintiff's counsel could have a chilling effect on class members' communications with counsel).

18  First, disclosure of the Declarant's identity to ByteDance poses a risk to the Declarant's

19  safety and well-being. The Declarant ███████████████████████████████████████████████

20  ████. (Yu Decl., Ex. A.) This concern results from the Declarant's █████████████████

21  ████████████████████████████████ ByteDance's China headquarters. The Declarant is

22  ██████████████████████████████ facing ByteDance insiders who report wrongful or unlawful

23  conduct. Indeed, the Declarant's █████ is a reasonable one. ByteDance has already tried to

24  intimidate individuals related to this case. It sent an investigator to the home of a past acquaintance

25  of Plaintiff's, seeking an *ex parte* contact with Plaintiff.  (Xia Decl. ¶¶ 3-12.) Because Plaintiff had

26  not spoken to the acquaintance in years (*id.* at ¶ 2), the visit sent the message that ByteDance would

27  dig into Plaintiff's entire past to defend this case. To this end, ByteDance's counsel has filed

28

6

1    numerous documents in this case and Plaintiff's underlying case purportedly about Plaintiff that

2    have no relevance and are merely intended to embarrass him. (*See* PNC Bank Complaint, ECF No.

3    14-2 at 91, ECF No. 21 at 91; Menlo Park Police Department Incident Report, Case No. 23-cv-

4    03503-SI at ECF 10-5.)

5            Evidence also suggests ByteDance apparently launched cyberattacks against him and his

6    counsel when the underlying state court case was reported on in the New York Times. The timing of

7    the attacks, around the same day as the underlying lawsuit was reported, strongly suggests they are

8    related. (Yu Decl. ¶¶ 2-8; Jung Decl. ¶¶ 2-7.) Also, ByteDance has a well-documented history of

9    using its cyber-capabilities to intrude on the devices of other individual targets such as reporters and

10   former employees to identify corporate whistleblowers. (Jung Decl. Ex. B.) Finally, ByteDance's

11   counsel did not deny Plaintiff's allegations when confronted with them. (*Id.,* Ex. D. ("you are not

12   the Court and therefore are not entitled to make demands, insist upon representations from counsel .

13   . . .")) Thus, ByteDance should not be trusted with the sensitive information about the Declarant's

14   identity.

15           ByteDance's relationship to the Chinese Communist Party underscores the risk of disclosing

16   the Declarant's identity. ByteDance is ultimately controlled by the C.C.P. *See e.g.*, H.R. 815, div. H,

17   118th Cong., Pub. L. No. 118-50 (April 24, 2024) ("Protecting Americans from Foreign Adversary

18   Controlled Applications Act"). As ▮▮▮▮ testifies, the company works closely with branches of

19   the Chinese state to silence and intimidate dissidents. (▮▮ Decl. ¶¶ 2-14.) Thus, no insider witness

20   against ByteDance is safe from the C.C.P. as a result of its control over the company. This is

21   especially true of witnesses in China ▮▮▮▮▮▮. Given its relationship to the C.C.P.,

22   ByteDance does not deserve the benefit of the doubt.

23           Second, there are no less restrictive means to protect the Declarant's identity. ByteDance's

24   counsel has proposed an outside counsel's eyes only designation. (ECF No. 80 at 2:07.) But that will

25   not protect the Declarant. ByteDance's counsel cannot realistically keep the Declarant's identity

26   from ByteDance, and ByteDance's counsel acknowledged their desire to use the Declarant's

27   testimony in this case. The company's counsel would coordinate with ByteDance to interview or

28

depose the Declarant, to access documents or communications related to the Declarant, or to eventually present the Declarant at trial.

Moreover, ByteDance's counsel has repeatedly failed to keep confidentiality in this case. They have revealed Mr. Yu's social security number and USCIS identification number to the public in this action and the underlying action. (ECF No. 14-2 at 65-66; Underlying Action, Case No. 3:23-cv-03503 (N.D. Cal.) at ECF No. 27-3.) They filed a privileged settlement communication with selective redactions twice. (ECF No. 52-4 at 1; Underlying Action, Case No. 23-cv-03503-SI (N.D. Cal.) at ECF No. 26-2.) They failed to file under seal papers that had been ordered sealed. (*See* ECF Nos. 77 & 77-1.) In addition to this, ByteDance's counsel has needlessly filed private details about Plaintiff that have no relevance other than to embarrass Mr. Yu. (PNC Bank Complaint, ECF No. 14-2 at 91, ECF No. 21 at 91; Menlo Park Police Department Incident Report, Case No. 23-cv-03503-SI at ECF 10-5.) Whether in error or intentional, ByteDance's counsel should not be given the benefit of the doubt.

Third, the identity of the Declarant is not critical to this case. It certainly does not outweigh the risk to the Declarant. Without re-arguing the relevance of the Declarant's statement, the risk to the Declarant prevails here. As detailed above, ByteDance exerts tremendous pressure to get individuals to fall in line with its interests. There is therefore no compelling reason to risk this person's safety and well-being. Similarly, there is no overriding public interest that outweighs the risk to the Declarant. Yet, if the Declarant's identity is disclosed, and they are retaliated against, there could be irreparable harm. (*See, e.g.*, ██ Decl. ¶ 14 (describing father's permanent harm after detention by MPS).) For these reasons, the Court should grant leave to reconsider its Order.

## IV.   CONCLUSION

The Declarant's safety should not be risked, and disclosing the Declarant's identity to ByteDance or its counsel does just that. ByteDance has demonstrated it will retaliate against this individual for supporting Mr. Yu's mediation claims. And ByteDance's counsel has demonstrated it cannot keep the Declarant's identity from its client. There are no less restrictive means to protect the Declarant from potential harm, for which they would have no remedy. Plaintiff therefore

respectfully requests the Court grant leave to reconsider its Order dated May 3, 2024.

DATED: May 21, 2024                      Respectfully submitted,
                                         NASSIRI & JUNG LLP


By: _____/s/ Jaime Dorenbaum_____

Jaime Dorenbaum
Attorneys for Plaintiff/Counter-Defendant
YINTAO YU

YU'S MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION OF ORDER
CASE NO. 3:23-CV-04910-SI