CHARLES THOMPSON, State Bar No. 139841
  thompsoncha@gtlaw.com
DAVID S. BLOCH, State Bar No. 184530
  blochd@gtlaw.com
MELISSA J. KENDRA, State Bar No. 291905
  melissa.kendra@gtlaw.com
ANTHONY E. GUZMAN II, State Bar No. 311580
  guzmanan@gtlaw.com
GREENBERG TRAURIG, LLP
101 Second Street, Suite 2200
San Francisco, California 94105
Telephone: 415.655.1300
Facsimile: 415.707.2010

Attorneys for Defendant / Counter-Claimant
BYTEDANCE INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YINTAO YU, an individual,<br><br>              Plaintiff,<br><br>vs.<br><br>BYTEDANCE INC., a Delaware corporation;<br>SHUYI (SELENE) GAO, an individual,<br><br>              Defendants. | Case No. 3:23-cv-04910-SI<br><br>**DEFENDANTS' MOTION FOR SANCTIONS AGAINST CHARLES JUNG AND JAIME DORENBAUM**<br><br>[Originally San Francisco Superior Court No. CGC-23-608845]<br><br>Hearing Date: April 11, 2025<br>Hearing Time: 10:00 a.m.<br>Courtroom: 1,<br>450 Golden Gate Ave.<br>San Francisco, CA 94102 |
| BYTEDANCE INC., a Delaware Corporation,<br><br>              Counter-Claimant,<br><br>vs.<br><br>YINTAO YU, an individual,<br><br>              Counter-Defendant. | |

1

## **ADDITIONAL COUNSEL**

2  DEMERY RYAN, State Bar No. 217176
      dryan@littler.com
3  LITTLER MENDELSON, P.C.
   2049 Century Park East, 5th Floor
4  Los Angeles, California 90067
   Telephone: 310.553.0308
5  Facsimile: 800.715.1330

6  GREGORY ISKANDER, State Bar No. 200215
      giskander@littler.com
7  LITTLER MENDELSON, P.C.
   Treat Towers 1255 Boulevard, Suite 600
8  Walnut Creek, California 94597
   Telephone: 925.932.2468
9  Facsimile: 925.946.9809

10  Attorneys for Defendant
    SHUYI (SELENE) GAO

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................................... 2

    A.    Yu's Counsel Pursues Multiple Lawsuits Against BDI in Violation of Yu's Arbitration Agreements But Later Submits Yu's Claims to Arbitration to Avoid Terminating Sanctions ................................................................................................ 2

        1.    Despite Yu's Execution of Four Separate Arbitration Agreements with BDI, He Files Several Suits Against BDI Alleging Employment-Related Claims ............. 2

        2.    Yu's Counsel Files a Third Action Seeking Declaratory Relief that Yu Did Not Agree to Arbitrate His Claims and Ignores Evidence to the Contrary ................... 3

    B.    Yu's Counsel Forces the Court and Defendants to Undergo Extensive Motion Practice and Incur Inordinate Expense Because They Failed to Perform *Any* Investigation Regarding the Anonymous Declaration ................................................................... 3

    C.    BDI Confirms that the Anonymous Declaration Was Fabricated ........................ 5

    D.    Yu's Counsel Ignores Further Court Orders Related to Discovery ..................... 6

    E.    Defendants File a Motion for Terminating Sanctions Based on Yu's Fabrication of the Anonymous Declaration, Perjury, and Other Misconduct; Yu's Counsel Seeks to Evade Responsibility ................................................................................................ 7

    F.    During the Evidentiary Hearing, Yu Takes the Fifth and Yu's Counsel Once Again Attempts to Evade Responsibility ........................................................................ 8

    G.    Following the Hearing, Yu Voluntarily Submits His Claims to Arbitration ................... 10

    H.    The Court Grants Defendants' Motion for Terminating Sanctions ................... 11

III.  LEGAL STANDARD ........................................................................................................ 11

    A.    Legal Standard for Sanctions Under 28 U.S.C. § 1927 .................................... 11

    B.    Legal Standard for Sanctions Under the Court's Inherent Authority ............... 12

IV.   LEGAL ARGUMENT ....................................................................................................... 14

    A.    Jung and Dorenbaum Have Engaged in Pervasive Bad Faith and Have Repeatedly Violated This Court's Orders, Justifying the Imposition of Sanctions ........................... 14

        1.    Yu's Counsel's Repeated and Egregious Failure to Investigate Their Baseless Representations Regarding the Anonymous Declarant—and Attempt to Bolster Those Allegations with Their Own Sworn Declaration—Constitute Bad Faith... 14

        2.    Yu's Counsel's Attempt to Evade Responsibility for Their Bad Faith Conduct Constitutes Further Evidence of Bad Faith ........................................................ 18

3.     Yu's Counsel's Gamesmanship to Avoid Arbitration Constitutes Bad Faith ....... 19

4.     Yu's Counsel's Repeated and Willful Disobedience of This Court's Orders Also Justifies the Imposition of Sanctions .................................................... 19

B.     This Court Should Award Sanctions in an Amount Equal to the Fees and Costs Defendants Incurred Defending Against Yu's Counsel's Bad Faith ............................. 21

V.     CONCLUSION .................................................................................... 22

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Am. Unites for Kids v. Rousseau,*
  985 F.3d 1075 (9th Cir. 2021) ................................................................13

*Amin v. Subway Restaurants, Inc.,*
  2023 WL 5021783 (N.D. Cal. Aug. 4, 2023) ...............................12, 16

*Andrews v. Equinox Holdings, Inc.,*
  570 F. Supp. 3d 803 (N.D. Cal. 2021) ....................................................21

*Ayer v. White,*
  2022 WL 2343040 (C.D. Cal. June 28, 2022 ..........................................20

*B.K.B. v. Maui Police Dep't,*
  276 F.3d 1091 (9th Cir. 2002) ................................................................15

*Blum v. Stenson,*
  465 U.S. 886 (1984) ................................................................................21

*Camacho v. Bridgeport Fin., Inc.,*
  523 F.3d 973 (9th Cir. 2008) ..................................................................21

*Caputo v. Tungsten Heavy Powder, Inc.,*
  96 F.4th at 1155 ...................................................................11, 12, 16, 17

*Chambers v. NASCO, Inc.,*
  501 U.S. 32 (1991).................................................................................13

*Evon v. Law Offices of Sidney Mickell,*
  688 F.3d 1015 (9th Cir. 2012) ..........................................................13, 20

*Fink v. Gomez,*
  239 F.3d 989 (9th Cir. 2001) ...........................................................13, 20

*In re Girardi,*
  611 F.3d at 1061 ...............................................................................12, 16

*Goodyear Tire & Rubber Co. v. Haeger,*
  581 U.S. 101 (2017)...........................................................................12, 13

*Jones v. Nat'l R.R. Passenger Corp.,*
  2024 WL 4331912 (N.D. Cal. Sept. 27, 2024) ......................................14

*In re Keegan Mgmt. Co., Sec. Litig.,*
  78 F.3d 431 (9th Cir. 1996) ....................................................................12

DEFENDANTS' MOTION FOR SANCTIONS AGAINST CHARLES JUNG AND JAIME DORENBAUM

*Nanak Found. Tr. v. GMAC Mortg., LLC*,
  2012 WL 5818284 (N.D. Cal. Nov. 15, 2012) ...............................................18

*Oliver v. In-N-Out Burgers*,
  945 F. Supp. 2d 1126 (S.D. Cal. 2013)..........................................................12

*Optyl Eyewear Fashion Int'l Corp. v. Style Companies, Ltd.*,
  760 F.2d 1045 (9th Cir. 1985) ..............................................................18, 19

*Pac. Harbor Cap., Inc. v. Carnival Air Lines, Inc.*,
  210 F.3d 1112 (9th Cir. 2000) ..............................................................13, 17

*Pop Top Corp. v. Rakuten Kobo Inc.*,
  2022 WL 901547 (N.D. Cal. Mar. 28, 2022), *aff'd*, 2023 WL 2783178 (Fed. Cir. Apr.
  5, 2023) ........................................................................................................21

*Primus Auto. Fin. Servs., Inc. v. Batarse*,
  115 F.3d 644 (9th Cir. 1997) ........................................................................13

*Salameh v. Tarsadia Hotel*,
  2014 WL 3797283 (S.D. Cal. July 31, 2014) ...............................................22

*Williford v. Multnomah Cnty.*,
  2010 WL 5648878 (D. Or. Dec. 28, 2010) ...................................................16

*Matter of Yagman*,
  796 F.2d 1165 (9th Cir.) ...............................................................................20

**California Cases**

*Rojas v. Superior Ct.*,
  33 Cal. 4th 407 (2004) ....................................................................................4

**Federal Statutes**

28 U.S.C. § 1927.............................................................................*passim*

**Other Authorities**

Federal Rule of Evidence § 412......................................................................15

Local Rule 7-9(a)..............................................................................................4

Local Rule 7-9(b)..............................................................................................4

Rule 412..........................................................................................................15

DEFENDANTS' MOTION FOR SANCTIONS AGAINST CHARLES JUNG AND JAIME DORENBAUM

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.    INTRODUCTION

This Court has already determined that Plaintiff Yintao Yu "engaged in serious, bad faith conduct that has abused the judicial process," by fabricating a declaration on behalf of an anonymous witness, submitting his own "perjurious declaration" in "an apparent attempt to prevent defendants from discovering that he had fabricated the anonymous declaration," and "committ[ing] perjury at his deposition" when he denied signing a declaration filed in his own bankruptcy proceeding. ECF 246 at 9:20-21, 10:4-8. This Court's issuance of terminating sanctions based on this pervasive bad faith was both warranted and appropriate.

But Yu's misconduct did not occur in a vacuum. It was enabled. Charles Jung and Jaime Dorenbaum (collectively, "Yu's Counsel"), as officers of the court, had a duty to investigate, act with candor, and prevent fraud and abuse of the judicial system. They failed. Whether through a reckless disregard of professional duties or intentional orchestration and participation in Yu's misconduct, the result is the same: extraordinary resources were spent to unravel and expose Yu's fraud. This Court and Defendants devoted fifteen months, well over two hundred legal filings, and for BDI, more than **$6,280,077.38** in fees and costs[1] to reveal the many falsehoods Yu's Counsel either perpetuated or should (and could) have identified and prevented from the outset.

As this Court appropriately concluded, "Yu's obstructive and mendacious conduct has caused delay, required additional motion practice, and *vexatiously multiplied these proceedings*." ECF 246 at 10:17-19 (emphasis added). Yu could not have perpetrated this abuse of the legal process without the assistance—or at minimum acquiescence—of his legal counsel.  Monetary sanctions against the counsel who facilitated and furthered Yu's abuse of the judicial system—or at best recklessly did nothing to prevent it—are therefore warranted. Whether these are sanctions to offset all or a portion of the extraordinary expense to Defendants or an order to show cause requiring Yu's counsel to explain why sanctions should not be paid to this Court, Defendants respectfully submit that some action is both appropriate and necessary here.

*///*

---

[1] This is the amount of fees BDI alone has incurred in defending against this action and Yu's and Yu's Counsel misconduct.

## II.     FACTUAL BACKGROUND

### A.     <u>Yu's Counsel Pursues Multiple Lawsuits Against BDI in Violation of Yu's Arbitration Agreements But Later Submits Yu's Claims to Arbitration to Avoid Terminating Sanctions</u>

This litigation never should have existed, much less spawned the hundreds of filings and inordinate amount of expense that it did. It exists only because Yu sought to avoid arbitration by falsely alleging *under penalty of perjury* that he did not sign any of the four arbitration agreements he executed during his employment with BDI. And rather than investigate the circumstances surrounding (and confirming) the execution of those agreements, Yu's Counsel instead forced the Parties and this Court to endure seemingly endless motion practice based on their failure to conduct any due diligence with regard to their representations to Defendants or to this Court.

### 1.     <u>Despite Yu's Execution of Four Separate Arbitration Agreements with BDI, He Files Several Suits Against BDI Alleging Employment-Related Claims</u>

During his employment with BDI, Yu signed four separate agreements to arbitrate disputes arising from or relating to his employment with the Company. *See* ECF 14-3 at Ex. 1, 14-4 at Ex. 1, 14-6 at Ex. 1, 14-7 at Ex. 4. Notwithstanding, on November 17, 2022, Yu filed a *pro se* complaint against BDI in state court, alleging employment-related claims against BDI. Declaration of Charles O. Thompson ("Thompson Dec.") at ¶ 2, Ex. 1. But Yu abandoned the proceedings after BDI removed to this Court and moved to compel arbitration. ECF 1, 7, 19 (Case No. 23-cv-00707-SI).

Ten days later, Jung and Dorenbaum refiled a nearly identical complaint in state court. Thompson Dec. at ¶ 3, Ex. 2. Shortly thereafter, they filed an amended complaint, in which they scrubbed certain claims and language that would provide for removal via the presentation of a federal question and alleged for the first time that Yu's 2018 termination resulted from a purported conspiracy involving the Chinese Communist Party. *Id.* at ¶ 4, Ex. 3. Simultaneously, they began a nationwide media campaign to promote these sensationalized allegations. BDI subsequently removed to this Court based on the presentation of an embedded federal question and again moved to compel arbitration, but this Court subsequently dismissed the complaint to the extent preempted by federal law and remanded the remainder to state court. ECF 1, 9, 33 (Case No. 23-cv-03503-SI).

///

///

2.    <u>Yu's Counsel Files a Third Action Seeking Declaratory Relief that Yu Did Not Agree to Arbitrate His Claims and Ignores Evidence to the Contrary</u>

Four days later, Yu filed the instant complaint in state court, seeking: (1) a judicial determination that Yu did not enter into the Employee Confidentiality and Inventions Assignment Agreement ("ECIAA") pursuant to which BDI had moved to compel arbitration twice before; and (2) an order enjoining Defendants from enforcing the ECIAA's arbitration provision. ECF 1, Ex. 1. BDI once again removed to this Court and moved to compel arbitration pursuant to each of the four arbitration agreements that Yu executed during his employment. ECF 1, 14. In so doing, BDI presented declarations from various witnesses who *personally observed* Yu execute the arbitration agreements as well as a declaration from a handwriting expert who confirmed the authenticity of Yu's signatures on the agreements at issue. ECF 14-2, 14-3, 14-6, 14-7.

During the ensuing litigation, Yu's Counsel chose to remain willfully ignorant regarding their client's execution of these agreements. For example, Yu's Counsel declined to depose *any* witnesses who personally observed Yu execute the four agreements—despite the fact that BDI offered the foreign witnesses for deposition *multiple times* and planned and paid for witness travel and accommodations *multiple times* in order to allow counsel to depose them. *See* ECF 156-1, Ex. 4, 5. And even their own purported rebuttal expert[2] could not rebut the conclusion that Yu signed these agreements. Despite this, Yu's Counsel continued to pursue Yu's claim that he did not agree to arbitration.

Ultimately, as detailed further *infra* at Section II.G., Yu's Counsel voluntarily submitted Yu's claims to arbitration once his pervasive misconduct was revealed to this Court (and after years of forcing Defendants to nonetheless litigate the same claims).

**B.    <u>Yu's Counsel Forces the Court and Defendants to Undergo Extensive Motion Practice and Incur Inordinate Expense Because They Failed to Perform *Any* Investigation Regarding the Anonymous Declaration</u>**

Yu previously provided BDI with a declaration from an "anonymous declarant" who claimed to have observed an "executed two-year term supplemental employment agreement" in Yu's personnel file.[3] *See* ECF 85-2 at ¶ 9, Ex. A (Yu's personal declaration authenticating the "true and correct copy of the

---

[2] This gamesmanship also extended to Yu's Counsel's disclosure of this expert. Indeed, despite the fact that the Parties had agreed to only one deadline for expert disclosures and Yu's Counsel retained their expert *prior to* that deadline, Yu's Counsel subsequently disclosed their expert over a month after the deadline had passed and only seven days prior to the cut-off for expert discovery, as detailed in ECF 166.

[3] A detailed recitation of the anonymous declaration's origin can be found at ECF No. 202.

redacted declaration from the anonymous declarant"). Because this declaration appeared to identify a witness with relevant testimony as to whether Yu had executed the disputed arbitration agreements, BDI sought discovery regarding the identity of the anonymous declarant in March 2024. This request was simple and straightforward. Yu's Counsel's reaction was not.

*First*, Yu's Counsel refused to provide the declarant's name despite extensive meet-and-confer efforts and the fact that the declaration itself contained the attestation that the declarant was "willing to testify as a witness in a trial in the future if [he or she] receive[d] a subpoena").[4] Thompson Dec. at ¶ 5.

*Second*, Yu's Counsel threatened to seek sanctions if BDI's Counsel raised the issue with the Court. *Id.* at ¶ 5.

*Third*, after BDI was forced to move to compel disclosure of the declarant's identity, Yu's Counsel argued that California's mediation privilege somehow insulated the declarant's *identity* from disclosure despite California Supreme Court authority to the contrary. *See* ECF 74 at 1-2; *Rojas v. Superior Ct.*, 33 Cal. 4th 407, 423, n.8 (2004).

*Fourth*, Yu's Counsel refused to disclose the declarant's identity even after this Court ordered disclosure, forcing BDI to file a notice of non-compliance. *See* ECF 78 at 3; ECF 81.

*Fifth*, Yu's Counsel then filed a Motion for Leave to Seek Reconsideration, treating the Request as the Motion for Reconsideration itself in violation of Local Rule 7-9(a) and based on "facts" (i.e., purported concerns about the declarant's safety) that Yu's Counsel failed to previously raise (let alone, investigate or verify) in violation of Local Rule 7-9(b). *See* ECF 85, 88.

*Sixth*, Yu's Counsel submitted Yu's (perjurious) personal declaration in support of the Motion for Reconsideration–which alleged that disclosure of the declarant's identity would place his or her physical safety and well-being in imminent risk–without taking any steps to verify attestations set forth in the declaration before filing. *See* ECF 85-2.

*Seventh*, Yu's Counsel filed Jung's personal declaration in support of the Motion for Reconsideration, insinuating BDI's (and its counsel's) complicity and/or direct role in a salacious and fictional narrative including foreign surveillance, cyberattacks, kidnapping, and torture based on nothing more than speculation. *See* ECF 85-1 (alleging without citation that "ByteDance has previously admitted

---

[4] *See* ECF 85-2 at ¶ 9, Ex. A at ¶ 3.

to gaining unauthorized access to individuals' computers" and "spying on journalists . . . and their

contacts," and both he and Yu "were the victims of cyberattacks launched by ByteDance").

Despite their above actions and affirmative representations to this Court, *Yu's Counsel had made no effort to learn the declarant's identity*, confirm the declarant's existence, or ascertain the veracity of any of the statements contained in their various filings. During the subsequent hearing on the Motion for Reconsideration, Dorenbaum admitted that–despite this months-long dispute–*he still did not know the declarant's identity*, had not been "in touch" with the declarant, did not know whether his client even "recall[ed]" the declarant's name, and might need to speak with Yu's prior counsel to obtain that information. ECF 104 at 4:19-5:2, 10:2-12:3, 12:8-12; 14:10-13, 16:22,[5] 17:1-13. What's more, when this Court emphasized that it would order Jung to sit for deposition regarding the allegations contained in his personal declaration, he immediately confirmed his intention to retract his declaration rather than honor his attestation therein that he would testify in support of those representations. *Id.* 15:6-25, 16:13-15.[6]

### C.    BDI Confirms that the Anonymous Declaration Was Fabricated

The next day, Yu's Counsel informed BDI's Counsel that the anonymous declarant was named Haiyi Bao. Thompson Dec. at ¶ 6, Ex. 4. BDI's Counsel subsequently learned—through its own basic investigation—that Bao had never seen or signed the anonymous declaration and had not spoken with Yu since 2019. ECF 202-6 (Declaration of Haiyi Bao in support of Defendants' Motion for Terminating Sanctions). In other words, the anonymous declaration was a complete fabrication, rendering all related discovery objections, conferral efforts, declarations, motion practice, and hearings entirely needless.

Had Yu's Counsel made one simple inquiry about this declaration at the outset, they would have learned the declaration was fabricated. Because they chose not to perform this basic due diligence, the Parties submitted (and the Court was forced to review) more than ninety court filings,[7] resulting in eleven court orders[8] and four conferences or hearings over an eight-month period (including the eventual Motion

---

[5] Based on Yu's Counsel's scandalous representations, this Court ordered BDI's Counsel to "instruct your clients . . . that nothing bad is to happen to this witness" and, thereafter, represent to the Court that it had complied with this order. *Id.* at 14:14-25.

[6] While Jung subsequently filed a Notice of Withdrawal of this declaration, it along with the attendant Motion for Reconsideration Filings remain in the public domain.

[7] *See* ECF 66, 68, 69, 72, 74, 76, 80, 81, 84, 85, 87, 88, 89, 91, 92, 93, 95, 100, 102, 105, 108, 109, 202, 203, 204, 214, 215, 217, 218, 228, 230, 241 (and attendant attachment filings).

[8] *See* ECF 68, 70, 73, 78, 86, 98, 210, 229, 234, 240, 246.

1    for Terminating Sanctions).

2    **D.**    **Yu's Counsel Ignores Further Court Orders Related to Discovery**

3        Yu's Counsel also acted in direct contravention of this Court's order confirming that Yu was not

4    entitled to a video taken by a BDI attorney. During Yu's deposition on June 7, 2024, BDI's handwriting

5    expert, Dr. Linton Mohammed, conducted a handwriting examination in the presence of Dorenbaum and

6    BDI's Counsel, Demetra Makris. ECF 202-1 at ¶ 19. Ms. Makris recorded Dr. Mohammed's examination

7    on her phone, and Dorenbaum chose not to do so. *Id.* Months later, on August 14, 2024 (two weeks *after*

8    the close of fact discovery), Yu's Counsel served a Request for Production of the video recording. *Id.* BDI

9    objected, and the Parties subsequently raised the issue with this Court. *See* ECF 147. On September 23,

10   2024, this Court concluded that "**Yu is not entitled to the recording**." ECF 152.

11       On October 17, 2024 (and five days before the Parties' deadline to file motions *in limine*), Yu's

12   Counsel attempted to serve Ms. Makris with a trial subpoena for the video recording. ECF 202-1 at ¶ 20,

13   Ex. 15. BDI's counsel requested a written "offer of proof and authority as to why [it] should consider the

14   subpoena as anything other than harassment" in light of this Court's clear order. ECF 202-1 at ¶ 21, Ex.

15   16. Yu's Counsel refused, stating, "We expect Ms. Makris to produce and authenticate the recording.

16   Frankly, I truly do not understand why you refuse to produce it." *Id.* Despite BDI's continuing objections

17   to this harassing conduct, and the Court's order denying this exact discovery, Yu's Counsel continued to

18   attempt service on Ms. Makris, both at her office *and her home*, and served BDI with a subpoena seeking

19   the same recording. ECF 196-1 at ¶ 4, Ex. 3.

20       As a result, BDI was forced to file three (additional) motions *in limine* (and a total of six additional

21   filings) to: (1) quash Yu's subpoena to force Ms. Makris to appear at trial and produce the video; (2) quash

22   Yu's subpoena duces tecum to BDI to produce the video; and (3) prevent Yu's Counsel from attempting

23   to introduce, reference, or mention this recording during trial. *See* ECF 167, 195, 196. None of this would

24   have been necessary had Yu's Counsel simply followed this Court's order.

25   ///

26   ///

27

28

### E.    <u>Defendants File a Motion for Terminating Sanctions Based on Yu's Fabrication of the Anonymous Declaration, Perjury, and Other Misconduct; Yu's Counsel Seeks to Evade Responsibility</u>

On October 25, 2024, Defendants filed a Motion for Terminating Sanctions based on Yu's egregious pattern of misconduct during these proceedings. *See* ECF 202. In response, this Court set an evidentiary hearing and ordered Yu's Counsel to "be prepared to discuss what they knew and when regarding the 'anonymous declaration'" at the hearing. ECF 209, 210 at 2:1-2. Yu's Counsel subsequently filed a frantic series of frivolous motions designed to forestall, or otherwise avoid, the evidentiary hearing and any questioning of either themselves or their client, including:

- **November 7, 2024**: Yu's Counsel filed an Objection to allowing Haiyi Bao (whom they alleged to be the anonymous declarant) to testify remotely at the evidentiary hearing despite the fact that Ms. Bao lived and worked in China where she was the primary caretaker for her one-year-old son. On November 12, 2024, this Court overruled this objection and held that Ms. Bao could testify remotely at the evidentiary hearing. *See* ECF 221, 222.

- **November 15, 2024**: Yu's Counsel filed a Motion to Dismiss the instant action based on "Yu's voluntary dismissal with prejudice and commencement of arbitration." ECF 224 at 3:23-24. Yu's Counsel claimed that its Motion to Dismiss mooted Defendants' Counterclaim and Motion for Terminating Sanctions but failed to provide any supporting authority or legal analysis to support this conclusion. *Id.* at 3:23-4:4. That same day, Yu's Counsel also filed a Motion to Shorten Time requesting that Defendants be given just one business day to respond. ECF 225.

- **November 19, 2024**: Yu's Counsel filed a Motion to Enforce a Settlement Agreement that did not exist.[9] *See* ECF 231. This Court had acknowledged the day prior that "the parties ha[d] not reached a settlement." ECF 229 at 1:15.

- **November 19, 2024**: Yu's Counsel filed an Administrative Motion to Continue the Evidentiary Hearing, the stated purpose of which was to "**avoid[] the evidentiary hearing** and having to choose between his Fifth Amendment rights and advancing his civil case through testimony." ECF 233 at 3:24-27 (emphasis added).

---

[9] The Parties' settlement discussions are not relevant to the analysis or disposition of this Motion. As such, Defendants omit a recitation of those facts in this Motion. Nonetheless, a full recitation of the relevant facts regarding the Parties' settlement communications can be found at ECF 226.

Collectively, Yu's Counsel's attempts to prevent the evidentiary hearing on Defendants' Motion for Terminating Sanctions caused the Parties to file no less than twenty additional filings,[10] the Court to issue two additional orders,[11] and the Court to conduct an additional conference with the Parties.[12] Notwithstanding these attempts, this Court directed the hearing to proceed as scheduled.

### F.    During the Evidentiary Hearing, Yu Takes the Fifth and Yu's Counsel Once Again Attempts to Evade Responsibility

On November 20, 2024, this Court held the evidentiary hearing on Defendants' Motion for Terminating Sanctions. During the hearing, Yu took the stand and invoked the Fifth Amendment in response to each of the *fifty* substantive questions posed to him. ECF 237 at 65:21-76:24. Specifically, Yu invoked the Fifth Amendment with regard to all questions about the so-called anonymous declaration that Yu had attempted to use in support of his claims against BDI, including: (1) whether Yu fabricated the so-called anonymous declaration; and (2) whether he lied when he declared to this Court that he believed the so-called anonymous declarant's safety and wellbeing would be compromised if he revealed the declarant's identity to BDI. *Id.* at 72:2-75:6.[13]

Directly following Yu's testimony, the Court required Yu's Counsel to speak regarding, among other things, "what they knew and when regarding the anonymous declarant." *Id.* at 80:1-4. In response, **Jung admitted that prior to disclosing the purported declarant's identity on June 8, 2024, he "did not know the person's identity" or whether that person "worked for ByteDance."** ECF 237 at 80:13-23. Notwithstanding, Yu's Counsel had filed, or permitted to be filed, multiple statements suggesting that they did have this information, including that disclosure of the declarant's identity "poses a risk to the declarant's safety and well-being." *See* ECF 85.

Jung nonetheless claimed to have acted from a "belief that there was a person that needed to be protected." ECF 237 at 80:24-81:2. We now know that this "belief" was borne out of thin air, as the

---

[10] *See* ECF 217, 218, 224, 225, 226, 227, 231, 233, 238, 239, 243, 245 (and attendant filings).

[11] *See* ECF 229, 234.

[12] *See* ECF 221 (minute entry).

[13] Yu also invoked the Fifth Amendment with regard to all questioning regarding his purported pregnant wife, including whether he had actually been married in April 2024 (as he had represented under penalty of perjury to this Court) and whether he "made up" his pregnant wife. *Id.* at 75:18-76:24. Similarly, Yu invoked the Fifth Amendment regarding a bankruptcy proceeding filed in his name, including whether he had (perjuriously) disavowed this proceeding during his deposition in this matter and whether he had lied to the bankruptcy court when he failed to disclose his claims against BDI therein. *Id.* at 65:21-70:5, 77:19-78:1.

anonymous declarant did not exist and Yu's Counsel had failed to perform *any* investigation whatsoever to determine who this declarant might be or whether they even existed.

When the Court noted that it was "so difficult to understand why you didn't phone up this witness or contact this witness or go see this witness" "or even know the name of this witness when I first asked you," Jung offered a scattershot of excuses that failed to justify his failure to investigate, at the very least, the *identity* of the anonymous declaration prior to or during the Parties' months-long dispute regarding that very issue. ECF 237 at 82:11-85:6. First, he claimed that BDI "cited in their papers that there were insiders inside the company who were helping [sic] intel"—*a false statement that he did not and could not support with any citation to the record. Id.* at 82:22-23.

Second, he stated that it was "not unusual . . . where we are presented with anonymity and asked to keep sources anonymous." ECF 237 at 83:2-5. But this statement failed to justify why—at a minimum—he did not investigate, let alone verify, the identity of the anonymous declarant before or during the Parties' months-long dispute.[14] And, it was contradicted by Yu's Counsel's practices–for instance, they filed an anonymous declaration in support of the Motion for Reconsideration (ECF 85-4) but contemporaneously provided an unredacted version (including the name of the declarant) to BDI.

Third, Jung claimed reliance on Yu's unsubstantiated claim that he had anonymously received a USB drive containing privileged communications between BDI and its counsel. ECF 237 at 83:6-16. This claim, however, not only lacked any credibility in light of Yu's pervasive fraudulent litigation practices (which instead made it much more likely that Yu unlawfully obtained the recordings himself) but also does not excuse Yu's Counsel's failure to independently investigate the identity of the anonymous declarant (whom Yu had always claimed to know).

Fourth, Jung claimed that his failure to investigate was somehow justified by the fact that another declarant[15] "signed their name testifying to their experience of retaliation for speaking out against

---

[14] Moreover, Dorenbaum's statement at the Motion for Reconsideration hearing that his client likely would not be able to recall the name of the anonymous declarant (*see* ECF 104 at 17:8) suggests that, in a best-case scenario, Yu's Counsel previously inquired with their client as to the anonymous declarant's identity, knew that he could not provide a name, and *still* pursued the Motion for Reconsideration.

[15] Presumably, Jung was referring to the declarant who purportedly authored the declaration found at ECF 85-4, filed in support of Yu's Motion for Reconsideration. This declaration makes clear that Yu's Counsel, including Jung, apparently performed an investigation to locate former ByteDance employees who could attest to their purported beliefs that the Company retaliated against them in order to attempt to bolster Yu's Motion for Reconsideration. Such investigative actions make Counsel's failure to perform any due diligence with regard to the identity of the anonymous declarant even more glaring.

9

ByteDance"—a statement undermined by the fact that Jung located that other declarant, obtained that declaration, and disclosed that declarant's name to Defendants via an unredacted declaration upon filing (and without a request from BDI). ECF 237 at 83:17-20.

Fifth, Jung claimed that he and Dorenbaum "undertook a process before submitting" the Motion for Reconsideration Filings but refused to disclose that "process." ECF 237 at 84:16-25. This statement was demonstrably false, contradicted not only by Yu's Counsel's previous admission that he still did not know the declarant's identity even *after* filing the Motion for Reconsideration but also by the fact that Yu's Counsel was subsequently able to easily obtain the declarant's purported identity[16] by simply asking Yu's prior counsel. *See* ECF 104 at 4:19-5:2, 10:2-12:3, 12:8-12; Thompson Dec. at ¶ 6, Ex. 4.

Finally, Jung stated that "we were under the belief that we were being monitored." ECF 237 at 84:1-3. Yet Jung offered no evidence in support of that belief, demonstrating that he conducted *any* due diligence into this belief, or linking such belief. *Id.* at 82:19-84:6. And when given the opportunity to provide support for this belief via his deposition, he refused.[17] *See* ECF 98, 100.

In sum, Yu's Counsel failed to establish any credible explanation for their failure to investigate the anonymous declaration, despite filing four briefs and eight declarations on this precise topic. *See* ECF 74, 81, 85, 214. Equally troubling, Yu's Counsel still has not corrected these misrepresentations or withdrawn the myriad filings that—based on Yu's testimony at the evidentiary hearing—could not be supported by *any* evidence.

### G.    Following the Hearing, Yu Voluntarily Submits His Claims to Arbitration

On December 5, 2024, in an effort to avoid this Court finding that a fraud had been committed, and after having engaged in consistent and substantial efforts to avoid the arbitration process over the preceding *two years*, Yu submitted a Demand for Arbitration ("Demand"), alleging nearly identical causes of action against BDI and Ms. Gao. Thompson Dec. at ¶ 7, Ex. 5. Notably, Yu's Counsel omitted their prior allegations regarding the Chinese Communist Party, confirming that the incorporation of those

---

[16] To be clear, Yu's Counsel was able to obtain the name of the person Yu claimed was the anonymous declarant by speaking with Yu's prior counsel. As was later revealed, Yu fabricated the anonymous declaration.

[17] Moreover, the record supports the opposite conclusion—namely, that Yu was the only one who engaged in unlawful surveillance as evidenced by his possession of a USB containing unauthorized and unlawful recordings of privileged conversations between BDI and its counsel (Skadden), his admission to recording his conversations with BDI personnel, and his installation of a camera at his workplace. *See* ECF 237 at 83:6-9; Yu Depo. at 130:16-131:21.

allegations in the prior state court action constituted nothing more than an effort to stir public controversy regarding the Company. *Id.* And Yu's Counsel added ByteDance Ltd. ("BDL") as a respondent despite having never previously alleged claims against BDL in the prior eight years and despite the fact that any such claims are certainly time-barred. *Id.*

## H.    The Court Grants Defendants' Motion for Terminating Sanctions

On December 12, 2024, the Court granted Defendants' Motion for Terminating Sanctions, compelled Yu to arbitration pursuant to the ECIAA, and stayed this case pending the outcome of arbitration. *See* ECF 246. In so doing, this Court concluded that "Yu has engaged in *serious, bad faith conduct* that has abused the judicial system," including the following:

- **Yu** "**fabricated the [anonymous] declaration**."

- **Yu filed a "perjurious declaration"** in support of the Motion for Reconsideration "in an apparent attempt to prevent defendants from discovering that he had fabricated the anonymous declaration."

- **Yu "committed perjury at his deposition** when he denied signing" a declaration filed in his bankruptcy proceedings.

In sum, the Court held that "Yu's obstructive and mendacious conduct has caused delay, required additional motion practice, and *vexatiously multiplied these proceedings*" and, additionally, "'made it impossible for [the] court to be confident that the parties will ever have access to true facts.'" *Id.* at 9:18-10:19 (emphasis added). Despite these conclusions, Yu's Counsel still has not removed any of their contaminated and perjurious filings. Nor have they been held accountable for their role in Yu's abuse of the legal process.

## III.    LEGAL STANDARD

### A.    Legal Standard for Sanctions Under 28 U.S.C. § 1927

Section 1927 provides that, "Any attorney … who so multiples the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28. U.S.C. § 1927. "Courts wishing to impose sanctions under [section] 1927 must make a finding that the attorney to be sanctioned acted with 'subjective bad faith.'" *Caputo v.* Tungsten *Heavy Powder, Inc.*, 96 F.4th 1111, 1153 (9th Cir. 2024). "Bad faith is present when an attorney knowingly or recklessly raises a *frivolous* argument" or

"misleads the court." *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996); *In re Girardi*, 611 F.3d at 1061 ("[A] finding that the attorney recklessly or intentionally misled the court is sufficient to impose sanctions under [section] 1927, and a finding that the attorney recklessly raised a *frivolous* argument which resulted in the multiplication of proceedings is also sufficient to impose sanctions under [section] 1927") (internal citations omitted).

If the conduct is merely reckless, the moving party must also show at least one additional factor, such as frivolousness, harassment, or an improper purpose. *Oliver v. In-N-Out Burgers*, 945 F. Supp. 2d 1126, 1129 (S.D. Cal. 2013) (citing *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001) ("Sanctions pursuant to section 1927 are also available for 'recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose.'"). Frivolousness refers to "legal or factual contentions so weak as to constitute objective evidence of improper purpose," and includes positions "made without reasonable and competent inquiry.'" *In re Girardi*, 611 F.3d at 1062; *accord Caputo*, 96 F.4th at 1155 ("[W]hen an argument is patently lacking in any basis in either law or fact, it can be fairly characterized as 'frivolous' for the purpose of a [section] 1927 award."); *Diaz v. Messer*, 742 App'x 250, 252 (9th Cir. 2018) ("An argument is frivolous if its resolution 'is obvious' or the argument is 'wholly without merit.'") (internal citation omitted).

Ultimately, "Section 1927 creates a 'duty to correct or withdraw litigation positions after it becomes obvious that they are meritless.'" *Amin v. Subway Restaurants, Inc.*, 2023 WL 5021783, at *4 (N.D. Cal. Aug. 4, 2023) (citing *In re Girardi*, 611 F.3d at 1064). It further renders any "attorney who reviews and approves motions, applications, and briefs filed in a case [] responsible for the resulting multiplication of proceedings even when he does not sign his name to those filings or personally argue them before the court." *Caputo*, 96 F.4th at 1154.

### B.    Legal Standard for Sanctions Under the Court's Inherent Authority

"Federal courts possess certain 'inherent powers,' not conferred by rule or statute, 'to manage their own affairs so as to secure the orderly and expeditious disposition of cases.'" *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962)). "That authority includes 'the ability to fashion an appropriate sanction for conduct which abuses the judicial process.'" *Id.* (quoting *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44–45 (1991). Imposing monetary

sanctions under the court's inherent power requires a finding of either: (1) a willful violation of a court order; or (2) bad faith or conduct tantamount to bad faith. *See Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1090 (9th Cir. 2021); *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001) ("sanctions are available if the court specifically finds bad faith or conduct tantamount to bad faith"); *see also Goodyear*, 581 U.S. at 107 (noting that a court may order "a party that has acted in bad faith to reimburse legal fees and costs incurred by the other" pursuant to its inherent power).

Bad faith extends to "a full range of litigation abuses." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991). It includes "conduct done vexatiously, wantonly, or for oppressive reasons." *Am. Unites for Kids*, 985 F.3d at 1090. A party also demonstrates bad faith by "delaying or disrupting the litigation." *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997) (internal quotations and citation omitted). Bad faith may also be shown where a "fraud has been practiced upon [the court], or that the very temple of justice has been defiled." *Chambers*, 501 U.S. at 46. A finding of bad faith "requires proof of bad intent or improper purpose." *Am. Unites for Kids*, 985 F.3d at 1090.

Conduct tantamount to bad faith includes "a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Fink*, 239 F.3d at 994. Such also necessarily encompasses "an attorney's reckless misstatements of law and fact, when coupled with an improper purpose, such as an attempt to influence or manipulate proceedings in one case in order to gain tactical advantage in another case." *Id.*; *see also Roadway Exp.*, 447 U.S. at 766 (noting that a finding of bad faith is not limited to situations in which an action was filed in bad faith but may be found in the ensuing conduct of counsel during litigation). The assessment of whether an attorney's conduct amounts to bad faith or conduct tantamount thereto is subjective. *Pac. Harbor Cap., Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000).

A finding of willful disobedience of a court order, on the other hand, "does not require proof of a mental intent such as bad faith or an improper motive." *Evon,* 688 F.3d at 1035; *see also Fink*, 239 F.3d at 993–94. Rather, "it is enough that a party acted deliberately." *Id.* Ultimately, while bad faith and willful violation of a court order are separate and distinct determinations, "[e]ither supports the imposition of sanctions." *Evon v. Law Offices of Sidney Mickell,* 688 F.3d 1015, 1035 (9th Cir. 2012).

## IV.    LEGAL ARGUMENT

### A.    <u>Jung and Dorenbaum Have Engaged in Pervasive Bad Faith and Have Repeatedly Violated This Court's Orders, Justifying the Imposition of Sanctions</u>

During these proceedings, Yu's Counsel have relentlessly engaged in bad faith conduct or conduct tantamount to bad faith and have consistently willfully violated this Court's orders, all of which has wrongfully proliferated these proceedings and any one of which is sufficient—even standing alone—to justify the imposition of sanctions. *See, e.g.*, *Jones v. Nat'l R.R. Passenger Corp.*, 2024 WL 4331912, at *4 (N.D. Cal. Sept. 27, 2024) (finding counsel's brief, one-time comments to prospective jurors sufficient for finding of bad faith and sanctions).

#### 1.    <u>Yu's Counsel's Repeated and Egregious Failure to Investigate Their Baseless Representations Regarding the Anonymous Declarant—and Attempt to Bolster Those Allegations with Their Own Sworn Declaration—Constitute Bad Faith</u>

It is undisputed that Yu's Counsel failed to conduct any investigation or perform any due diligence regarding the anonymous declaration and their representations regarding the same. It is similarly undisputed that, despite their lack of investigation and due diligence, Yu's Counsel failed to respond to discovery related to the declaration or abide by this Court's orders requiring them to disclose pertinent information regarding the declarant. What's more, Yu's Counsel also made false representations to this Court, including those made *under penalty of perjury* in support of their Motion for Reconsideration and their subsequent representations attempting to justify their actions. These actions constitute bad faith (as well as a complete disregard for their ethical obligations as attorneys) that amply justify the imposition of sanctions.

Specifically, despite failing to make any attempt to ascertain the identity of the anonymous declarant, Yu's Counsel:

- Refused to respond to discovery requests regarding the anonymous declarant based on a state mediation privilege that simply does not shield a party from disclosing the *name* of a relevant witness;

- Refused to comply with this Court's initial order requiring disclosure of the declarant's identity;

- Failed to seek leave for reconsideration until only *after* BDI was forced to notify the Court regarding Yu's Counsel's non-compliance;

- Failure to comply with Local Rules when filing the Motion for Reconsideration;

14

- Filed the Motion for Reconsideration without any legal basis (i.e., without *any* new facts or new law that would warrant reconsideration but rather based on admittedly unverified allegations nonetheless sworn to under penalty of perjury);

- Manufactured false fears about the risks of disclosing the identity of a declarant regarding whom Yu's Counsel had not performed even a cursory investigation;

- Defamed BDI by including unfounded and scandalous speculation about its complicity and/or direct role in foreign surveillance, cyberattacks, kidnapping, and torture; and

- Attempted to excuse these behaviors with further misrepresentations and lies, as detailed *supra* in Section II.F.

Such conduct was knowingly (or, at least, recklessly) committed. Yu's Counsel engaged in substantial motion practice about the anonymous declarant without even a minimal investigation (including without confirming that this person even existed). It is implausible that Yu's Counsel—as experienced and well credentialed as they claim to be—did not know the requirements for reconsideration under the Local Rules and applicable legal authority, or that they filed their Motion for Reconsideration in blatant disregard of both. *See B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107 (9th Cir. 2002) (finding counsel engaged in bad faith when it introduced testimony in violation of Federal Rule of Evidence section 412 because it was "implausible that counsel was not cognizant of Rule 412's pre-trial motion requirement, or that counsel was unaware of the evidence conflict between the substance of [the] testimony and Rule 412's terms"). This conduct not only constitutes a willful disregard for the judicial process, it also demonstrates a flagrant disregard for their ethical obligations as members of the State Bar of California.

What's more, Yu's Counsel did not investigate or verify *any* of the speculative assertions contained in the declarations they filed *under penalty of perjury* in connection with that Motion, including those accusing BDI and/or its counsel of engaging in intimidation tactics, cyberattacks, and worse (and including Jung's *own personal* declaration).  Moreover, despite their failure to take any action whatsoever to verify the veracity of their speculative assertions, Jung boldly swore to the veracity of his allegations in support of the Motion for Reconsideration under penalty of perjury, knowing full well the seriousness of the oath he was taking.

Finally, Yu's Counsel failed to comply with their obligation to correct or withdraw their pervasive misrepresentations and instead attempted (unconvincingly) to justify their actions. *See Amin*, 2023 WL 5021783, at *4 ("Section 1927 creates a 'duty to correct or withdraw litigation positions after it becomes obvious that they are meritless.'"); *Williford v. Multnomah Cnty.*, 2010 WL 5648878, at *4 (D. Or. Dec. 28, 2010) ("delaying withdrawal of known meritless claims or pursuing such claims could theoretically subject an attorney to Section 1927 sanctions"). Such conduct demonstrates that Yu's Counsel's actions were knowingly committed (and with a blatant disregard for both the law and their ethical duties as members of the State Bar).

At minimum, such conduct certainly amounts to recklessness. And whether intentional or reckless, Yu's Counsel's failure to adequately investigate the anonymous declarant undoubtedly and unnecessarily multiplied these proceedings, resulting in no less than ninety-two additional filings,[18] eleven orders,[19] and four additional hearings or conferences over an eight-month period. As such, their conduct is more than sufficient to justify the imposition of sanctions. *See In re Girardi*, 611 F.3d at 1061 ("[A] finding that the attorney recklessly raised a *frivolous* argument which resulted in the multiplication of proceedings is also sufficient to impose sanctions under [section] 1927") (internal citations omitted).

The Ninth Circuit's recent decision in *Caputo v. Tungsten Heavy Powder, Inc.* is instructive. In *Caputo*, the Ninth Circuit held that sanctions were appropriate under section 1927 where counsel filed a Motion for Reconsideration in which he attempted to "recycle old information and make it new," failed to conduct adequate research and assess the applicability of the law upon which he relied in support of his motion, and failed to correct misstatements of law and fact. *Caputo*, 96 F.4th at 1155 (Counsel's "failure to conduct any inquiry into the applicability of [the law under which he argued for reconsideration], combined with his unilateral decision to recycle old information and make it new, constitutes ample evidence of both recklessness and frivolousness as a matter of law").

Here, too, Yu's Counsel failed to independently assess either the Local Rules or the law governing motions for reconsideration, filed its Motion for Reconsideration in contravention of both, and not only admitted failing to conduct an investigation into the scandalous representations made therein (particularly

---

[18] *See* ECF 66, 68, 69, 72, 74, 76, 80, 81, 84, 85, 87, 88, 89, 91, 92, 93, 95, 100, 102, 105, 108, 109, 202, 203, 204, 214, 215, 217, 218, 228, 230, 241 (and attendant attachment filings).
[19] *See* ECF 68, 70, 73, 78, 86, 98, 210, 229, 234, 240, 246.

with regard to the non-existent anonymous declarant, purported concerns about the declarant's safety or wellbeing, and BDI's complicity in a myriad of horrors), but also filed a *personal* declaration in support of the Motion for Reconsideration wherein Jung attested *under penalty of perjury* to the veracity of those scandalous and baseless representations. Yu's Counsel's "actions in this litigation"—which far surpass those actions contemplated by the *Caputo* court—"warrant a substantial sanction award." *See Caputo*, 96 F.4th at 1157.

Particularly telling, Jung has sought sanctions against other parties and counsel for lesser conduct. In *Osorio v. Tran*, defendants (represented by Jung) sought sanctions against plaintiffs' counsel for "knowingly and recklessly" failing to investigate its claim against defendants where plaintiffs' counsel conducted a haphazard investigation and sued the wrong entity. 2009 WL 2485554, at *2 (N.D. Cal. Aug. 12, 2009). Although the court in *Osorio* ultimately determined that counsel's "laziness, negligence, or even recklessness when identifying the defendant" did not warrant sanctions on the facts then before it, Jung and Dorenbaum's failures here prove far more egregious. Not only did Yu's Counsel knowingly and/or recklessly fail to investigate his client's myriad false representations surrounding the anonymous declarant, and instead blindly adhere to those representations, they aggressively defended those representations through a calculated and protracted series of motions that: (1) violated Local Rules; (2) suborned further perjury related to manufactured concerns regarding the declarant's physical safety and wellbeing; (3) attacked the integrity of BDI and its counsel through a host of speculative and false claims, including via Jung's own personal declaration; (4) improperly leveraged Jung's role as judicial officer to lend a false air of credibility to Yu's false claims by claiming that Jung too had been personally victimized by BDI (while ***falsely*** representing to the Court that he was prepared and willing to testify in support of those claims if so called); and (5) subsequently lied to this Court regarding their "investigation" into the anonymous declarant to cover up their egregious failures. These failures represent far more than the mere "laziness, negligence, or even recklessness" that Jung himself claimed to be sanctionable in *Osorio*. They represent the exact type of bad faith against which section 1927 and this Court's inherent authority seek to protect.[20]

---

[20] Indeed, in the Ninth Circuit, courts have awarded sanctions for far less. *See, e.g.*, *Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1119 (9th Cir. 2000) (granting sanctions under section 1927 where attorney delayed compliance with the court's order and wasted judicial resources); *Caputo v. Tungsten Heavy Powder, Inc.*, 96 F.4th at 1155 (granting

2.  <u>Yu's Counsel's Attempt to Evade Responsibility for Their Bad Faith Conduct
    Constitutes Further Evidence of Bad Faith</u>

Yu's Counsel again exhibited bad faith when they baselessly filed several motions in advance of the evidentiary hearing on Defendants' Motion for Terminating Sanctions in a clear attempt to avoid the hearing and evade responsibility for their actions. Namely, Yu's Counsel filed:

- An Objection to Haiyi Bao's remote testimony, in an attempt to prevent her from revealing Yu's fabrication of the anonymous declaration;

- A Motion to Dismiss both the complaint and countercomplaint in this action, absent any legal basis allowing for the latter;

- A Motion to Enforce a Settlement Agreement, despite the fact that the Parties clearly had not reached such an agreement; and

- A Motion to Continue the Evidentiary Hearing so that Yu would not have to "choose between his Fifth Amendment rights and advancing his civil case through [his perjurious] testimony." ECF 233 at 3:24-27.

Yu's Counsel engaged in the above frivolous motion practice to prevent the Court from learning the truth about Yu (and counsel's) pervasive misconduct, as this Court has already acknowledged in granting terminating sanctions. *See* ECF 246 at 11:21-23 ("It would be a further abuse of the judicial process to allow a party who has committed egregious litigation misconduct to avoid sanctions by voluntarily dismissing his case or similar gamesmanship"). Their actions further multiplied these (already unending) proceedings, causing the Parties to file an additional twenty filings[21] and the Court to issue two additional orders[22] and conduct an additional conference.[23]

Such tactical maneuvering amounts to bad faith sufficient to find sanctions against Jung and Dorenbaum appropriate here. *See Optyl Eyewear*, 760 F.2d at 1051 (finding that "[b]ad faith is apparent"

---

sanctions where attorney failed to conduct any inquiry into the applicability of the law under which he argued for reconsideration and failed to provide any new facts in support thereof); *Nanak Found. Tr. v. GMAC Mortg., LLC*, 2012 WL 5818284, at *3 (N.D. Cal. Nov. 15, 2012) (issuing an order to show cause why sanctions should not issue under both Rule 11 and section 1927 where counsel submitted false information even though "a minimal inquiry would have revealed it to be false or incomplete" and that it "appear[ed] to have been done in bad faith, as Plaintiff props us its entire case on the omission of this information").

[21] *See* ECF 217, 218, 224, 225, 226, 227, 231, 233, 238, 239, 243, 245 (and attendant filings).
[22] *See* ECF 229, 234.
[23] *See* ECF 221 (minute entry).

where "the record is replete with evidence of tactical maneuvers undertaken in bad faith").

### 3. Yu's Counsel's Gamesmanship to Avoid Arbitration Constitutes Bad Faith

Yu's Counsel's actions to avoid arbitration at all costs (while ignoring all evidence that confirmed Yu's execution of the arbitration agreements at issue) similarly constitute bad faith. Specifically, Yu's Counsel knowingly engaged in procedural gamesmanship calculated to avoid arbitration, forcing BDI to remove *three* separate complaints *three* times on *three* different jurisdictional grounds and to move to compel arbitration *each time*. Further, Yu's Counsel added false and scandalous allegations regarding BDI's connection to the Chinese Communist Party and started a national media campaign maligning BDI. And, thereafter, Yu's Counsel refused to take depositions of *any* relevant fact witness, confirmed via their own "rebuttal" expert that they could not reasonably dispute the conclusion that Yu signed the agreements at issue, and nonetheless continued to vehemently oppose arbitration at every turn including by engaging in fraudulent and abusive litigation practices as described *supra*.

Notwithstanding these actions, Yu's Counsel immediately *voluntarily submitted* Yu's claims to arbitration pursuant to the very agreement he sought to declare invalid by this action once they were finally held to task for their misconduct. This abrupt change in strategy was an obvious attempt by Yu's Counsel to avoid this Court's ruling on the Motion for Terminating Sanctions and, therefore, being adjudged perjurers and fabricators of evidence, among others.

Taken in its totality, Yu's Counsel's tactical maneuvers—undertaken with the clear purpose of avoiding this Court and ultimately the very forum to which Yu explicitly and repeatedly agreed to submit any and all claims against BDI—exemplify bad faith. *See Optyl Eyewear Fashion Int'l Corp. v. Style Companies, Ltd.*, 760 F.2d 1045, 1051 (9th Cir. 1985) (finding that "[b]ad faith is apparent" where "the record is replete with evidence of tactical maneuvers undertaken in bad faith").

### 4. Yu's Counsel's Repeated and Willful Disobedience of This Court's Orders Also Justifies the Imposition of Sanctions

Sanctions are also warranted based on Yu's Counsel's willful violations of this Court's orders. As detailed above, Yu's Counsel disobeyed this Court's initial order requiring disclosure of the identity of the anonymous declarant (ECF 78) by failing to disclose or even inquire about or otherwise investigate the declarant's identity and by thereafter filing a baseless reconsideration motion to forestall further

attempts to effectuate this Court's order. ECF 85; ECF 104 at 4:19-5:2, 10:2-12:3, 12:8-12. Yu's Counsel also violated this Court's order that Yu was not entitled to the video of Dr. Mohammed's handwriting examination by attempting to subpoena both BDI and its counsel to produce the video.

Yu's Counsel's violation of both orders was deliberate and therefore warrants imposition of sanctions under this Court's inherent authority. *See Evon,* 688 F.3d at 1035; *see also Fink*, 239 F.3d at 993–94. Such conduct also constitutes recklessness motivated by the improper purpose of harassing BDI and its counsel and diverting attention away from trial preparation to gain a tactical advantage over BDI. *See Ayer v. White*, 2022 WL 2343040, at *2 (C.D. Cal. June 28, 2022) (award of sanctions under section 1927 appropriate where there is "'recklessness [] combined with an additional factor such as frivolousness, harassment, or an improper purpose'").

That such conduct was committed for an improper and/or harassing purpose is evidenced by the fact that Yu's Counsel did not seek reconsideration of this Court's order (which would have been the only appropriate avenue to challenge this Court's order)—nor could it, absent any new law or new facts justifying such a motion. Instead, Yu's Counsel served multiple subpoenas for the video (including one the day prior to the Parties' motion *in limine* deadline) and *repeatedly* refused to give a written "offer of proof and authority as to why [BDI] should consider the subpoena as anything other than harassment" in light of this Court's order. ECF 202-1 at ¶ 21, Ex. 16.

Like the misconduct detailed above, this too resulted in the needless multiplication of proceedings, forcing BDI to file motions *in limine* (a total of six additional filings) to quash Yu's subpoena to Ms. Makris, quash Yu's subpoena to BDI, and prevent Yu's Counsel from attempting to introduce, reference, or mention this recording during trial. *See* ECF 167, 195, 196. Such conduct therefore warrants the imposition of sanctions under section 1927 as well. See *Matter of Yagman*, 796 F.2d 1165, 1187 (9th Cir.), *opinion amended on denial of reh'g sub nom. In re Yagman*, 803 F.2d 1085 (9th Cir. 1986) ("damages under section 1927 are appropriate where . . . the proceeding is conducted in bad faith for the purpose of delay or increasing costs").

In sum, as this Court has already concluded, "Yu's obstructive and mendacious conduct has caused delay, required additional motion practice, and *vexatiously multiplied these proceedings*." ECF 246 at 10:17-19 (emphasis added). Such "obstructive and mendacious" conduct is also necessarily imputed to

Yu's Counsel. Jung and Dorenbaum facilitated, encouraged, and magnified this misconduct through their above actions, rendering it "impossible for [the] court to be confident that the parties will ever have access to the true facts." *Id.* at 10:12-14 (internal quotations and citation omitted).

For these reasons, sanctions are not only appropriate, they are necessary.

## B.    This Court Should Award Sanctions in an Amount Equal to the Fees and Costs Defendants Incurred Defending Against Yu's Counsel's Bad Faith

Whether pursuant to its inherent authority or section 1927, this Court should award monetary sanctions in the amount of at least **$6,280,077.38**—an amount equal to the attorneys' fees and costs reasonably incurred by BDI in defending against Yu's Counsel's pernicious bad faith conduct–which infected every stage of these proceedings.

As relevant here, courts in this jurisdiction calculate reasonable attorneys' fees using the "lodestar" method, which multiplies the number of hours reasonably expended on the matter by a reasonable hourly rate. *Pop Top Corp. v. Rakuten Kobo Inc.,* 2022 WL 901547, at *1 (N.D. Cal. Mar. 28, 2022), *aff'd,* 2023 WL 2783178 (Fed. Cir. Apr. 5, 2023). Both the hourly rates and the number of hours Defendants expended at every phase in litigation in this matter were reasonable.

*First*, Defendants' hourly billing rates are reasonable when compared to the prevailing market rates in the Bay Area. Thompson Dec. at ¶¶ 8-20; *see Blum v. Stenson*, 465 U.S. 886, 895 (1984) (reasonable hourly rates for determining the lodestar figure are the "prevailing market rates in the relevant community"); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (the "relevant community" is the forum in which the district court sits). Indeed, this Court's precedent confirms that these rates are reasonable based on both: (1) rates for similar work both in San Francisco and more broadly across the Northern District; and (2) the skill and experience of the attorneys involved. *Id.* at  14, 15, Ex. 6; *see, e.g., Andrews v. Equinox Holdings, Inc.,* 570 F. Supp. 3d 803, 808 (N.D. Cal. 2021) (finding partner-level counsel demonstrated that hourly billing rate of $1,250 was reasonable in employment litigation matter nearly four years ago); *Viavi Solutions Inc., Platinum Optics Technology, Inc.,* 2024 WL 5112478, at *4 (N.D. Cal. Dec. 12, 2024) (affirming Greenberg Traurig hourly rates between $825 and $930 for shareholders (including that of David S. Bloch) and between $490 and $517 for associates).

*Second*, the legal services provided, the type of services assigned to each attorney and paralegal,

and the time spent in providing those services were reasonable and necessary to defend against this action (which should never have been filed) and Yu's Counsel's consistently-employed bad faith conduct. *Id*. at ¶¶ 8-22; *see Salameh v. Tarsadia Hotel,* 2014 WL 3797283, at *2 (S.D. Cal. July 31, 2014) ("Courts in California do not require detailed time records and can award fees based on declarations of counsel describing the work they performed and the court's own review of the number of hours reasonably spent."). Indeed, the number of hours expended was not only appropriate, it was critical in light of this bad faith conduct that (as this Court has already noted) "vexatiously multiplied these proceedings." *See* ECF 246 at 10:17-19.

Based on the above, Defendants are entitled to no less than **$5,709,854.42** in legal fees[24] **$570,222.96** in costs necessarily incurred in defending against this baseless action and the pervasive bad faith conduct employed throughout these proceedings. *Id*. at ¶¶ 9-13, 21. In sum, Defendants request, in total: **$6,280,077.38.**

## V.    CONCLUSION

Defendants respectfully request that this Court grant their Motion for Sanctions under Section 1927 and this Court's inherent authority based on Yu's Counsel's: (1) tactical maneuvers designed to avoid the arbitration process to which Yu expressly consented several times during his employment with BDI; (2) lack of due diligence or investigation with regard to its scandalous claims against BDI; (3) false representations to this Court, including but not limited to those regarding the anonymous declarant (some of which Yu's Counsel made under penalty of perjury); (4) bad faith multiplication of proceedings stemming therefrom; and (5) attempt to excuse their behavior with more misrepresentations rather than correct their meritless positions, in violation of both their ethical duties as attorneys and the law.

Consequently, Defendants request this Court award monetary sanctions in an amount no less than **$6,280,077.38**—the amount equal to the attorneys' fees and costs necessarily incurred by BDI in connection with Yu's Counsel's sanctionable conduct–and impose any other remedy this Court deems appropriate.

---

[24] This amount is less than the lodestar figure, which, by default, confirms the reasonableness of the amount. *Id*. at ¶¶ 9-11.

Respectfully submitted,

DATED: March 6, 2025                    GREENBERG TRAURIG, LLP


                                        By _____
                                           Charles O. Thompson
                                           David S. Bloch
                                           Melissa J. Kendra
                                           Anthony E. Guzman II

                                           Attorneys for Defendant / Counter-Claimant
                                           BYTEDANCE INC.

DEFENDANTS' MOTION FOR SANCTIONS AGAINST CHARLES JUNG AND JAIME DORENBAUM